

UNITED STATES OF AMERICA
## Federal Trade Commission
WASHINGTON, D.C. 20580

Bureau of Competition
Health Care Division

August 12, 2020

The Honorable Denise Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1910
New York, NY 10007

**Re:** *FTC, et al. v. Vyera Pharmaceuticals, LLC, et al.*, 1:20-cv-00706 **(DLC)**

Dear Judge Cote:

The Federal Trade Commission, on behalf of Plaintiffs, submits this letter pursuant to Local Civil Rule 37.2 seeking a Court ruling that the monitored and recorded communications of Defendant Martin Shkreli that the FTC obtained from the Federal Bureau of Prisons (BOP) are not privileged. The parties have met and conferred but are at an impasse.

**BOP documents at issue:** Mr. Shkreli is currently incarcerated in Allenwood, Pennsylvania, and has been in federal prison since September 2017. During our pre-complaint investigation, the FTC learned that Mr. Shkreli was communicating from prison about relevant matters. While some of these communications apparently occurred on a contraband cell phone, *see* Am. Compl. ¶ 45, ECF No. 87, Mr. Shkreli also communicated using phone and email systems that BOP manages and monitors: TRUFONE and TRULINCS, respectively. Following the prescribed BOP procedures, the FTC obtained from BOP certain emails and recordings of his phone calls that occurred over these monitored and non-confidential systems. These materials include his communications with executives of Defendant Vyera and with members of Defendant Phoenixus's board of directors, including Defendant Kevin Mulleady. From these communications, the FTC secured information relevant to this case, including about Mr. Shkreli's efforts from prison to support Vyera's scheme to prevent generic competition to Daraprim. *See, e.g., id.* ¶¶ 44, 129. These materials also include some BOP-monitored communications between Mr. Shkreli and his attorneys, but they do not include any attorney communications made through the numerous confidential channels that BOP makes available to inmates, such as unmonitored phone calls, meetings, and mail. *See* Ex. 1 at 20.

**Plaintiffs' attempts to resolve the dispute:** On June 3, 2020, Mr. Shkreli claimed attorney-client privilege and work product over the BOP-monitored communications with his attorneys. Ex. 2 at 2-3. The FTC disagreed, but committed not to review these communications to afford Mr. Shkreli the opportunity to seek relief from the Court. Ex. 3. Mr. Shkreli instead reasserted his privilege claims and raised new objections to the FTC's use of these communications. Ex. 4. On June 25, the FTC proposed a compromise to mitigate any challenges to Mr. Shkreli's ability to communicate with his counsel during the pandemic. Ex. 5 at 2. The FTC offered to: (1) not seek communications between Mr. Shkreli and his attorneys in future requests to BOP; (2)

destroy any communications between Mr. Shkreli and Duane Morris, his antitrust counsel in this case; and (3) review and evaluate a "privilege log" for certain communications with other attorneys that Mr. Shkreli claims would be privileged had he followed proper BOP procedures. Mr. Shkreli rejected this proposal, but has repeatedly declined to offer a counterproposal or even to discuss the issue further. Meanwhile, due to our commitment not to review these materials, Plaintiffs have not reviewed most of the BOP production because it intersperses communications with attorneys and non-attorneys. This prejudices Plaintiffs' efforts to prepare our case.

**BOP-monitored communications are not privileged:** There is no dispute that Mr. Shkreli and his attorneys knew BOP was monitoring and recording his calls and emails over the TRUFONE and TRULINCS systems, including those with his attorneys. On each call, all participants are told: "This call is being recorded and is subject to monitoring." Ex. 6. The inmate handbook states that "[i]nmates who include their attorney(s) on the phone list do so with the understanding that all calls made through the TRUFONE system are subject to monitoring." Ex. 1 at 7. Similarly, all inmates are told that "public emails exchanged with [attorneys via the TRULINCS system] will not be treated as privileged communications and will be subject to monitoring." Ex. 7 at 134. And "[b]y accessing and using [the TRULINCS] system, inmates consent to . . . monitoring and information retrieval for law enforcement and other purposes." *Id.* at 126. Attorneys also must consent to monitoring to use TRULINCS. *See id.* at 127, 134.

As the Second Circuit has held, a phone call that a "prisoner knows is being recorded by prison authorities" is not privileged because that communication is "not made in confidence and thus constitute[s] a waiver of the privilege." *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011). The same rationale applies to emails: "because BOP inmates and their counsel are provided with prior warning that their TRULINCS communications will not be treated as privileged and must accept those terms prior to using TRULINCS, their TRULINCS emails do not qualify for the protection of attorney-client privilege." *United States v. Asaro*, No. 14-cr-26 (ARR), 2014 WL 12828985, at *1 n.1 (E.D.N.Y. July 17, 2014) (citing *Mejia*, 655 F.3d at 133-35).[1] Mr. Shkreli waived privilege over these communications because he and his attorneys knew that BOP monitored and recorded them.

These communications also are not protected work product. Mr. Shkreli waived any work-product protection over them by communicating "in a manner that is inconsistent with the protection." *Bank of Am., N.A. v. Terra Nova Ins.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002). He knowingly disclosed information to BOP—a government agency that was an "adversary" or a "potential adversary" to him as it monitored his communications for law enforcement and other purposes. *Id.* At the very least, he "voluntarily disclosed the work-product in such a manner that it [was] likely to be revealed to his adversary" because BOP is "reasonably viewed as a conduit to a potential adversary" such as Plaintiffs here. *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993). By doing so, he "waive[d] the privilege as to other parties." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993).

For these reasons, Plaintiffs respectfully request that the Court rule that Mr. Shkreli's BOP-monitored and recorded communications using the TRUFONE and TRULINCS systems are not protected by either the attorney-client privilege or the work-product doctrine.

---

[1] *See United States v. Walia*, No. 14-CR-213 (MKB), 2014 WL 3734522, at *16 (E.D.N.Y. July 25, 2014) ("[T]he TRULINCS system does not provide for the communication of privileged information." (citing *Mejia*, 655 F.3d at 133)); *FTC v. Nat'l Urological Grp.*, No. 1:04-CV-3294-CAP, 2012 WL 171621, at *1 (N.D. Ga. Jan. 20, 2012).

Sincerely,

*/s/ Markus H. Meier*

Markus H. Meier
Assistant Director