# Exhibit 4



NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

*FIRM and AFFILIATE OFFICES*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

CHRISTOPHER H. CASEY
DIRECT DIAL: +1 215 979 1155
PERSONAL FAX: +1 215 689 2194
*E-MAIL:* CHCasey@duanemorris.com

*www.duanemorris.com*

June 22, 2020

***Via Electronic Mail Only***
Markus H. Meier, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
mmeier@ftc.gov

> **Re:** ***Federal Trade Commission, et al. v. Vyera Pharmaceuticals, LLC, et al.,***
> **Case No. 1:20-cv-00706 (DLC) (S.D.N.Y.)**

Dear Markus:

We write in response to your June 8, 2020, letter, which was in response to my June 3, 2020, letter, regarding the FTC's production of documents it received from the Federal Bureau of Prisons ("BOP").

We appreciate your clarifying for us the universe of BOP-produced materials that Plaintiffs have produced in this litigation so far—at least 20,700 pages of documents—and understand that you intend to make an additional production of BOP-produced materials in the near future. We understand that you are reviewing certain communications between the FTC and the BOP to determine what, if any, privileges may apply. We also appreciate your agreeing not to read or listen to any of the communications between Mr. Shkreli and his attorneys until we have had a reasonable opportunity to seek relief from the Court with respect to our assertion of attorney-client privilege, and your providing the subpoenas that the Commission issued to the BOP for Mr. Shkreli's recorded calls and the blank form BP-AO655 "Request for Inmate Transactional Data" used to obtain all other documents produced by the BOP, including Mr. Shkreli's email communications. We understand that you are currently reviewing the completed BOP forms for privilege and will either produce them or include them on your privilege log, which you intend to produce in early July.

Nonetheless, despite our appreciation of your assistance thus far, we still have serious concerns about the collection and production of these materials. Our concerns are the following:

DuaneMorris

Markus H. Meier, Esq.
June 22, 2020
Page 2

(1) The collection of Mr. Shkreli's email communications from the BOP appears to be unauthorized by the form that the Commission used to collect those materials, Form BP-AO655;

(2) The collection and review of Mr. Shkreli's attorney-client communications while in BOP custody is contrary to recent precedent in this district and, in any event, is improper, as it frustrates Mr. Shkreli's constitutional right to effective assistance of counsel;

(3) The collection and production of materials that post-date the filing of the Complaint on January 27, 2020, potentially implicates Rules 26 and 45 of the Federal Rules of Civil Procedure; and

(4) Your request that we change the designation of the BOP materials as Highly Confidential pursuant to the Stipulated Protective Order "now" is unreasonable under the circumstances and ignores the limitations imposed by the Federal Rules.

We explain each of these points in further detail below.

## I.     FORM BP-AO655, ON ITS FACE, DOES NOT PERMIT THE COLLECTION OF MR. SHKRELI'S EMAIL COMMUNICATIONS

It appears that the FTC improperly used the BOP Form BP-AO655, called "Request for Inmate Transactional Data," (the "BOP Form") to collect Mr. Shkreli's email communications, for two reasons.

First, the BOP Form is only to be used "for intelligence purposes or in conjunction with an ongoing criminal investigation or prosecution," not a civil antitrust lawsuit filed by the FTC and various state attorneys general.  Second, the BOP Form only allows collection of "transactional data," not the entirety of an inmate's email communications.

The very first line of the BOP Form states as follows:

> This form should be executed by any federal law enforcement agency or United States Attorney's office in situations in which such agency or office requests copies of inmate transactional data of a person in Bureau of Prisons custody *for intelligence purposes or in conjunction with an ongoing criminal investigation or prosecution.*

BOP Form (attached as Exhibit 1) (emphasis in italics added).

This language clearly shows that the BOP Form is not intended to be used in an investigation like the one the FTC conducted here.  The FTC did not collect Mr. Shkreli's emails for intelligence purposes or in conjunction with an ongoing criminal investigation or prosecution.  Rather, the Commission collected the emails for use in a civil antitrust investigation.

Markus H. Meier, Esq.
June 22, 2020
Page 3

Duane Morris

There are other indicia on the BOP Form that show that it is intended to be used only in a criminal or intelligence investigation. The form requires information such as the inmate's "FBI number," "Criminal Affiliation," and "Position in Organization," all terms suggesting that its use is for a criminal investigation. *Id.* In addition, the form requires the signature of a Special Agent or Assistant United States Attorney (AUSA). *Id.* Although we have not seen a copy of the completed forms used, the FTC's investigation was a civil one, and thus no special agents or AUSAs could have been assigned to the investigation. In short, this is not the type of investigation encompassed within the language of the BOP Form.

But even if this *were* a criminal investigation, the BOP Form does not allow the collection of the entirety of an inmate's email communications. The BOP Form allows only the collection of "transactional data." The types of such data allowed are (1) "Telephone," (2) "Electronic Messaging," (3) "Visiting," and (4) "Financial." *Id.* Although the term "transactional data" is not defined on the BOP Form, the DOJ Change Notice dated April 2, 2015 states that "transactional data" for telephone calls means only the date, time, and duration of the call, not the content of the call. *See* DOJ Change Notice (the "DOJ Notice"), attached as Exhibit 2, at p. 8. The narrow definition of "transactional data" for telephone calls in the DOJ Notice suggests that any data concerning email communications should be similarly limited to information such as date of email, time of email, recipient, etc., and not the content of the emails.[1]

The DOJ Notice, like the BOP Form, confirms that such "transactional data" may only be "disclosed to Federal and state authorities for use in *criminal investigations or prosecutions*, upon a written request via BP-A0655, Request for Inmate Transactional Data." *Id* (emphasis added)*.*

The DOJ Notice also casts doubt upon the Commission's authority to collect all of Mr. Shkreli's call recordings pursuant to subpoena. The DOJ Notice provides that the *substance* of recorded calls "*shall only* be disclosed to a requesting law enforcement authority when: (1) requested in an emergency situation; (2) criminal activity is discovered as part of the routine monitoring for prison administration purposes; or (3) requested through proper process (e.g., written endorsement by a U.S. Attorney or DOJ Criminal Section Chief, in connection with a criminal investigation, grand jury subpoena, or administrative subpoena)." *Id.* (emphasis added). The DOJ Notice further provides that "[a]ll requests by law enforcement agencies for access to recordings of inmate telephone conversations shall be referred to Regional Counsel." *Id.* We understand that the Commission issued two subpoenas *duces tecum* for Mr. Shkreli's call recordings, one on October 29, 2019, and the other on January 7, 2020. We have no information that these requests were referred to the BOP Regional Counsel.

In short, it appears to us that the FTC's collection of Mr. Shkreli's email communications was unauthorized. In addition, while the FTC's collection of Mr. Shkreli's call recordings was pursuant to two Commission subpoenas, it is unclear whether those subpoenas went through proper

---

[1] Examples of this type of "transactional data" information can be found, for example, at Documents Bates Nos. FTC-BOP-00000001 *et seq.*; FTC-BOP-00001091 *et seq.*; FTC-BOP-00001098 *et seq.*; FTC-PROD-00011159 *et seq.*; FTC-PROD-00011162 *et seq.*; FTC-PROD-0001170 *et seq.*

Markus H. Meier, Esq.
June 22, 2020
Page 4

DuaneMorris

channels at the BOP before the call recordings were obtained.  You have said that you are
reviewing the completed BOP forms and "certain communications between the FTC and BOP"
for privilege.  We look forward to receiving further documentation and explanation concerning the
process(es) by which the Commission obtained these materials from the BOP.

## II.     THE WHOLESALE COLLECTION AND REVIEW OF ALL OF MR. SHKRELI'S ATTORNEY-CLIENT COMMUNICATIONS IS IMPROPER

It is axiomatic that "[t]he attorney-client privilege is one of the pillars upon which our
adversarial system rests." *In re D.H. Overmyer Telecasting Co., Inc.*, 470 F.Supp. 1250, 1253
(S.D.N.Y. 1979). Courts often describe the attorney-client privilege as "sacrosanct." *See, e.g.,*
*Tikkun v. City of New York,* 265 F.R.D. 152, 156 (S.D.N.Y. 2010). As the Supreme Court stated
in its seminal *Upjohn* decision, the purpose of the attorney-client privilege "is to encourage full
and frank communication between attorneys and their clients and thereby promote broader public
interests in the observance of law and administration of justice." *Upjohn v. United States*, 449 U.S.
383, 389 (1981).  We view your decision to agree not to read or listen to any of the communications
between Mr. Shkreli and his attorneys until we have had a reasonable opportunity to seek relief
from the Court as a recognition that important interests are at stake in this dispute, going far beyond
the ability of Mr. Shkreli to effectively communicate with counsel on pending matters.  This
recognition can also be seen in court decisions on this issue, including those that you cite in your
letter.

### A.     District Courts in the Second Circuit Have Acknowledged the Deficiencies in the BOP System, and Some, Including The Southern District of New York, Have Declined to Follow *Mejia*.

You cite the Second Circuit's 2011 decision in *United States v. Mejia* to support your
argument that recordings of phone calls between Mr. Shkreli and his attorneys are not protected
by the attorney-client privilege.  You also cite two decisions issued by different judges in the
Eastern District of New York, both in July 2014, *United States v. Walia* and *United States v. Asaro*,
to support your argument that emails between Mr. Shkreli and his attorneys sent via the BOP's
Trust Fund Limited Inmate Computer System ("TRULINCS") system, are also not protected by
the attorney-client privilege. But those cases are distinguishable from this one.

*Mejia* dealt only with prison phone calls—in fact, just a single phone call between an
inmate and his sister that the inmate claimed was privileged—and not the wholesale collection of
prison phone calls with attorneys as in this case.  And while *Walia* and *Asaro* dealt with
TRULINCS emails, both involved email communications between the defendant and his one
counsel relating to the criminal prosecution, not, as here, the wholesale collection of an inmate's
communications with at least ten attorneys over the course of an extended three-year period, and
wide dissemination to eleven different parties in a highly public civil case.  In addition, while the
*Asaro* judge found that "[n]either the complexity of the case nor the volume of discovery involved
justifies special consideration,"  2014 WL 12828985 at *2, this is a highly complex antitrust case



Markus H. Meier, Esq.
June 22, 2020
Page 5

with voluminous discovery, moving at a rapid pace, making email communication with counsel essential.

Moreover, in both *Walia* and *Asaro*, the question of whether the TRULINCS emails were privileged was not before the court, as the defendant in each case conceded that the emails were not privileged.  We do not make this concession.  The question before the court in both cases was whether the use by the government of the defendant's emails frustrated the defendant's access to counsel. Both courts stated that it did not, but both expressed sympathy with the defendant's positions.

In *Walia*, the court stated that it "may not agree with the position of the United States Attorney's Office to review non-privileged email communications between inmates and their attorneys communicated over a monitored system," but that it nonetheless had no legal basis to find a violation of the right of access to effective assistance of counsel.  *Walia*, 2014 WL 3734522 at *16.  In *Asaro*, the court stated that it "sympathizes with [the defendant's] and his counsel's concern that it would not only be easier but also more efficient and cost-effective if their communications regarding defense preparation could be conducted through privilege-protected emails… Certainly it would be a welcome development for BOP to improve TRULINCS *so that attorney-client communications could be easily separated from other emails and subject to protection*."  *Asaro*, 2014 WL 12828985 at *1 (emphasis added).

District courts in the Second Circuit that *have* been presented with the issue of whether TRULINCS emails are privileged have held that they are, even following the *Mejia* decision.  In *United States v. Ahmed,* No. 14-cr-00277-DLI, E.D.N.Y. (Irizarry, J.), the prosecutor argued that the defendant's emails with his counsel were not protected by the attorney-client privilege, citing *Mejia*.  After receiving three letters on the issue, two from the prosecution and one from the defense, Judge Irizarry, on June 27, 2014, upheld the privilege for TRULINCS emails, ruling as follows: "Court addresses TRULINCS issues raised in docket entries 35, 38, and 39. *Government precluded from viewing any attorney-client emails*. Defense counsel shall provide email addresses of all individuals working on this case whose *emails would be protected by atty-client privilege*." Minute Entry dated June 27, 2014 (emphasis added). A copy of the docket from this case is attached as Exhibit 3.[2]

In *United States v. Saade, et al.,* No. 11-cr-00111, S.D.N.Y. (Buchwald, J.)—the only case in the Southern District we have been able to find on this issue—the prosecutor voluntarily agreed to forego collecting and reviewing the incarcerated defendant's recorded calls and emails with his attorneys, and to segregate those materials so that no one else in the U.S. Attorney's Office could

---

[2]In one of its letters to the Court, the government stated that the reason for the government seeking access to the attorney-client emails was not any strategic advantage but rather the burden of segregating the attorney-client communications from the rest of the emails.  The AUSA stated that his office routinely asks the BOP *not* to send them monitored phone calls, even though they contend the attorney-client privilege does not attach to such calls, because the BOP is able to segregate the attorney-client calls.  *See* Letter, attached as Exhibit  4.  This acknowledgment by the government that eavesdropping on inmates' calls with their attorneys is improper is echoed by the prosecutor in the *Saade* case, as described below.

Markus H. Meier, Esq.
June 22, 2020
Page 6

**DuaneMorris**

have access to them.  At a status conference on September 26, 2011, Judge Buchwald considered the issue of whether the prosecution could review the defendant's recorded calls and emails from the BOP.  Addressing the Assistant U.S. Attorney, the judge recognized the applicability of the attorney-client privilege, stating that barring application of the crime-fraud exception, "*You don't have the right to eavesdrop on an attorney-client meeting in a prison* or out of a prison, and it seems to me that you don't have the right to open up mail between counsel and an inmate or an inmate and counsel." Transcript, attached as Exhibit 5, at 10:8-12 (emphasis added).  Judge Buchwald also stated that the same principle would apply "whether the mode of communication is more modern [*i.e.*, email] or more traditional." *Id*. at 10:22-24. There was then an exchange between the judge and the Assistant U. S. Attorney, in which the prosecutor restated that his office would not look at the attorney-client materials, and the judge stated that she did not believe that the U.S. Attorney's Office had in the past taken the position that prison phone calls were not privileged:

> [AUSA]:  [F]or meetings [with counsel], *of course, we are not going to eavesdrop on those meetings*.  Those are oral communications.  For written correspondence, we don't look at those.  For example, phone calls above every phone is a warning saying that these are monitored phones, and so that could operate as a waiver.  I am not going to argue that --
>
> THE COURT: *I don't think you really argue that position.  I don't think your office takes that, you know, position*.
>
> [AUSA]:  It very well be (sic) I am talking out of turn.  *We are not going to look at those calls or let anybody else unless there is some reason to*.  Then we will alert defense counsel and let the court know.
>
> THE COURT:  Okay.

*Id.* (emphasis added).

Thus, the U.S. Attorney's Office in the district we are in, S.D.N.Y., agreed that it is inappropriate for the government to view and listen to attorney-client communications.  Moreover, Judge Buchwald stated that she believed that the U.S. Attorney's Office did not even take the position that such materials are not privileged.  And the status conference in the *Saade* case took place approximately one month *after* the Second Circuit's decision in *Mejia*.  The FTC's insistence that these materials are not privileged, and that it is appropriate for Commission attorneys to view and listen to them, flies in the face of recent practice in this district.

### B.  Even If Mr. Shkreli's Communications are Not Protected By the Attorney-Client Privilege, They May Be Protected By the Work-Product Doctrine.

Even if Judge Cote were to hold that the attorney-client privilege does not protect Mr. Shkreli's communications with his attorneys, certain of those communications could be protected

Markus H. Meier, Esq.
June 22, 2020
Page 7

$$\textit{Duane}\text{Morris}$$

by the attorney work product doctrine, which has broader application in courts in the Second Circuit, and generally, than the attorney-client privilege. *See In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir. 2000); *Noval Williams Films LLC v. Branca*, No. 14 CIV. 4711 (PAC), 2016 WL 7238960, at *3-4 (S.D.N.Y. Dec. 14, 2016) ("courts generally find a waiver of the work product [protection] only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information"); *Broadrock Gas Servs., LLC v. AIG Specialty Ins. Co.*, No. 14 CV 3927 AJN MHD, 2015 WL 916464, at *6 (S.D.N.Y. Mar. 2, 2015) ("disclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver").

Although the courts in *Mejia*, *Walia*, and *Asaro* did not discuss the work-product doctrine, you cite *Bowne of New York City, Inc. v. AmBase Corp.*, for the principle that work-product protection is waived when information is shared with a third party that can be "reasonably viewed as a conduit to a potential adversary." You argue that the BOP "often serves as a conduit to other law-enforcement agencies like the FTC," and "Mr. Shkreli's voluntary disclosure of information to the BOP thus waives any work-product protection as to both the BOP and the FTC." Letter, at 2.

But Mr. Shkreli's communications with his civil attorneys relate to many matters and involve several different adversaries, none of them (with the exception of the FTC in this case) law enforcement agencies. The BOP, which monitors these communications for safety and security purposes, is not a conduit to any of Mr. Shkreli's adversaries in any of his other civil matters. Thus, it cannot be that in those other civil cases, Mr. Shkreli's "sharing" of his attorney-client communications with the BOP waives the protection of the work-product doctrine.

As for communications relating to this case, Mr. Shkreli was not on notice that he could be named as a defendant in a complaint arising from the FTC's investigation involving Vyera until late December 2019 (as the Commission has acknowledged, this is the first time the FTC has ever named an individual in a Section 2 monopolization case). Prior to that time, although he was generally aware that there was an investigation involving Vyera, he had no reason to believe that the FTC was a "potential adversary" to him, nor that the BOP would be a conduit disclosing his attorney-client communications to the FTC. Thus, there can be no waiver of the work-product doctrine for any attorney-client communications prior to late December 2019. And for attorney-client communications since late December 2019, there would be no reason for Mr. Shkreli to believe that the BOP, which monitors communications for security purposes, would turn over to the FTC all of those communications, or that the FTC would attempt to use them in the litigation. The BOP's review of the communications is similar to its inspection of attorneys' legal papers before in-person visits. No one could credibly argue that the BOP's in-person inspection of legal papers would constitute a waiver of the attorney work product protections, and the analysis with respect to electronic communications should be the same.[3]

---

[3] In this sense, the situation is similar to those in which courts hold that the attorney-client privilege and work product protection apply even when a third-party is present, if the third-party's presence is necessary to facilitate the effective



Markus H. Meier, Esq.
June 22, 2020
Page 8

In short, there is simply no basis for a waiver of work-product protections in Mr. Shkreli's communications with his attorneys.[4]

**C.     It is Widely Acknowledged That the BOP's Handling of Inmate Communications Needs to Be Reformed to Protect Attorney-Client Communications.**

Over the last decade, a growing consensus has emerged that the BOP system for handling inmate communications deprives inmates of their constitutional right to effective assistance of counsel, and that reform is necessary.  Access to email has become an increasing necessity to the attorney-client relationship, and litigation moves at a pace that requires lawyers and clients to communicate through email, phone calls, or similar instant communication. This growing consensus recognizes that inmates' emails and phone calls with their attorneys should be privileged and should not be read by an adversarial government entity.   The view that inmates' communications with their attorneys are only privileged if they occur by letter, in-person meeting, or the rare unmonitored phone call, is increasingly seen as impractical and anachronistic.  As is evident in the cases discussed above, courts—even in the Second Circuit after *Mejia*—and prosecutors are generally loath to invade an inmate's right to communicate with his or her attorney by email or phone even though such communications are monitored.

*1.     Reform Efforts in Congress*

A bipartisan consensus on the need for reform of the BOP's processes for handling inmate communications has emerged in the Congress.  On January 7, 2020, Republican Doug Collins, Ranking Member of the House Judiciary Committee, and Democrat Hakeem Jeffries, Chairman of the House Democratic Caucus, introduced H.R. 5546, the "Effective Assistance of Counsel in the Digital Era Act," (the "Bill"). The stated purpose of the Bill is "[t]o regulate monitoring of electronic communications between an incarcerated person in a Bureau of Prisons facility and that person's attorney or other legal representative, and for other purposes." The Bill, if passed, would provide for the application of the attorney-client privilege to all electronic communications sent or received through the BOP's TRULINCS system. The Bill would require a search warrant to review inmates' emails, followed by a screen for privilege, and would allow the filing of a motion to suppress where emails are accessed in violation of the law.

In a press release published by the House of Representatives Judiciary Committee about the introduction of the Bill, Rep. Jeffries stated:

---

communication of legal advice between the attorney and the client. *See SEC v. Wyly,* 2011 WL 3366491, at *2 (S.D.N.Y. July 27, 2011).

[4]The *In re Steinhardt Partners, L.P.* case, which you cite on page 2 of your letter, is totally inapposite.  That case deals with the "selective waiver" doctrine, *i.e.*, whether waiver of the privilege to a government agency operates as a waiver as to private parties, which is not at issue in this case.

Markus H. Meier, Esq.
June 22, 2020
Page 9

DuaneMorris

> Most fair-minded people would agree that our system of justice requires a dynamic where individuals are able to have the effective assistance of counsel necessary to adequately defend themselves. Email is the most efficient way for an attorney to communicate with an incarcerated client and should enjoy the same protection as telephone calls and other forms of private communication.[5]

The press release explained why other methods of communication between attorneys and incarcerated clients are insufficient:

> Other methods of communication besides email can be especially burdensome and time consuming. Even in metropolitan areas like New York, it can take an attorney more than three-hours round trip to travel to a detention facility to visit a client. Additionally, attorneys may have to wait hours for guards to bring a client from his or her cell to the room where visits occur. Time spent in transit or waiting at the prison reduces an attorney's ability to work on the client's case (or other clients' cases). Moreover, confidential phone calls between an incarcerated person and his or her attorney are often limited in time and require advanced notice. Similarly, legal documents and other written materials cannot be shared over the phone, and postal mail can take up to two weeks to reach inmates.

*Id.*

In a separate press release issued by House Judiciary Committee Chairman Jerrold Nadler on February 12, 2020, Chairman Nadler stated "Over a decade ago, BOP clearly recognized the growing importance of email for purposes of efficiency and speed of communication between inmates and their outside contacts. Over time, email has rapidly grown into a primary means of communication between inmates and their attorneys, but without a system in place to maintain attorney-client privilege, the Bureau of Prisons risks severely hindering the effective representation of inmates."[6]

The Bill is supported by many professional and nonprofit organizations, including the American Bar Association (ABA), the American Civil Liberties Union (ACLU), Americans for Prosperity, #cut50, Due Process Institute, Faith & Freedom Coalition, Families Against Mandatory Minimums, Federal Defenders, FreedomWorks, National Action Network, National Association of Criminal Defense Lawyers (NACDL), Prison Fellowship, and Right on Crime.

---

[5] *Collins, Jeffries introduce bipartisan bill to protect private communication between lawyers and incarcerated clients,* January 8, 2020, https://republicans-judiciary.house.gov/press-release/collins-jeffries-introduce-bipartisan-bill-to-protect-private-communication-between-lawyers-and-incarcerated-clients/.

[6] *Chairman Nadler Statement for the Markup of H.R. 5546, the Effective Assistance of Counsel in the Digital Era Act,* February 12, 2020, https://judiciary.house.gov/news/documentsingle.aspx?DocumentID=2810.

DuaneMorris

Markus H. Meier, Esq.
June 22, 2020
Page 10

### 2. The NACDL Lawsuit

In addition to endorsing the Bill, the NACDL filed a lawsuit under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), on October 18, 2018, which remains pending, against the BOP and the DOJ.  The NACDL seeks "injunctive and other appropriate relief to compel the release of agency records related to the federal government's collection and monitoring of emails between inmates held in BOP facilities and their attorneys." *National Association of Criminal Defense Lawyers v. Federal Bureau of Prisons, et al.,* United States District Court for the District of Columbia (Washington, DC), No. 18-cv-02399-KBJ (the "BOP Action"), ECF Doc. No. 9 (Amended Complaint), ¶ 1. The BOP Action centers on the NACDL's FOIA requests to the BOP and the DOJ, and the agencies' purported violations of FOIA, for records relating to the TRULINCS inmate email system and "the circumstances under which prosecutors may access emails between inmates and their attorneys." *Id.*, ¶ 2.

The NACDL's Amended Complaint alleges that "[e]mail has largely supplanted traditional modes of communication. Inmates are often incarcerated a great distance from where their counsel is located. In some cases, email may be the only reasonable way for an inmate to engage in strategic discussions or confer on time-sensitive matters with his or her attorney." *Id.*, ¶ 6. The Amended Complaint alleges that the BOP's actions in forcing inmates to rely on outdated forms of communication, such as letters and in-person visits, is harmful, unfair, and cost-prohibitive. *Id.*, ¶¶ 8-9.

### 3. The ABA Report

In addition to supporting the Bill, the ABA, on February 8, 2016, issued a report and resolution, which was adopted by the ABA House of Delegates, recommending and urging the BOP and DOJ to amend their policies to ensure the application of the attorney-client privilege to emails between inmates and their attorneys. *See ABA Report and Resolution,* 10A, February 8, 2016 (the "Report"). The Report explains that "[t]elecommunications are integral to human relationships in today's society. For attorneys, email has supplanted other technologies as the primary medium for communicating with clients. Email has even become an important tool for attorneys to communicate with their incarcerated clients." *Id.* at 1. The Report acknowledges that "the BOP's email monitoring policy deprives attorneys of the most effective means to promptly inform and consult with their inmate clients regarding important case matters, as required by Model Rule of Professional Conduct 1.4." *Id.* at p. 2. The Report states that the BOP's monitoring of inmates' communications with their attorneys "raises serious constitutional concerns and may be vulnerable to [constitutional] challenge on the grounds that it is not reasonably related to legitimate penological interests." *Id.*

The primary argument raised by the ABA in the Report is that the BOP's monitoring of emails between inmates and their attorneys undermines competent representation and places significant burdens on inmates' attorneys. *Id.* at pp. 2-3. The ABA describes the challenges that inmates' attorneys face without utilizing email:

DuaneMorris

Markus H. Meier, Esq.
June 22, 2020
Page 11

> The BOP's Legal Email [defined as "emails between an inmate and his or
> her attorney"] monitoring policy limits the means by which federal inmates
> can consult counsel, effectively allowing confidential correspondence only
> by traditional media: postal mail, pre-arranged unmonitored telephone calls,
> and in-person visits … communicating confidentially via these traditional
> channels is grossly inefficient and imposes substantial burdens on attorneys,
> especially compared to the relative speed, ease, and low cost of a system
> providing for confidential Legal Email.

> It can take two weeks or more for an inmate to receive postal mail sent from
> an attorney, and additional time to receive an inmate's response. Most
> prisons do not accept expedited mail delivery. Similarly, unmonitored
> telephone calls are procedurally difficult and time-consuming to set up. The
> process must ordinarily be initiated by the inmate, and can take up to a
> month to complete. In-person visits are especially burdensome, because
> attorneys often must wait several hours for their client to be produced by
> the prison, in addition to the time spent traveling to and from the facility
> passing through security.

*Id.* The Report concludes that "traditional postal mail, unmonitored calls, in-person visits are not
adequate alternatives to unmonitored emails." *Id.*

The Report also describes the dilemma that the BOP policies force upon inmates' attorneys,
who must either communicate through TRULINCS or risk violating the Rules of Professional
Conduct. *Id*. at p. 4. Specifically, Rule 1.4 "requires that a lawyer promptly consult with and
secure the client's consent prior to taking action" regarding a decision that must be made by the
client. *Id*. (citing Model R. Prof. C. 1.4, cmt. 2). Running afoul of Rule 1.4 could subject an
inmate's attorney to discipline, even if the client's legal interests are unaffected. *Id.* (citing Model
R. Prof. C. 8.4, cmt. 1 ("Lawyers are subject to discipline when they violate or attempt to violate
the Rules of Professional Conduct.")). The Report also describes how the BOP's policy of
monitoring communications between inmates and their attorneys "frustrates the ability of attorneys
to provide meaningful Sixth Amendment representation" and raises serious constitutional
concerns. Report at pp. 4-10.

### D.     The COVID-19 Pandemic Has Made Attorney-Client Communications Even More Difficult In This Case.

All of the concerns raised by the House Bill, the NACDL lawsuit, and the ABA Report are
present in this case.  But this case raises even more concerns because of the ongoing COVID-19
global pandemic, and the enhanced risk of mass outbreak in prisons.

DuaneMorris

Markus H. Meier, Esq.
June 22, 2020
Page 12

FCI Allenwood Low, like all federal prisons, has been closed to visitors for months,[7] and will likely be closed for many months to come. Because of the pandemic and a previous norovirus outbreak at FCI Allenwood Low, resulting in a similar prolonged lockdown in January and February 2020, Mr. Shkreli's attorneys have not been able to visit him, even once, since the filing of this action on January 27, 2020. Even when Mr. Shkreli's attorneys have been allowed to visit him on other matters, the visits are difficult to have with any regularity, particularly since he was transferred to FCI Allenwood Low in May 2019. Mr. Shkreli's attorneys live in the Philadelphia and New York City areas, both of which are over 150 miles from FCI Allenwood Low, making regular visitations both inefficient and cost-prohibitive; one visit to Mr. Shkreli requires approximately 6 to 8 hours of an attorney's time in addition to the time required for the actual visit. This time includes travel time, the time it takes to access Mr. Shkreli upon arriving at the prison (which has on occasion included hours of waiting), and the time it takes to depart the facility. *See* Rep. Jeffries' press release, ABA Report, *supra*. In addition to preventing Mr. Shkreli's attorneys from meeting with him in-person, the pandemic has further limited the number of unrecorded phone calls Mr. Shkreli can have with his attorneys, because of the overwhelming demand for legal proceedings to be conducted by phone, as well as BOP staff shortages.

Having meaningful access to Mr. Shkreli outside of TRULINCS and recorded calls is often difficult, and sometimes impossible, particularly in urgent situations that require his input and authorization. While Mr. Shkreli can have pre-approved scheduled legal calls at FCI Allenwood Low that are unrecorded, these calls are generally limited to 15-30 minutes and are only allowed upon a showing of an "imminent court deadline." In fact, Mr. Shkreli's attorney's requests for legal calls have been denied on the basis that they did not relate to an "imminent court deadline." Putting aside the obvious fact that it is difficult to accomplish much in this complex case, or any case, in a 15- or 30-minute phone call, there are decisions that must be made in litigation even when a court deadline is not imminent. In those instances, there is no alternative to TRULINCS for rapid communication with Mr. Shkreli, putting counsel in the professional dilemma that the ABA Report highlighted.[8]

### E.    The FTC's Collection of Mr. Shkreli's Communications With His Attorneys Threatens to Deny Him Effective Assistance of Counsel in This Case.

Although we have only just begun to review the 20,700+ documents in the BOP production (with more on the way), it is clear that the production includes communications with Mr. Shkreli's attorneys that post-date the time that Mr. Shkreli learned he was a target of the FTC's investigation, late December 2019, and even the filing of the complaint on January 27, 2020. Such communications may involve case strategy, and thus go right to the heart of the attorney-client

---

[7] *See,* https://www.bop.gov/locations/institutions/alf/index.jsp ("All visiting at this facility has been suspended until further notice.").

[8] While Mr. Shkreli can receive legal mail, and this is a sufficient means for sending him copies of filings, substantive communication with Mr. Shkreli by letter is very difficult, time-consuming, and inefficient. The speed at which cases in litigation move, particularly this one, makes communication by letter inefficient and impractical.

DuaneMorris

Markus H. Meier, Esq.
June 22, 2020
Page 13

privilege.  You have not stated why you need to review these particular attorney-client communications, so we can only assume that the reason is to obtain a strategic advantage in the litigation.  *See* June 26, 2014 letter from Assistant U.S. Attorney F. Turner Buford to Judge Irizzary, attached as Exhibit 4 (denying that government's purpose was strategic advantage).  If there is another reason for eavesdropping on attorney-client communications in connection with the defense of this lawsuit, please let us know.

Your decision to collect and view Mr. Shkreli's attorney-client communications—in light of the extraordinary challenges presented by alternate means of communication in this case—frustrates his right of access to effective assistance of counsel, a right that is guaranteed by the Sixth Amendment.  Your decision is particularly troubling in light of the unprecedented nature of this case, the first of its kind against an individual, and the extraordinary relief you are seeking, *i.e.*, to ban Mr. Shkreli from the pharmaceutical industry for life (effectively taking away his ability to make a living) and to disgorge all of his interest in and income from Vyera.

### F.  The FTC Should Agree to Stop Collecting, Claw Back, and Destroy Mr. Shkreli's Attorney-Client Communications.

The BOP reform efforts highlighted above spring from a broad consensus in the American legal community that it is simply wrong for a litigant to have access to an adversary's communications with his or her attorney. A good example of this consensus at work is the DOJ's decision to no longer allow its prosecutors to seek waivers of the attorney-client privilege and work-product protections from companies that are under investigation. This policy is now part of the DOJ's Justice Manual.  The DOJ's policy change resulted from a recognition that there was a growing consensus "from a broad array of voices" that the DOJ's former policy allowing prosecutors to seek such waivers and to grant cooperation credit to companies in return, was being used to unfairly coerce corporate entities into waiving the attorney-client privilege and work-product protection, and that by doing so, the DOJ was promoting an environment in which these protections were being "unfairly eroded to the detriment of all." Justice Manual, title 9 ch. 9-28.710. The Justice Manual explains that "[w]hat the government seeks and needs to advance its legitimate (indeed, essential) law enforcement mission is not waiver of those protections, but rather the facts known to the corporation about the putative criminal misconduct under review…[Thus] prosecutors *should not ask for such waivers and are directed not to do so*." *Id.* (emphasis added).

So, while the DOJ *could* seek such waivers, and formerly did, it no longer does so.  We believe that, even if the Court concludes that these communications are not privileged, the FTC should follow the DOJ's lead, and stop collecting the attorney-client communications, claw back those already produced, and destroy those in its possession.

### III.  THE COLLECTION AND PRODUCTION OF MR. SHKRELI'S POST-COMPLAINT COMMUNICATIONS COULD IMPLICATE RULES 26 AND 45

We are also concerned about the apparent collection of materials after the filing of the Complaint on January 27, 2020.  We have seen in the BOP production some documents, including

DuaneMorris

attorney-client communications, that post-date the filing of the Complaint.  We have not yet determined the number of post-Complaint documents in the production.  Based upon the limited number we have reviewed, it appears that, in addition to the attorney-client communications, the production includes post-Complaint communications between Mr. Shkreli and his friends and colleagues that were apparently collected wholesale, without search terms or parameters and without any regard for relevance.  Therefore, we are concerned that this collection did not comply with Rule 26(b)(1).  In addition, we had no prior notice of the issuance of subpoenas or other process used to collect such post-Complaint documents, pursuant to Rule 45.  If we had, we would have objected to any wholesale collections.  Thus, we are concerned that the collection and production of post-Complaint materials could implicate both Rules 26 and 45.

Before we can resolve this issue, it would be helpful to have more information on how such post-Complaint materials were collected, and Plaintiffs' intentions regarding collection of such materials going forward, including the production the FTC was planning to make on June 19.  Towards that end, please produce to us any requests or subpoenas for documents or other information from the BOP that resulted in the production of Mr. Shkreli's post-Complaint communications.

## IV.   MR. SHKRELI'S TEMPORARY DESIGNATION OF BOP MATERIALS AS "HIGHLY CONFIDENTIAL" IS APPROPRIATE

In your June 8 letter, you disagree with Mr. Shkreli's designations of the BOP materials as Highly Confidential pursuant to the Protective Order.  In support of your position, you state that, based upon your claim that none of the communications in the BOP materials is privileged, Mr. Shkreli "had (and has) no expectation of confidentiality" over any of the BOP materials.  We disagree.

First, we note that the BOP's markings on these materials are not consistent with your argument that Mr. Shkreli has no expectation of confidentiality with respect to the materials.  The TRULINCS messages themselves are marked "Sensitive."  The DOJ Form AO-655, used to gain access to Mr. Shkreli's TRULINCS email messages requires that "any information obtained [] be treated as sensitive investigative or intelligence information and [] be disseminated only in a manner appropriate to the conduct of the investigation or prosecution or for legitimate intelligence purposes."  And while the communications are subject to monitoring for safety and security purposes, the BOP does not publicly disseminate inmate communications.

Second, Mr. Shkreli's designation of the BOP materials as Highly Confidential, at least for now, is warranted under the circumstances.  As you know, pursuant to the agreement reached by the parties on or around June 9, 2020, the entire investigatory record, including all documents produced by the defendants and by third parties, is being treated temporarily as highly confidential through August 28, 2020.  In addition, many third parties have made a similar blanket designation of the materials they have produced as Highly Confidential, and you have not challenged any of those designations.  Your request that we "change [the designations] *now* to conform to the terms of the protective order," June 8, 2020, letter, at 1 (emphasis added), is unreasonable.  There are

Duane Morris

Markus H. Meier, Esq.
June 22, 2020
Page 15

more than 20,700 documents in the BOP production.  Although we have only reviewed a small portion of the materials, it is clear that many of them are outside the boundaries of permissible discovery under Rule 26(b)(1).  Many involve communications about personal issues that have no relevance to the issues in this case.  The Protective Order provides that parties retain the right to challenge the discovery of materials that they designate.[9]  Accordingly, we will not agree to change the designation of all of these materials as Highly Confidential at this time, and reserve all rights with respect to this issue.

We note that on a previous meet and confer, the FTC indicated that it does not intend to embarrass Mr. Shkreli through its discovery requests.  We hope that you understand our concerns and will agree to work towards a resolution of these issues to prevent the disclosure of irrelevant and personal communications that would subject Mr. Shkreli and his family and friends to unnecessary embarrassment.

## V.    **CONCLUSION**

We are hopeful that we can work together to resolve these issues without the Court's intervention. However, if we are unable to reach a resolution, we intend to raise these issues with Judge Cote.

We look forward to further discussion with you on the matters addressed in this letter.

Sincerely,

/s/ *Christopher H. Casey*
Christopher H. Casey

Encl. (Exhibits 1-5).

---

[9]*See* Stipulated Protective Order, ECF 92, at 20, par. 15:  "**Reservation of Rights**.  By designating any material Confidential or Highly Confidential, the parties do not acknowledge that any such material is relevant or admissible in this Litigation. All parties reserve the right to seek discovery of, or alternatively to resist discovery of, such material in this Litigation."

# EXHIBIT 1

BP-A0655
RNP 1I

# REQUEST FOR INMATE TRANSACTIONAL DATA

**U.S. DEPARTMENT OF JUSTICE**         **FEDERAL BUREAU OF PRISONS**

This form should be executed by any federal law enforcement agency or United States Attorney's office in situations in which such agency or office requests copies of inmate transactional data of a person in Bureau of Prisons custody for intelligence purposes or in conjunction with an ongoing criminal investigation or prosecution.

SUBMISSION OF THIS FORM SHALL SIGNIFY BY THE UNDERSIGNED THAT ANY INFORMATION OBTAINED WILL BE TREATED AS SENSITIVE INVESTIGATIVE OR INTELLIGENCE INFORMATION AND WILL BE DISSEMINATED ONLY IN A MANNER APPROPRIATE TO THE CONDUCT OF THE INVESTIGATION OR PROSECUTION OR FOR LEGITIMATE INTELLIGENCE PURPOSES.

| Name of Inmate: | Register No.: |
|---|---|

| FBI NO: | SSN: | DOB: |
|---|---|---|

Principal Alias:

| Criminal Affiliation: | Position in Organization: |
|---|---|

Nature of Investigation:

Starting Date for Requested Transactional Data:

Ending Date for Requested Transactional Data:

Type of Transactional Data Requested

☐ Telephone    ☐ Electronic Messaging    ☐ Visiting    ☐ Financial

List any known targets to be searched; i.e., telephone number(s), electronic messaging address(es), etc.

Other Specific Requests:

| Submitting Agency: | Office/District: | Date: |
|---|---|---|

| Phone Number: <br><br> Ext: | Fax: | E-Mail Address: |
|---|---|---|

Special Agent or Assistant United States Attorney

Printed Name:         Signature:

Title:

This form should be submitted directly to the Warden of the institution in which the person in Bureau of Prisons custody is incarcerated. In cases where the institution is not known, the form should be mailed directly to Bureau of Prisons, Intelligence Section, at 320 First Street, N.W., Room #543, Washington, D.C. 20534, or e-mailed to BOP-CPD/SIS@bop.gov.

**THIS FORM IS LAW ENFORCEMENT SENSITIVE WHEN COMPLETED**

# EXHIBIT 2



**U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E   N O T I C E
OPI:         OGC/OGC
NUMBER:  1351.05, CN-1
DATE:       April 2, 2015

# Release of Information

                            /s/
*Approved*:  Charles E. Samuels, Jr.
                   Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following change to Program Statement 1351.05, **Release of Information**, dated September 19, 2002.  This text is inserted into the Program Statement (p.8) and marked with a highlight.

**Law Enforcement requests for telephone monitoring information:**

For telephone monitoring information concerning inmate telephone calls, ordinarily only transactional data (e.g., date, time, duration of the call) may be disclosed to Federal and state authorities for use in criminal investigations or prosecutions, upon a written request via BP-A0655, Request for Inmate Transactional Data.

Access to inmate telephone conversations that were previously recorded, or copies of the recorded telephone conversations (even when those conversations are yet to be recorded as long as the monitoring and recording is in the ordinary course of BOP duties), or written transcripts, shall only be disclosed to a requesting law enforcement authority when:

(1)   requested in an emergency situation;
(2)   criminal activity is discovered as part of the routine monitoring for prison administration purposes; or
(3)   requested through proper process (e.g., written endorsement by a U.S. Attorney or DOJ Criminal Section Chief, in connection with a criminal investigation, grand jury subpoena, or administrative subpoena).

**Note:** U.S. Attorney authorization may only be delegated to an Acting U.S. Attorney when the U.S. Attorney is out of the jurisdiction or otherwise incapacitated.  Authorization cannot be delegated to a First Assistant U.S. Attorney or Criminal Chief, or any other position within the U.S. Attorney's Office.



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** OGC
**NUMBER:** 1351.05
**DATE:** 9/19/2002
**SUBJECT:** Release of Information

<u>PART ONE</u>: **[GENERAL PROVISIONS AND PROCEDURES]**

1. **[<u>PURPOSE AND SCOPE</u> § 513.30. This subpart establishes procedures for the release of requested records in possession of the Federal Bureau of Prisons ("Bureau"). It is intended to implement provisions of the Freedom of Information Act (FOIA), 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a, and to supplement Department of Justice (DOJ) regulations concerning the production or disclosure of records or information, 28 CFR part 16.]**

The Freedom of Information Act (FOIA) and the Privacy Act (PA) interact with each other in two areas:

  # When any person requests access to records about himself or herself, both statutes become potentially applicable;

  # When any person requests access to another individual's record through the FOIA, the Privacy Act may prohibit the disclosure of that record unless FOIA requires it.

The determination of what information may be released requires Bureau staff to have a basic understanding of both the FOIA and the Privacy Act, as well as a working knowledge of DOJ and Bureau policy. Bureau staff also should be aware that the Privacy Act establishes criminal penalties and civil liabilities for unauthorized disclosures. The appropriate Regional Counsel shall be contacted when staff are uncertain whether requested information may be disclosed.

Staff shall become familiar with the policy governing release of information, with special emphasis upon those areas with direct application to the employee's job.

Information requests submitted by the union pursuant to 5 U.S.C. § 7114 will be addressed in accordance with this provision and relevant case law.

**[Bold Type - Rules]**
Regular Type - Implementing Information

This Program Statement is divided into four major parts:

| Part | Page |
|------|------|
| General Provisions and Procedures | 1 |
| Inmate Requests to Institution for Information | 12 |
| Privacy Act Requests for Information | 21 |
| Freedom of Information Act Requests for Information | 25 |

2. **SUMMARY OF CHANGES.**  This Program Statement is being revised to prohibit inmates from obtaining and possessing photocopies of their Pre-sentence Reports (PSR) and the Statement of Reasons (SOR) from their Judgment(s) in a Criminal Case.  The purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes.  Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies.  This revision also introduces a new form which inmates can use to facilitate court review of their PSRs or SORs.

If local procedures are changed, notification to the union and training will be handled in accordance with the Master Agreement.

3. **PROGRAM OBJECTIVES.**  The expected results of this program are:

   a.  Information will be released to a requester in accordance with Federal law and the regulations and policies of the U.S. Department of Justice.

   b.  Inmate Freedom of Information Act requests to the Central Office will be reduced by increasing the use of institution procedures that provide for inmate review of Bureau policy documents and records in Inmate Central Files.

   c.  Future litigation pertaining to FOIA/Privacy Act issues will be reduced.

4. **DIRECTIVES AFFECTED**

   a.  **Directive Rescinded**

      PS 1351.04    Release of Information (12/5/96)

   b.  **Directives Referenced**

      PS 1330.13    Administrative Remedy Program (12/22/95)
      PS 1480.05    Contacts with News Media (9/21/00)
      PS 5070.10    Judicial Recommendations and U.S. Attorney Reports, Responses to (6/30/97)

    PS 5270.07     Inmate Discipline and Special Housing Units
                      (12/29/87)
    PS 5310.12     Psychology Services Manual (8/13/93)
    PS 5800.10     Mail Management Manual (11/3/95)
    PS 5800.11     Inmate Central File, Privacy Folder and
                      Parole Mini- Files (9/8/97)
    PS 6000.05     Health Services Manual (9/15/96)

    Public Information Officer's Handbook (1994)

  c.  Bureau rules cited in this Program Statement are contained in 28 CFR 513.30 through 68.

  d.  Other rules referenced in this Program Statement are contained in 5 CFR part 297 and 28 CFR parts 16 and 301.

  e.  United States Code sections cited in this Program Statement are contained in 5 U.S.C. 301, 552 and 552a; 13 U.S.C.; 18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082, 5006, 5024; 28 U.S.C. 509, 510; and 31 U.S.C. 3711(f).

  f.  Privacy Act Issuances, 1991 Comp., Volume II.

  g.  <u>United States Department of Justice et al. v. Julian et al.</u>, 108 S.Ct. 1606 (1988).

5.  **STANDARDS REFERENCED**

  a.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4020, 3-4095, and 3-4096

  b.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-1E-04, 1E-05

  c.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  2-CO-1E-06, 1E-07, and 1E-08

6.  **[<u>LIMITATIONS</u> § 513.31**

  **a.  <u>Social Security Numbers.</u>  As of September 27, 1975, Social Security Numbers may not be used in their entirety as a method of identification for any Bureau record system, unless such use is authorized by statute or by regulation adopted prior to January 1, 1975.**

  **b.  <u>Employee Records.</u>  Access and amendment of employee personnel records under the Privacy Act are governed by Office of Personnel Management regulations published in 5 CFR part 297 and by Department of Justice regulations published in 28 CFR part 16.]**

7.  [<u>GUIDELINES FOR DISCLOSURE</u> § 513.32]

   a.  [**The Bureau provides for the disclosure of agency
information pursuant to applicable laws, e.g. the Freedom of
Information Act (5 U.S.C. 552), and the Privacy Act
(5 U.S.C. 552a).**]

   b.  Pursuant to 28 CFR part 16, the authority to release or
deny access to records and information is limited to the Director
or his or her designee.

   c.  Bureau staff shall release a Bureau record in response to a
request made in accordance with this rule, unless a valid legal
exemption to disclosure is asserted.

   !   Bureau staff may assert any applicable exemption to
       disclosure which is provided under the FOIA in
       5 U.S.C. § 552(b) or under the Privacy Act in
       5 U.S.C. § 552a.

   !   For a listing of general FOIA Exemptions, see the
       **Exemptions to Disclosure Provided in the Freedom of
       Information Act (Attachment A).**

   !   For a listing of Bureau systems of records which the
       Attorney General has exempted from access and
       disclosure under the Privacy Act, see 28 CFR 16.97.

   Questions regarding the applicability of exemptions may be
referred to the appropriate Regional Counsel or to the Office of
General Counsel.

   d.  Examples of documents or information which ordinarily may
be withheld from disclosure include the examples which follow.
These examples are not intended to represent an all-inclusive
list of every situation when FOIA exemptions may apply, nor are
the FOIA exemptions cited for each example the only ones which
may apply to the examples provided.

   (1)  Documents or information which could reasonably be
expected to constitute an unwarranted invasion of personal
privacy, i.e. information that is not "public information."

   !   For the applicable FOIA exemptions, see Exemptions 6
       and 7 in Attachment A.

   !   Information concerning an individual inmate is not
       generally available to FOIA requesters unless the
       inmate whose records are being sought has given a
       written consent to the disclosure or unless the

information has been determined to constitute "public
information."  For guidance on what constitutes "public
information," see **Public Information (Attachment B)**.

! Requests by one inmate for public information
  concerning other inmates must be reviewed very
  carefully, as prison security concerns may outweigh the
  right to a FOIA disclosure.

! A denial of such public information to an inmate
  requester may be done only with the Regional Counsel's
  approval, after assessing the risks that disclosure
  might pose to the safety of the inmate(s) whose records
  are being sought and to other inmates and staff in the
  institution.  See Section 7.d.(2), below.  A high risk
  of gang-related prison violence is an example of a
  prison security concern which might justify the
  withholding of public information about one inmate to
  another inmate while in custody.

(2)  Documents or information which would reveal sources of
information obtained through a legitimate expectation of
confidentiality or which would otherwise endanger the life or
physical safety of any person.

! For the applicable FOIA exemptions, see Exemptions 6
  and 7 in Attachment A.

! An example is a statement of an inmate witness made in
  the context of a current or a completed disciplinary,
  criminal, or accident investigation.  This statement
  shall not be disclosed to another inmate if such
  disclosure would endanger the inmate witness.

(3)  Documents or information which could disrupt an
inmate's institutional program due to the diagnostic or
evaluative opinions contained in the document, and which would
likely provoke adjustment difficulties or aggravate existing
adjustment difficulties.

! For the applicable FOIA exemptions, see Exemptions 5
  and 6 in Attachment A.

(4)  Documents or information which would interfere with
ongoing law enforcement proceedings, including administrative
investigations.

! For the applicable FOIA exemptions, see Exemptions 5
  and 7 in Attachment A.

! While certain investigative information might be disclosed **after** an administrative investigation is completed, particular care must be exercised regarding disclosure during the course of the investigation. Even after the investigation is completed, personal safety and prison security concerns may outweigh the right to a FOIA disclosure.

! Only the institution staff member the Warden designates as the institution's Public Information Officer is authorized to make public statements regarding any investigation. For further guidance, see the Program Statement on Contacts with the News Media and the Public Information Officer's Handbook.

Questions regarding criminal prosecutions, such as the status of a case, shall be referred to the appropriate U.S. Attorney.

(5) Documents or information which, through disclosure of law enforcement techniques, information, or procedures, could reasonably be expected to enable the requester to violate a law, or to threaten the security of a Bureau institution or the safety of any person.

! For the applicable FOIA exemptions, see Exemptions 2 and 7 in Attachment A.

! Some Program Statements and Operations Memoranda, and other documents such as post orders, construction diagrams, etc., may be exempted because disclosing them would pose a threat to institutional security. This may also apply to information contained in investigations and other Bureau reports where law enforcement techniques are described.

8. **[PRODUCTION OF RECORDS IN COURT § 513.33. Bureau records are often sought by subpoena, court order, or other court demand, in connection with court proceedings. The Attorney General has directed that these records may not be produced in court without the approval of the Attorney General or his or her designee. The guidelines are set forth in 28 CFR part 16, subpart B.]**

Bureau staff who receive such demands shall consult with their Regional Counsel or the Office of General Counsel for advice regarding proper handling of the demand.

9. **[PROTECTION OF INDIVIDUAL PRIVACY - DISCLOSURE OF RECORDS TO THIRD PARTIES § 513.34.]** Bureau employees must carefully maintain and process all information concerning individuals to ensure that information is accurate, relevant, and timely, and to ensure that no inadvertent disclosure of information is made.

**[a. Information that concerns an individual and is contained in a system of records maintained by the Bureau shall not be disclosed to any person, or to another agency, except under the provisions of the Privacy Act, 5 U.S.C. 552a, or the Freedom of Information Act, 5 U.S.C. 552, and Departmental regulations.]**

Staff may disclose information from a Bureau system of records only if one or more of the following criteria apply:

(1)  With the written consent of the individual to whom the record pertains.  The Release of Information Consent form (BP-S192.013) may be used;

(2)  To employees of the DOJ who have a need for the record in the performance of their duties;

(3)  If disclosure is permitted under the FOIA, 5 U.S.C. § 552, e.g. "public information", when the public interest in disclosure of the information outweighs the privacy interest involved;

> ! For guidance on what constitutes "public information," see Attachment B.

(4)  For a **routine use** described in the DOJ "Notice of Record System" for the system of records which contains the information, as published in the Federal Register.

> ! For a list of the Bureau's systems of records that have been published in the Federal Register, see the **Bureau Systems of Records (Attachment C),** as updated in BOPDOCS.

> ! The published notices for these systems describe the records contained in each system and the routine uses for disclosing these records without obtaining the consent of the person to whom the records pertain.  For copies of the published systems notices, see BOPDOCS and/or contact the FOIA/PA section of the Office of General Counsel.

A **list of routine uses** for records contained in the Inmate Central File is also contained in the Program Statement concerning Central File, Privacy Folder, and Parole Mini-Files.

Routine uses for Bureau systems of records may include the following:

(a)  To Federal, state, local and foreign law enforcement officials for law enforcement purposes such as investigations, possible criminal prosecutions, civil court actions, or administrative and regulatory proceedings.

**Law Enforcement requests for telephone monitoring information:**

! For telephone monitoring information concerning inmate telephone calls, ordinarily only transactional data (e.g. date, time, duration of the call) may be disclosed to Federal and state authorities for use in criminal investigations or prosecutions, upon a written request via BP-A0655, Request for Inmate Transactional Data.

! Access to inmate telephone conversations that were previously recorded, or copies of the recorded telephone conversations (even when those conversations are yet to be recorded as long as the monitoring and recording is in the ordinary course of BOP duties), or written transcripts, shall only be disclosed to a requesting law enforcement authority when:

(1) requested in an emergency situation;

(2) criminal activity is discovered as part of the routine monitoring for prison administration purposes; or

(3) requested through proper process (e.g., written endorsement by a U.S. Attorney or DOJ Criminal Section Chief, in connection with a criminal investigation, grand jury subpoena, or administrative subpoena).

**Note:** U.S. Attorney authorization may only be delegated to an Acting U.S. Attorney when the U.S. Attorney is out of the jurisdiction or otherwise incapacitated. Authorization cannot be delegated to a First Assistant U.S. Attorney or Criminal Chief, or any other position within the U.S. Attorney's Office.

! All requests by law enforcement agencies for access to recordings of inmate telephone conversations shall be referred to Regional Counsel.

(b) To the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of Title 13, United States Code;

(c) To a recipient who has provided the Bureau with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

(d) To the National Archives and Records Administration (NARA) as a record which has sufficient historical or other value to warrant its continued preservation by the U.S. Government, or for evaluation by the Administrator of the General Services Administration or his or her designee to determine whether the

PS 1351.05
9/19/2002
Page 9

record has such value;

      (e)  To either House of the U.S. Congress, or, to the
extent of a matter within its jurisdiction, any Congressional
committee or subcommittee, any joint committee of Congress or
subcommittee of any such joint committee;

**Congressional requests on behalf of constituents for information about inmates:**

> ! Responses to individual members of Congress requesting information on behalf of a constituent are limited to public information unless staff have first obtained the inmate's express or implied consent to provide a fuller response.

> ! Written consent from the inmate shall be obtained when practical, using the form BP-S192.013.  When this is not practical, staff should consider whether there is implied consent by the inmate.  An example of implied consent is a Congressional inquiry which resulted from a letter the inmate sent to the member of Congress and this letter is included with the request from the member of Congress.

> ! Implied consent may not be inferred when a third party (for example, the inmate's spouse or parents) initiated the Congressional request for information.  In such a situation, only public information (see Attachment B) may be released to the member of Congress without the inmate's written consent.

Questions regarding appropriate responses to Congressional inquiries shall be directed to the appropriate Regional Counsel or to staff in the FOIA/PA Section of the Office of General Counsel.

(f)  Pursuant to an order of a court of competent jurisdiction;

(g)  To a requester from appropriate state offices (e.g., state department of corrections, parole board, attorney general) seeking access to records concerning state inmates in Bureau custody.

> ! Although state inmates are confined in Bureau institutions, they remain state prisoners.  A state inmate may receive periodic visits from state correctional and parole officials to review and evaluate his or her status, parole eligibility, and release readiness.  To accomplish those purposes, state officials require access to the files of state inmates.

! Wardens shall ensure that officials of such state offices, who need to review the records, are provided, upon request, access to the complete record of a state inmate in a Bureau institution.

(5) **Records Concerning Former Youth Corrections Act (YCA) Inmates.** Information on former YCA inmates, including the fact that the person has been confined, shall not be released without Regional Counsel review to determine whether the conviction has been expunged and whether disclosure is appropriate.

**[b. Lists of Bureau inmates shall not be disclosed.]**

Any request for such lists shall be forwarded to the Office of General Counsel, Central Office.

c.  A list of Bureau employees may be generally releasable. Questions shall be directed to the appropriate Regional Counsel or to the FOIA/PA Section of the Office of General Counsel.

10.  **[<u>ACCOUNTING/NONACCOUNTING OF DISCLOSURES TO THIRD PARTIES</u> § 513.35.  Accounting/nonaccounting of disclosures to third parties shall be made in accordance with Department of Justice regulations contained in 28 CFR 16.52.]**

Except for disclosures of information to other DOJ employees, and all components thereof, and except for disclosures required under the FOIA (e.g., public information, as listed on Attachment B), an accounting of disclosures to third parties of any information concerning an individual contained in a Bureau system of records will be made in accordance with the following guidelines:

a.  **Oral Disclosure**

(1)  Staff may orally release only public information.  When public information is thus disclosed, no accounting is necessary.

! Only in an emergency shall staff orally release non-public information to parties other than DOJ employees.

! Before such an emergency oral disclosure is made, staff shall contact Regional Counsel or the FOIA/PA Administrator.  If this is not possible, staff shall inform the Regional Counsel, or the FOIA/PA Administrator at the Central Office as soon as practicable after the disclosure.

(2)  Upon oral disclosure of non-public information, a memorandum shall be prepared and retained in the file from which the record is disclosed, or an appropriate notation shall be maintained in the file, attached to the record disclosed.

This memorandum or notation shall include the following information:

- ! the date of the disclosure,
- ! the name and address of the person to whom the record was disclosed and the name of the agency that person represents, if any,
- ! the purpose of the request for disclosure; and
- ! identification of the specific record disclosed.

For a form designed to assist staff receiving an oral request for information, see the Record Of Information Release form (BP-S171.013).

b. **Written Disclosures.** Accounting for a written disclosure may be made by:

(1) Retaining a copy of the correspondence requesting the information and a copy of the response in the file from which the records are disclosed;

(2) Following the procedure for an accounting of an oral disclosure, as described in Section 10.a., above; or

(3) Developing another method if the method provides, at a minimum, the following information:

- ! the date of the disclosure;
- ! the name and address of the person to whom the record was disclosed and the agency that person represents, if any;
- ! the purpose of the request for disclosure; and
- ! a general description of the specific record disclosed.

c. **Disclosure Record Maintenance.** It is the responsibility of the staff member making a disclosure of non-public information to provide an accurate accounting of that disclosure.

- ! Accounting records of the disclosure of non-public information shall be maintained for five years or until the record is destroyed, whichever is longer, and will be placed in the privacy folder.

- ! When records are transferred to the NARA for storage, the disclosure accounting pertaining to those records, other than correspondence, shall be transferred with the records themselves.

- ! An exemption under 5 U.S.C. § 552a(j) **does not** relieve the Bureau from the responsibility to account for all disclosures other than those within the DOJ or under the FOIA.

11. **[GOVERNMENT CONTRACTORS** § 513.36

   **a.  No Bureau component may contract for the operation of a record system by or on behalf of the Bureau without the express written approval of the Director or the Director's designee.**

   **b.  Any contract which is approved shall contain the standard contract requirements promulgated by the General Services Administration (GSA) to ensure compliance with the requirements imposed by the Privacy Act.  The contracting component shall have the responsibility to ensure that the contractor complies with the contract requirements relating to privacy.**

       PART TWO: **[INMATE REQUESTS TO INSTITUTION FOR INFORMATION]**

12.  **[INMATE ACCESS TO INMATE CENTRAL FILE** § 513.40.  **Inmates are encouraged to use the simple access procedures described in this section to review disclosable records maintained in his or her Inmate Central File, rather than the FOIA procedures described in §§ 513.60 through 513.68 of this subpart.  Disclosable records in the Inmate Central File include, but are not limited to, documents relating to the inmate's sentence, detainer, participation in Bureau programs such as the Inmate Financial Responsibility Program, classification data, parole information, mail, visits, property, conduct, work, release processing, and general correspondence.  This information is available without filing a FOIA request.  If any information]** (in the disclosable section) **[is withheld from the inmate, staff will provide the inmate with a general description of that information and also will notify the inmate that he or she may file a FOIA request.**

   **a.   Inmate Review of His or Her Inmate Central File.  An inmate may at any time request to review all disclosable portions of his or her Inmate Central File by submitting a request to a staff member designated by the Warden.  Staff are to acknowledge the request and schedule the inmate, as promptly as is practical, for a review of the file at a time which will not disrupt institution operations.]**

   Further guidance is contained in the Program Statement on Central File, Privacy Folder, and Parole Mini-Files.

   When an inmate makes a request to institution staff to review his or her Inmate Central File, he or she shall be advised to make arrangements pursuant to local procedures.

   > **!**   Because local processing reduces unnecessary FOIA requests, staff shall advise an inmate to make a request for Inmate Central File records to the FOIA/PA Section of the Office of General Counsel **only** when the inmate wishes to review exempt information.

    ! Staff shall not discuss with the inmate the types or nature of nondisclosable documents maintained in his or her Privacy Folder.

Before any document in the Inmate Central File is disclosed to the inmate to whom the documents pertain, or to a third party with the prior written consent of the inmate, the following review shall take place:

(1) **Bureau Documents**. If the document is a Bureau document (generated by Bureau staff) and is not a court-ordered study, staff are to determine whether the document should be withheld from disclosure under Section 7 of this Program Statement and further guidance set forth below.

    ! Staff shall place in the inmate's Privacy Folder any document that is to be withheld from disclosure.

    ! Staff shall place all other documents in the disclosable portion of the Inmate Central File, which is all of the Inmate Central File except for the Privacy Folder.

Guidelines for some specific Bureau documents are provided below:

(a) **Progress Reports**. All Progress Reports prepared:

    ! After October 15, 1974, are subject to release and are to be placed in the disclosable section of the Inmate Central File.

    ! Between February 15 and October 15, 1974, are subject to release except for the recommendation section, which shall be reviewed for disclosure in accord with Section 7 of this Program Statement.

    ! Before February 15, 1974, shall be reviewed for disclosure in accord with Section 7 of this Program Statement.

(b) **Psychiatric Reports**

    ! A psychiatric report written at the request of the U.S. Parole Commission is subject to release and shall be placed in the disclosable section of the Inmate Central File. This report should be written in non-technical language so that it can be understood by non-professionals.

! Other psychiatric, psychological, or evaluative reports Bureau staff prepared may also be made available to the U.S. Parole Commission and shall be inserted in the Privacy Folder. A summary of the document must be placed in the Inmate Central File. The summary may be placed in the Progress Report prepared in connection with the inmate's parole hearing. The summary shall be sufficiently detailed to permit the inmate to respond, at the Parole Hearing, to the substance of the withheld information.

(c) **Medical Records.** See Section 14 of this Program Statement.

(d) **Discipline Records.** Discipline records, such as Unit Discipline Committee (UDC) and Discipline Hearing Officer (DHO) packets (including the UDC/DHO report, incident report, notice of hearing, list of inmate rights at UDC/DHO hearing, notice of placement in Administrative Detention, and investigative memoranda), shall be maintained together in the Privacy Folder only if a portion of an investigation or other discipline record contains non-disclosable materials. Copies of all releasable documents shall be placed together in the disclosable section of the Inmate Central File.

(2) **Non-Bureau Documents**

(a) **FBI/National Crime Information Center (NCIC) Information.** The NCIC prohibits the Bureau from disclosing NCIC identification records to an inmate.

Procedures for an inmate to request a copy of his or her FBI/NCIC identification record directly from the FBI are contained in 28 CFR 513.10 through 513.12.

(b) **Documents from Other Federal Agencies.** If a document originates in another Federal agency (including other components of the Department of Justice), it shall be placed in the Privacy Folder, except as provided in section 12, first paragraph (28 CFR 513.40).

When a request for records includes a document from another Federal agency, the document shall be referred to the originating Federal agency for a determination of its releasability (see Attachment D for a suggested format to request disclosure instructions from the originating agency). For documents originating from Federal courts or probation offices, see subsection (d) below.

(c) **Documents from Non-Federal Agencies.**  If a document has been received from a source outside the Federal government (e.g., a state agency), it shall be placed in the Privacy Folder, except as provided in section 12, first paragraph (28 CFR 513.40).

When a request for records includes a document from a non-Federal agency, Bureau staff must make a determination of its releasability in consultation with the non-Federal organization (see Attachment D).  If the originating non-Federal agency recommends non-disclosure, and Bureau staff determine that non-disclosure is appropriate under 28 CFR 513.32, staff shall document the rationale for non-disclosure and place the document in the Privacy Folder.

(d) **Documents from Federal Courts and Probation Offices**

(1) **Federal Presentence Reports (PSR) and Statements of Reasons (SOR) from Judgments in Criminal Cases.  For safety and security reasons, inmates are prohibited from obtaining or possessing photocopies of their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.).**  Inmates violating this provision are subject to disciplinary action.

This prohibition applies only to the SOR portion of an inmate's Judgment in a Criminal Case.  The rest of the Judgment document remains releasable unless circumstances or policy dictate otherwise.  PSRs and SORs received by mail will be treated as contraband, and handled according to the Mail Management Manual.

This prohibition does not apply to inmates in Bureau of Prisons custody with a need to review their PSRs prior to sentencing.  For example, a pretrial inmate scheduled for sentencing may possess and review the PSR in preparation for sentencing.  After sentencing, however, the inmate is prohibited from retaining a copy of the PSR.

The Bureau implemented this policy for the following reasons.

> #   Many PSRs and SORs contain information regarding the inmates' government assistance, financial resources, community affiliations, etc.

> #   The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.

>   #   Inmates who refuse to provide the documents
>       are threatened, assaulted, and/or seek
>       protective custody.  Likewise, inmates
>       providing PSRs and SORs containing harmful
>       information are faced with the same risks of
>       harm.

Inmates needing a copy of their PSRs or SORs for filing as an attachment in a court case may obtain, complete, and submit to the court an Inmate Request For Certification or Judicial Notice of Pre-sentence Report and/or Statement of Reasons form (BP-S757.013).  The form, which includes instructions for completion, must be available to inmates in the housing units and law libraries.

Although prohibited from obtaining or possessing photocopies, federal inmates are entitled under the FOIA to access their own PSRs (see United States Department of Justice v. Julian, 486 U.S. 1 (1988)) and SORs.  Inmates must be provided reasonable opportunities to access and review their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.).  Inmates are responsible for requesting an opportunity to access and review these records with unit staff in accordance with the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-Files. **To facilitate inmate access and review, PSRs and SORs should ordinarily be maintained in the disclosable portion of the central file unless significant safety and security concerns dictate otherwise.**

In addition to the above procedures, other provisions of the FOIA may require limiting inmate access to PSRs and SORs. Third party requests for inmate PSRs and SORs should be handled according to Section 29 of this Program Statement.

Staff must maintain PSRs as follows:

>   !   A PSR prepared **on or after December 1, 1975,**
>       is to be placed in the disclosable portion of
>       the Inmate Central File.

>   !   A PSR prepared **before December 1, 1975,** is to
>       be returned to the sentencing court with a
>       cover letter indicating that the PSR is being
>       returned based on the Supreme Court's
>       decision in Julian and the fact that the PSR
>       was not prepared with the expectation of
>       release.  No copy of the returned PSR is to
>       be maintained at the institution, although
>       relevant material from the PSR may be
>       incorporated into other documents.

! Documents which the sentencing court has sealed or otherwise labeled as not disclosable to the inmate must be placed in the privacy folder. Questions regarding such documents should be referred to the Regional Counsel.

(2) **Documents Other than Federal PSIs.** Generally, documents originating in a Federal court or probation office shall be placed in the Privacy Folder if the documents are clearly marked to indicate that disclosure to the inmate is unadvisable. Other documents, such as a court-ordered study the Bureau prepared, shall be referred to the requesting court for that court's instructions as to disclosure. A copy of the document shall be maintained in the Privacy Folder until a final determination is made regarding its disclosure.

When Bureau staff reclassify a document from non-disclosable to disclosable, subsequent to any information request encompassing that document, staff shall place the reclassified document in the disclosable section of the Inmate Central File.

**[b.  Procedures for Inmate Review of His or Her Inmate Central File.**

**(1)  Prior to the inmate's review of the file, staff are to remove the Privacy Folder which contains documents withheld from disclosure pursuant to § 513.32.**

**(2)  During the file review, the inmate is to be under direct and constant supervision by staff. The staff member monitoring the review shall enter the date of the inmate's file review on the Inmate Activity Record and initial the entry. Staff shall ask the inmate to initial the entry also, and if the inmate refuses to do so, shall enter a notation to that effect.**

**(3)  Staff shall advise the inmate if there are documents withheld from disclosure and, if so, shall advise the inmate of the inmate's right under the provisions of § 513.61 to make a FOIA request for the withheld documents.]**

28 CFR 513.32 refers to Section 7 of this Program Statement. 28 CFR 513.61 refers to Section 27 of this Program Statement. The Inmate Activity Record refers to form BP-381.

13.  **[INMATE ACCESS TO INMATE CENTRAL FILE IN CONNECTION WITH PAROLE HEARINGS § 513.41. A parole-eligible inmate (an inmate who is currently serving a sentence for an offense committed prior to November 1, 1987) may review disclosable portions of the Inmate Central File prior to the inmate's parole hearing, under the general procedures set forth in § 513.40. In addition, the following guidelines apply:]**

PS 1351.05
9/19/2002
Page 19

28 CFR 513.40 refers to Section 12 of this Program Statement.

[a.  A parole-eligible inmate may request to review his or her Inmate Central File by submitting the appropriate Parole Commission form.  This form ordinarily shall be available to each eligible inmate within five work days after a list of eligible inmates is prepared.

b.  Bureau staff ordinarily shall schedule an eligible inmate for a requested Inmate Central File review within seven work days of the request after the inmate has been scheduled for a parole hearing.  A reasonable extension of time is permitted for documents which have been provided (prior to the inmate's request) to originating agencies for clearance, or which are otherwise not available at the institution.

c.  A report received from another agency which is determined to be nondisclosable (see § 513.40 (b)) will be summarized by that agency, in accordance with Parole Commission regulations. Bureau staff shall place the summary in the appropriate disclosable section of the Inmate Central File.  The original report (or portion which is summarized in another document) will be placed in the portion of the Privacy File for Joint Use by the Bureau and the Parole Commission.

d.  Bureau documents which are determined to be nondisclosable to the inmate will be summarized for the inmate's review.  A copy of the summary will be placed in the disclosable section of the Inmate Central File.  The document from which the summary is taken will be placed in the Joint Use Section of the Privacy Folder.  Nondisclosable documents not summarized for the inmate's review are not available to the Parole Commission and are placed in a nondisclosable section of the Inmate Central File.

e.  When no response regarding disclosure has been received from an originating agency in time for inmate review prior to the parole hearing, Bureau staff are to inform the Parole Commission Hearing Examiner.]

14.  [INMATE ACCESS TO MEDICAL RECORDS § 513.42

a.  Except for the limitations of paragraphs (c) and (d) of this section, an inmate may review records from his or her medical file (including dental records) by submitting a request to a staff member designated by the Warden.]

Disclosable Bureau medical records include the following:

- !   Medical and Related Data Sheets (BP-8), although this form has been discontinued, older files may still contain such records),
- !   Report of Medical History (SF-93 or BP-360),

!    Report of Medical Examination (SF-88),
!    Doctor's Orders (SF-508), and
!    Medication Sheets (such as Medications and Treatments,
     PHS Form 2128, Supplement to SF-510).

   [b.  **Laboratory Reports which contain only scientific testing
results and which contain no staff evaluation or opinion (such as
Standard Form 514A, Urinalysis) are ordinarily disclosable.  Lab
results of HIV testing may be reviewed by the inmate.  However,
an inmate may not retain a copy of his or her test results while
the inmate is confined in a Bureau facility or a Community
Corrections Center.  A copy of an inmate's HIV test results may
be forwarded to a third party outside the institution and chosen
by the inmate, provided that the inmate gives written
authorization for the disclosure.**

   c.  **Medical records containing subjective evaluations and
opinions of medical staff relating to the inmate's care and
treatment will be provided to the inmate only after the staff
review required by paragraph (d) of this section.  These records
include, but are not limited to, outpatient notes, consultation
reports, narrative summaries or reports by a specialist,
operative reports by the physician, summaries by specialists as
the result of laboratory analysis, or in-patient progress
reports.**

   d.  **Prior to release to the inmate, records described in
paragraph (c) of this section shall be reviewed by staff to
determine if the release of this information would present a harm
to either the inmate or other individuals.  Any records
determined not to present a harm will be released to the inmate
at the conclusion of the review by staff.  If any records are
determined by staff not to be releasable based upon the presence
of harm, the inmate will be so advised in writing and provided
the address of the agency component to which the inmate may
address a formal request for the withheld records.  An accounting
of any medical records will be maintained in the inmate's medical
file.]**

Release, review, and accounting of disclosures to inmates and
former inmates shall be in accordance with the procedures in the
Health Services Manual.

15.  **[INMATE ACCESS TO CERTAIN BUREAU PROGRAM STATEMENTS
§ 513.43.  Inmates are encouraged to use the simple local access
procedures described in this section to review certain Bureau
Program Statements, rather than the FOIA procedures described in
Sections 513.60 through 513.68 of this Subpart.**

**a.  For a current Bureau Program Statement containing rules
(regulations published in the Federal Register and codified in 28
CFR), local access is available through the institution law
library.**

**b.  For a current Bureau Program Statement not containing rules
(regulations published in the Federal Register and codified in 28
CFR), inmates may request that it be placed in the institution
law library.  Placement of a requested Program Statement in the
law library is within the discretion of the Warden, based upon
local institution conditions.**

**c.  Inmates are responsible for the costs of making personal
copies of any Program Statements maintained in the institution
law library.  For copies of Program Statements obtained under the
FOIA procedures described in Sections 513.60 through 513.68 of
this Subpart, fees will be calculated in accordance with 28 CFR
16.10.]**

28 CFR 513.60 through 513.68 refers to Sections 26 through 34 of
this Program Statement.

16.  **[FEES FOR COPIES OF INMATE CENTRAL FILE AND MEDICAL RECORDS
§ 513.44.  Within a reasonable time after a request, Bureau staff
are to provide an inmate personal copies of requested disclosable
documents maintained in the Inmate Central File and Medical
Record.  Fees for the copies are to be calculated in accordance
with 28 CFR § 16.10.]**

No fee shall be charged for the following:

  #  the first 100 pages of duplication (or its cost equivalent),
  #  the first two hours of search time (or its cost equivalent),
     or
  #  charges which total $8.00 or less.

The duplication cost is calculated by multiplying the number of
pages in excess of 100 by $0.10, the current rate set in
28 CFR 16.10.

The cost for search time is calculated by multiplying the number
of quarter hours in excess of two hours by the following rates
set in 28 CFR 16.10 for the staff conducting the search:

  #  $2.25 per quarter hour for clerical staff,
  #  $4.50 per quarter hour for professional staff, and
  #  $7.50 per quarter hour for managerial personnel.

Only fees in excess of $8.00 shall be assessed.  This means that
the total cost must be greater than $8.00, either for the cost of
the search (for time in excess of two hours), for the cost of

duplication (for pages in excess of 100 pages), or for both costs combined.

**Examples:**

**Example 1:**   If a request is made for information contained on 181 pages and clerical staff were able to locate the documents in less than two hours, the requester would be charged $8.10 ($0.10 per page x 81).

**Example 2:**   If it takes two hours and 30 minutes for clerical personnel to locate the same 181 pages, the requester would be charged a total of $12.60 (a duplication fee of $8.10 plus a $4.50 search fee for the two quarter hours of time in excess of two hours, at $2.25 per quarter hour).

Fees for searches shall only be assessed with the authorization of the Regional Counsel or the FOIA/PA Administrator in the Office of General Counsel.  Requesters shall pay fees by check or money order payable to the Treasury of the United States.  Fees shall be forwarded to the office assessing the fees.

PART THREE: **[PRIVACY ACT REQUESTS FOR INFORMATION]**

17.  **[PRIVACY ACT REQUESTS BY INMATES § 513.50.  Because inmate records are exempt from disclosure under the Privacy Act, (see 28 CFR 16.97) inmate requests for records under the Privacy Act will be processed in accordance with the FOIA.  See §§ 513.61 through 513.68.]**

28 CFR 513.61 through 513.68 refers to Sections 27 through 34 of this Program Statement.

18.  **PRIVACY ACT REQUESTS BY EMPLOYEES OR FORMER EMPLOYEES.**  An employee or former employee may make a written request for access to documents in his or her Personnel File and/or other documents concerning the requester which are not contained in the employee's personnel file but which are maintained in a Bureau system of records.  Such a request is processed pursuant to the applicable provisions of the Privacy Act, 5 U.S.C. § 552a, and the FOIA, 5 U.S.C. § 552.

#  A written request should be submitted to:

Director
Federal Bureau of Prisons
320 First Street NW
Washington DC  20534

# The requester shall clearly mark on the face of the letter and on the envelope **"PRIVACY ACT REQUEST,"** and shall clearly describe the record sought, including the approximate date covered by the record.

# An employee making such a request must provide identification data, as listed in 28 CFR 16.41, and may use a Certification of Identity Form (DOJ-361) or self-sworn declaration.

19. **PRIVACY ACT REQUESTS ON BEHALF OF AN EMPLOYEE OR FORMER EMPLOYEE.** A request for records concerning an employee or former employee made by an authorized representative of that employee or former employee may be made by writing to the address above. Such requests shall be processed pursuant to the provisions of the Privacy Act.

# The request must be clearly marked on the face of the letter and on the envelope **"PRIVACY ACT REQUEST,"** and must describe the record sought, including the approximate dates covered by the record.

# Verification of the identity of the individual whose records are sought is required. See methods of verification listed in 28 CFR 16.41.

20. **ACKNOWLEDGMENT OF PRIVACY ACT REQUESTS.** Requests for records under the Privacy Act received by the FOIA/PA Administrator, Office of General Counsel, shall be reviewed and may be forwarded to the appropriate Regional Office for handling.

# Requests for records located at a Bureau institution other than the Central Office or a Regional Office shall be referred to the appropriate staff at that institution for proper handling.

# The requester shall be notified of the status of his or her request by the office with final responsibility for processing the request.

# Every effort shall be made to respond to the requester within the time limit set under the governing disclosure statute.

21. **REVIEW OF DOCUMENTS FOR PRIVACY ACT REQUESTS.** If a document is deemed to contain information exempt from disclosure, any non-exempt sections of the record shall be provided to the requester after deletion of the exempt portions.

22. **LIMITATIONS ON EMPLOYEE RIGHT TO ACCESS UNDER THE PRIVACY ACT.**  Under Congressional authority granted to the Attorney General by 5 U.S.C. § 552a(j) and (k), certain systems of records listed at 28 CFR 16.97 and on Attachment C are exempt from access under the Privacy Act of 1974.

Bureau records are also subject to the FOIA exemptions from disclosure listed in 5 U.S.C. § 552(b).

23. **DENIAL OF ACCESS AND NOTICE OF APPEAL RIGHTS.**  If a Privacy Act request for records is denied in whole or in part, a denial letter shall be issued and signed by the Director, or his or her designee, and shall state the basis for denial under 28 CFR 513.32.

   #  A requestor who has been denied such access shall be advised that he or she may appeal that decision to the U.S. Department of Justice, Office of Information and Privacy, (OIP) by filing a written appeal within 30 days of the receipt of the denial.

   #  The appeal shall be marked on the face of the letter and the envelope, **"PRIVACY APPEAL - DENIAL OF ACCESS,"** and shall be addressed to the:

           Office of Information and Privacy
           U.S. Department of Justice
           Suite 570, Flag Building
           Washington DC  20530

During the appeal, Bureau staff shall assist OIP staff in the review of contested Bureau documents necessary to resolve the appeal and/or litigation.  This review may be coordinated by FOIA/PA staff in the Office of General Counsel or Regional Counsel.

24. **CORRECTION OF RECORDS**

   a.  **Inmate Requests for Correction**.  An inmate may submit a written request for correction of records through the Bureau's Administrative Remedy Program.

   b.  **Non-inmate Requests for Correction**.  A person other than an inmate may request correction of inaccurate, incomplete, or irrelevant information by writing to the Director of the Federal Bureau of Prisons.

       !   A request for correction must identify the particular record in question, state the correction sought, and set forth the justification for the correction.

! Both the request and the envelope must be clearly marked **"Privacy Act Correction Request."**

c. **Bureau Responses**

(1) **Requests to Correct Bureau Records**

(a) Bureau staff may make or deny requests for correction of Bureau records pursuant to procedures contained in 28 CFR 16.50. One basis for denial may be that the records are contained in a Bureau system of records that has been published in the Federal Register and exempted from the Privacy Act's provisions requiring amendment and correction. Refer to 28 CFR 16.97 for further information.

**Inmate Central File Records.** Unit staff shall take reasonable steps to ensure the accuracy of challenged information in the Inmate Central File, particularly when the challenged information can be verified.

! Reasonable steps include requiring specific action from the inmate, such as providing documents which support the challenge and/or the names of people to contact regarding the challenged information.

! Once Bureau staff make a determination that the challenged information is incorrect, appropriate notations on the record shall be made to ensure that staff do not use the discredited information to make decisions regarding the inmate.

! Special procedures have been developed when the challenged information involves a PSI Report. See the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-Files for further information.

(b) Any denial of a request for correction should contain a statement of the reason for denial and notice to the requester that the denial may be appealed to the U.S. Department of Justice, Office of Information and Privacy, by filing a written appeal within 30 days of the receipt of the denial.

The appeal shall be marked on the face of the letter and the envelope, **"PRIVACY APPEAL - DENIAL OF ACCESS,"** and shall be addressed to the OIP address cited in Section 23 above.

(2) **Requests to Correct Records Originated by Other Federal Agencies.** Requests for correction of records prepared by other Federal agencies shall be forwarded to that agency for appropriate action and the requester shall be immediately notified of the referral in writing.

(3) **Requests to Correct Records Originated by Non-Federal Source.** When the request is for correction of non-Federal records, the requester shall be advised to write to that non-Federal entity.

25.   **FEES FOR PRIVACY ACT REQUESTS.**  Fees for copies of records disclosed under the Privacy Act, including fees for an employee's own records, may be charged in accordance with 28 CFR 16.47.

PART FOUR: **[FREEDOM OF INFORMATION ACT REQUESTS FOR INFORMATION]**

26.   **[FREEDOM OF INFORMATION ACT REQUESTS § 513.60.  Requests for any Bureau record (including Program Statements and Operations Memoranda) ordinarily shall be processed pursuant to the Freedom of Information Act, 5 U.S.C. 552.  Such a request must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C.  20534.  The requester shall clearly mark on the face of the letter and the envelope "FREEDOM OF INFORMATION REQUEST," and shall clearly describe the records sought.  See §§ 513.61 through 513.63 for additional requirements.]**

28 CFR 513.61 through 63 refers to Sections 27 through 29 of this Program Statement.

27.   **[FREEDOM OF INFORMATION ACT REQUESTS BY INMATES § 513.61**

   **a.  Inmates are encouraged to use the simple access procedures described in § 513.40 to review disclosable records maintained in his or her Inmate Central File.]**

   28 CFR 513.40 refers to Section 12 of this Program Statement.

   Similarly, inmates are encouraged to use the simple access procedures described in Section 15 above to review certain Bureau Program Statements that may be available locally at the institution.

   **[b.  An inmate may make a request for access to documents in his or her Inmate Central File or Medical File (including documents which have been withheld from disclosure during the inmate's review of his or her Inmate Central File pursuant to § 513.40) and/or other documents concerning the inmate which are not contained in the Inmate Central File or Medical File.  Staff shall process such a request pursuant to the applicable provisions of the Freedom of Information Act, 5 U.S.C. 552.**

**c.  The inmate requester shall clearly mark on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and shall clearly describe the records sought, including the approximate dates covered by the record.  An inmate making such a request must provide his or her full name, current address, date and place of birth.  In addition, if the inmate requests documents to be sent to a third party, the inmate must provide with the request an example of his or her signature, which must be verified and dated within three (3) months of the date of the request.]**

A request for "my records," "all my records," or similar wording shall be interpreted as a request for a copy of Inmate Central File records **and** Medical File records currently maintained at the inmate's institution of confinement or, in the case of former inmates, in the last institution of confinement.

Inmates are encouraged to provide Federal register numbers to assist in properly identifying requested records.

**28.  [<u>FREEDOM OF INFORMATION ACT REQUESTS BY FORMER INMATES</u> § 513.62.  Former federal inmates may request copies of their Bureau records by writing to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C.  20534.  Such requests shall be processed pursuant to the provisions of the Freedom of Information Act.  The request must be clearly marked on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and must describe the record sought, including the approximate dates covered by the record.  A former inmate making such a request must provide his or her full name, current address, date and place of birth.  In addition, the requester must provide with the request an example of his or her signature, which must be either notarized or sworn under penalty of perjury, and dated within three (3) months of the date of the request.]**

Former inmates are encouraged to provide Federal register numbers to assist in properly identifying requested records.

**29. [<u>FREEDOM OF INFORMATION ACT REQUESTS ON BEHALF OF AN INMATE OR FORMER INMATE</u> § 513.63.  A request for records concerning an inmate or former inmate made by an authorized representative of that inmate or former inmate will be treated as in § 513.61, on receipt of the inmate's or former inmate's written authorization. This authorization must be dated within three (3) months of the date of the request letter.  Identification data, as listed in 28 CFR 16.41, must be provided.]**

Requesters are encouraged to provide Federal register numbers to assist in properly identifying requested records.

30. [ACKNOWLEDGMENT OF FREEDOM OF INFORMATION ACT REQUESTS § 513.64

a. All requests for records under the Freedom of Information Act received by the FOIA/PA Administrator, Office of General Counsel, will be reviewed and may be forwarded to the appropriate Regional Office for proper handling. Requests for records located at a Bureau facility other than the Central Office or Regional Office may be referred to the appropriate staff at that facility for proper handling.

b. The requester shall be notified of the status of his or her request by the office with final responsibility for processing the request.]

31. [REVIEW OF DOCUMENTS FOR FREEDOM OF INFORMATION ACT REQUESTS § 513.65. If a document is deemed to contain information exempt from disclosure, any reasonably segregable portion of the record shall be provided to the requester after deletion of the exempt portions. If documents, or portions of documents, in an Inmate Central File have been determined to be nondisclosable by institution staff but are later released by Regional or Central Office staff pursuant to a request under this section, appropriate instructions will be given to the institution to move those documents, or portions, from the Inmate Privacy Folder into the disclosable section of the Inmate Central File.]

32. [DENIALS AND APPEALS OF FREEDOM OF INFORMATION ACT REQUESTS § 513.66. If a request made pursuant to the Freedom of Information Act is denied in whole or in part, a denial letter must be issued and signed by the Director or his or her designee, and shall state the basis for denial under § 513.32. The requester who has been denied such access shall be advised that he or she may appeal that decision to the Office of Information and Privacy, U.S. Department of Justice, Suite 570, Flag Building, Washington, D.C. 20530. Both the envelope and the letter of appeal itself should be clearly marked: "Freedom of Information Act Appeal."]

28 CFR 513.32 refers to Section 7 of this Program Statement.

During the appeal and any subsequent litigation, Bureau staff shall assist DOJ staff, including OIP staff, in reviewing contested Bureau documents necessary to resolve the appeal and/or litigation.

33.   **[FEES FOR FREEDOM OF INFORMATION ACT REQUESTS § 513.67.
Fees for copies of records disclosed under the FOIA, including
fees for a requester's own records, may be charged in accordance
with Department of Justice regulations contained in 28 CFR
16.10.]**

See further description of fees in Section 16 above.

34.   **[TIME LIMITS FOR RESPONSES TO FREEDOM OF INFORMATION ACT
REQUESTS § 513.68.   Consistent with sound administrative practice
and the provisions of 28 CFR 16.1, the Bureau strives to comply
with the time limits set forth in the Freedom of Information
Act.]**

Staff processing requests for release of information under the
FOIA are expected to be familiar with the provisions of
28 CFR 16.1(d), as follows:

  #   A requester must be notified of the decision on his or her
      request within 10 days after its receipt (excluding
      Saturday, Sunday, and legal public holidays).   Conditions
      for extension of this time are discussed in 28 CFR 16.1(d).

  #   Generally, all FOIA requests shall be processed in the
      approximate order of receipt, unless the requester shows
      exceptional circumstances exist to justify an expedited
      response.   Examples of exceptional circumstances which might
      justify an expedited response include the following:

      !   a threat to life or safety,

      !   the loss of substantial due process rights, or

      !   in cases of widespread and exceptional interest to the
          media, **and** upon approval of DOJ's Office of Public
          Affairs, possible questions about the Government's
          integrity which affect public confidence.

Because a decision to take a FOIA request out of order delays
other requests, simple fairness demands that such a decision be
made only upon careful scrutiny of truly exceptional
circumstances.

      !   Regional Counsel shall follow DOJ guidelines as to
          whether to expedite a particular request because it
          fits into one of the **first two** exceptions described
          above.

! Requests which are being considered for expedited processing because of the **last exception** described above shall first be sent through the FOIA/PA Administrator to the General Counsel for obtaining DOJ approval.

35. **TRANSITION.** Inmates must remove any copies of PSRs and SORs as listed in Section 12.a.(2)(d)(1) they currently possess no later than 45 days after the effective date of this PS. Each inmate must inspect his or her personal property for photocopies of these documents and then dispose of them.

Inmates possessing these documents when this transition period expires will be subject to disciplinary action for possession of contraband.

Inmates may dispose of their PSRs and SORs by any of the following methods:

! Mailing the documents out of the institution to someone of the inmate's choosing;

! Destroying or discarding the PSRs or SORs themselves; or

! Delivering them to a staff member for destruction.


                                    /s/
                                    Kathleen Hawk Sawyer
                                    Director

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

### EXEMPTIONS TO DISCLOSURE PROVIDED IN
### THE FREEDOM OF INFORMATION ACT

1.  The Freedom of Information Act (5 U.S.C. § 552) provides
generally for the disclosure of agency records.  Section 552(b)
exempts from mandatory disclosure matters that are -

"(1) (A) specifically authorized under criteria established
by an Executive order to be kept secret in the interest of
national defense or foreign policy and (B) are in fact properly
classified pursuant to such Executive order;

(2)  related solely to the internal personnel rules and
practices of an agency;

(3)  specifically exempted from disclosure by statute (other
than section 552b of this title), provided that such statute (A)
requires that the matters be withheld from the public in such a
manner as to leave no discretion on the issue, or (B) establishes
particular criteria for withholding or refers to particular types
of matters to be withheld;

(4)  trade secrets and commercial or financial information
obtained from a person and privileged or confidential;

(5)  inter-agency or intra-agency memorandums or letters
which would not be available by law to a party other than an
agency in litigation with the agency;

(6)  personnel and medical files and similar files the
disclosure of which would constitute a clearly unwarranted
invasion of personal privacy;

(7)  records or information compiled for law enforcement
purposes, but only to the extent that the production of such law
enforcement records or information

(A) could reasonably be expected to interfere with
enforcement proceedings,

(B) would deprive a person of a right to a fair trial
or an impartial adjudication,

(C) could reasonably be expected to constitute an
unwarranted invasion of personal privacy,

(D) could reasonably be expected to disclose the
identity of a confidential source, including a State, local, or
foreign agency or authority or any private institution which

furnished information of a confidential basis, and, in the case
of a record or information compiled by a criminal law enforcement
authority in the course of a criminal investigation or by an
agency conducting a lawful national security intelligence
investigation, information furnished by a confidential source,

       (E) would disclose techniques and procedures for law
enforcement investigations or prosecutions, or would disclose
guidelines for law enforcement investigations or prosecutions if
such disclosure could reasonably be expected to risk
circumvention of the law, or

       (F) could reasonably be expected to endanger the life
or physical safety of any individual;

   (8)   contained in or related to examination, operating, or
condition reports prepared by, on behalf of, or for the use of an
agency responsible for the regulation or supervision of financial
institutions; or

   (9)   geological and geophysical information and data,
including maps, concerning wells.

2.  Any reasonably segregable portion of a record shall be
provided to any person requesting such record after deletion of
the portions which are exempt under this subsection."

3.  Under 5 U.S.C. § 551, Federal "agency records" are defined
**not** to include records of

   (1)   the Congress;

   (2)   the courts of the United States;

   (3)   the governments of the territories or possessions of
       the United States; or

   (4)   the government of the District of Columbia.

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## PUBLIC INFORMATION

**STAFF:**

        Name
        Position Title (past and present)
        Grade (past and present)
        Salary (past and present)
        Duty Station (past and present)
        Duty Station Address (past and present)

**INMATES:**

See list provided in the Program Statement on News Media Contacts
and the Public Information Officer's Handbook  (PIO Handbook).

**PUBLISHED SYSTEMS OF RECORDS**

| #: | NAME: | PUBLICATION DATE: |
|----|-------|-------------------|
| 001 | Custodial/Security Record System | 09/28/78 |
| 002 | FOIA Record System | 09/17/77 |
| 003 | Industrial Inmate Employment Record System | 09/28/78 |
| 004 | Inmate Administrative Remedy Record System | 09/28/78 |
| 005 | Inmate Central Records System | 06/07/84 |
| 006 | Inmate Commissary Accounts Record System | 09/17/77 |
| 007 | Inmate Physical/Mental Health Record System | 09/28/78 |
| 008 | Inmate Safety/Accident Compensation Record System | 09/28/78 |
| 009 | Federal Tort Claims Act Record System | 09/28/78 |
| 010 | Access Control Entry/Exit System | 10/04/95 |
| 011 | Telephone Activity Record System | 04/21/95 |
| 012 | Office of Internal Affairs Investigative Record System | 08/29/95 |
| 101 | NIC Technical Assistance Resource Persons Directory | 04/18/83 |
| 102 | NIC Field Readers List | 04/18/83 |

PS 1351.05
9/19/2002
Attachment D, Page 1

(Date)

Re: _____
Our Reg. No: _____
Docket No: _____

Dear _____,

Please advise us as to whether the attached document(s) prepared by your agency may be (1) disclosed to the above inmate and (2) used with respect to the inmate's parole hearing(s).

Disclosure of information contained in an inmate's prison files is governed by a variety of Federal laws, principally the Freedom of Information Act (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a).  Guidelines for the implementation of these laws are given below.

### GUIDELINES FOR DISCLOSURE TO A FEDERAL PRISON INMATE

Upon an inmate's request, materials in that inmate's files will be disclosed to that inmate unless there is a legal exemption to such disclosure.  Typical examples of documents which may be withheld are those which, if disclosed, might -

a. constitute a clearly unwarranted invasion of personal privacy;

b. reveal sources of information obtained upon a legitimate expectation of confidentiality or otherwise endanger the life or physical safety of any person;

c. lead to a serious disruption of the subject inmate's institutional program, due to the diagnostic or evaluative opinions contained in the document, and which could likely affect the inmate's clearly documented adjustment difficulties;

d. interfere with ongoing law enforcement proceedings, including administrative investigations; or

e. enable the requestor to violate any law or threaten the security of a Federal Bureau of Prisons institution through disclosure of law enforcement techniques or procedures.

## GUIDELINES FOR DISCLOSURE FOR USE AT THE INMATE'S PAROLE HEARING

A Federal prison inmate must be provided reasonable access to reports or documents to be used by the Parole Commission in making its parole release determination.  The Commission, of course, wants to use all the information in the documents you prepare.  If you determine that some information may not be disclosed, in accordance with the guidelines listed above, you must prepare a summary of excluded information if it is to be used by the Parole Commission.  This summary, as well as the disclosable portions of the document, will then be available to the inmate, **and the Commission thereby be permitted to review the entire document.**  The summary need only be phrased in general terms to enable the inmate to respond to the essential allegations made in excluded material.  It should not reveal specific information which might compromise a legitimate need for confidentiality.

## OPTIONS FOR DISCLOSURE OF INFORMATION

There are three options which exist under Federal law with respect to disclosure to the inmate and to the U.S. Parole Commission of the information prepared by your agency.

**Option 1** - You may authorize complete disclosure of the document.  The document is available for inmate review and copying.  Court disclosure instructions, if any, will be followed.

**Option 2** - You may recommend exclusion of a portion or all of the document from disclosure.  Please identify the part(s) of the document you consider exempt form disclosure and prepare an adequate summary of the excluded material.  The Federal Bureau of Prisons will review the reasons given in accordance with the guidelines listed in this letter.  If at least one of the guidelines is met, both the summary and the disclosable portion of the document, if any, will be available to the inmate.  If the Federal Bureau of Prisons determines the document to be entirely disclosable, the document will be returned to you, and no copy will be retained by the Federal Bureau of Prisons or for release to the U.S. Parole Commission or to the inmate.

**Option 3** - You may refuse to authorize disclosure of the document, or a summary in any form to the inmate.  If this option is selected, please provide a memorandum detailing reasons for non-disclosure.  The Federal Bureau of Prisons will review the reasons given in accordance with Bureau policy and the guidelines listed in this letter.  If at least one of the guidelines is met, the document will be placed in the Inmate Privacy Folder and will not be available for release either to the inmate or to the U.S.

Parole Commission.  If the Federal Bureau of Prisons considers
the document disclosable, the document will be returned to you,
and no copy will be retained for use by the Federal Bureau of
Prisons.  Please consider carefully before choosing this option.

We appreciate your review of the attached documents with respect
to their disclosure.  We have enclosed a form for your response.
Thank you for you cooperation.

                              Sincerely,



                              Warden


Attachments

PS 1351.05
9/19/2002
Attachment D, Page 4

(Date)
To:   Warden:_____
         Institution:_____

FROM: (Authorized Agency Representative)
         (Agency)

SUBJECT: Disclosure of Information to Federal Inmate and to
         U.S. Parole Commission

This replies to your (date) letter in which you forward to us,
and ask that we review, certain document(s) prepared by our
agency to determine whether the document(s) may be disclosed to
the Federal inmate involved and the U.S. Parole Commission.

**Document(s):**

The following action may be taken with respect to these
documents:

____ 1. Complete disclosure of the document(s) is (are)
authorized.

         The document may be made available for inmate review and
         copying.

____ 2. The following portion(s) of the document(s) is (are) to be
         excluded on the basis that if disclosed, it might -

              ____ constitute a clearly unwarranted invasion of
                     personal privacy;

              ____ reveal sources of information obtained under a
                     legitimate expectation of confidentiality or
                     otherwise endanger the life or physical safety of
                     any person;

              ____ lead to a serious disruption of the subject
                     inmate's institutional program, due to the
                     diagnostic or evaluative opinions contained in the
                     document, and which it could likely affect the
                     inmate's clearly documented adjustment
                     difficulties;

              ____ interfere with ongoing law enforcement
                     proceedings, including administrative
                     investigations; or

_____ enable the requester to violate any law or
threaten the security of a Federal Bureau of
Prisons institution through disclosure of law
enforcement techniques or procedures.

_____ Other: _(specify)_____
A summary of the excluded material is attached.

_____ 3. Neither the document nor a summary of the document is to
be disclosed in any form to the inmate.

# EXHIBIT 3

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

CLOSED

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:14-cr-00277-DLI-1

| | |
|---|---|
| Case title: USA v. Ahmed | Date Filed: 05/12/2014 |
| Magistrate judge case number: 1:14-mj-00274-RML | Date Terminated: 02/14/2018 |

Assigned to: Judge Dora Lizette Irizarry

### Defendant (1)

**Syed Imran Ahmed**
*TERMINATED: 02/14/2018*

represented by   **Catherine Sara Grealis**
Wilson Sonsini Goodrich & Rosati
1301 Avenue Of The Americas
40th Floor
New York, NY 10019
(212)497-7737
Fax: (212)999-5899
Email: cgrealis@wsgr.com
*TERMINATED: 05/14/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Bono*

**Donna R. Newman**
Law Office of Donna R. Newman
20 Vesey Street
Suite 400
New York, NY 10007
212-229-1516
Fax: 212-593-1844
Email: donnanewmanlaw@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Greg D Andres**
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
*TERMINATED: 07/27/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Bono*

**Martine M. Beamon**

Davis Polk Wardwell LLP
450 Lexington Avenue
New York, NY 10017
212-450-4262
Fax: 212-701-5262
Email: martine.beamon@davispolk.com
*TERMINATED: 05/14/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Monica Ann Friedman**
Wilson Sonsini Goodrich & Rosati
1301 Avenue Of The Americas
New York
New York, NY 10019
212-497-7716
Fax: 212-999-5899
*TERMINATED: 05/14/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Bono*

**Morris J. Fodeman**
Wilson Sonsini Goodrich & Rosati PC
1301 Avenue of the Americas
40th floor
New York, NY 10019
212-497-7704
Fax: 212-999-5899
Email: mfodeman@wsgr.com
*TERMINATED: 05/14/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Douglas M. Nadjari**
Ruskin Mouscou Faltischek, PC
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556
516-663-6600
Fax: 516-663-6736
Email: dnadjari@rmfpc.com
*TERMINATED: 05/28/2014*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Sarah Breslow**
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
212-450-3259
Fax: 212-450-5536

Email: sarah.breslow@davispolk.com
*TERMINATED: 05/14/2020*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Bono*

**Pending Counts**

HEALTH CARE FRAUD
(1)

FALSE STATEMENTS RELATING TO
HEALTH CARE MATTERS
(2)

**Disposition**

COUNT 1: 96 months in custody;
COUNT(S) 2, 3 and 4: 60 months in
custody to run concurrently to each another
and the term imposed on count 1.
COUNT(S) 5 and 6: 60 months in custody
per each count, to run concurrently to one
other and consecutively to the terms
imposed on counts 1 through 4. C
SUPERVISED RELEASE: 3 years on each
count 1-6 (to run concurrently) with Special
Conditions Of Supervision. TOTAL
SPECIAL ASSESSMENT: $100 per count,
for a TOTAL of $600. RESTITUTION:
$7,266,008.95, due immediately and
payable at the rate of $25 per quarter while
in custody and 10% of gross income per
month while on supervised release. Interest
is not waived. FINE: $20,000, due
immediately and payable at the rate of $25
per quarter while in custody and 10% of
gross income per month while on
supervised release; interest is waived as to
the fine.

COUNT 1: 96 months in custody;
COUNT(S) 2, 3 and 4: 60 months in
custody to run concurrently to each another
and the term imposed on count 1.
COUNT(S) 5 and 6: 60 months in custody
per each count, to run concurrently to one
other and consecutively to the terms
imposed on counts 1 through 4. C
SUPERVISED RELEASE: 3 years on each
count 1-6 (to run concurrently) with Special
Conditions Of Supervision. TOTAL
SPECIAL ASSESSMENT: $100 per count,
for a TOTAL of $600. RESTITUTION:
$7,266,008.95, due immediately and
payable at the rate of $25 per quarter while
in custody and 10% of gross income per
month while on supervised release. Interest
is not waived. FINE: $20,000, due
immediately and payable at the rate of $25
per quarter while in custody and 10% of
gross income per month while on
supervised release; interest is waived as to
the fine.

| | |
|---|---|
| FALSE STATEMENTS RELATING TO HEALTH CARE MATTERS (3-4) | COUNT 1: 96 months in custody; COUNT(S) 2, 3 and 4: 60 months in custody to run concurrently to each another and the term imposed on count 1. COUNT(S) 5 and 6: 60 months in custody per each count, to run concurrently to one other and consecutively to the terms imposed on counts 1 through 4. C SUPERVISED RELEASE: 3 years on each count 1-6 (to run concurrently) with Special Conditions Of Supervision. TOTAL SPECIAL ASSESSMENT: $100 per count, for a TOTAL of $600. RESTITUTION: $7,266,008.95, due immediately and payable at the rate of $25 per quarter while in custody and 10% of gross income per month while on supervised release. Interest is not waived. FINE: $20,000, due immediately and payable at the rate of $25 per quarter while in custody and 10% of gross income per month while on supervised release; interest is waived as to the fine. |
| ENGAGING IN MONETARY TRANSACTIONS (5-6) | COUNT 1: 96 months in custody; COUNT(S) 2, 3 and 4: 60 months in custody to run concurrently to each another and the term imposed on count 1. COUNT(S) 5 and 6: 60 months in custody per each count, to run concurrently to one other and consecutively to the terms imposed on counts 1 through 4. C SUPERVISED RELEASE: 3 years on each count 1-6 (to run concurrently) with Special Conditions Of Supervision. TOTAL SPECIAL ASSESSMENT: $100 per count, for a TOTAL of $600. RESTITUTION: $7,266,008.95, due immediately and payable at the rate of $25 per quarter while in custody and 10% of gross income per month while on supervised release. Interest is not waived. FINE: $20,000, due immediately and payable at the rate of $25 per quarter while in custody and 10% of gross income per month while on supervised release; interest is waived as to the fine. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

## Highest Offense Level (Terminated)

None

| **Complaints** | **Disposition** |
|---|---|
| 18:1347.F | |

---

## Plaintiff

**USA**                                    represented by   **F. Turner Buford**
U.S. Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6483
Email: turner.buford@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Debra Jaroslawicz**
US Department of Justice
271-a Cadman Plaza East
Brooklyn, NY 11201
(202)412-9770
Fax: (718)254-6321
Email: debra.jaroslawicz@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Erin Argo**
United States Attorneys Office
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6049
Fax: 718-254-7489
Email: erin.argo@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Frank Turner Buford**
U.S. Department of Justice
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6483
Fax: 718-254-6479
Email: turner.buford@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Karin K. Orenstein**
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6188

Fax: 718-254-6321
Email: karin.orenstein@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Patricia E Notopoulos**
United States Attorneys Office
Criminal Division
225 Cadman Plaza East
Brooklyn, NY 11201
(718) 254-6354
Fax: 718-254-6478
Email: patricia.notopoulos@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Tanya Yvette Hill**
United States Attorneys Office
Eastern District of New York
Criminal Division
271 Cadman Plaza East
Brooklyn, NY 11201-1820
718-254-6144
Fax: 718-254-7499
Email: Tanya.Hill@usdoj.gov
*ATTORNEY TO BE NOTICED*

**William Patrick Campos**
United States Attorney's Office, Eastern
District of Ne
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6104
Email: william.campos@usdoj.gov
*TERMINATED: 09/14/2015*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/24/2014 | 1 | SEALED COMPLAINT as to Syed Imran Ahmed (1). (DiLorenzo, Krista) [1:14-mj-00274-RML] (Entered: 03/25/2014) |
| 03/25/2014 | 6 | Order to Unseal Case as to Syed Imran Ahmed, The premises known and described as 1651 Grand Avenue, Baldwin, New York and all locked and closed cabinets found therein ("subject premises No. 1"), 1135 Eastern Parkway, Brooklyn, New York and all locked and closed cabinets found therein ("subject premises No. 2"). Ordered by Magistrate Judge Marilyn D. Go on 3/25/2014. (DiLorenzo, Krista) [1:14-mj-00274-RML] (Entered: 03/25/2014) |
| 03/25/2014 | 7 | NOTICE OF ATTORNEY APPEARANCE: Douglas M. Nadjari appearing for Syed Imran Ahmed. (DiLorenzo, Krista) [1:14-mj-00274-RML] (Entered: 03/26/2014) |
| 03/25/2014 | 8 | Minute Entry for proceedings held before Magistrate Judge Marilyn D. Go:Arraignment as to Syed Imran Ahmed (1) Count Complaint held on 3/25/2014. Attorney Appointment Hearing as to Syed Imran Ahmed held on 3/25/2014. Initial Appearance as to Syed Imran Ahmed held on 3/25/2014. AUSA Turner Buford present. Dft. present with retained counsel Doug Najari. Temporary order entered. Bail hearing set for 3/28/14 @ 11am. |

| | | Preliminary hearing waived. (Tape #5:06-5:12.) (DiLorenzo, Krista) [1:14-mj-00274-RML] (Entered: 03/26/2014) |
|---|---|---|
| 03/25/2014 | 9 | TEMPORARY COMMITMENT Issued as to Syed Imran Ahmed. Bail hearing set for 3/28/14 @ 11am. (DiLorenzo, Krista) [1:14-mj-00274-RML] (Entered: 03/26/2014) |
| 03/27/2014 | 10 | Letter *from Andrew T. Garbarino, Esq, to Hon. Robert M. Levy requesting that the matter, currently on the calendar for March 28, 2014 be adjourned until April 2, 2014 on consent of all parties* as to Syed Imran Ahmed (Nadjari, Douglas) [1:14-mj-00274-RML] (Entered: 03/27/2014) |
| 03/28/2014 | 11 | Arrest Warrant Returned Executed on 3/28/14 in case as to Syed Imran Ahmed. (DiLorenzo, Krista) [1:14-mj-00274-RML] (Entered: 03/28/2014) |
| 04/02/2014 | 14 | Minute Entry for proceedings held before Magistrate Judge James Orenstein:Docket Call as to Syed Imran Ahmed held on 4/2/2014 (Tape #11-07-11-24.) AUSA Turner Buford present. Defendant not present. Counsel Doug Nadjari present. Detention hearing held. Hearing adj to 4/4 at 11am. Temporary order of detention entered. (Yuen, Sui-May) [1:14-mj-00274-RML] (Entered: 04/03/2014) |
| 04/02/2014 | 15 | TEMPORARY COMMITMENT Issued as to Syed Imran Ahmed (Yuen, Sui-May) [1:14-mj-00274-RML] (Entered: 04/03/2014) |
| 04/03/2014 | 16 | NOTICE OF ATTORNEY APPEARANCE Erin Argo appearing for USA. (Argo, Erin) [1:14-mj-00274-RML] (Entered: 04/03/2014) |
| 04/04/2014 | 17 | Minute Entry for proceedings held before Magistrate Judge James Orenstein:Detention Hearing as to Syed Imran Ahmed held on 4/4/2014. AUSA Turner Burford present. Defendant present w/ counsel Doug Nadjari. Defense counsel presented a bail package w/ no sureties. Court denied application. Order of detention entered. (Tape #11;20-11;29.) (Yuen, Sui-May) [1:14-mj-00274-RML] (Entered: 04/04/2014) |
| 04/04/2014 | 18 | ORDER OF DETENTION as to Syed Imran Ahmed. Ordered by Magistrate Judge James Orenstein on 4/4/2014. (Yuen, Sui-May) [1:14-mj-00274-RML] (Entered: 04/04/2014) |
| 04/04/2014 | 19 | Letter *in Support of Pretrial Detention (originally submitted by email on March 25, 2014)* as to Syed Imran Ahmed (Buford, Frank) [1:14-mj-00274-RML] (Entered: 04/04/2014) |
| 04/17/2014 | 20 | Minute Entry for proceedings held before Magistrate Judge Roanne L. Mann:Docket Call as to Syed Imran Ahmed held on 4/17/2014. AUSA Turner Buford present. Dft. present with retained counsel Douglas Nadjari. Order of excludable delay entered. (Tape #11:37-11:43.) (DiLorenzo, Krista) [1:14-mj-00274-RML] (Entered: 04/17/2014) |
| 04/17/2014 | 21 | ORDER TO CONTINUE - Ends of Justice as to Syed Imran Ahmed Time excluded from 4/24/14 until 5/23/14. Ordered by Magistrate Judge Roanne L. Mann on 4/17/2014. (DiLorenzo, Krista) [1:14-mj-00274-RML] (Entered: 04/17/2014) |
| 05/12/2014 | 22 | INDICTMENT as to Syed Imran Ahmed (1) count(s) 1, 2-4, 5-6. (Attachments: # 1 Criminal Information Sheet). (Layne, Monique) (Entered: 05/12/2014) |
| 05/15/2014 | 23 | NOTICE OF ATTORNEY APPEARANCE William Patrick Campos appearing for USA. (Campos, William) (Entered: 05/15/2014) |
| 05/15/2014 | 24 | Letter MOTION for Extension of Time to Indict *for a Period of Two (2) Weeks* by Syed Imran Ahmed. (Nadjari, Douglas) (Entered: 05/15/2014) |
| 05/15/2014 | | ORDER DENYING 24 Motion for Extension of Time to Indictment as to Syed Imran Ahmed (1) -- Defendant's request for an adjournment of his arraignment so that he can determine if he has funds to retain counsel is DENIED. If defendant does not have sufficient funds to retain counsel, then counsel may be appointed at the arraignment by |

| | | |
|---|---|---|
| | | the magistrate judge at no cost to the defendant. If defendant needs additional time to retain counsel then the matter can be adjourned for that purpose *after* the arraignment. SO ORDERED by Judge Dora Lizette Irizarry on 5/15/2014. (Carosella, Christy) (Entered: 05/15/2014) |
| 05/16/2014 | 25 | NOTICE OF ATTORNEY APPEARANCE Erin Argo appearing for USA. (Argo, Erin) (Entered: 05/16/2014) |
| 05/16/2014 | 26 | Minute Entry for proceedings held before Magistrate Judge Joan M. Azrack:Arraignment as to Syed Imran Ahmed (1) Count 1,2-4,5-6 held on 5/16/2014. AUSA Turner Buford. D. Nadjari, Esq. ret. for deft. Plea entered by Syed Imran Ahmed: NOT GUILTY on ALL COUNTS of Indictment. Retained counsel made application to be relieved and CJA appointed counsel directed to make application on 5/28/14. Order of speedy trial entr'd; time excl. betw. 5/16-5/28/14. (Status Conference set 5/28/2014 at 12:00 PM in Courtroom 4 A South before Judge Dora Lizette Irizarry). (LOG #: 11:36-11:40) (Layne, Monique) (Entered: 05/16/2014) |
| 05/16/2014 | 27 | ORDER TO CONTINUE - Ends of Justice as to Syed Imran Ahmed- Time excluded from 5/16/2014 until 5/28/2014. Ordered by Magistrate Judge Joan M. Azrack on 5/16/2014. (Layne, Monique) (Entered: 05/16/2014) |
| 05/20/2014 | 28 | Letter MOTION to Withdraw as Attorney , *Appoint Counsel Pursuant to the Criminal Justice Act, and Adjourn All Proceedings for a Period of Two Weeks* by Douglas M. Nadjari. by Syed Imran Ahmed. (Nadjari, Douglas) (Entered: 05/20/2014) |
| 05/21/2014 | | ORDER DENYING WITHOUT PREJUDICE 28 Motion to Withdraw as Attorney. as to Syed Imran Ahmed (1) -- Defense counsel's request to be relieved due to non-payment of funds is denied, without prejudice. The court will not adjourn this matter for two weeks for the appointment of counsel. That request is denied as it would not take such an adjournment for CJA counsel to be appointed, if such appointment is necessary. As directed by the magistrate judge, defense counsel is hereby ORDERED to appear on May 28, 2014 PROMPTLY at NOON. The court will address defense counsel's motion to be relieved at that time and in the presence of his client as well as the government. Moreover, defendant must be prepared to fill out a financial affidavit certifying that he cannot afford counsel. Based on the letter submitted by the government on April 4, 2014 in support of detention [See Docket Entry #19], it appears that the defendant has engaged in conduct demonstrating that he is hiding assets. The court admonishes both counsel and the defendant that the court will take a dim view of any attempt to commit fraud on the court in connection with the appointment of counsel. SO ORDERED by Judge Dora Lizette Irizarry on 5/21/2014. (Irizarry, Dora) (Entered: 05/21/2014) |
| 05/28/2014 | 29 | CJA 23 Financial Affidavit by Syed Imran Ahmed (Carosella, Christy) (Entered: 05/29/2014) |
| 05/28/2014 | 30 | CJA 20 as to Syed Imran Ahmed: Appointment of Attorney Morris J. Fodeman for Syed Imran Ahmed. So Ordered by Judge Dora Lizette Irizarry on 5/28/2014. (Carosella, Christy) (Entered: 05/29/2014) |
| 05/28/2014 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on 5/28/2014. *Appearances: AUSAs F. Turner Buford and William Campos with intern Dylan Ruffi; defense attorney Douglas Nadjari for defendant (present/in custody); CJA attorney Morris Fodeman with Catherine Grealis*. Mr. Nadjari's request to be relieved and for appointment of CJA counsel addressed. Financial affidavit executed by the defendant and reviewed by the Court. CJA attorney Morris Fodeman appointed; Ms. Grealis to assist pro bono - additional details stated on the record. Government notes status of discovery; proposed protective order to be submitted to the Court; case deemed complex. Court recommends Mr. Fodeman contact Jerry Tritz |

| | | to discuss/prepare proposed CJA budget. Mr. Fodeman shall contact the courtroom deputy to schedule bond hearing. Further Status Conference set for June 27, 2014 at 2:30 PM in Courtroom 4 A South before Judge Dora Lizette Irizarry. Order of excludable delay entered on the record between May 28, 2014 and June 27, 2014. (Attorney Douglas M. Nadjari terminated in case as to Syed Imran Ahmed.) (Court Reporter Mary Agnes Drury.) (Carosella, Christy) (Entered: 05/29/2014) |
|---|---|---|
| 05/29/2014 | 31 | NOTICE OF ATTORNEY APPEARANCE: Morris J. Fodeman appearing for Syed Imran Ahmed (Fodeman, Morris) (Entered: 05/29/2014) |
| 05/29/2014 | 32 | NOTICE OF ATTORNEY APPEARANCE: Catherine Sara Grealis appearing for Syed Imran Ahmed (Grealis, Catherine) (Entered: 05/29/2014) |
| 05/29/2014 | 33 | Letter *re: Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 05/29/2014) |
| 06/09/2014 | 34 | MOTION for Protective Order by USA as to Syed Imran Ahmed. (Attachments: # 1 Proposed Order) (Buford, Frank) (Entered: 06/09/2014) |
| 06/16/2014 | 35 | Letter *re Emails Through Bureau of Prisons' TRULINCS System* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/16/2014) |
| 06/17/2014 | 36 | ORDER granting 34 Motion for Protective Order as to Syed Imran Ahmed (1). So Ordered by Judge Dora Lizette Irizarry on 6/10/2014. (Carosella, Christy) (Entered: 06/17/2014) |
| 06/17/2014 | | ORDER as to Syed Imran Ahmed re 35 Letter --- This matter will be addressed at the next conference scheduled for June 27, 2014 at 2:30 PM. Any reply by the defendant must be filed NO LATER THAN June 20, 2014. So Ordered by Judge Dora Lizette Irizarry on 6/17/2014. (Carosella, Christy) (Entered: 06/17/2014) |
| 06/17/2014 | 37 | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/17/2014) |
| 06/20/2014 | 38 | *Letter to The Honorable Dora L. Irizarry respectfully responding to the government's June 16 letter regarding emails sent between counsel and Dr. Ahmed through Bureau of Prison's email system (TRULINCS)* as to Syed Imran Ahmed (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Fodeman, Morris) (Entered: 06/20/2014) |
| 06/26/2014 | 39 | Letter *in Reply to June 20, 2014 Letter Regarding Email Communications Through TRULINCS System* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/26/2014) |
| 06/27/2014 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on 6/27/2014. *Appearances: AUSAs Turner Buford and Erin Argo; Morris Fodeman (CJA) and Catherine Grealis for defendant (not present/in custody)*. USMS advised chambers that defendant did not come to court due to illness. Mr. Fodeman and Ms. Grealis received emails from defendant this morning informing that he was sick. Government directed to inquire as to defendant's medical condition with MDC and report back to the Court by July 1, 2014. Court addresses TRULINCS issues raised in docket entries 35 , 38 , and 39 . Government precluded from viewing any attorney-client emails. Defense counsel shall provide email addresses of all individuals working on this case whose emails would be protected by atty-client privilege. Government details two significant discovery productions. Bulk of outstanding discovery relates to search warrant materials; details stated. Defense counsel to prepare case budget with Jerry Tritz for Court's approval in light of case complexity. Defense counsel raises possible tech. limitations for viewing discovery at facility; will alert Court if issues arise. Government raises poss. HIPAA concerns re potential email communications between defendant and defense experts/investigators; defense counsel will look into this. Further status conference set for August 15, 2014 at 11:00 AM in courtroom 4 A South. Order of |

| | | excludable delay entered on the record between June 27, 2014 and August 15, 2014. (Court Reporter Sherry Bryant.) (Carosella, Christy) (Entered: 06/27/2014) |
|---|---|---|
| 06/29/2014 | [43](#) | TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on March 25, 2014, before Judge Go. Court Transcriber: TypeWrite Word Processing Service, Telephone number 718-966-1401. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/21/2014. Redacted Transcript Deadline set for 7/30/2014. Release of Transcript Restriction set for 9/29/2014. (Rocco, Christine) (Entered: 06/30/2014) |
| 06/30/2014 | [40](#) | TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on April 2, 2014, before Judge Orenstein. Court Transcriber: TypeWrite Word Processing Service, Telephone number 718-966-1401. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/21/2014. Redacted Transcript Deadline set for 7/31/2014. Release of Transcript Restriction set for 9/29/2014. (Rocco, Christine) (Entered: 06/30/2014) |
| 06/30/2014 | [41](#) | TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on April 4, 2014, before Judge Orenstein. Court Transcriber: TypeWrite Word Processing Service, Telephone number 718-966-1401. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/21/2014. Redacted Transcript Deadline set for 7/31/2014. Release of Transcript Restriction set for 9/29/2014. (Rocco, Christine) (Entered: 06/30/2014) |
| 06/30/2014 | [42](#) | TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on April 17, 2014, before Judge Mann. Court Transcriber: TypeWrite Word Processing Service, Telephone number 718-966-1401. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/21/2014. Redacted Transcript Deadline set for 7/31/2014. Release of Transcript Restriction set for 9/29/2014. (Rocco, Christine) (Entered: 06/30/2014) |
| 06/30/2014 | [44](#) | TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on May 16, 2014, before Judge Azrack. Court Transcriber: TypeWrite Word Processing Service, Telephone number 718-966-1401. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/21/2014. Redacted Transcript Deadline set for 7/31/2014. Release of Transcript Restriction set for 9/29/2014. (Rocco, Christine) (Entered: 06/30/2014) |
| 06/30/2014 | [45](#) | Letter *to F. Turner Buford regarding email communications with Dr. Ahmed* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 06/30/2014) |
| 07/01/2014 | [46](#) | Letter *Report on Defendant's Medical Condition* as to Syed Imran Ahmed (Buford, Frank) (Entered: 07/01/2014) |
| 07/11/2014 | [47](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on June 27, 2014, before Judge Dora L. Irizarry. Court Reporter/Transcriber Sherry Bryant, Telephone number 718-613-2636. Email address: sbryant102@verizon.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/1/2014. Redacted Transcript Deadline set for 8/11/2014. Release of Transcript Restriction set for 10/9/2014. (Bryant, Sherry) (Entered: 07/11/2014) |

| | | |
|---|---|---|
| 07/12/2014 | 48 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on held on 5/28/14, before Judge Irizarry. Court Reporter/Transcriber Mary Agnes Drury. Email address: mad78910@yahoo.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/4/2014. Redacted Transcript Deadline set for 8/12/2014. Release of Transcript Restriction set for 10/10/2014. (Drury, Mary) (Entered: 07/12/2014) |
| 08/04/2014 | 49 | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 08/04/2014) |
| 08/08/2014 | 50 | Letter *to The Honorable Dora L. Irizarry respectfully requesting permission for non-attorney defense experts to visit detention facility* as to Syed Imran Ahmed (Attachments: # 1 Exhibit A) (Fodeman, Morris) (Entered: 08/08/2014) |
| 08/08/2014 | 51 | Letter *to F. Turner Buford re names and email addresses of defense experts* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 08/08/2014) |
| 08/08/2014 | 52 | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 08/08/2014) |
| 08/14/2014 | 53 | Letter *re Discovery* as to Syed Imran Ahmed (Attachments: # 1 Exhibit) (Buford, Frank) (Entered: 08/14/2014) |
| 08/15/2014 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on 8/15/2014. *Appearances: AUSAs F. Turner Buford, William Campos and Erin Argo; CJA attorney Morris Fodeman with Catherine Grealis for defendant (present/in custody).* Government updates status of discovery and notes steps taken to facilitate defense review, including preparation of inventory of electronic discovery. Further Status Conference set for October 24, 2014 at 2:30 PM in Courtroom 4 A South before Judge Dora Lizette Irizarry. Time excluded on consent and in the interest of justice - case previously designated complex - between Aug. 15, 2014 and Oct. 24, 2014. (Court Reporter Sherry Bryant.) (Carosella, Christy) (Entered: 08/15/2014) |
| 09/08/2014 | 54 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on August 15, 2014, before Judge Dora L. Irizarry. Court Reporter/Transcriber Sherry Bryant, Telephone number 718-613-2636. Email address: sbryant102@verizon.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/29/2014. Redacted Transcript Deadline set for 10/9/2014. Release of Transcript Restriction set for 12/8/2014. (Bryant, Sherry) (Entered: 09/08/2014) |
| 10/06/2014 | 57 | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 10/06/2014) |
| 10/24/2014 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on 10/24/2014. *Appearances: AUSA Turner Buford; CJA attorney Morris Fodeman with Catherine Grealis and investigator Joseph Croce for defendant (present/in custody).* Government provided laptop with discovery to MDC for defendant's review; Mr. Fodeman notes defendant has been given regular access to it. Government in process of scanning hard copy discovery; will be Bates stamped and disclosed to defense. Parties jointly request 60 day adjournment to allow defense time to review voluminous discovery. Further Status Conference set for January 9, 2015 at 2:30 PM in Courtroom 4 A South before Judge Dora Lizette Irizarry. Order of excludable delay entered on the record, on consent and in the interest of justice, between Oct. 24, 2014 and Jan. 9, 2015. (Court Reporter Nicole Canales.) (Carosella, Christy) (Entered: 10/24/2014) |
| 12/30/2014 | | SCHEDULING ORDER as to Syed Imran Ahmed ---- Due to unforeseen circumstances |

| | | |
|---|---|---|
| | | the Court must adjourn the status conference currently set for Jan. 9, 2015 to Jan. 27, 2015 at 2:00 PM in courtroom 4 A South. Time is excluded between Jan. 9 and Jan. 27, 2015 (case previously designated complex). So Ordered by Judge Dora Lizette Irizarry on 12/30/2014. (Carosella, Christy) (Entered: 12/30/2014) |
| 01/21/2015 | | ORDER TO CONTINUE - Ends of Justice as to Syed Imran Ahmed --- Due to a scheduling conflict the status conference previously scheduled for January 27, 2015 is ADJOURNED to February 5, 2015 at 2:30 PM in courtroom 4 A South. As this delay results from the Court's scheduling conflict, time is excluded in the interest of justice between January 27 and February 5, 2015. This case was also previously designated complex for speedy trial purposes. So Ordered by Judge Dora Lizette Irizarry on 1/21/2015. (Carosella, Christy) (Entered: 01/21/2015) |
| 02/03/2015 | 58 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 02/03/2015) |
| 02/05/2015 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on 2/5/2015. *Appearances: AUSA Will Campos; CJA attorney Morris Fodeman for defendant (present/in custody).* Parties have engaged in numerous plea discussions and expect resolution within a month. Status Conference (control date) set for March 11, 2015 at 11:00 AM in Courtroom 4 A South before Judge Dora Lizette Irizarry. Government shall advise courtroom deputy in advance if the next appearance will be for status conference or change of plea hearing. If the defendant will plead on March 11, the government must provide plea documents to chambers one day in advance no later than 3:00 PM. Order of excludable delay entered between Feb. 9 and March 11, 2015. (Court Reporter Charisse Kitt.) (Carosella, Christy) (Entered: 02/05/2015) |
| 02/25/2015 | 59 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 02/25/2015) |
| 03/09/2015 | 60 | Letter re Jointly Proposed Request for Adjournment as to Syed Imran Ahmed (Buford, Frank) (Entered: 03/09/2015) |
| 03/10/2015 | | ORDER TO CONTINUE - Ends of Justice as to Syed Imran Ahmed, electronically endorsed on 60 : The request is granted. The status conference is adjourned to April 8, 2015 at 10:00 AM in Courtroom 4 A South. Time is excluded on consent and in the interst of justice between March 11, 2015 and April 8, 2015. So Ordered by Judge Dora Lizette Irizarry on 3/10/2015. (Carosella, Christy) (Entered: 03/10/2015) |
| 03/17/2015 | 61 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 03/17/2015) |
| 04/08/2015 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on 4/8/2015. *Appearances: AUSA Turner Buford and Erin Argo; CJA attorney Morris Fodeman for the defendant (not present/in custody).* The government apologizes for oversight; did not submit 475 for defendant's production. Mr. Fodeman waives his client's appearance and does not object to proceeding with conference. The parties have engaged in plea negotiations and the government extended a written plea agreement to defense on Monday, April 6, 2015. Mr. Fodeman must review it with his client. Further Status Conference set for May 8, 2015 at 3:00 PM in Courtroom 4 A South before Judge Dora Lizette Irizarry. Order of excludable delay entered between April 8 and May 8, 2015. (Court Reporter Stacy Mace.) (Carosella, Christy) (Entered: 04/08/2015) |
| 05/08/2015 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on May 8, 2015. *Appearances: AUSAs Turner Buford and Will Campos; CJA attorney Morris Fodeman with Catherine Grealis for defendant (present/in custody).* Defense counsel has reviewed proposed plea agreement with his client and has continued negotiations with the government; requests additional time to |

| | | |
|---|---|---|
| | | continue discussions. Parties will request a motion and/or trial schedule if there is no disposition before/at the next court appearance. Further Status Conference set for June 16, 2015 at 12:00 noon in Courtroom 4 A South before Judge Dora Lizette Irizarry. (Court Reporter Sherry Bryant.) (Carosella, Christy) (Entered: 05/08/2015) |
| 06/02/2015 | 62 | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/02/2015) |
| 06/16/2015 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on 6/16/2015. *Appearances: AUSAs Turner Buford and Erin Argo; CJA attorney Morris Fodeman with Catherine Grealis for defendant (present/in custody).* Government has disclosed balance of discovery related to search warrant since last conference - in searchable format on flash drive; details stated. Parties have engaged in plea negotiations; defense counsel expects case to proceed to trial. Motion schedule set: Defendant's motions to be filed by July 31, 2015; Government's response to be filed by Sept. 14, 2015; defendant's reply to be filed by Sept. 28, 2015. Two hard courtesy copies of all motion filings must be provided to chambers promptly. Motion hearing/oral argument set for November 2, 2015 at 10:00 AM in courtroom 4 A South before Judge Irizarry. The Court will endeavor to advise counsel in advance if neither a hearing nor oral argument will be needed -- in that case, the Nov. 2 appearance will be for pretrial conference. Jury selection set for March 7, 2015 at 10:00 AM in courtroom 4 A South before Judge Irizarry. Trial will begin immediately after jury selected; based upon counsel's estimates, the Court sets aside 7-8 weeks for trial. Court does not sit on trial on Fridays. Parties advised of the Court's preference to address motions in limine before trial to the extent possible; schedule for motions in limine will be set at Nov. 2 appearance. Order of excludable delay entered; case previously designated complex. (Court Reporter Linda Marino.) (Carosella, Christy) (Entered: 06/16/2015) |
| 06/26/2015 | 63 | Letter *to F. Turner Buford from Morris J. Fodeman and Catherine Grealis requesting that the Government furnish any discovery materials not previously provided so that defendant Syed Imran Ahmed may adequately prepare for trial and we can make necessary pretrial motions on the schedule established by the Court* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 06/26/2015) |
| 06/26/2015 | 64 | Letter *to F. Turner Buford from Morris J. Fodeman and Catherine Grealis requesting information to assess whether any pretrial motions will be necessary in this case* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 06/26/2015) |
| 07/31/2015 | 67 | MOTION for Disclosure *NOTICE OF MOTION FOR EARLY DISCLOSURE OF RULE 404(B) EVIDENCE, BRADY MATERIAL, JENCKS ACT MATERIAL, AND THE GOVERNMENT'S EXHIBIT AND WITNESS LISTS* by Syed Imran Ahmed. (Attachments: # 1 Certificate of Service) (Fodeman, Morris) (Entered: 07/31/2015) |
| 07/31/2015 | 68 | MEMORANDUM in Support re 67 MOTION for Disclosure *NOTICE OF MOTION FOR EARLY DISCLOSURE OF RULE 404(B) EVIDENCE, BRADY MATERIAL, JENCKS ACT MATERIAL, AND THE GOVERNMENT'S EXHIBIT AND WITNESS LISTS* (Fodeman, Morris) (Entered: 07/31/2015) |
| 09/14/2015 | 69 | Letter *re Discovery* as to Syed Imran Ahmed (Attachments: # 1 Exhibit) (Buford, Frank) (Entered: 09/14/2015) |
| 09/14/2015 | 70 | NOTICE OF ATTORNEY APPEARANCE Patricia E Notopoulos appearing for USA. (Notopoulos, Patricia) (Entered: 09/14/2015) |
| 09/14/2015 | 71 | AFFIDAVIT in Opposition re 67 MOTION for Disclosure *NOTICE OF MOTION FOR EARLY DISCLOSURE OF RULE 404(B) EVIDENCE, BRADY MATERIAL, JENCKS* |

| | | |
|---|---|---|
| | | *ACT MATERIAL, AND THE GOVERNMENT'S EXHIBIT AND WITNESS LISTS* (Notopoulos, Patricia) (Entered: 09/14/2015) |
| 09/28/2015 | 72 | RESPONSE in Support re 67 MOTION for Disclosure *NOTICE OF MOTION FOR EARLY DISCLOSURE OF RULE 404(B) EVIDENCE, BRADY MATERIAL, JENCKS ACT MATERIAL, AND THE GOVERNMENT'S EXHIBIT AND WITNESS LISTS* (Fodeman, Morris) (Entered: 09/28/2015) |
| 10/07/2015 | 73 | Letter *to The Honorable Dora L. Irizarry respectfully requesting an adjournment of the hearing calendared for November 2, 2015* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 10/07/2015) |
| 10/08/2015 | | ORDER as to Syed Imran Ahmed re 73 Letter -- The request is granted. The hearing is adjourned to <u>November 12, 2015 at 10:00 AM</u> in Courtroom 4 A South. Time continues to be excluded due to motion practice. So Ordered by Judge Dora Lizette Irizarry on 10/8/2015. (Carosella, Christy) (Entered: 10/08/2015) |
| 11/03/2015 | | ORDER as to Syed Imran Ahmed -- The Court will require neither oral argument nor a hearing on November 12, 2015. The appearance will be for status conference. So Ordered by Judge Dora Lizette Irizarry on 11/3/2015. (Carosella, Christy) (Entered: 11/03/2015) |
| 11/12/2015 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Pretrial Conference as to Syed Imran Ahmed held on 11/12/2015. *Appearances: AUSA Turner Buford; CJA attorney Morris Fodeman with Catherine Grealis for Syed Ahmed (present/in custody).* Court addresses 67 Motion for Disclosure as to Syed Imran Ahmed (1) -- *Jenks* material to be provided by Feb. 8, 2016. Government's exhibit list to be provided by Feb. 8. Government witness list to be provided by Feb. 29. Same schedule shall apply to reciprocal discovery. Government's final witness and exhibit lists shall be provided to the Court with *Jenks* documents; Court requests witness list be organized in order of testimony. Government expert disclosures ordered by Dec. 14, 2015. Any additional expert disclosures by defendant due by Jan. 14. Trial to last approximately 4-5 weeks, including jury selection. 60-70 jurors will be summoned. Court will disclose its jury instructions by Jan. 29; government's submission due Feb. 12; defendant's submission due Feb. 26--procedures detailed on the record. Simultaneous schedule set for motions in limine: Motions by Jan. 15; responses by Jan. 29; supplemental defense motions, if any, by Feb. 15; response by Feb. 22. Further Pretrial Conference set for <u>February 26, 2016 at 10:00 AM</u> in Courtroom 4 A South before Judge Dora Lizette Irizarry. Case previously deemed complex for speedy trial purposes; order of excludable delay entered until March 7, 2016. (Court Reporter Mary Agnes Drury.) (Carosella, Christy) (Entered: 11/12/2015) |
| 11/13/2015 | 74 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on 11/12/2015, before Judge Irizarry. Court Reporter/Transcriber Mary Agnes Drury. Email address: mad78910@yahoo.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 12/4/2015. Redacted Transcript Deadline set for 12/14/2015. Release of Transcript Restriction set for 2/11/2016. (Drury, Mary) (Entered: 11/13/2015) |
| 11/16/2015 | 75 | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 11/16/2015) |
| 12/01/2015 | 76 | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 12/01/2015) |
| 12/10/2015 | 77 | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 12/10/2015) |
| 12/14/2015 | 78 | Letter *re Expert Notice* as to Syed Imran Ahmed (Buford, Frank) (Entered: 12/14/2015) |

| | | |
|---|---|---|
| 12/23/2015 | 79 | Letter *to The Honorable Dora L. Irizarry respectfully requesting adjournment of trial date and pretrial deadlines* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 12/23/2015) |
| 01/04/2016 | | ORDER as to Syed Imran Ahmed re 79 Letter -- The request is granted in its entirety. The proposed amended schedule is approved. Jury selection will commence on March 21, 2016 at 9:30 AM in courtroom 4 A South, and trial will begin immediately thereafter. So Ordered by Judge Dora Lizette Irizarry on 1/4/2016. (Carosella, Christy) (Entered: 01/04/2016) |
| 01/06/2016 | | SCHEDULING ORDER as to Syed Imran Ahmed -- A status conference will be held on January 29, 2016 at 11:00 AM in courtroom 4 A South to address the possible rescheduling of trial. So Ordered by Judge Dora Lizette Irizarry on 1/6/2016. (Carosella, Christy) (Entered: 01/06/2016) |
| 01/08/2016 | 80 | Letter *re Discovery* as to Syed Imran Ahmed (Attachments: # 1 Exhibit) (Buford, Frank) (Entered: 01/08/2016) |
| 01/19/2016 | 82 | Letter *to The Honorable Dora L. Irizarry respectfully requesting that the Court employ a jury selection questionnaire* as to Syed Imran Ahmed (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H) (Fodeman, Morris) (Entered: 01/19/2016) |
| 01/20/2016 | 83 | Letter *re: Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 01/20/2016) |
| 01/21/2016 | | ORDER as to Syed Imran Ahmed re 82 -- The parties should be prepared to discuss the defendant's letter requesting a jury questionnaire at the status conference scheduled for January 29, 2016. If the government intends to file a written response, it must do so by January 27, 2016. So Ordered by Judge Dora Lizette Irizarry on 1/21/2016. (Carosella, Christy) (Entered: 01/21/2016) |
| 01/21/2016 | 84 | Letter *re Notice of Possible 404(b) Evidence* as to Syed Imran Ahmed (Buford, Frank) (Entered: 01/21/2016) |
| 01/22/2016 | 85 | Letter *re Trial Evidence* as to Syed Imran Ahmed (Buford, Frank) (Entered: 01/22/2016) |
| 01/25/2016 | 86 | Letter *to The Honorable Dora L. Irizarry supplementing January 19, 2016 letter to the Court re utilization of a questionnaire in connection with jury selection* as to Syed Imran Ahmed (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Fodeman, Morris) (Entered: 01/25/2016) |
| 01/27/2016 | 87 | Letter *opposing use of jur questionnaire* as to Syed Imran Ahmed (Notopoulos, Patricia) (Entered: 01/27/2016) |
| 01/28/2016 | 88 | Letter *re Expert Notice* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 01/28/2016) |
| 01/29/2016 | | Minute Entry for proceedings held before Judge Dora Lizette Irizarry: Status Conference as to Syed Imran Ahmed held on 1/29/2016. *Appearances: AUSAs Turner Buford and Patricia Notopoulos; CJA attorney Morris Fodemon with Catherine Grealis for defendant (present/in custody).* Mr. Fodemon's request to use questionnaires for jury selection is denied for reasons stated. Parties advised that Court must adjourn trial. Jury selection referred to a magistrate judge, to be randomly assigned, with the consent of all parties. Jury selection is set for June 13, 2016; trial to begin on June 14, 2016. Motions in limine to be filed by Feb. 5, 2016; responses due Feb. 19, 2016; replies due March 4, 2016. Court will file its proposed charge by April 18, 2016; government's charge submission due May 2, 2016; defendant's due May 16, 2016. Government to provide Jencks Act disclosures and exhibit list (with leave to supplement exhibit list) by May 13, |

| | | |
|---|---|---|
| | | 2016. Jencks motions due by May 27, 2016; responses due June 3, 2016. Pretrial Conference set for June 1, 2016 at 11:00 AM in Courtroom 4 A South before Judge Dora Lizette Irizarry. Time excluded -- case previously designated complex. (Court Reporter Michele Nardone.) (Carosella, Christy) Modified on 2/1/2016 (Carosella, Christy). (Entered: 01/29/2016) |
| 01/29/2016 | 89 | Letter to Judge Irizarry from AUSA F. Turner Buford, as to Syed Imran Ahmed, advising of disclosure of grand jury documents to expert witnesses. (Carosella, Christy) (Entered: 02/01/2016) |
| 02/04/2016 | 90 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 02/04/2016) |
| 02/05/2016 | 91 | MOTION in Limine TO PRECLUDE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 401 AND 403 by Syed Imran Ahmed. (Fodeman, Morris) (Entered: 02/05/2016) |
| 02/05/2016 | 92 | MEMORANDUM in Support re 91 MOTION in Limine TO PRECLUDE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 401 AND 403 (Fodeman, Morris) (Entered: 02/05/2016) |
| 02/05/2016 | 93 | First MOTION in Limine and Memorandum of Law in Support by USA as to Syed Imran Ahmed. (Buford, Frank) (Entered: 02/05/2016) |
| 02/17/2016 | 95 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 02/17/2016) |
| 02/19/2016 | 96 | MEMORANDUM in Opposition re 93 First MOTION in Limine and Memorandum of Law in Support (Fodeman, Morris) (Entered: 02/19/2016) |
| 02/19/2016 | 97 | MEMORANDUM in Opposition re 91 MOTION in Limine TO PRECLUDE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 401 AND 403 (Notopoulos, Patricia) (Entered: 02/19/2016) |
| 02/23/2016 | 98 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 02/23/2016) |
| 03/04/2016 | 101 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 03/04/2016) |
| 03/04/2016 | 102 | REPLY TO RESPONSE to Motion re 91 MOTION in Limine TO PRECLUDE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 401 AND 403 (Fodeman, Morris) (Entered: 03/04/2016) |
| 03/04/2016 | 103 | REPLY TO RESPONSE to Motion re 93 First MOTION in Limine and Memorandum of Law in Support (Buford, Frank) (Entered: 03/04/2016) |
| 03/14/2016 | 105 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 03/14/2016) |
| 04/11/2016 | 106 | Letter re Discovery as to Syed Imran Ahmed (Buford, Frank) (Entered: 04/11/2016) |
| 04/15/2016 | | ORDER: A jury selection has been scheduled for Monday, June 13, 2016 at 9:30 a.m., before the Hon. Robert M. Levy, USMJ in Courtroom 4-A (South). Plaintiff's counsel is directed to confirm with defendant's counsel that all necessary participants are aware of the scheduled jury selection. A copy of the proposed voir dire requests, if any, shall be delivered to my Chambers no later than Thursday, June 9, 2016. Signed by Magistrate Judge Robert M. Levy on 4/15/2016. (Marino, Janine) (Entered: 04/15/2016) |
| 04/22/2016 | 107 | Letter Regarding Additional Notice of Trial Evidence, 404(b) Evidence, and Disclosure Pursuant to Brady v. Maryland as to Syed Imran Ahmed (Attachments: # 1 Exhibit) (Buford, Frank) (Entered: 04/22/2016) |
| 05/13/2016 | 108 | Letter to F. Turner Buford re trial exhibits as to Syed Imran Ahmed (Attachments: # 1 Defendant Syed Imran Ahmed Trial Exhibit List) (Fodeman, Morris) (Entered: 05/13/2016) |

| 05/13/2016 | [109] | Letter *re Transmission of Government Exhibits and 3500 Material* as to Syed Imran Ahmed (Buford, Frank) (Entered: 05/13/2016) |
|---|---|---|
| 05/17/2016 | | NOTICE OF HEARING as to Syed Imran Ahmed: Jury selection will proceed, as previously scheduled, on June 13, 2016 before Magistrate Judge Robert M. Levy. Opening statements and presentation of evidence will commence on June 27, 2016 at 9:30 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Carosella, Christy) (Entered: 05/17/2016) |
| 05/18/2016 | [110] | Letter *to The Honorable Dora L. Irizarry respectfully requesting adjournment of in limine motions* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 05/18/2016) |
| 05/19/2016 | | SCHEDULING ORDER as to Syed Imran Ahmed: Because the trial of this matter has been adjourned to June 27, 2016 and the Court has granted the parties' joint request for an extension of the motion *in limine* briefing schedule, the final pretrial conference scheduled for June 2 is adjourned and is rescheduled for June 23, 2016 at 10:00 AM in courtroom 4 A South. So Ordered by Chief Judge Dora Lizette Irizarry on 5/19/2016. (Carosella, Christy) (Entered: 05/19/2016) |
| 05/19/2016 | [111] | Letter *to The Honorable Dora L. Irizarry respectfully requesting that Greg Andres be permitted to appear on a pro bono basis as co-counsel in this matter* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 05/19/2016) |
| 05/19/2016 | | ORDER as to Syed Imran Ahmed re [110] Letter -- The request is granted and the proposed amended briefing schedule is approved. So Ordered by Chief Judge Dora Lizette Irizarry on 5/19/2016. (Carosella, Christy) (Entered: 05/20/2016) |
| 05/22/2016 | | ORDER as to Syed Imran Ahmed re [111] Letter -- The request is granted. Mr. Andres is permitted to appear pro bono. So Ordered by Chief Judge Dora Lizette Irizarry on 5/22/2016. (Carosella, Christy) (Entered: 05/22/2016) |
| 05/23/2016 | [112] | ORDER as to Syed Imran Ahmed -- Attached is the Court's draft jury instructions. A WORD copy will be emailed to the parties by chambers. The government's red line version shall be filed on June 6, 2016 and working off the government's red line version, defendant's red line version shall be filed on June 20, 2016. The parties are reminded that all edits must be made using WORD, Times New Roman, 14 point font. The parties are reminded to email to chambers a copy of their WORD (not PDF) version of the proposed charge to chambers along with two hard courtesy copies. The parties are also reminded that they are not precluded from making additional requests to charge as the trial progresses. SO ORDERED by Chief Judge Dora Lizette Irizarry on 5/23/2016. (Irizarry, Dora) (Entered: 05/23/2016) |
| 05/24/2016 | [113] | NOTICE OF ATTORNEY APPEARANCE: Sarah Breslow appearing for Syed Imran Ahmed (Breslow, Sarah) (Entered: 05/24/2016) |
| 05/25/2016 | [114] | NOTICE OF ATTORNEY APPEARANCE Debra Jaroslawicz appearing for USA. (Jaroslawicz, Debra) (Entered: 05/25/2016) |
| 05/27/2016 | [115] | NOTICE OF ATTORNEY APPEARANCE: Monica Ann Friedman appearing for Syed Imran Ahmed (Friedman, Monica) (Entered: 05/27/2016) |
| 06/01/2016 | | NOTICE as to Syed Imran Ahmed -- Jury selection is rescheduled for June 27, 2016. The parties will be advised of the assigned magistrate judge by separate notice. (Carosella, Christy) (Entered: 06/01/2016) |
| 06/01/2016 | [116] | Letter *re Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/01/2016) |
| 06/02/2016 | | NOTICE as to Syed Imran Ahmed -- Magistrate Judge Levy will preside over jury |

| | | |
|---|---|---|
| | | selection on June 27, 2016. (Carosella, Christy) (Entered: 06/02/2016) |
| 06/06/2016 | [117](#) | Proposed Jury Instructions by USA as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/06/2016) |
| 06/07/2016 | [118](#) | Letter *to The Honorable Dora L. Irizarry re ongoing issue regarding Dr. Ahmed's ability to access the discovery materials produced by the Government* as to Syed Imran Ahmed (Attachments: # [1](#) Exhibit A) (Fodeman, Morris) (Entered: 06/07/2016) |
| 06/08/2016 | [119](#) | Letter *to The Honorable Robert M. Levy re proposed voir dire questions* as to Syed Imran Ahmed (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B) (Fodeman, Morris) (Entered: 06/08/2016) |
| 06/09/2016 | [120](#) | Letter *re Production of Supplemental 3500 Materials and Additional Discovery* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/09/2016) |
| 06/10/2016 | | SCHEDULING ORDER as to Syed Imran Ahmed re [118](#) Letter -- This matter will be addressed at a status conference on June 15, 2016 at 10:00 AM in Courtroom 4 A South. A representative of MDC's Legal Department must appear. So Ordered by Chief Judge Dora Lizette Irizarry on 6/10/2016. (Carosella, Christy) (Entered: 06/10/2016) |
| 06/10/2016 | [121](#) | Letter *re Supplemental Production of 3500 Material* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/10/2016) |
| 06/10/2016 | [122](#) | Second MOTION in Limine by USA as to Syed Imran Ahmed. (Notopoulos, Patricia) (Entered: 06/10/2016) |
| 06/10/2016 | [123](#) | Supplemental MOTION in Limine *to Second Motion in limine* by USA as to Syed Imran Ahmed. (Notopoulos, Patricia) (Entered: 06/10/2016) |
| 06/10/2016 | [124](#) | MOTION in Limine *Notice of Additional Motions in Limine to Preclude Evidence Pursuant to Federal Rules of Evidence 403, 602, 701, 702 and 704* by Syed Imran Ahmed. (Andres, Greg) (Entered: 06/10/2016) |
| 06/10/2016 | [125](#) | MEMORANDUM in Support re [124](#) MOTION in Limine *Notice of Additional Motions in Limine to Preclude Evidence Pursuant to Federal Rules of Evidence 403, 602, 701, 702 and 704* (Attachments: # [1](#) Declaration Declaration of Greg D. Andres, # [2](#) Exhibit A, # [3](#) Exhibit B, # [4](#) Exhibit C) (Andres, Greg) (Entered: 06/10/2016) |
| 06/15/2016 | | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Pretrial Conference as to Syed Imran Ahmed held on 6/15/2016. *Appearances: AUSA Turner Buford; MDC Senior Legal Counsel Nicole McFarland; CJA attorney Morris Fodeman with Greg Andres and Catherine Grealis for Syed Ahmed (present/in custody).* Conference held to address issues raised in Mr. Fodeman's letter, DE [118](#) . Issues discussed on the record; Ms. McFarland to ensure the MDC procedures are followed and implemented by the appropriate staff. Defense counsel's request to adjourn trial for two weeks is granted. Jury selection is rescheduled for July 11, 2016; a different magistrate judge may be assigned to preside over jury selection--parties will be notified. Defense counsel shall update the Court on MDC issue at the June 27 conference; however, if there continue to be problems, counsel shall notify the Court in advance so Ms. McFarland can be present. Defendant's trial clothes shall be sent to MDC; defense counsel must provide chambers with proposed order sufficiently in advance of trial. Defense counsel's request to order minutes of this proceeding is granted. Pretrial Conference set for June 27, 2016 at 10:00 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. Time excluded (pending motion(s) in limine). (Court Reporter Lisa Schwam.) (Carosella, Christy) (Entered: 06/15/2016) |
| 06/16/2016 | | NOTICE as to Syed Imran Ahmed -- Magistrate Judge James Orenstein will preside over jury selection on July 11, 2016. (Carosella, Christy) (Entered: 06/16/2016) |

| 06/17/2016 | 126 | NOTICE OF ATTORNEY APPEARANCE Tanya Yvette Hill appearing for USA. (Hill, Tanya) (Entered: 06/17/2016) |
| 06/17/2016 | 127 | MEMORANDUM in Opposition re 122 Second MOTION in Limine (Attachments: # 1 Declaration of Greg D. Andres, # 2 Exhibit A to Andres Declaration) (Andres, Greg) (Entered: 06/17/2016) |
| 06/17/2016 | 128 | Letter *dated June 17, 2016, to Judge Irizarry (To Be Filed Under Seal)* as to Syed Imran Ahmed (Andres, Greg) (Entered: 06/17/2016) |
| 06/17/2016 | 129 | MEMORANDUM in Opposition re 124 MOTION in Limine *Notice of Additional Motions in Limine to Preclude Evidence Pursuant to Federal Rules of Evidence 403, 602, 701, 702 and 704* (Attachments: # 1 Exhibit, # 2 Exhibit) (Notopoulos, Patricia) (Entered: 06/17/2016) |
| 06/20/2016 | 130 | Proposed Jury Instructions by Syed Imran Ahmed (Fodeman, Morris) (Entered: 06/20/2016) |
| 06/24/2016 | 131 | Letter *re Discovery and Supplemental 3500 Production* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/24/2016) |
| 06/24/2016 | 132 | Letter *re Authorization for Deposition* as to Syed Imran Ahmed (Attachments: # 1 Exhibit) (Buford, Frank) (Entered: 06/24/2016) |
| 06/24/2016 | 133 | ORDER granting in part and denying in part 91 Motion in Limine as to Syed Imran Ahmed (1); granting 93 Motion in Limine as to Syed Imran Ahmed (1) -- For the reasons set forth in the ATTACHED WRITTEN OPINION AND ORDER, the government's motion is granted in its entirety. Defendant's motion is granted in part and denied in part, as follows: (1) evidence of the wife's $1,000,000 wire transfer is admitted; (2) evidence of Defendant's disproportionate billing is admitted partially; and (3) evidence that Defendant's billing spiked in 2011 is admitted partially. SO ORDERED by Chief Judge Dora Lizette Irizarry on 6/24/2016. (Irizarry, Dora) (Entered: 06/24/2016) |
| 06/27/2016 | | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry:Pretrial Conference as to Syed Imran Ahmed held on 6/27/2016. *Appearances: AUSAs Turner Buford and Debra Jaroslawicz; CJA attorney Morris Fodeman with Greg Andres and Catherine Grealis for defendant (present/in custody).* Court will amend its recent order on motion(s) in limine; details stated on the record. Government will e-mail courtroom deputy (by Wednesday, 6/29) list of meds related to particular patient(s) for filing under seal. Defense to respond to government's Rule 15 deposition motion by Wednesday, 6/29. Mr. Fodeman updates Court about (1) defendant's access to trial materials at MDC; (2) ability to meet with defendant at facility to prepare for trial. Court will raise issues/concerns with CJA Committee. Parties should be prepared for opening statements on Monday, 7/11 following jury selection; government should have at least one witness available. Additional trial logistics discussed, including defendant's religious observation vis-a-vis mid-day and lunch breaks. Defense counsel to provide clothing order at earliest convenience, preferably one week before trial begins. (Court Reporter Sherry Bryant.) (Carosella, Christy) (Entered: 06/27/2016) |
| 06/27/2016 | 134 | SCHEDULING ORDER as to Syed Imran Ahmed --- This case has been referred to me for purposes of selecting a trial jury, which I will do on July 11, 2016, beginning promptly at 9:30 a.m. in courtroom 4A, South. I direct counsel for each party to submit, no later than noon on July 5, 2016, any questions the party wishes me to ask of prospective jurors during *voir dire*. Only questions specifically addressing the issues to be tried should be submitted; routine questions are not necessary. I further direct each party to include within its submission a list of the names of all persons, entities, and locations that the party expects to be mentioned during the trial.The defendant's counsel is directed |

| | | |
|---|---|---|
| | | to make arrangements no later than July 8, 2016, to insure that the defendant has appropriate attire for all court proceedings and must arrive at the courthouse early enough on July 11, 2016, to ensure that the defendant is dressed for court before the scheduled start of jury selection at 9:30 a.m. Ordered by Magistrate Judge James Orenstein on 6/27/2016. (Guy, Alicia) (Entered: 06/27/2016) |
| 06/27/2016 | <u>135</u> | Letter *re: proposed order concerning Defendant's clothing for trial* as to Syed Imran Ahmed (Attachments: # <u>1</u> Ex. A) (Fodeman, Morris) (Entered: 06/27/2016) |
| 06/27/2016 | <u>136</u> | Letter to Chief Judge Dora L. Irizarry from AUSA F. Turner Buford as to Syed Imran Ahmed, providing list of current medications for the beneficiary described in the governments letter dated June 24, 2016. (Attachments: # <u>1</u> Exhibit Medication List) (Carosella, Christy) (Entered: 06/28/2016) |
| 06/29/2016 | <u>137</u> | ORDER as to Syed Imran Ahmed regarding clothing for trial. So Ordered by Chief Judge Dora Lizette Irizarry on 6/28/2016. (Carosella, Christy) (Entered: 06/29/2016) |
| 06/29/2016 | <u>138</u> | Letter *to The Honorable Dora L. Irizarry responding to <u>132</u> Letter re Authorization for Deposition* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 06/29/2016) |
| 06/29/2016 | <u>139</u> | Letter *Requesting permission to bring electronic devices into the Courthouse* as to Syed Imran Ahmed (Andres, Greg) (Entered: 06/29/2016) |
| 06/30/2016 | <u>140</u> | Letter *re Giglio Disclosures* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/30/2016) |
| 06/30/2016 | | ORDER as to Syed Imran Ahmed re <u>139</u> Letter and Re: DE 138 Defense Objection to Deposition - The request that trial counsel and their trial team (members from both law firms involved) be permitted to bring to the courtroom during trial certain electronic equipment is granted in part and denied in part. The trial team is permitted to bring their laptop computers. Attorneys, of course, are always permitted to bring their cellular devices with them to the courtrooms. However, as to a printer, wireless hotspots, necessary electrical equipment to connect them and that support staff be permitted to bring their cellular devices, these requests are denied without prejudice. The Court needs to know what the justification is for the use of so much equipment and personnel when defendant is already represented by three attorneys. The use of noisy printers and people popping up to retrieve documents has the potential for being disruptive. Moreover, it is not clear how much "support staff" defense counsel intends to bring, who they are or what their role is. The Court has tried similarly complex, paper intensive cases in the past without the need for so much personnel or equipment. Finally, it has come to the Court's attention that the parties were trying to schedule the Rule 15 deposition for tomorrow but could not agree on a mutually convenient time. This comes as a surprise to the Court given defendant's objection to the taking of the deposition. See Docket Entry # 138. Defendant shall notify the Court NO LATER THAN NOON TOMORROW, JULY 1, 2016, whether he still objects to the taking of the deposition or whether the issue is moot. SO ORDERED by Chief Judge Dora Lizette Irizarry on 6/30/2016. (Irizarry, Dora) (Entered: 06/30/2016) |
| 06/30/2016 | <u>141</u> | Letter *re Summary of Expert Opinion* as to Syed Imran Ahmed (Buford, Frank) (Entered: 06/30/2016) |
| 07/01/2016 | <u>142</u> | Letter *regarding Rule 15 depostion* as to Syed Imran Ahmed (Notopoulos, Patricia) (Entered: 07/01/2016) |
| 07/01/2016 | <u>143</u> | Letter *to The Honorable Dora L. Irizarry regarding the Government's Rule 15 Motion and use of electronic equipment during trial* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 07/01/2016) |

| | | |
|---|---|---|
| 07/01/2016 | [144](#) | AMENDED ORDER as to Syed Imran Ahmed -- The ATTACHED WRITTEN AMENDED OPINION AND ORDER modifies and supersedes the Opinion and Order issued on June 24, 2016 that addressed the parties' first set of motions *in limine*. The Amended Opinion and Order is based upon the government's representations and the Court's discussions with the parties at the June 27, 2016 Pretrial Conference. The Court's rulings on the first set of motions *in limine* remain unchanged, but are clarified. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/1/2016. (Irizarry, Dora) (Entered: 07/01/2016) |
| 07/01/2016 | | ORDER as to Syed Imran Ahmed re [143](#) as to Use of Electronic Equipment in the Courtroom -- In response to the Court's June 30, 2016 Order requesting clarification as to the need for so much electronic equipment and the number of staff in the defense team that would be affected by the Court's order, defense counsel responded only that the equipment was not intended to be used in the courtroom itself and its use would not disrupt the trial. However, counsel did not address the Court's other inquiries, specifically: (1) what is the justification for the use of so much equipment and personnel when defendant is already represented by five attorneys (according to the docket); and (2) how much "support staff" defense counsel intends to bring. As noted by the Court in yesterday's Order, the Court has tried similarly complex, paper intensive cases in the past without the need for so much personnel or equipment. Defendant is directed to respond to the Court's inquiry by 3:00 PM Tuesday, July 5, 2016. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/1/2016. (Irizarry, Dora) (Entered: 07/01/2016) |
| 07/01/2016 | [145](#) | ORDER granting [122](#) Motion in Limine as to Syed Imran Ahmed (1); granting [123](#) Motion in Limine as to Syed Imran Ahmed (1); granting in part and denying in part [124](#) Motion in Limine as to Syed Imran Ahmed (1) - For the reasons set forth in the ATTACHED WRITTEN OPINION AND ORDER, the government's second motion *in limine* is granted. Defendant's second motion *in limine* is granted to the extent that the government is precluded from arguing that "taxpayers" are victims of Defendant's fraud or referring to "taxpayers" when describing Medicare, and otherwise is denied. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/1/2016. (Irizarry, Dora) (Entered: 07/01/2016) |
| 07/01/2016 | [146](#) | ORDER as to Syed Imran Ahmed re [132](#) Letter Requesting Leave to Conduct a Rule 15 Deposition -=- For the reasons set forth in the ATTACHED WRITTEN MEMORANDUM AND MEMORANDUM, the government's motion for leave to conduct a Rule 15 deposition is granted. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/1/2016. (Irizarry, Dora) (Entered: 07/01/2016) |
| 07/04/2016 | [147](#) | Letter *re Transmittal of Government's Proposed Witness List* as to Syed Imran Ahmed (Buford, Frank) (Entered: 07/04/2016) |
| 07/05/2016 | | SCHEDULING ORDER as to Syed Imran Ahmed -- A Status Conference is scheduled for July 6, 2016 at 3:30 PM in Courtroom 4 A South to address the issues concerning electronic equipment in the courtroom during trial. So Ordered by Chief Judge Dora Lizette Irizarry on 7/5/2016. (Carosella, Christy) (Entered: 07/05/2016) |
| 07/05/2016 | [148](#) | Letter *to Chief Judge Irizarry from Greg D. Andres dated 7/5/16 in Response to the Court's Orders of June 30, 2016 and July 1, 2016* as to Syed Imran Ahmed (Andres, Greg) (Entered: 07/05/2016) |
| 07/05/2016 | [149](#) | Letter *re Submission of Government's Proposed Voir Dire and Joint Submission of People and Places Likely to Arise at Trial* as to Syed Imran Ahmed (Attachments: # [1](#) Exhibit) (Buford, Frank) (Entered: 07/05/2016) |
| 07/05/2016 | [150](#) | Letter *to The Honorable James Orenstein re jury selection questions* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 07/05/2016) |

| 07/05/2016 | 151 | Letter *In Response to the Court's Order Dated July 5, 2016* as to Syed Imran Ahmed (Andres, Greg) (Entered: 07/05/2016) |
|---|---|---|
| 07/05/2016 | | ORDER as to Syed Imran Ahmed re 151 Letter -- Defense Counsel Greg Andres is excused from appearing at the pretrial conference scheduled for tomorrow afternoon. Defendant's appearance also is waived. The matters to be discussed are purely administrative and logistical. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/5/2016. (Irizarry, Dora) (Entered: 07/05/2016) |
| 07/05/2016 | 152 | Letter *re Production of Certain Revised Exhibits and Supplemental 3500 Material* as to Syed Imran Ahmed (Buford, Frank) (Entered: 07/05/2016) |
| 07/06/2016 | 153 | NOTICE OF ATTORNEY APPEARANCE Karin K. Orenstein appearing for USA. (Orenstein, Karin) (Entered: 07/06/2016) |
| 07/06/2016 | | NOTICE as to Syed Imran Ahmed -- Due to a conflict, jury selection has been reassigned to Magistrate Judge Steven M. Gold. (Carosella, Christy) (Entered: 07/06/2016) |
| 07/06/2016 | 154 | ORDER as to Syed Imran Ahmed --- To avoid any appearance of impropriety, pursuant to 28 U.S.C. § 455(a), I recuse myself. Ordered by Magistrate Judge James Orenstein on 7/6/2016. (Guy, Alicia) (Entered: 07/06/2016) |
| 07/06/2016 | 155 | Proposed Jury Instructions by USA as to Syed Imran Ahmed (Orenstein, Karin) (Entered: 07/06/2016) |
| 07/06/2016 | | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry:Pretrial Conference as to Syed Imran Ahmed held on 7/6/2016. *Appearances: AUSAs Turner Buford, Debra Jaroslawicz, and Patricia Notopoulos; CJA attorney Morris Fodeman with Catherine Grealis and Sara Breslow for Syed Ahmed (not present/in custody).* Mr. Andres was excused from this appearance. Mr. Ahmed's appearance has been waived. Conference held to discuss trial procedures, specifically request by counsel for electronic equipment; details stated. Defense counsel will submit proposed order for the Court's signature. Government advises that, in the event of conviction, forfeiture AUSA will join the case. Government further advises that case agent may not be available during the week of July 18 for personal reasons; request for 2nd case agent to be present in the courtroom (details stated) is granted. Issues relating to witnesses' privacy discussed. Any issues that may arise during the Rule 15 deposition, scheduled for July 7, shall be addressed by Chief Judge Irizarry. (Court Reporter Angela Grant.) (Carosella, Christy) (Entered: 07/07/2016) |
| 07/07/2016 | 156 | Letter *to The Honorable Dora L. Irizarry concerning the use of electronic equipment at trial* as to Syed Imran Ahmed (Attachments: # 1 Exhibit A) (Fodeman, Morris) (Entered: 07/07/2016) |
| 07/07/2016 | 157 | Letter *re Revised Exhibits and Supplemental 3500 Production* as to Syed Imran Ahmed (Buford, Frank) (Entered: 07/07/2016) |
| 07/07/2016 | 158 | ENDORSED ORDER ON DOCUMENT #156 as to Syed Imran Ahmed: Defense Attys Morris Fodeman, Greg Andres, Catherine Grealis, Sarah Breslow, and Monica Friedman are permitted to bring a laptop computer into the Courthouse for the duration of the trial. Defense counsel from Wilson Sonsini Goodrich & Rosati PC and Davis Polk & Wardwell LLP are permitted to bring one printer and one hotspot device into the Courthouse for use during trial. Paralegal Daniel Duhaime from Davis Polk & Wardwell LLP is permitted to bring a cellular device into the Courthouse for the duration of trial. (Ordered by Chief Judge Dora Lizette Irizarry on 7/7/2016) (Galeano, Sonia) (Entered: 07/08/2016) |
| 07/08/2016 | 159 | Letter *to F. Turner Buford enclosing amended trial exhibit list* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 07/08/2016) |

| 07/08/2016 | [160] | MOTION for Bill of Particulars *for Forfeiture of Property dated July 8, 2016* by USA as to Syed Imran Ahmed. (Orenstein, Karin) (Entered: 07/08/2016) |
|---|---|---|
| 07/11/2016 | [161] | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on 7/11/2016. *See document for appearances*. Jury selected by Magistrate Judge Gold. Jurors sworn and given preliminary instructions. Opening statements scheduled for July 12, 2016 at 9:30 AM in courtroom 4 A South. Additional scheduling, legal, and housekeeping issues discussed after jury dismissed for the day. (Court Reporter Georgette Betts.) (Carosella, Christy) (Entered: 07/11/2016) |
| 07/11/2016 | [163] | Minute Entry for proceedings held before Magistrate Judge Steven M. Gold: Jury Selection as to Syed Imran Ahmed held on 7/11/2016. A.U.S.A Frank Buford and Patricia E Notopoulos present for Government. Attorney Morris J. Fodeman and Attorney Greg Andres present for Defendant. (Court Reporter Joshua Edwards.) (Basnight, Jasmine) Modified on 7/18/2016 (Carosella, Christy). (Entered: 07/13/2016) |
| 07/12/2016 | | ORDER terminating [160] Motion for Bill of Particulars as to Syed Imran Ahmed (1) -- This document was improperly filed as a motion. It is not a motion but rather the government's bill of particulars as it relates to forfeiture. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/12/2016. (Irizarry, Dora) (Entered: 07/12/2016) |
| 07/12/2016 | [162] | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on 7/12/2016. *See attachment for appearances and additional details*. Witnesses called: Vitina Varrone, James Bavoso, and Mohammed Islam. Jury Trial continued to July 13, 2016 at 9:30 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Court Reporter Georgette Betts.) (Carosella, Christy) (Entered: 07/12/2016) |
| 07/13/2016 | [164] | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry:Jury Trial as to Syed Imran Ahmed held on 7/13/2016. *See document for appearances and additional information*. Witnesses called: Lori Basilice, Evon Blackwood, Dr. Frank L. Ross. Jury Trial continued to July 14, 2016 at 9:30 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Court Reporter Georgette Betts.) (Carosella, Christy) (Entered: 07/13/2016) |
| 07/14/2016 | [165] | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry:Jury Trial as to Syed Imran Ahmed held on 7/14/2016. *See document for appearances and additional information*. Witness Dr. Frank L. Ross (continued from previous day). Jury Trial continued to July 18, 2016 at 9:15 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry (jurors returning at 9:30 AM). (Court Reporter Georgette Betts.) (Carosella, Christy) (Entered: 07/14/2016) |
| 07/16/2016 | [166] | Letter *regarding Giglio disclosure* as to Syed Imran Ahmed (Notopoulos, Patricia) (Entered: 07/16/2016) |
| 07/18/2016 | [167] | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on July 18, 2016. *See document for appearances and additional information*. Witnesses: Dr. Ross (continued from July 14), Mary Donovan, Joanne deJong, Syed Rehan Ahmed. Jury Trial continued to July 19, 2016 at 9:30 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Court Reporter Joshua Edwards.) (Carosella, Christy) (Entered: 07/18/2016) |
| 07/19/2016 | [168] | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on July 19, 2016. *See document for appearances and additional information*. Witnesses: Syed Rehan Ahmed (continued from yesterday), Elisabeth Jancaitis, Susan Albano, and Patsy Rollins. Jury Trial continued to July 20, |

| | | 2016 at 9:30 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Court Reporter Joshua Edwards.) (Carosella, Christy) (Entered: 07/19/2016) |
|---|---|---|
| 07/20/2016 | 169 | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on July 20, 2016. *See document for appearances and additional information*. Witnesses: Patsy Rollins (continued from yesterday), Jennifer Reminick. Video of Rule 15 deposition of Elwood Verity played; limiting instruction given to jury. Jury Trial continued to July 21, 2016 at 9:30 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Court Reporter Joshua Edwards.) (Carosella, Christy) (Entered: 07/20/2016) |
| 07/21/2016 | 170 | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on July 21, 2016. *See document for appearances and additional information*. Witnesses: Jennifer Reminick (continued from yesterday), Jacqueline Doyle, Joyce Sorger, Roberta Dixon. Jury Trial continued to July 25, 2016 at 9:30 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Court Reporter Joshua Edwards.) (Carosella, Christy) (Entered: 07/21/2016) |
| 07/22/2016 | | ORDER as to Syed Imran Ahmed re 155 Proposed Jury Instructions filed by USA -- Defendant is directed to file its proposed forfeiture jury instruction by NO LATER THAN 11:00 PM, TUESDAY, JULY 26, 2016. Defendant shall provide a red-line version of the government's proposed forfeiture jury instructions. See Docket Entry #155. The government advised chambers on 7/21/16 that it had discovered some minor errors in their filed draft. There is no need for the government to make those minor corrections at this time. Defendant shall provide two hard courtesy copies of his red-line version to the Court by 9:30 AM Wednesday, July 27, 2016. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/22/2016. (Irizarry, Dora) (Entered: 07/22/2016) |
| 07/25/2016 | 171 | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on July 25, 2016. *See document for appearances and additional information*. Witnesses: Roberta Dixon (continued from July 21), Joseph Giambalvo. Jury Trial continued to July 26, 2016 at 9:15 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry (jurors returning at 9:30 AM). (Court Reporter Anthony Frisolone.) (Carosella, Christy) (Entered: 07/25/2016) |
| 07/26/2016 | 172 | Letter *re Supplemental Citations to Government's Proposed Revisions to Jury Instructions* as to Syed Imran Ahmed (Buford, Frank) (Entered: 07/26/2016) |
| 07/26/2016 | 173 | Letter *Regarding The Production of Discovery Material* as to Syed Imran Ahmed (Andres, Greg) (Entered: 07/26/2016) |
| 07/26/2016 | 174 | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on July 26, 2016. *See document for appearances and additional information*. Witnesses: Dr. Mary Ann Bilotti (called out of order for scheduling reasons), Joseph Giambalvo (continued from July 25). Charge conference held at end of day. Jury Trial continued to July 27, 2016 at 9:30 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Court Reporter Anthony Frisolone.) (Carosella, Christy) (Entered: 07/27/2016) |
| 07/27/2016 | 175 | Letter *regarding defendant's proposed edits to the government's proposed requests to charge in a criminal forfeiture proceedings* as to Syed Imran Ahmed (Attachments: # 1 Defendant's Proposed Edits) (Fodeman, Morris) (Entered: 07/27/2016) |
| 07/27/2016 | 176 | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on July 27, 2016. *See document for appearances and additional information*. Witnesses: Joseph Cincotta, Dr. John Reilly, Dr. Gregory Zito. Government and defense rest. Jury Trial continued to July 28, 2016 at 9:30 AM in |

| | | Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Court Reporter Anthony Frisolone.) (Carosella, Christy) (Entered: 07/27/2016) |
|---|---|---|
| 07/27/2016 | [177](#) | ORDER as to Syed Imran Ahmed -- Attached are the Court's Final Jury Instructions. The parties are reminded to review them carefully prior to commencing tomorrow's proceedings for any final objections or requests to charge. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/27/2016. (Irizarry, Dora) (Entered: 07/27/2016) |
| 07/28/2016 | [178](#) | Letter *Regarding The Production of Franklin Hospital Discovery Material* as to Syed Imran Ahmed (Andres, Greg) (Entered: 07/28/2016) |
| 07/28/2016 | [179](#) | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Jury Trial as to Syed Imran Ahmed held on July 28, 2016. *See document for appearances*. Defense rests. Summations: Government by Mr. Buford; Defendant by Mr. Andres; Rebuttal by Ms. Jaroslowicz. Jury charged, U.S. Marshal sworn, and deliberation held. Verdict reached: GUILTY as to all counts (1-6) of indictment. Jury polled. Defendant waives right to have jury determine issue of forfeiture; issue to be decided by the Court. Forfeiture hearing scheduled for <u>August 1, 2016 at 10:00 AM</u> in courtroom 4 A South. Defendant's Rule 29 and/or 32 motion(s) due by Sept. 9, 2016; Government response due by Oct. 14, 2016; defendant's reply due by Oct. 28, 2016. Oral argument set for <u>November 18, 2016 at 10:00 AM</u> in courtroom 4 A South. Court will alert parties in advance as to any issues requiring specific focus, or if oral argument is not needed. (Court Reporter Anthony Frisolone.) (Carosella, Christy) (Entered: 07/29/2016) |
| 07/28/2016 | [180](#) | JURY VERDICT/Court's Exhibit 1 as to Syed Imran Ahmed (1): Guilty on Counts 1,2-4, 5-6. (Carosella, Christy). Modified on 8/1/2016. (Layne, Monique). (Entered: 07/29/2016) |
| 07/28/2016 | [181](#) | COURT EXHIBIT LIST (trial) as to Syed Imran Ahmed (actual exhibits not scanned; filed in hard copy with Clerk's Office). (Carosella, Christy) (Entered: 07/29/2016) |
| 07/29/2016 | [182](#) | Jury Notes/Court's Exhibit #'s 3,6,7,8,10,13,14 as to Syed Imran Ahmed (Carosella, Christy). Modified on 8/1/2016 (Layne, Monique). (Entered: 07/29/2016) |
| 07/29/2016 | [183](#) | Jury Charge/Court's Exhibit #2 as to Syed Imran Ahmed. (Layne, Monique) (Entered: 08/01/2016) |
| 07/29/2016 | [184](#) | Court's Exhibit #4 as to Syed Imran Ahmed. (Layne, Monique) (Entered: 08/01/2016) |
| 07/29/2016 | [185](#) | Court's Exhibit #5 as to Syed Imran Ahmed. (Layne, Monique) (Entered: 08/01/2016) |
| 07/29/2016 | [186](#) | Court's Exhibit #9 as to Syed Imran Ahmed. (Layne, Monique) (Entered: 08/01/2016) |
| 07/29/2016 | [187](#) | Court's Exhibit # 12 as to Syed Imran Ahmed. (Layne, Monique) (Entered: 08/01/2016) |
| 07/29/2016 | [188](#) | Court's Exhibit 11A (Transcript of Trial dtd. 7/18/16 pgs. 698, 833-928) as to Syed Imran Ahmed. (Layne, Monique) (Entered: 08/03/2016) |
| 07/29/2016 | [189](#) | Court's Exhibit 11B (Transcript of Trial dtd. 7/19/16 pgs. 937, 945-1039) as to Syed Imran Ahmed. (Layne, Monique) (Entered: 08/03/2016) |
| 08/01/2016 | | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry: Forfeiture Hearing as to Syed Imran Ahmed held on August 1, 2016. *Appearances: AUSAs Karin Orenstein, F. Turner Buford, Patricia Notopoulos, and Debra Jaroslowicz; CJA attorney Morris Fodeman with Catherine Grealis, Sarah Breslow, and Monica Friedman for Syed Imran Ahmed (present/in custody)*. Witnesses: Joseph Cincotta and Joseph Giambalvo. Court requires additional briefing: Government's submission due by Aug. 22, 2016; Defendant's submission due by Sept. 19, 2016; Government's reply due by Oct. 7, 2016. Oral argument (or conference re decision on motion) set for <u>October 24, 2016 at 2:00 PM</u> |

| | | |
|---|---|---|
| | | in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. Court will alert parties in advance as to which issues to focus on for o/a or if o/a is not needed. (Court Reporter Joshua Edwards.) (Carosella, Christy) (Entered: 08/03/2016) |
| 08/05/2016 | 190 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on July 25 to 28, 2014, before Judge Irizarry. Court Reporter/Transcriber Anthony D. Frisolone, Telephone number 718-613-2487. Email address: AFrisolone@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/26/2016. Redacted Transcript Deadline set for 9/5/2016. Release of Transcript Restriction set for 11/3/2016. (Attachments: # 1 Transcript, # 2 Transcript, # 3 Transcript) (Frisolone, Anthony) (Entered: 08/05/2016) |
| 08/09/2016 | 191 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on July 11, 2016, before Judge Dora L. Irizarry. Court Reporter/Transcriber Georgette K. Betts, Telephone number (718)804-2777. Email address: georgetteb25@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/30/2016. Redacted Transcript Deadline set for 9/9/2016. Release of Transcript Restriction set for 11/7/2016. (Betts, Georgette) (Entered: 08/09/2016) |
| 08/09/2016 | 192 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on July 12, 2016, before Judge Dora L. Irizarry. Court Reporter/Transcriber Georgette K. Betts, Telephone number (718)804-2777. Email address: georgetteb25@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/30/2016. Redacted Transcript Deadline set for 9/9/2016. Release of Transcript Restriction set for 11/7/2016. (Betts, Georgette) (Entered: 08/09/2016) |
| 08/09/2016 | 193 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on July 13, 2016, before Judge Dora L. Irizarry. Court Reporter/Transcriber Georgette K. Betts, Telephone number (718)804-2777. Email address: georgetteb25@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/30/2016. Redacted Transcript Deadline set for 9/9/2016. Release of Transcript Restriction set for 11/7/2016. (Betts, Georgette) (Entered: 08/09/2016) |
| 08/09/2016 | 194 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on July 14, 2016, before Judge Dora L. Irizarry. Court Reporter/Transcriber Georgette K. Betts, Telephone number (718)804-2777. Email address: georgetteb25@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/30/2016. Redacted Transcript Deadline set for |

| | | 9/9/2016. Release of Transcript Restriction set for 11/7/2016. (Betts, Georgette) (Entered: 08/09/2016) |
|---|---|---|
| 08/10/2016 | 195 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on 7/18/2016, before Judge Dora Irizarri. Court Reporter/Transcriber Joshua B. Edwards. Email address: joshuabedwards1980@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/31/2016. Redacted Transcript Deadline set for 9/12/2016. Release of Transcript Restriction set for 11/8/2016. (Edwards, Joshua) (Entered: 08/10/2016) |
| 08/10/2016 | 196 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on 7/19/2016, before Judge Dora Irizarri. Court Reporter/Transcriber Joshua B. Edwards. Email address: joshuabedwards1980@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/31/2016. Redacted Transcript Deadline set for 9/12/2016. Release of Transcript Restriction set for 11/8/2016. (Edwards, Joshua) (Entered: 08/10/2016) |
| 08/10/2016 | 197 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on 7/20/2016, before Judge Dora Irizarri. Court Reporter/Transcriber Joshua B. Edwards. Email address: joshuabedwards1980@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/31/2016. Redacted Transcript Deadline set for 9/12/2016. Release of Transcript Restriction set for 11/8/2016. (Edwards, Joshua) (Entered: 08/10/2016) |
| 08/10/2016 | 198 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on 7/21/2016, before Judge Dora Irizarri. Court Reporter/Transcriber Joshua B. Edwards. Email address: joshuabedwards1980@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/31/2016. Redacted Transcript Deadline set for 9/12/2016. Release of Transcript Restriction set for 11/8/2016. (Edwards, Joshua) (Entered: 08/10/2016) |
| 08/10/2016 | 199 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on 8/1/2016, before Judge Dora Irizarri. Court Reporter/Transcriber Joshua B. Edwards. Email address: joshuabedwards1980@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/31/2016. Redacted Transcript Deadline set for 9/12/2016. Release of Transcript Restriction set for 11/8/2016. (Edwards, Joshua) (Entered: 08/10/2016) |
| 08/16/2016 | 200 | Letter *requesting extension* as to Syed Imran Ahmed (Orenstein, Karin) (Entered: 08/16/2016) |
| 08/17/2016 | 201 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran |

| | | |
|---|---|---|
| | | Ahmed held on 06-15-2016, before Judge Irizarry. Court Reporter/Transcriber Lisa Schwam, Telephone number 718-613-2268. Email address: LisaSchwam@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/7/2016. Redacted Transcript Deadline set for 9/19/2016. Release of Transcript Restriction set for 11/15/2016. (Schwam, Lisa) (Entered: 08/17/2016) |
| 08/19/2016 | | ORDER as to Syed Imran Ahmed re 200 Letter -- The request is granted and the amended briefing schedule is adopted. Government's memorandum of law is due by Sept. 9, 2016; defendant's response is due Oct. 7, 2016; government's reply is due by Oct. 25, 2016. Oral argument on defendant's Rule 29 and/or 32 motion(s) was previously scheduled for November 18, 2016 at 10:00 AM. If needed, oral argument as to forfeiture will also be heard that day. So Ordered by Chief Judge Dora Lizette Irizarry on 8/19/2016. (Carosella, Christy) (Entered: 08/19/2016) |
| 08/31/2016 | 202 | MOTION for Leave to File Excess Pages by USA as to Syed Imran Ahmed. (Orenstein, Karin) (Entered: 08/31/2016) |
| 09/01/2016 | | ORDER granting 202 Motion for Leave to File Excess Pages as to Syed Imran Ahmed (1) -- On defendant's consent, the government's request for leave to file an oversized brief of 30 pages is granted. Should defendant determine that he requires a similarly sized brief to respond to the government, defendant my do so. The parties are reminded to provide to chambers two hard courtesy copies of their filings, immediately upon filing. SO ORDERED by Chief Judge Dora Lizette Irizarry on 9/1/2016. (Irizarry, Dora) (Entered: 09/01/2016) |
| 09/09/2016 | 203 | MOTION for Forfeiture of Property *and Forfeiture Money Judgment* by USA as to Syed Imran Ahmed. (Attachments: # 1 Exhibit A (Proposed Preliminary Order of Forfeiture), # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit G) (Orenstein, Karin) (Entered: 09/09/2016) |
| 09/09/2016 | 204 | MOTION for Acquittal *Defendant Syed Imran Ahmed's Renewed Motion for a Judgment of Acquittal or In the Alternative a New Trial* by Syed Imran Ahmed. (Andres, Greg) (Entered: 09/09/2016) |
| 10/07/2016 | 206 | MEMORANDUM in Opposition re 203 MOTION for Forfeiture of Property *and Forfeiture Money Judgment* (Attachments: # 1 Exhibit A) (Fodeman, Morris) (Entered: 10/07/2016) |
| 10/14/2016 | 207 | AFFIDAVIT in Opposition re 204 MOTION for Acquittal *Defendant Syed Imran Ahmed's Renewed Motion for a Judgment of Acquittal or In the Alternative a New Trial* (Notopoulos, Patricia) (Entered: 10/14/2016) |
| 10/24/2016 | 208 | REPLY TO RESPONSE to Motion re 203 MOTION for Forfeiture of Property *and Forfeiture Money Judgment* (Orenstein, Karin) (Entered: 10/24/2016) |
| 10/28/2016 | 209 | REPLY TO RESPONSE to Motion re 204 MOTION for Acquittal *Defendant Syed Imran Ahmed's Renewed Motion for a Judgment of Acquittal or In the Alternative a New Trial* (Andres, Greg) (Entered: 10/28/2016) |
| 11/14/2016 | | ORDER as to Syed Imran Ahmed -- In connection with the appearance scheduled for November 18, 2016, the Court will hear oral argument on Defendant's Rule 29 and Rule 33 Motions and the government's forfeiture motion. The parties should be prepared to discuss the following: (i) If the Court accepts the view that 18 US.C. § 1957 requires the government to prove that at least $10,000 of "dirty money" was transmitted through each of the two $1,000,000 transfers, on what evidence does the government rely to meet that requirement? (ii) Relatedly, if the government relies on the modifier 78 analysis to prove |

| | | |
|---|---|---|
| | | strict tracing, are there any scenarios in which a physician can bill properly for one of the eleven CPT Codes in GX 649 plus modifier 78 and no operating room log would be created? (iii) How does the government justify its position that all payments made for the eleven CPT Codes in GX 649 completed on the featured patients are subjecto to forfeiture when evidence was presented at trial, and the government appears to have conceded, that some of the procedures actually were performed and billed properly? The parties should also be prepared to discuss the modifier 78 analysis generally and the appropriateness of extrapolation. SO ORDERED by Chief Judge Dora Lizette Irizarry on 11/14/2016. (Carosella, Christy) Modified on 11/18/2016 (Carosella, Christy). (Entered: 11/14/2016) |
| 11/18/2016 | | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry:Motion Hearing as to Syed Imran Ahmed held on 11/18/2016. *Appearances: AUSAs Turner Buford, Patricia Notopoulos, Debra Jaroslowicz, and Karin Orenstein; CJA attorney Morris Fodeman with Monica Friedman and Sarah Breslow for Syed Ahmed (present/in custody)*. Oral argument heard re motions 203 and 204 ; decision reserved. Briefing re forfeiture of retirement account permitted: Defendant's brief due by Dec. 9, 2016; Government's response due by Jan. 5, 2017.(Court Reporter Michele Nardone.) (Carosella, Christy) (Entered: 11/18/2016) |
| 12/12/2016 | 210 | Letter *re forfeiture of retirement account* as to Syed Imran Ahmed (Fodeman, Morris) (Entered: 12/12/2016) |
| 04/25/2017 | 211 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on 1-29-16, before Judge Irizarry. Court Reporter/Transcriber M.Nardone, Telephone number 718-613-2601. Email address: mishrpr@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 5/16/2017. Redacted Transcript Deadline set for 5/26/2017. Release of Transcript Restriction set for 7/24/2017. (Nardone, Michele) (Entered: 04/25/2017) |
| 07/19/2017 | 212 | Letter *re a recent Second Circuit decision that bears directly on Dr. Ahmeds Renewed Motion for a Judgment of Acquittal or in the Alternative a New Trial (Dkt. No. 204)* as to Syed Imran Ahmed (Attachments: # 1 Exhibit A) (Fodeman, Morris) (Entered: 07/19/2017) |
| 07/25/2017 | 213 | ORDER granting in part and denying in part Government's 203 Motion for Forfeiture of Property as to Syed Imran Ahmed (1); and denying Defendant's 204 Motion for Acquittal as to Syed Imran Ahmed (1) --- For the reasons set forth in the ATTACHED OPINION AND ORDER, Defendant's Motion for a new trial or verdict of acquittal is denied in its entirety and the Government's Motion for forfeiture is granted, in part. The Court finds the Defendant is liable for and must forfeit at least $3,090,044.10, which represents the entire amount sought by the government for the Class I and Class II Claims. The Court will determine the additional amount Defendant must forfeit, if any, at the time of sentencing. As set forth in this Court's Opinion and Order in Discussion § II.C.2.c, at pp. 38-43, the parties' sentencing submissions shall address the concerns raised by the Court regarding the governments calculation of the Class III forfeiture amount. A sentencing scheduling order will issue separately. SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/25/2017. (Irizarry, Dora) (Entered: 07/25/2017) |
| 07/25/2017 | | ORDER as to Syed Imran Ahmed -- The parties are directed to jointly file NO LATER THAN AUGUST 4, 2017, a briefing schedule regarding the Class III Forfeiture Claims as discussed in this Court's Opinion and Order issued today. A separate sentencing scheduling order (including the disclosure of the Presentence Report) shall issue shortly. |

| | | SO ORDERED by Chief Judge Dora Lizette Irizarry on 7/25/2017. (Irizarry, Dora) (Entered: 07/25/2017) |
|---|---|---|
| 07/26/2017 | 214 | Letter MOTION to Withdraw as Attorney by Greg D. Andres. by Syed Imran Ahmed. (Andres, Greg) (Entered: 07/26/2017) |
| 07/27/2017 | | ORDER granting 214 Motion to Withdraw as Attorney. Greg D. Andres withdrawn from case as to Syed Imran Ahmed (1). So Ordered by Chief Judge Dora Lizette Irizarry on 7/27/2017. (Carosella, Christy) (Entered: 07/27/2017) |
| 07/27/2017 | | ORDER SETTING SENTENCING SCHEDULE as to Syed Imran Ahmed: The Probation Department shall disclose the presentence report ("PSR") on or before November 8, 2017. Sentencing is scheduled for January 12, 2018 at 10:00 AM in courtroom 4 A South. Counsel are directed to my *Standard Requirements for Criminal Cases* (available on the EDNY website) for procedures and deadlines for submission of PSR objections and other sentencing memoranda and/or motions. Counsel must advise the Probation Department and the Court in writing if there are no PSR objections. A written response to any submitted objections is required from opposing counsel. Questions concerning these requirements are directed to the courtroom deputy. So Ordered by Chief Judge Dora Lizette Irizarry on 7/27/2017. (Carosella, Christy) (Entered: 07/27/2017) |
| 08/04/2017 | 215 | Letter *re. parties' proposed briefing schedule* as to Syed Imran Ahmed (Orenstein, Karin) (Entered: 08/04/2017) |
| 08/10/2017 | | ORDER as to Syed Imran Ahmed re 215 Letter -- The government's motion shall be filed by September 1, 2017. Defendant's response shall be filed by September 29, 2017. The parties are reminded to provide two hard courtesy copies of their papers to chambers promptly. So Ordered by Chief Judge Dora Lizette Irizarry on 8/10/2017. (Carosella, Christy) (Entered: 08/10/2017) |
| 08/17/2017 | | ORDER as to Syed Imran Ahmed -- The presentence report ("PSR") was prepared by Supervisory U.S. Probation Officer Frank Marcigliano on August 16, 2017. Please note that sentencing is scheduled for January 12, 2018 at 10:00 AM in courtroom 4A South. Counsel are directed to my *Standard Requirements for Criminal Cases* (available on the EDNY website) for procedures and deadlines for submission of PSR objections and other sentencing memoranda and/or motions. If there are no PSR objections, counsel must so advise the Probation Department and the Court in writing. Opposing counsel must respond to any PSR objections that are submitted; response must be made in writing within fourteen days. The Government's sentencing submission shall be filed fourteen day in advance of sentencing. Defendant's sentencing submission shall be filed seven days in advance of sentencing. Counsel are reminded not to include the date of sentencing in calculating the due dates for their submissions. Questions concerning these requirements are directed to my courtroom deputy. So Ordered by Chief Judge Dora Lizette Irizarry on 8/17/2017. (Carosella, Christy) (Entered: 08/17/2017) |
| 08/28/2017 | 217 | MOTION for Extension of Time to File *Dr. Ahmeds objections to the Presentence Report (PSR)* by Syed Imran Ahmed. (Fodeman, Morris) (Entered: 08/28/2017) |
| 08/30/2017 | | ORDER granting 217 Motion for Extension of Time to File as to Syed Imran Ahmed (1)-- However, there is no need for a delay by the government in submitting its objections, which are due by August 30, 2017. In this way, defense counsel may also respond to the government's objections in its submission of September 13, 2017. So Ordered by Chief Judge Dora Lizette Irizarry on 8/30/2017. (Carosella, Christy) (Entered: 08/30/2017) |
| 09/01/2017 | 218 | MOTION for Forfeiture of Property *(Forfeiture Money Judgment)* by USA as to Syed Imran Ahmed. (Attachments: # 1 Proposed Order Preliminary Order of Forfeiture, # 2 |

| | | |
|---|---|---|
| | | Declaration HHS Investigator Susan G. O'Connor) (Orenstein, Karin) (Entered: 09/01/2017) |
| 09/11/2017 | 219 | NOTICE OF ATTORNEY APPEARANCE: Martine M. Beamon appearing for Syed Imran Ahmed (Beamon, Martine) (Entered: 09/11/2017) |
| 09/13/2017 | 220 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Syed Imran Ahmed (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Fodeman, Morris) (Entered: 09/13/2017) |
| 09/29/2017 | 221 | RESPONSE in Opposition re 218 MOTION for Forfeiture of Property *(Forfeiture Money Judgment)* (Fodeman, Morris) (Entered: 09/29/2017) |
| 10/17/2017 | | ORDER as to Syed Imran Ahmed --- Defendant's opposition 221 to the government's motion for forfeiture 218 references, but does not include as attachments, portions of voluminous trial exhibits. In particular, there are references to Government Exhibit 77, which is a compact disc containing thousands of documents. Defendant shall file via ECF and submit two courtesy copies to chambers of the relevant portions of any exhibits referenced in his opposition (Dkt. No. 221) NO LATER THAN October 24, 2017. The government shall file a reply to defendant's opposition NO LATER THAN October 31, 2017, providing two hard courtesy copies to chambers immediately upon filing. SO ORDERED by Chief Judge Dora Lizette Irizarry on 10/17/2017. (Irizarry, Dora) (Entered: 10/17/2017) |
| 10/24/2017 | 223 | Letter *to The Honorable Dora L. Irizarry respectfully responding to the Court's order dated October 17, 2017* as to Syed Imran Ahmed (Attachments: # 1 Exhibit GX 10, # 2 Exhibit GX 12, # 3 Exhibit GX 20, # 4 Exhibit GX 21, # 5 Exhibit GX 22, # 6 Exhibit GX 31, # 7 Exhibit GX 77, # 8 Exhibit GX 82, # 9 Exhibit GX 83) (Fodeman, Morris) (Entered: 10/24/2017) |
| 10/30/2017 | 224 | REPLY TO RESPONSE to Motion re 218 MOTION for Forfeiture of Property *(Forfeiture Money Judgment) in reply to 221* (Attachments: # 1 Exhibit A - Proposed Order of Forfeiture (revised), # 2 Exhibit B - Patient L.C. claims, # 3 Exhibit C - 2010 claims) (Orenstein, Karin) (Entered: 10/30/2017) |
| 12/28/2017 | 227 | SENTENCING MEMORANDUM by USA as to Syed Imran Ahmed (Buford, Frank) (Entered: 12/28/2017) |
| 01/02/2018 | 228 | Letter MOTION for Leave to Electronically File Document under Seal *Letter to The Honorable Dora L. Irizarry respectfully requesting leave to file Dr. Ahmed's Sentencing Memorandum and certain supporting exhibits under seal* by Syed Imran Ahmed. (Fodeman, Morris) (Entered: 01/02/2018) |
| 01/02/2018 | 229 | Letter *re Restitution for Supplemental Insurance Programs* as to Syed Imran Ahmed (Buford, Frank) (Entered: 01/02/2018) |
| 01/03/2018 | | ORDER as to Syed Imran Ahmed re 228 Letter MOTION for Leave to Electronically File Document under Seal *Letter to The Honorable Dora L. Irizarry respectfully requesting leave to file Dr. Ahmed's Sentencing Memorandum and certain supporting exhibits under seal* filed by Syed Imran Ahmed -- The request is granted. Counsel must also file a redacted version via ECF. So Ordered by Chief Judge Dora Lizette Irizarry on 1/3/2018. (Carosella, Christy) (Entered: 01/03/2018) |
| 01/05/2018 | 230 | SENTENCING MEMORANDUM by Syed Imran Ahmed (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Grealis Declaration, # 25 Grealis Declaration - Ex A, # 26 Grealis Declaration - Ex B, # |

| | | |
|---|---|---|
| | | 27 Grealis Declaration - Ex C, # 28 Grealis Declaration - Ex D, # 29 Shickle Report, # 30 Swegman Declaration) (Fodeman, Morris) (Entered: 01/05/2018) |
| 01/08/2018 | | ORDER as to Syed Imran Ahmed re 229 Letter -- At sentencing on Friday, January 12, 2018, the Court will set a deadline for the Government's submission of precise loss amounts incurred by the Supplemental Insurance Programs. Ordered by Chief Judge Dora Lizette Irizarry on 1/8/2018. (Carosella, Christy) (Entered: 01/08/2018) |
| 01/11/2018 | | ORDER as to Syed Imran Ahmed re 231 -- The request to file this letter under seal is granted. So Ordered by Chief Judge Dora Lizette Irizarry on 1/11/2018. (Carosella, Christy) (Entered: 01/11/2018) |
| 01/16/2018 | | NOTICE OF HEARING as to Syed Imran Ahmed: Sentencing rescheduled for February 5, 2018 at 11:00 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Carosella, Christy) (Entered: 01/16/2018) |
| 01/17/2018 | 232 | ORDER granting 218 Motion for Forfeiture of Property as to Syed Imran Ahmed -- For the reasons set forth in the ATTACHED WRITTEN SUMMARY ORDER, the government's forfeiture motion is granted. The Court finds that the Defendant is liable for and must forfeit $4,175,964.85, which represents the entire revised amount sought by the government for the Class III Claims, and brings the total amount of forfeiture for Class I, Class II, and Class III Claims to $7,266,008.95. SO ORDERED by Chief Judge Dora Lizette Irizarry on 1/17/2018. (Irizarry, Dora) (Entered: 01/17/2018) |
| 01/17/2018 | | ORDER as to Syed Imran Ahmed re 229 Letter --- By letter dated January 2, 2018, the government requests additional time to calculate further restitution figures based on the precise loss amounts experienced by the Supplemental Insurance Programs. As an initial matter, the Court is at a loss as to why the government has not calculated this restitution amount given that the investigation of this case began in 2013 and the trial of this matter was held in 2016. The government has had all relevant information at its disposal for years. The government shall provide to the Court, defense counsel, and probation the Supplemental Insurance Programs' loss amounts **NO LATER THAN January 29, 2018 and shall indicate its position as to what effect, if any, the Supplemental Insurance Programs' losses have on the calculation of the total loss figure and defendant's offense level under the sentencing guidelines.** Two hard copies of the government's filing shall be provided to chambers promptly upon filing. SO ORDERED by Chief Judge Dora Lizette Irizarry on 1/17/2018. (Irizarry, Dora) (Entered: 01/17/2018) |
| 01/17/2018 | 233 | PRELIMINARY ORDER OF FORFEITURE as to Syed Imran Ahmed. So Ordered by Chief Judge Dora Lizette Irizarry on 1/17/2018. (Carosella, Christy) (Entered: 01/17/2018) |
| 01/25/2018 | | NOTICE OF HEARING as to Syed Imran Ahmed: Sentencing rescheduled for February 7, 2018 at 10:00 AM in Courtroom 4 A South before Chief Judge Dora Lizette Irizarry. (Carosella, Christy) (Entered: 01/25/2018) |
| 01/29/2018 | 234 | Letter *re Restitution for Supplemental Insurance Programs* as to Syed Imran Ahmed (Buford, Frank) (Entered: 01/29/2018) |
| 02/06/2018 | 236 | Letter *re Updated Loss Amount for Supplemental Insurance Provider* as to Syed Imran Ahmed (Buford, Frank) (Entered: 02/06/2018) |
| 02/07/2018 | 237 | Minute Entry for proceedings held before Chief Judge Dora Lizette Irizarry:SENTENCING held on 2/7/2018 for Syed Imran Ahmed (1).COUNT 1: 96 months in custody. RESTITUTION: $7,266,008.95, due immediately and payable at the rate of $25 per quarter while in custody and 10% of gross income per month while on supervised release. Interest is not waived. COUNT 2: 5 years in custody to run concurrently to the term imposed on count 1.COUNTS 3 and 4: 5 years in custody per |

count, to run concurrently to each other and concurrently to the terms imposed on counts 1 and 2. COUNTS 5 and 6: 60 months in custody per count, to run concurrently to each other and consecutively to the terms imposed on counts 1 through 4. SUPERVISED RELEASE: 3 years on each count (all to run concurrently) with special conditions. FINE: $20,000, due immediately and payable at the rate of $25 per quarter while in custody and 10% of gross income per month while on supervised release; interest is waived as to the fine. SPECIAL ASSESSMENTS: $100 per count, for a total of $600. FORFEITURE: See Court's Order of Jan. 17, 2018, a copy of which will be attached to the judgment. (Court Reporter David Roy.) (Williams, Erica) (Entered: 02/08/2018)

| Date | No. | Description |
|---|---|---|
| 02/14/2018 | 238 | JUDGMENT as to Syed Imran Ahmed (1), Count(s) 1, COUNT 1: 96 months in custody; COUNT(S) 2, 3 and 4: 60 months in custody to run concurrently to one another and the term imposed on count 1. COUNT(S) 5 and 6: 60 months in custody on each count, to run concurrently to one other and consecutively to the terms imposed on counts 1 through 4. SUPERVISED RELEASE: 3 years on each count 1-6 (to run concurrently) with Special Conditions Of Supervision. TOTAL SPECIAL ASSESSMENT: $100 per count, for a TOTAL of $600. RESTITUTION: $7,266,008.95, due immediately and payable at the rate of $25 per quarter while in custody and 10% of gross income per month while on supervised release. Interest is not waived. FINE: $20,000, due immediately and payable at the rate of $25 per quarter while in custody and 10% of gross income per month while on supervised release; interest is waived as to the fine. RECOM. TO BOP: Designation to a facility in/near Michigan; and participation in RDAP. Ordered by Chief Judge Dora Lizette Irizarry on 2/12/2018. (Layne, Monique) (Entered: 02/14/2018) |
| 02/26/2018 | 240 | NOTICE OF APPEAL by Attorney for Syed Imran Ahmed re 238 Judgment entered 2/14/18. No fee paid. Appellant represented by CJA Counsel. Service done electronically. (Fodeman, Morris) Modified on 2/26/2018 to reflect fee status and service. (McGee, Mary Ann). (Entered: 02/26/2018) |
| 02/26/2018 | | Electronic Index to Record on Appeal as to Syed Imran Ahmed sent to US Court of Appeals 240 Notice of Appeal - Final Judgment, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 02/26/2018) |
| 03/05/2018 | 241 | Certificate of Service by USA as to Syed Imran Ahmed *Notice to potential claimants was served on January 18, 2018 and was re-served on February 15, 2018.* (Orenstein, Karin) (Entered: 03/05/2018) |
| 03/28/2018 | 243 | Letter to The Honorable Dora L. Irizarry as to Syed Imran Ahmed. (Williams, Erica) (Entered: 03/28/2018) |
| 04/04/2018 | 244 | MOTION to Amend/Correct 233 Order for Forfeiture of Property by USA as to Syed Imran Ahmed. (Attachments: # 1 Proposed Order Amended Preliminary Order of Forfeiture) (Orenstein, Karin) (Entered: 04/04/2018) |
| 04/04/2018 | 245 | MOTION for Forfeiture of Property *as Substitute Assets* by USA as to Syed Imran Ahmed. (Attachments: # 1 Declaration - Declaration of Special Agent David Lee, # 2 Proposed Order - Preliminary Order of Forfeiture of Substitute Assets) (Orenstein, Karin) (Entered: 04/04/2018) |
| 04/12/2018 | 246 | Certificate of Service by USA as to Syed Imran Ahmed *Affidavit of publication, legal notice was published on the official government website, www.forfeiture.gov, beginning on March 13, 2018 and ending on April 11, 2018.* (Orenstein, Karin) (Entered: 04/12/2018) |
| 04/26/2018 | 247 | MOTION for Forfeiture of Property by USA as to Syed Imran Ahmed. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Proposed Order (revised Amended Order of Forfeiture)) (Orenstein, Karin) (Entered: 04/26/2018) |
| 05/07/2018 | 248 | ORDER granting 247 Motion for Forfeiture of Property as to Syed Imran Ahmed (1). The government is directed to serve a copy of this Order on Defendant no later than May 16, 2018 and file proof of service with the Court. So Ordered by Chief Judge Dora Lizette Irizarry on 5/2/2018. (C/M). (Williams, Erica) (Entered: 05/07/2018) |
| 05/16/2018 | 249 | Certificate of Service by USA as to Syed Imran Ahmed *Notice to potential claimant was served on May 8, 2018* (Orenstein, Karin) (Entered: 05/16/2018) |
| 05/16/2018 | 250 | Letter *regarding the government's efforts to serve legal documents* as to Syed Imran Ahmed (Attachments: # 1 Exhibit A (certificate of service)) (Orenstein, Karin) (Entered: 05/16/2018) |
| 05/21/2018 | | ORDER STAYING TIME TO FILE NOTICE OF CLAIM -- In light of the difficulties the government has encountered in serving process upon defendant while he is transitioning to his designated Bureau of Prisons ("BOP") facility, the deadline by which defendant must file a notice of claim in the civil forfeiture proceeding is adjourned sine die. The government is directed to remain in contact with BOP and advise the Court when defendant has arrived at his designated facility and can receive service by mail, at which time the Court will enter an order setting an appropriate deadline for defendant's response. The Court finds that there is no prejudice to the government in extending the time in which defendant must respond. SO ORDERED by Chief Judge Dora Lizette Irizarry on 5/21/2018. (Carosella, Christy) (Entered: 05/21/2018) |
| 05/24/2018 | 254 | Letter dated 5/21/2018 to Chief Judge Irizarry, from Syed Imran Ahmed, informing the Court that he is in a transit facility and has not been receiving any mail since 04/23/2018, causing him to not be able to respond. (Williams, Erica) (Entered: 05/31/2018) |
| 05/29/2018 | 251 | TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on May 8, 2015, before Judge Irizarry. Court Reporter/Transcriber Sherry Bryant. Email address: sherryjb102@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/19/2018. Redacted Transcript Deadline set for 6/29/2018. Release of Transcript Restriction set for 8/27/2018. (Hong, Loan) (Entered: 05/29/2018) |
| 05/29/2018 | 252 | TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on June 27, 2016, before Judge Irizarry. Court Reporter/Transcriber Sherry Bryant. Email address: sherryjb102@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/19/2018. Redacted Transcript Deadline set for 6/29/2018. Release of Transcript Restriction set for 8/27/2018. (Hong, Loan) (Entered: 05/29/2018) |
| 05/31/2018 | 253 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on February 7, 2018, before Judge Dora L. Irizarry. Court Reporter/Transcriber David R. Roy, Telephone number (718) 613-2609. Email address: drroyofcr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other |

| | | Documents". Redaction Request due 6/21/2018. Redacted Transcript Deadline set for 7/2/2018. Release of Transcript Restriction set for 8/29/2018. (Roy, David) (Entered: 05/31/2018) |
|---|---|---|
| 05/31/2018 | [255](#) | Letter *regarding the defendant's arrival at his designated BOP facility* as to Syed Imran Ahmed (Orenstein, Karin) (Entered: 05/31/2018) |
| 06/08/2018 | [256](#) | Certificate of Service by USA as to Syed Imran Ahmed *regarding June 1, 2018 Letter to Mr. Ahmed* (Orenstein, Karin) (Entered: 06/08/2018) |
| 06/11/2018 | [257](#) | Certificate of Service by USA as to Syed Imran Ahmed *Affidavit of publication, legal notice was published on the official government website, www.forfeiture.gov beginning on May 10, 2018 and ending on June 8, 2018.* (Orenstein, Karin) (Entered: 06/11/2018) |
| 08/03/2018 | [258](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Syed Imran Ahmed held on 04-08-2015, before Judge DLI. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/24/2018. Redacted Transcript Deadline set for 9/3/2018. Release of Transcript Restriction set for 11/1/2018. (Mace, Stacy) (Entered: 08/03/2018) |
| 10/22/2018 | [259](#) | Certificate of Service by USA as to Syed Imran Ahmed *Notice to the addresses designated for service by the New York Department of State, Division of Corporation's database was mailed on July 27, 2018* (Orenstein, Karin) (Entered: 10/22/2018) |
| 10/24/2018 | [260](#) | MOTION for Forfeiture of Property by USA as to Syed Imran Ahmed. (Attachments: # [1](#) Proposed Order - Final Order of Forfeiture) (Orenstein, Karin) (Entered: 10/24/2018) |
| 10/30/2018 | [261](#) | FINAL ORDER OF FORFEITURE, granting [260](#) Motion for Forfeiture of Property as to Syed Imran Ahmed (1). Ordered by Chief Judge Dora Lizette Irizarry on 10/29/2018. (4) certified copies of the attached Order sent via inter-office mail, to FSA Law Clerk Elizabeth Valeriane, at the US Attorney's Office. (Layne, Monique) (Entered: 10/30/2018) |
| 11/08/2018 | [262](#) | Seizure Warrant Returned Executed in case as to Syed Imran Ahmed. Date Of Service: Nov. 6, 2018, served on USMS.CATS ID 14-FBI-004415 ($142,299.73); CATS ID 14-FBI-004414 ($288,520.00); CATS ID 14-FBI-004418 ($20,889.12) CATS ID 14-FBI-004413 ($529,996.08) CATS ID 14-FBI-004411 ($5,715.18). these payments should be credited to the FMJ $7,266,008.95 CATS ID 18-FBI-001445. (Layne, Monique) (Entered: 11/08/2018) |
| 11/30/2018 | [263](#) | Letter *clarifying status of parallel forfeiture proceedings* as to Syed Imran Ahmed (Orenstein, Karin) (Entered: 11/30/2018) |
| 09/30/2019 | [264](#) | PRELIMINARY ORDER OF FORFEITURE OF SUBSTITUTE ASSESTS, granting [245](#) Motion for Forfeiture of Property as to Syed Imran Ahmed (1). ORDERED, ADJUDGED AND DECREED : 1. The Substitute Accounts are hereby forfeited by the defendant as substitute assets pursuant to 21 U.S.C SEC. 853(p). 2. The Substitute Accounts shall be applied towards the balance owed on the Forfeiture Money Judgment. (SEE attached order for details). Ordered by Chief Judge Dora Lizette Irizarry on 9/27/2019. 5 cert. copies of the attached Order sent inter-off. mail to the U.S. Atty's Office, Attn: FSA Paralegal, Elizabeth Valeriane. (Layne, Monique) (Entered: 09/30/2019) |
| 02/13/2020 | [265](#) | ORDER of USCA (certified copy) as to Syed Imran Ahmed re [240](#) Notice of Appeal - |

| | | |
|---|---|---|
| | | Final Judgment. It is Ordered the judgment of the District Court is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this Order. See document for further details. Certified Copy Issued: 2/13/20. USCA #18-550-cr. Please Note that the USCA Mandate has not yet been issued. (McGee, Mary Ann) (Entered: 02/13/2020) |
| 02/21/2020 | 266 | CJA 20 as to Syed Imran Ahmed: Appointment of Attorney Donna R. Newman for Syed Imran Ahmed. So Ordered by Judge Dora Lizette Irizarry on 2/20/2020. (Almonte, Giselle) (Entered: 02/21/2020) |
| 02/24/2020 | 267 | NOTICE OF ATTORNEY APPEARANCE: Donna R. Newman appearing for Syed Imran Ahmed (Newman, Donna) (Entered: 02/24/2020) |
| 02/24/2020 | 268 | MOTION for Extension of Time to File *Memorandum Regarding Imposition of Fine* by Syed Imran Ahmed. (Newman, Donna) (Entered: 02/24/2020) |
| 02/26/2020 | | ORDER granting 268 Motion for Extension of Time to File as to Syed Imran Ahmed (1) -- The proposed briefing schedule is approved. Accordingly, defendant's brief is due on or before March 16, 2020; Government's response is due on or before March 30, 2020; defendant's reply is due on or before April 6, 2020. Two hard courtesy copies of all submissions must be provided to chambers promptly. So Ordered by Judge Dora Lizette Irizarry on 2/26/2020. (Carosella, Christy) (Entered: 02/26/2020) |
| 02/26/2020 | | Set/Reset Deadlines re Motion or Report and Recommendation in case as to Syed Imran Ahmed: Motion due by 3/16/2020; response due by 3/30/2020; reply due by 4/6/2020. (Carosella, Christy) (Entered: 02/26/2020) |
| 02/27/2020 | 269 | MOTION for Extension of Time to File *Memorandum of Law in Support of Defendant's Position with Respect to Imposition of a Fine* by Syed Imran Ahmed. (Newman, Donna) (Entered: 02/27/2020) |
| 02/28/2020 | | ORDER granting 269 Motion for Extension of Time to File as to Syed Imran Ahmed (1). The revised briefing schedule is approved. Two hard courtesy copies of all submissions must be provided to chambers promptly. So Ordered by Judge Dora Lizette Irizarry on 2/28/2020. (Carosella, Christy) (Entered: 02/28/2020) |
| 02/28/2020 | | Reset Deadlines re Motion or Report and Recommendation in case as to Syed Imran Ahmed: Defendant's Motion due by 5/18/2020; Government's response due by 6/1/2020; Defendant's reply due by 6/8/2020. (Carosella, Christy) (Entered: 02/28/2020) |
| 03/09/2020 | 270 | Seizure Warrant Returned Executed in case as to Syed Imran Ahmed. Served 2/24/2020 on USMS. $482,217.000 tranf. to AFF. (Layne, Monique) (Entered: 03/09/2020) |
| 05/04/2020 | 271 | MANDATE of USCA (certified copy) as to Syed Imran Ahmed. It is Ordered that we VACATE the fine, AFFIRM the judgment of the District Court in all other respects, and REMAND to the District Court to amend the Statement of Reasons and to reconsider the amount of the fine. See document for further details. Issued as Mandate: 5/4/20. USCA #18-550-cr. (McGee, Mary Ann) (Entered: 05/04/2020) |
| 05/14/2020 | 272 | MOTION for Extension of Time to File *Defendant's Position on the Imposition of a Fine* by Syed Imran Ahmed. (Newman, Donna) (Entered: 05/14/2020) |
| 05/14/2020 | | ORDER granting 272 Motion for Extension of Time to File as to Syed Imran Ahmed (1) -- Defendant's motion shall be filed by June 9, 2020; the Government's response shall be filed by June 23, 2020; Defendant's reply shall be filed by June 30, 2020. So Ordered by Judge Dora Lizette Irizarry on 5/14/2020. (Carosella, Christy) (Entered: 05/14/2020) |
| 05/14/2020 | | Attorney update in case as to Syed Imran Ahmed: Attorneys Catherine Sara Grealis, Sarah Breslow, and Morris J. Fodeman terminated. (Carosella, Christy) (Entered: |

| | | 05/14/2020) |
|---|---|---|
| 05/14/2020 | | Attorney update in case as to Syed Imran Ahmed: Attorneys Martine M. Beamon and Monica Ann Friedman terminated. (Carosella, Christy) (Entered: 05/14/2020) |
| 05/14/2020 | | Set/Reset Deadlines re Motion or Report and Recommendation in case as to Syed Imran Ahmed: Motion due by 6/9/2020. Response due by 6/23/2020 Reply due by 6/30/2020. (Carosella, Christy) (Entered: 05/14/2020) |
| 05/20/2020 | 273 | Certificate of Service by USA as to Syed Imran Ahmed *Affidavit of publication, leagal notice was given on the official government website www.forfeiture.gov, starting on February 21, 2020 and ending on March 21, 2020.* (Orenstein, Karin) (Entered: 05/20/2020) |
| 05/21/2020 | 274 | Certificate of Service by USA as to Syed Imran Ahmed *Notice of Forfeiture and the Preliminary Order of Forfeiture of Substitute Assets was mailed to potential claimant on November 7, 2019* (Orenstein, Karin) (Entered: 05/21/2020) |
| 05/26/2020 | 275 | MOTION for Forfeiture of Property *(Substitute Assets)* by USA as to Syed Imran Ahmed. (Attachments: # 1 Proposed Order Final Order of Forfeiture of Substitute Assets) (Orenstein, Karin) (Entered: 05/26/2020) |
| 05/27/2020 | 276 | FINAL ORDER OF FORFEITURE OF SUBSITUTE ASSETS as to Syed Imran Ahmed (1). So Ordered by Judge Dora Lizette Irizarry on 5/27/2020. (Carosella, Christy) (Entered: 05/27/2020) |
| 06/09/2020 | 277 | Letter MOTION to Reduce Sentence *(to Impose No Fine On Resentencing)* by Syed Imran Ahmed. (Newman, Donna) (Entered: 06/09/2020) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/22/2020 18:43:52 | | | |
| **PACER Login:** | duanemorris | **Client Code:** | 99999-00091 |
| **Description:** | Docket Report | **Search Criteria:** | 1:14-cr-00277-DLI |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# EXHIBIT 4



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

WPC/FTB
F. #2013R01395

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 26, 2014

By Hand and ECF

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

Re:     United States v. Syed Imran Ahmed
        Criminal Docket No. 14-277 (DLI)

Dear Judge Irizarry:

The government respectfully submits this letter to reply briefly to defense counsel's June 20, 2014 letter to the Court regarding the Bureau of Prison's ("BOP") TRULINCS email system.

First, although he never directly addresses the issue, counsel does not argue in his letter that TRULINCS emails are privileged.  Letter of Moe Fodeman dated June 20, 2014 (hereinafter "Fodeman Ltr.") at 1 (contending that the government should not obtain his emails "[r]egardless of whether such communications qualify for protection under the attorney-client privilege").  The government appears to have misunderstood counsel's prior communication on that point.  Thus it seems the parties agree there exists neither a legal nor a factual basis to contend that emails sent over TRULINCS are privileged.

Second, defense counsel essentially asks this Court to modify the BOP's administration of the nationwide TRULINCS system so that it can become a vehicle for privileged communication.  Counsel asks that the government be ordered to segregate out attorney-client emails, contending that the process should consist of the "simple" task of "sorting Dr. Ahmed's emails by sender and recipient," which "should take a matter of minutes and hardly needs a team of additional [AUSAs] to accomplish."  Fodeman Ltr. at 3.  In point of fact, segregating out attorney-client emails from TRULINCS is not so simple.  In fact, it is quite burdensome, further evidence of the fact that the TRULINCS system was never designed or intended to be used for privileged attorney-client communications.[1]  Rather than prevailing upon

---

[1] Even if this type of segregation were possible, one can only imagine what defense counsel would say if the government implemented the "seemingly insignificant" review

this Court to address what he believes to be a problem with the nationwide TRULINCS systems, perhaps counsel could raise these issues with the BOP, the institution that researched, instituted and monitors the current system.

Third, any attempt to claim that the Sixth Amendment somehow demands the right to unmonitored email communication is fatally undermined by the program's recent adoption and conditional nature. See BOP Program Statement No. P5265.13, available at http://www.bop.gov/ ("Use of TRULINCS is a privilege; therefore, the Warden or an authorized representative may limit or deny the privilege of a particular inmate . . . ." (emphasis added)). The existing set of communication channels available to defendants to communicate confidentially with counsel -- unmonitored visits, unmonitored phone calls, monitored phone calls, regular mail -- was sufficient to satisfy the Sixth Amendment before the recent creation of TRULINCS, and they are similarly sufficient now, notwithstanding defense counsel's recent difficulties with the Metropolitan Detention Center.[2]

Fourth, defense counsel suggests that the government is motivated by a desire to read his emails with Dr. Ahmed. Fodeman Ltr. at 3 (arguing that despite contending that it is not seeking a strategic advantage, the government "has offered no rational basis for its position" that it may obtain attorney-client email). It is not. The government's position is motivated by the following rational bases: the law governing attorney-client privilege, the explicit notice given to every user of the TRULINCS system that the emails are monitored, and the need to refrain from wasting valuable resources by firewall reviewing emails that are not and never were privileged.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   /s/ F. Turner Buford
      F. Turner Buford
      Trial Attorney
      (718) 254-6483

cc:   Moe Fodeman, Esq. (by ECF)

---

process he proposes, spending a "matter of minutes" segregating out emails between defense counsel and his client based on a search for specific senders and recipients, only to have substantive emails between Dr. Ahmed and a defense investigator, or a paralegal, or an outside attorney from whom Dr. Ahmed was seeking legal advice, sent to the trial team because these third parties and their email addresses were unknown to the government.

[2] When obtaining recorded telephone calls, government routinely asks the BOP not to send it monitored attorney-client telephone calls despite the fact that such telephone calls are not privileged communications. The BOP does not have the capacity to conduct such segregation with its email productions.

# EXHIBIT 5

19QJSAAC                          Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                          S1 11 Cr. 111 NRB

MAROUN SAADE, et al.,

         Defendants.

------------------------------x

                              September 26, 2011
                              12:20 p.m.

Before:

               HON. NAOMI REICE BUCHWALD,

                         District Judge

19QJSAAC                        Conference

1          (In open court)

2          THE COURT:  Everyone should sit down, please.

3          (Case called)

4          THE COURT:  Can I get a status update.

5          MR. EVERDELL:  Yes, your Honor.

6          When we were last before the court, we had a

7   discussion about the status of discovery.  Let me report on

8   that to the court.  At this point, the government has now

9   produced all of the electronic media that was seized in

10  connection with the case to defense counsel.  Those are

11  forensic images, forensic copies, otherwise known as mirror

12  images of those devices.  Those have been produced along with a

13  program that we gave to defense counsel to be able to view

14  those images and search through them.

15          We are now in the process, the remaining items really

16  are the draft transcripts that we have begun producing of the

17  phone calls and meetings.  Those are being produced on a

18  rolling basis.  We have already produced a large number of

19  those.  We still have one group of phone calls left to be sent

20  out.  That is about 200 hours of phone calls to be sent out to

21  make draft transcripts of and two meetings.  Those will be sent

22  out in short order.  When those come back, we'll produce those

23  draft transcripts and then we'll be done with producing the

24  draft transcripts.

25          We have also made a production of some other materials

1    this morning to all defense counsel, but really the bulk that

2    remains is the draft transcripts which we are in the process of

3    producing.

4            THE COURT:  I guess there are two questions:

5            One is, are there any issues with respect to,

6    systematic issues related to the discovery so far; and

7            Secondly, how long do defense counsel need to continue

8    to review this material before you want to come back?

9            MR. STEIN:  Judge, I suspect on the systematic

10   question, although I spoke with the government earlier, the

11   computer images that Mr. Everdell was referring to have been

12   produced for us on a hard drive which can't be sent to the MDC.

13           So the government has informed us that they're going

14   to hopefully be able to work out something with the MDC so that

15   the computer information can be available to the clients as

16   well as to us and at this point it is not available to them.

17           MR. EVERDELL:  Your Honor, to follow up on that, we

18   have been talk talking to MDC about this issue.  We are still

19   working it out.  Obviously, we know the defendants need copies

20   of these.  We will get that done as soon as possible.  In the

21   meantime we have suggested to defense counsel if there are

22   specific items that they'd like their clients to see out of

23   this rather large amount of discovery, then they can burn that

24   onto a disc and those can go to the MDC.

25           We can assist with that process, but it will be

1    helpful if there are certain items they know about, that they

2    would like their clients to look at, we can certainly get those

3    quickly by simply burning them onto a disk.

4              THE COURT:  They might not want you to know what

5    they're most interested in.

6              MR. EVERDELL:  They can do it themselves.  We offer

7    the assistance if they want to accept it.

8              THE COURT:  Do you have any other systematic problems?

9              Hearing none, let's move on to when we should get back

10   together.  I will await suggestions.

11             MR. GINSBERG:  We can't know for sure based on the

12   government's -- what the timing is going to be.  Until we get

13   the bulk of the transcripts and frankly, in this case, it is

14   different for sort of each group of defendants.  If we get

15   transcripts that relate to the narcotics transactions first,

16   that may be helpful to some of the lawyers but not to the other

17   group of lawyers, so it sounds to me like coming back before 60

18   days would not make any sense.

19             It sounds to me like given the amount of transcripts

20   we are talking about, and some of them have not yet been sent

21   out yet for transcription, so there is time to do that, to make

22   the transcripts and get them to us and for us to review them

23   with our clients before we're in a position to intelligently

24   tell the court that we have reviewed everything and we are in a

25   position to advise the court about any kind of motion schedule

19QJSAAC                    Conference

1    or any additional discovery problems that may arise.

2              It seems to me we need at least that amount of time.

3              MR. EVERDELL:  Your Honor, if I could just expand upon

4    my comments before so it is clear.  The draft transcripts that

5    I was referring to, almost all of them have been produced

6    already at this point.  There are those three items, the 200

7    hours worth of phone calls and the two meetings which still do

8    need to be sent out to get draft transcripts created.  What has

9    already sent out, we produced.  The last batch of that we

10   handed over to defense counsel today.

11             So they have a substantial amount of this material

12   already.  I obviously don't want to rush defense counsel

13   because they need adequate time to prepare.  I do want it clear

14   they do have the bulk of these materials already, if we may

15   want to at least consider a motion schedule perhaps, your

16   Honor.

17             MR. GINSBERG:  I didn't mean to offend the government,

18   but 200 hours of telephone calls we have not received yet will

19   take all of us a substantial amount of time.  A few of us have

20   other cases we are working on and I think that a suggestion of

21   60 days was not unreasonable.

22             I didn't want to say something that sounded silly, but

23   that sounded to me like it made sense given the scope of the

24   material that we have received and this 200 hours and anything

25   else that may occur, but your Honor gets to make those

19QJSAAC                      Conference

1    decisions.

2            MR. FRANKEL:  I believe we are similarly situated.  I

3    stand with Mr. Ginsberg.  In fact, the things that have not

4    been sent out may well be relevant to what we need to see, so

5    we can't get started until we have had a chance to see those.

6            MR. STEIN:  Judge, whatever time you pick, is it

7    possible to to pick a time again in the morning like today or

8    before the lunch break as opposed to 4:00 o'clock in the

9    afternoon?

10           THE COURT:  Why did we do that?  Is there a special

11   reason?

12           MR. STEIN:  I think I requested it.  It is more of an

13   accommodation to the clients, frankly, because they sit in the

14   cell block all day.  They bring them here early in the morning

15   and they sit all day.

16           THE COURT:  How about November 21st, at 12:30?  It is

17   a Monday.

18           MR. EVERDELL:  That is fine for the government, your

19   Honor.

20           MR. NEUMAN:  Judge, I have got plans.  I am out of

21   town on a conference through Monday.  It may be I can get

22   someone to cover for me.  I am fine with that if that is okay

23   with the court.

24           THE COURT:  I sort of think it makes some sense.  Is

25   there any objection to excluding the speedy trial time until

19QJSAAC                    Conference

1   November 21?

2              MR. FRANKEL:  No.

3              MR. NEUMAN:  No, your Honor.

4              THE COURT:  I find that a continuance until November

5   21st serves the ends of justice and outweighs the best

6   interests of the public and the defendants in a speedy trial,

7   in that it will permit time for the government to complete

8   discovery and the defendants to consider that discovery.

9              MS. SHROFF:  I have a matter to raise with the court.

10             THE COURT:  Please.

11             MS. SHROFF:  I received from the government a letter

12  and enclosures that contain, I'm told, my client's and other

13  Defendants' e-mails as well as phone calls from the Federal

14  Bureau of Prisons.

15             It is my understanding from other cases that the

16  United States Attorney's Office has taken the position that the

17  e-mails between attorneys and their clients are not, in fact,

18  privileged, but the Assistants on the case won't read them

19  while they have some other Assistant go through our e-mails and

20  then decide whether or not the Assistant on this particular

21  case should read it.

22             I want the court to know and the government to know,

23  on behalf of Mr. Saade, I will object to any of his e-mails to

24  me or any of my colleagues or my staff be perused or read by

25  the United States Attorney's Office, whether it is by their

19QJSAAC                    Conference

1    separate team or any other team, or I don't know what the

2    phrase is any more, their Chinese Wall team or whatever team it

3    is.

4            THE COURT:  Let me ask a background question.

5            If an inmate writes a letter, addresses the letter to

6    their attorney and, you know, writes on the outside of it

7    "attorney-client privilege" or something, what is the procedure

8    in the Bureau of Prisons for opening or not opening such a

9    piece of correspondence?

10           MS. SHROFF:  Your Honor, it is my understanding it is

11   not opened.  Certainly the government has never produced a

12   copy.  Here the government just simply asks the Bureau of

13   Prisons to send to them copies of the e-mails my client sends

14   to me through Cor-links, even though I couldn't personally

15   subpoena my own client's e-mails.

16           For example, if my client decided to e-mail somebody

17   who was another lawyer, I could not subpoena that and read it

18   myself to see what was being said or discussed, but the

19   government would have a copy of that e-mail.  I don't know if

20   they even need a subpoena to get it.  I am told from other

21   cases that the BOP just simply provided it to them.

22           I do not know, I have not asked these particular

23   Assistants what their position is, but that has been their

24   position in other cases.  I think it is completely

25   inappropriate for any Assistant to have any access to what my

1  client says to me, whether they're officers of the Court or

2  not, and whether they're on this case or not.  It is a

3  privileged communication between him and I, and it should not

4  be reviewed by anybody who does not work for my office.

5          MR. EVERDELL:  I can short-circuit this issue.

6          First, this has been the subject of a lot of

7  discussion in our office.  I am not sure that Ms. Shroff is

8  accurately stating our position.  To be honest, I couldn't

9  accurately state our position.  Now, there was a memo that went

10  around recently I haven't read yet.

11          I will say this:  It is my practice and at least in

12  this case, I will not read the prison calls and prison e-mails

13  to lawyers.  However, if that position changes, before we do

14  that, I will alert defense counsel we do intend to, and they

15  can raise whatever objection they want.

16          For now won't look at prison calls and e-mails sent

17  back and forth between lawyer and client, which was my practice

18  before this discussion began in our office.  If that changes,

19  we will alert them so they can raise whatever objection they

20  want.

21          THE COURT:  I think she is raising more than that.

22  She is saying why should anybody in your office have access?

23          MR. EVERDELL:  I think that is what we're saying.

24          What I am proposing at least at this stage in the

25  proceedings and without binding our office as a whole at least

1    for this case, we will segregate those e-mails and calls, we

2    won't let anybody else in our office look at them.  If that

3    position changes, if we feel the need we want to look at them

4    and feel we have the right to look at them based on the new

5    policy, we will alert defense counsel so they can raise

6    whatever objection they want in writing, and we can talk about

7    it with the court, and your Honor can rule on it

8          THE COURT:  Fair enough.  Let me give you my

9    off-the-cuff reaction.  You don't have the right to eavesdrop

10   on an attorney-client meeting in a prison or out of a prison,

11   and it seems to me that you don't have the right to open up

12   mail between counsel and an inmate or an inmate and counsel.

13          I appreciate there could be a situation in which the

14   lawyer was engaging in nefarious conduct with an inmate, in

15   which case the exception to the attorney-client privilege for

16   the crime of fraud would apply, but I would hope that in that

17   situation, the policy would be to ask a judge to look at the,

18   you know, communications after and only after you were able to

19   establish some sort of probable cause to believe that the

20   attorney was basically, you know, acting in an improper

21   fashion.

22          Barring that, I don't see why it should make a

23   difference whether the mode of communication is more modern or

24   more traditional.

25          MR. EVERDELL:  I understand the court's position.

19QJSAAC                    Conference

1          I think -- although I confess I am not as informed as

2     I should be to be discussing this right now -- I will tell you

3     I think the difference is that for meetings, of course, we are

4     not going to eavesdrop on those meetings.  Those are oral

5     communications.  For written corrensponednce, we don't look at

6     those.  For example, phone calls above every phone is a warning

7     saying that these are monitored phones, and so that could

8     operate as a waiver.  I am not going to argue that --

9          THE COURT:  I don't think you really argue that

10    position.  I don't think your office takes that, you know,

11    position.

12         MR. EVERDELL:  It very well be I am talking out of

13    turn.  We are not going to look at those calls or let anybody

14    else unless there is some reason to.  Then we will alert

15    defense counsel and let the court know.

16         THE COURT:  Okay.

17         MR. FRANKEL:  I have something that only relates to

18    Mr. Orbach and commissary and money.  I don't think you need to

19    keep everyone.  They segregated him anyway.

20         The last time we spoke, the seized the money he had,

21    he has no commissary, no access to any funds.  I spoke to the

22    government.  The forfeiture people said we are not giving him

23    50 cents, too bad, that is the way it is.  We are allowed by

24    statute.

25         I would like to at least discuss that with the court.

19QJSAAC                    Conference

 1    I don't know if you want to keep everyone else here to hear

 2    that.

 3             THE COURT:  It doesn't matter to me.  We can excuse

 4    everybody.

 5             MR. FRANKEL:  If you don't mind, Judge.

 6             THE COURT:  Why don't we let everybody other than Mr.

 7    Orbach be returned.

 8             (Pause)

 9             MR. FRANKEL:  Judge, Mr. Ginsberg has a related issue.

10    That is why he is staying.  That is fine.  It is nothing

11    terribly secretive except when he was arrested in Chicago, the

12    authorities there froze all of their bank accounts.  They lost

13    the home.  He and his wife are divorced.  She insisted.  They

14    have two sons in college.  There is no money for that.  That is

15    a separate issue.

16             He had $15.00 in cash, and that is all he had here, he

17    has no other money, no family here, no other assets, and since

18    he has been here, he has had no access to money for his

19    commissary account, to make calls.

20             He has family, including his brother in Israel who is

21    not financially well off, and he tries to contact him.  His

22    letters are delayed.  There is a woman called me from Brooklyn

23    from some Jewish organization saying she sent him mail.  He

24    never got it.

25             More than that, he can't even make the simplest

19QJSAAC                        Conference

commissary visits for certain items, so I had asked last time,

and you suggested, as I did, to speak with the government.  I

was referred to the forfeiture people, and they basically got

back to me and said the statute says we can keep everything, we

don't have to give him everything, that is the way life is, too

bad, and that is the way it goes.

That is ridiculous.  We can spend time talking about

what they can do.  We were both in the office.  It is not what

you can do, but what is realistic?  I am not suggesting they

free up the property in Chicago or anything else.  I am

suggesting that a couple of hundred dollars a month go directly

from his commissary account from the $1500 they seized from his

pocket when he was arrested would last him the better part of

the year.

I would think something like that is a humanitarian

kind of approach.  Again when I spoke with the Assistant in the

civil division, it is not what you can do, it is what is

reasonable.  What are you going to do first with the 1500 as

part of your forfeiture?  You have all the property and money

and bank accounts in Illinois.  That is what the government was

looking for.  This is all else he has.  This wife has no money.

The kids have no money.  There is no one else who can send him

any funds.

He is really strapped and he is doing the e-mail thing

with me.  I am just learning the government might have access

19QJSAAC                    Conference

1   to that.  I am shocked to hear it.  I didn't know anything

2   about that.  He can't even continue to do that without some

3   assistance.  We are not looking for charity from an outside

4   source.  That is why I am here, Judge.

5        THE COURT:  Let me give you a little bit of

6   perspective that I have learned in the context of other cases

7   of my own in which we have sentenced prisoners who have

8   restitution orders, and I have started to receive a number of

9   requests that I modify the efforts of the Bureau of Prisons to

10  recover restitution from inmates' commissary accounts.

11       One of the things that I believe I have learned

12  through that, because I was furnished by one of the sentenced

13  inmates with the price list from the commissary, and somewhat

14  to my surprise, I learned that many of the things on that list

15  are items that I would have thought that the government would

16  be automatically providing to someone in government custody.

17       But instead there are some basic hygienic items,

18  basics of over-the-counter medicine, sneakers, slippers, you

19  know, other things that one would hardly call a luxury, and I

20  would have thought would be automatically provided.

21       Given that, I issued an order in one case directing

22  that the restitution payments should be post-release, that it

23  was never my intent that a family member's contribution to a

24  commissary account be used to pay restitution.  That is just

25  not appropriate that the money would never be available for

1    restitution.

2            This I recognize is a slightly different issue, but

3    the commonality is that defendants really need some access to

4    money for basic needs given the system that we have created.  I

5    have actually asked our Probation Office to start looking into

6    this because maybe every other Judge in the Court understood

7    this problem, but I didn't understand it.

8            So it surely doesn't strike me, given that that's the

9    approach of the Bureau, that a defendant on a pretrial basis

10   should have some access to their money even if it is subject to

11   forfeiture on a modest basis that is not going to have any huge

12   impact on the national deficit.  So that they can do things

13   like make phone calls.  Otherwise, we are creating kind of an

14   isolation system.

15           That is I think more than is intended.  I am kind of

16   sympathetic to Mr. Frankel's request.  You know, there is

17   another answer, is that we don't charge inmates, you know, for

18   fundamental things.  If they need an aspirin, they get an

19   aspirin.  If we are making them pay for it, we ought to take

20   the logical corollary to that is that we allow them some access

21   to funds, even if they are arguably forfeitable particularly

22   since he is still on a pretrial basis and not convicted.

23           So does the government want to say anything?

24           MR. EVERDELL:  Your Honor, I confess I am not an

25   expert on the way the BOP works with respect to the commissary,

1    but I had always thought -- your Honor raises the example of

2    sneakers -- I always thought they were provided with footwear.

3    If they wanted a different pair of sneakers, they could go to

4    the commissary and spend outside funds to buy a different pair

5    of sneakers.  The same thing with hygienic items, they're given

6    the basics for what they need, but if they want to buy other

7    items, they can use their other funds.

8            THE COURT:  Let me give you the most dramatic example.

9    It doesn't apply to this defendant.  The other one was a woman

10   who was a prisoner.  One of the items on the commissary list is

11   sanitary napkins.  That is a yes or no, they're provided or

12   they're not provided?  It wasn't like a fancy brand, you know,

13   versus a non-fancy brand.

14           Maybe that is correct on the items for shampoo, maybe

15   there is a generic shampoo and generic soap that is, you know,

16   provided in the shower, and if you want something a little

17   nicer, you have to pay for it.

18           One of the letters I received, and I don't remember

19   which defendant it is, said my sneakers are wearing out, I need

20   new sneakers.  So maybe the answer is yes, you get one pair,

21   but if you're there long enough and they start wearing out, the

22   government doesn't provide the second pair.  I am not sure.  As

23   I say, I have asked our Probation Department to start looking

24   into this because this was never an issue presented to me in

25   over 10 years, and suddenly it is.

19QJSAAC                      Conference

1          So I don't know if that means that, for reasons

2     related to budgetary issues, there has been a recent policy

3     change or what, I don't know.  But I do remember hearing when I

4     took the tour of the MCC, I think I learned that an inmate who

5     wants an aspirin needs to buy it, that the medical services

6     will provide the prescription medication, but they will not

7     provide the simple cold remedy or the aspirin.  If that is so,

8     I think that strikes me as wrong to prevent an inmate from

9     having access to a minimal amount of funds for these basic

10    needs.

11         I am not suggesting that he has a right to use

12    forfeitable funds to buy a Hershey bar, but I think there is a

13    distinction.  As I say, the problem can be solved by the Bureau

14    of Prisons having a policy for a person who has no money in

15    their commissary account, that they do provide these things

16    that they otherwise are charging for.  I don't know.  I don't

17    know the details of this.

18         MR. FRANKEL:  In Mr. Orbach's case, if I may, he gets

19    Kosher meals.  They don't always come.  Sometimes they do.  He

20    needs to be able to get a can of tuna fish and some bread when

21    they don't give him a Kosher meal because he won't eat the meat

22    and certain things prepared in other ways, and he doesn't have

23    that alternative that other inmates do where they can get a can

24    of tuna or cereal and things like that that he can eat at any

25    time.

19QJSAAC                    Conference

1          In addition, one of the things not covered I know for

2     sure is a sweatshirt, for example.  When the weather is going

3     to be getting cold soon, they don't issue sweatshirts.  You get

4     your outfit and undershirt, you don't get a long sleeve

5     sweatshirt.  You can buy them in the commissary.

6          DEFENDANT ORBACH:  Or pain medication.

7          MR. FRANKEL:  That they have to do by prescription.

8          Aspirin, any cold medication, people have allergies

9     but don't need to take prescription medication like Claritin,

10    you have to buy all of that.  We were looking for some of those

11    things, but as soon as it gets cold, he needs a sweatshirt.  He

12    doesn't have it.  They don't issue that.  That is not one of

13    the items on the list.

14         Those are the kind of things.  Again the meals become

15    very important especially this time of year and there are

16    certain ceremonial things for the holidays, as your Honor is

17    well aware, that he contacted me about.  The rabbi will try to

18    help him with some of the things, but other things that cost

19    money, they can't do that for all the inmates, so he has to do

20    that himself.

21         MR. EVERDELL:  Here is the rub, right:  As soon as we

22    start thinking about releasing funds, what is it for?  What is

23    the purpose?  A sweatshirt in the winter or something else,

24    that is something that is not a necessity.

25         What your Honor is raising sounds like a very real

1    problem.  It is not something I am familiar with, what the

2    BOP's procedures with this.  It is a problem with the BOP.  It

3    may be because of budget cuts, they are being more difficult or

4    they're rationing things and not giving out things they have in

5    the past.

6          They are coming to the government and approaching us

7    for forfeiture funds because the flip side, the whole purpose

8    of forfeiture, it is someone who has committed a criminal act

9    should not be using the proceeds of that criminal act or money

10   associated with that criminal act to be able to benefit from

11   that.  It shouldn't be for whatever purpose.

12         THE COURT:  But the standard for a pretrial detainee

13   is a due process standard.  It is not that you have to get to

14   an Eighth Amendment situation.  They are more protected.  He

15   still is a pretrial detainee, and to argue that if he gets an

16   aspirin from his forfeitable funds, that he is "benefiting" in

17   some way to me is not persuasive.

18         I think that if you arrest somebody and you keep them

19   in custody, you have a responsibility for them.  You have to,

20   you know, provide them with what we consider in a civilized

21   world basic necessities.  I don't think that that means that a

22   defendant whose property can be forfeited is supposed to suffer

23   from a headache when someone else who isn't in a forfeiture

24   situation can have a family member provide this.

25         I really don't know.  I wonder really, I am really

1   interested in learning what happens with the basic generation

2   of a defendant who is a citizen of another country who really

3   doesn't have a support structure here, how do they, you know,

4   manage given the number of things that are on that list?

5           You know, do they not get any opportunity to, you

6   know, to write a letter to someone because they can't afford

7   stamps and paper?  All of those things are on the list.  Do

8   they have absolutely -- do we intend to totally isolate them,

9   give them zero access to the outside world?

10          I don't really think that is the purpose.  I don't

11  think your office really intends to create that kind of

12  situation, to create such a difficult situation.

13          MR. EVERDELL:  I understand the court's position.  It

14  is not our office's position to create horrendous conditions of

15  confinement.  We don't control those situations.  The BOP does.

16          THE COURT:  You control the money here, so in this

17  case you do.

18          MR. EVERDELL:  True.  One other complication to this,

19  because it is relevant to the court's thinking, there is

20  another case against this defendant in the Northern District of

21  Illinois.  They have also seized a number of his assets.  I

22  don't know if there would have to be coordination.  Even if we

23  were inclined to release some of the funds, they may be

24  forfeitable under their case as well.  There are complicating

25  factors here.

1          If what Mr. Frankel is proposing, if he wants to give

2     us, rather than saying release a couple of hundred dollars or

3     this or that or the other to my client, give us specifics what

4     he would use this money for, that might --

5          THE COURT:  He will be happy to do that.

6          MR. FRANKEL:  We are asking for an order of the Court

7     only to get paper, postage stamps, sweatshirts, articles of

8     clothing and food products, not candies and wonderful, exciting

9     other things.  That would be fine because those are the

10    necessities.

11         MR. EVERDELL:  We can reconsider the request.  If

12    Mr. Frankel wants to give the government a list of the items

13    his client feels like he needs and the prices for those items,

14    we can reconsider them.

15         THE COURT:  You need to get a copy of the commissary

16    list.

17         MR. FRANKEL:  I will do that.

18         THE COURT:  And go through it, and I have no problem

19    with him having a restricted access to what is on the list for

20    the types of things that I think are kind of basic.

21         MR. FRANKEL:  That will be fine.

22         THE COURT:  I hope you can work it out.

23         MR. EVERDELL:  Thank your Honor.

24         MR. FRANKEL:  The marshals are good enough to say they

25    will keep him downstairs so I can see him now in the attorney

19QJSAAC                    Conference

1    rooms.  We have another matter together, you and I.  It will

2    only be a few minutes.  I thank you for that.

3              THE COURT:  Thank you.

4              (Court adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25