

UNITED STATES OF AMERICA
# Federal Trade Commission
WASHINGTON, D.C. 20580

Bureau of Competition
Health Care Division

September 17, 2020

The Honorable Denise Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1910
New York, NY 10007

**Re:** ***FTC, et al. v. Vyera Pharmaceuticals, LLC, et al.*, 1:20-cv-00706 (DLC)**

Dear Judge Cote:

Plaintiffs respectfully write to address Defendant Martin Shkreli's September 14 response (ECF 252) to Plaintiffs' motion to compel a log for certain communications that Mr. Shkreli made with his attorneys over lines monitored by the Bureau of Prisons ("BOP") (ECF 238).

In his response, Mr. Shkreli now acknowledges that not all of his attorney communications are privileged. He maintains, however, that he need not submit a privilege log to substantiate his privilege claims based on his belief that the FTC's collection of these documents violates Fed. R. Civ. P. 26. ECF 252 at 2 ("Plaintiffs have failed to meet their burden of proving the relevance of every communication.").[1] The Court has already rejected this argument. ECF 231 at 2 n.1. Moreover, it is not our burden to establish the relevance of documents that we produced in response to Mr. Shkreli's discovery request for "all documents and data obtained as part of the Investigation," including all materials from any "government agency." Ex. A at 9. Nonetheless, we have reviewed the statement that Mr. Shkreli provided to the Court identifying his attorneys and information about their representation of him. ECF 248-1. We agree that many of these attorneys appear to have provided advice on matters that might not be relevant to this case.[2] Accordingly, we are modifying our request and now ask the Court to require Mr. Shkreli to log any communications with only two attorneys: Kandis Kovalsky and Scott Vernick.

To be clear, the FTC does not take discovery of attorney communications lightly. Before seeking any attorney communications from the BOP, the FTC carefully evaluated whether communications over BOP-monitored lines were subject to attorney-client or work product

---

[1] Mr. Shkreli also mischaracterizes our motion as a motion for reconsideration. ECF 252 at 1. Plaintiffs are not asking the Court to reconsider its order that we "make reasonable efforts to screen from review communications between Shkreli and the identified attorneys." ECF 231. We have complied with that order and redacted all the communications that Mr. Shkreli identified. Rather, we are now seeking a log from Mr. Shkreli to substantiate his claim that certain individuals consistently acted as attorneys providing legal advice.

[2] We note that, of the twelve identified attorneys, we have no communications with six and fewer than 50 communications with five of the others collectively.

privilege. Based on our legal research, we determined that communicating over monitored lines waives any privilege (*see* ECF 224 (collecting cases)) and that we could obtain monitored communications with his lawyers as warranted. We now turn to the relevance of communications with Ms. Kovalsky and Mr. Vernick.

**Kandis Kovalsky:** Based on Mr. Shkreli's submission to the Court, it is clear that Ms. Kovalsky has communicated with Mr. Shkreli on a wide range of legal and business issues, some of which were relevant to the FTC's investigation and to this case. ECF 248-1 at 2-3 (identifying 23 subject matters). For example, Plaintiffs seek to return Defendants' ill-gotten profits to consumers harmed by Defendants' anticompetitive scheme. During our pre-complaint investigation, the FTC learned that Mr. Shkreli was considering placing his Phoenixus shares in a trust. Ms. Kovalsky appeared to be advising Mr. Shkreli on this issue. *See* ECF 248-1 at 3 (citing "drafting and preparation of trust agreement"). The FTC was concerned that Mr. Shkreli might be trying to shield his Phoenixus assets from any disgorgement judgment and sought information relevant to assessing that risk.

In addition, it also has become clear that Ms. Kovalsky operates as Mr. Shkreli's advisor on other relevant business matters. For example, Ms. Kovalsky appears to have acted as a conduit for communications from others to Mr. Shkreli on matters that were, as Mr. Shkreli put it to co-Defendant Kevin Mulleady, "too sensitive to talk about" like a "price increase thing" that might concern the FTC. Ex. B at 12:22-13:2; *see also* Ex. C. Ms. Kovalsky has also communicated with Mr. Shkreli about his efforts to remove Averill Powers, Phoenixus's current Chief Executive Officer and member of the board, from office. ECF No. 248-1 at 3 (describing Ms. Kovalsky's "legal advice on shareholder rights"); *see also* Ex. D (Powers discussing "calls from Kevin [Mulleady] on behalf of Martin [Shkreli] threatening my tenure as a Director"). For these reasons—not to obtain her "legal advice and strategy related to this case," as Mr. Shkreli surmises (ECF 252 at 2)—the FTC has sought information from the BOP relating to Ms. Kovalsky's communications with Mr. Shkreli, both during its pre-complaint investigation in 2019 and in February and March 2020, shortly after this litigation began.[3]

**Scott Vernick:** Mr. Shkreli also identifies communications with Scott Vernick in his statement to the Court. ECF 248-1 at 5. Mr. Vernick similarly served as an advisor on relevant business matters. Among other issues, Mr. Vernick was involved in Vyera's exclusive contract with RL Fine and in hiring a competitive intelligence firm to monitor the success of Vyera's anticompetitive scheme to prevent generic competition. *See* Exs. F & G at 3.

For the foregoing reasons, Plaintiffs ask the Court to require Mr. Shkreli to log any communications with Ms. Kovalsky and Mr. Vernick.

---

[3] Unlike Mr. Shkreli (ECF 252 at 2 n.2), Plaintiffs do not interpret the Order and Protocol for Third-Party and Foreign Discovery (ECF 123), entered on May 20, 2020, as applying retroactively to the non-compulsory discovery requests the FTC sent to the BOP months earlier. Mr. Shkreli only recently informed us of his contrary interpretation even though he has known of Plaintiffs' March request for several months. Despite this disagreement, we provided him with unredacted versions of these requests on September 11. *See* Ex. E.

Sincerely,

*/s/ Markus H. Meier*

Markus H. Meier
Assistant Director