**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>    and<br><br>STATE OF NEW YORK,<br><br>               Plaintiffs,<br><br>    v.<br><br>VYERA PHARMACEUTICALS, LLC,<br><br>PHOENIXUS AG,<br><br>MARTIN SHKRELI, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,<br><br>    and<br><br>KEVIN MULLEADY, individually, as an owner and director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,<br><br>              Defendants. | Case No. 1:20-cv-00706-DLC |

<u>**DEFENDANT MARTIN SHKRELI'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY DISCOVERY**</u>

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND .............................................................................2

    A.    Mr. Shkreli's Lack of Access to Counsel .............................................. 2

    B.    Remaining Discovery .............................................................................. 5

    D.    Mr. Shkreli's Release From Prison ........................................................ 6

III.  ARGUMENT .......................................................................................................7

    A.    Legal Standard ........................................................................................ 7

        1.    *The Court May Stay Discovery for Good Cause* ....................... 7

        2.    *Mr. Shkreli Has a Constitutional Right of Access to Counsel* ................. 8

    B.    The Court Should Stay the Remainder of the Discovery Period Until
Mr. Shkreli is Released from Prison .................................................... 9

        1.    *Mr. Shkreli's Inability to Adequately Participate In His Own Defense
Constitutes a Due Process Violation that is Good Cause for a Stay* ........ 9

        2.    *The Ellington Credit Fund Factors Support a Stay* .............................. 11

IV.   CONCLUSION ................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bellezza v. Holland*, 2011 WL 2848141 (S.D.N.Y. July 12, 2011) ................................................13

*Booker v. Griffin*, 2018 WL 1614346 (S.D.N.Y. March 31, 2018) ................................................13

*Chandler v. Fretag*, 348 U.S. 3, 75 S. Ct. 1, 99 L. Ed. 4 (1954) ................................................13

*Delgado v. NJ Transit Rail Operations, Inc.*, 329 F.R.D. 506 (S.D.N.Y. 2019) ...........................11

*Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, 2009 WL 274483
    (S.D.N.Y. Feb. 3, 2009) ................................................................................................12, 16

*Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251 (1st Cir. 1986) ...........................................13

*Guajardo-Palma v. Martinson*, 622 F.3d 801 (7th Cir. 2010) ......................................................12

*Hyunday Merchant Marine Co. Ltd. v. U.S.*, 159 F.R.D. 424 (S.D.N.Y. 1995) ...........................18

*Johnson v. Avery*, 393 U.S. 483 (1969) (Douglas, J. concurring) ................................................12

*Jones v. McDonald's Corp.*, 2018 WL 3869877 (S.D.N.Y. July 11, 2018) ...................................12

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d. Cir. 2012) .................................11

*Mosley v. St. Louis Sw. Ry.*, 634 F.2d 942 (5th Cir. 1981) ..........................................................12

*O'Sullivan v. Deutsche Bank AG*, 2018 WL 1989585 (S.D.N.Y. April 26, 2018) ........................16

*Potashnick v. Port City Const. Co.*, 609 F.2d 1101 (5th Cir. 1980) ........................................13, 18

*Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) .......................13

*Ungar v. Sarafite*, 376 U.S. 575 (1964) ......................................................................................14

*United States v. Topps*, 2020 WL 5890433 (D. Alaska Oct. 1, 2020) ...........................................15

*Walker v. Epps*, 2012 WL 1033467 (S.D. Miss. Mar. 27, 2012) .................................................13

*Washington v. James*, 782 F.2d 1134 (2d Cir. 1986) ...................................................................13

*Winfield v. City of New York*, 2017 WL 5054727 (S.D.N.Y. Nov. 2, 2017) ................................18

**Other Authorities**

U.S. Const., amd. V ......................................................................................................................13

U.S. Const., amd. XIV ................................................................................................... 12-13

Federal Rule of Civil Procedure Rule 26 ............................................................... 11-12

## I.      INTRODUCTION

As the deposition phase of this case approaches, it has become clear that under the current discovery schedule – and because of the policies of the Federal Bureau of Prisons ("BOP") and limitations imposed by the COVID-19 pandemic – Defendant Martin Shkreli will not have adequate access to counsel to assist in his defense. This is untenable.   As many courts have recognized, Mr. Shkreli possesses a Constitutional right of access to counsel and to the courts. However, since the complaint was filed on January 27, 2020, Mr. Shkreli has been permitted *a total of less than one hour per month of confidential time with his attorneys*. This is woefully inadequate in a case of this complexity and importance—with more than 130 subpoenas, over a million pages of documents from parties and non-parties, and 280 hours of deposition time, and where Plaintiffs seek a permanent injunction barring Mr. Shkreli from working in his chosen field – the pharmaceutical industry – for life.   Accordingly, Mr. Shkreli respectfully requests that the Court stay discovery until he is released from prison so that he may meaningfully participate in his defense.

Although Mr. Shkreli's release date is September 14, 2023, he will likely be released to a halfway house much sooner than that.   In fact, as former BOP corrections officer Jack T. Donson states in his attached declaration, Mr. Shkreli could be released as early as September 2021. A stay of discovery until his release would preserve Mr. Shkreli's rights by allowing him adequate access to his counsel to assist in his defense.   Conversely, the requested stay will not prejudice the Plaintiffs nor will it harm the public, because generic Daraprim manufacturers have already entered the market.   Thus, because Mr. Shkreli's Constitutional right of access to counsel will continue to be curtailed under the current discovery schedule, there is "good cause" for a stay.

## II.    FACTUAL BACKGROUND

### A.    Mr. Shkreli's Lack of Access to Counsel

Mr. Shkreli is incarcerated at Allenwood Low Security Federal Correctional Institution ("Allenwood"). In or around September 2015, the FTC and the New York Office of the Attorney General ("NYAG") began an antitrust investigation ("the Investigation") into certain activities of Phoenixus AG ("Phoenixus") and Vyera Pharmaceuticals LLC ("Vyera," and together with Phoenixus, the "Company").    It was not until December 20, 2019 that Mr. Shkreli's counsel learned that the FTC and NYAG were considering naming Mr. Shkreli as a defendant, along with the Company and Kevin Mulleady, in a complaint. *See* Declaration of Kandis Kovalsky ("Kovalsky Decl."), attached as **Exhibit A**, at ¶¶ 3-5. Neither the FTC nor the NYAG had issued a subpoena or CID to Mr. Shkreli for either documents or testimony during the Investigation. *Id.* at ¶ 6. Mr. Shkreli's counsel met with the FTC's Bureau of Competition management and Health Care Division staff on January 9, 2020, and with each of the FTC Commissioners over the course of two days, January 17 and 21, 2020. *Id.* at ¶¶ 12, 13.

On January 27, 2020, the FTC and NYAG filed the complaint that commenced this action. *Id.* at ¶ 14. From December 20, 2019, when he first learned that he was a potential target of the Investigation, through the filing of the complaint on January 27, 2020, Mr. Shkreli was allowed only two confidential legal phone calls with his counsel, which totaled 75 minutes. *Id.* at ¶ 15. Approximately 60 minutes of these two confidential calls were dedicated almost exclusively to issues relating to engagement of counsel and related issues. *Id.* at ¶ 16. This left Mr. Shkreli with just 15 minutes to discuss strategy relating to the Investigation, before the complaint was filed. *Id.* at ¶ 17.

Given the dearth of opportunities that Mr. Shkreli and his attorneys had to communicate confidentially before the filing of the complaint, communications about the Investigation and

2

engagement of counsel had to occur over BOP-monitored means (TRUFONE calls and TRULINCS emails). *Id.* at ¶ 9. The FTC collected all of Mr. Shkreli's communications with his counsel during that timeframe, presumably listened to and read them, and produced them in this litigation in May 2020. *Id.*[1]

Since the filing of the complaint, Mr. Shkreli has been unable to meet with his counsel in person, first due to a norovirus outbreak at Allenwood and then due to the COVID-19 pandemic. *Id.* at ¶¶ 18-23. Indeed, Mr. Shkreli has not yet been able to meet in person with his lead antitrust counsel in this case. *Id.* at ¶ 20. Mr. Shkreli has instead had to rely on infrequent and severely time-limited confidential legal phone calls with his counsel to attempt to prepare for this complex litigation. Mr. Shkreli has been allowed a total of only nine and a half hours of confidential legal calls relating to this action since the filing of the complaint. *Id.* at ¶ 24. This amounts to less than one hour of confidential calls per month. *Id.*

After the complaint was filed, Mr. Shkreli was unable to confidentially speak to his attorneys until February 12, 2020 – more than two weeks later. *Id.* at ¶ 27. This call was fifteen minutes long. *Id.* Not only did Mr. Shkreli's counsel have to explain to him the import of the 320-paragraph complaint and discuss strategy, there were also ongoing issues with engagement of counsel that had to be addressed. *Id.* at ¶ 30. *See* email dated February 3, 2020 from K. Kovalsky to M. Schmidt, attached to the Kovalsky Decl. as **Exhibit A-3** (informing FTC staff that Mr. Shkreli is working out issues relating to Duane Morris' representation of Mr. Shkreli). Mr. Shkreli did not get to speak to his attorneys again until almost a month later – on March 10, 2020.

---

[1] As the Court is aware, the issue of Plaintiffs' use of Mr. Shkreli's BOP-monitored communications with his counsel in this case has been the subject of litigation. Since the Court's show cause hearing on September 22, 2020, Mr. Shkreli's counsel and Plaintiffs' counsel have been working cooperatively to resolve the issue. Although Plaintiffs have agreed to not make any future requests from the BOP for communications between Mr. Shkreli and his attorneys, the federal government, *i.e.*, the BOP, continues to monitor the TRULINCS and TRUFONE communications, and thus these avenues remain unavailable for confidential attorney-client communications.

Kovalsky Decl. at ¶ 32. This call was also 15 minutes long. *Id*. A few days later, Allenwood was closed and Mr. Shkreli's lack of access to his counsel only worsened. *Id*. at ¶ 34.

Thus, Mr. Shkreli has had less than one hour per month to confidentially confer with his counsel regarding such important matters as the Complaint, his Motion to Dismiss, and his Answer to the Complaint, and to prepare initial disclosures, to search for and produce documents responsive to plaintiffs' document requests, to answer plaintiffs' interrogatories (including supplemental answers), to discuss third-party subpoenas, to discuss case strategy, and to discuss settlement issues. Indeed, most of the time, the BOP limits Mr. Shkreli's access to counsel to a mere 15 minutes at a time – despite repeated requests for more time. *Id*. at ¶¶ 26-30, 32, 36-41.

Not only has the BOP limited Mr. Shkreli's access to his counsel to 15 minutes at a time, the BOP has also denied Mr. Shkreli's requests for legal calls for months at a time. The BOP even rejected a 15-minute phone call between Mr. Shkreli and his counsel, stating that Mr. Shkreli could only receive a legal call if he could prove "an imminent court deadline." *Id*. at ¶¶ 36-37.[2] This resulted in Mr. Shkreli being unable to speak with his counsel on a confidential legal call for more than two months, from March 10 to May 20, 2020. *Id*. at ¶¶ 35, 38.

In a letter dated November 3, 2020, Mr. Shkreli, through his attorneys, requested that "the BOP provide Mr. Shkreli with three hours of confidential legal calls with his attorneys from Duane Morris and Kang Haggerty per week, specifically to discuss the FTC Action, starting the week of November 15." *See* Letter from K. Kovalsky to J. Kerr, attached as the Kovalsky Decl. as **Exhibit A-8** (the "November 3 Letter"). Mr. Shkreli's attorneys explained the lack of any other means to

---

[2] The policy of prioritizing legal calls for inmates with imminent court deadlines is due to insufficient staffing. The limited duration and frequency of legal calls is standard protocol at facilities such as L.S.C.I. Allenwood. *See* Declaration of Jack T. Donson ("Donson Decl."), attached as Exhibit B, at ¶¶ 12-13. Mr. Donson spent 23 years as a corrections officer with the BOP and is a member of the ABA and NACDL Corrections Committees.

communicate with him. *Id.* This request was denied. The BOP responded by stating that it is willing to offer "up to one-hour legal calls on an as-needed basis." See Email dated November 12, 2020 from A. Dewalt to K. Kovalsky, attached to the Kovalsky Decl. as **Exhibit A-9.**

### B.     Remaining Discovery

This case involves complex factual and legal issues.  Plaintiffs conducted a five-year investigation before filing the complaint.  To date the parties have issued more than 130 subpoenas to third parties for documents and testimony.  More than one million pages of documents have been produced thus far, and many more will be produced in the near future.  The parties are now approaching the deposition phase of discovery, in which approximately fifty depositions (and 280 hours of on-the-record time) are likely to be taken.  Currently, depositions are noticed for December 1, 4, 8, 9, 10, 11, 15, 17, and 18 and January 5, 6, 7, 8, 12, 13, 14, 21, 26, 28 and 29, and February 17. The deadline for depositions to conclude is February 26, 2021.  ECF No. 137.

### C.     Mr. Shkreli's Request to Participate in Depositions

In addition to being denied access to his counsel, it remains unclear whether Mr. Shkreli will be able to exercise his privilege as a party defendant to attend the upcoming depositions. In the November 3 Letter, Mr. Shkreli's attorneys requested that the BOP make accommodations to allow him to participate remotely in the depositions. Kovalsky Decl., at Ex. A-8. The BOP responded that "if the FTC … agree[d]," it would do its best "to accommodate on an as-needed basis" but that it would not agree to "an open-ended request." Kovalsky Decl., at Ex. A-9.

According to the BOP, the FTC's agreement is an important step in obtaining the BOP's approval of Mr. Shkreli's participation.  Thus, on November 24, 2020, counsel for Mr. Shkreli met and conferred with FTC staff to determine whether the FTC would agree that Mr. Shkreli should be permitted to attend the depositions to be taken in this case. Kovalsky Decl. at ¶ 43.  However, the FTC staff raised a number of issues relating to Mr. Shkreli's participation that they said would

need to be resolved before they would permit Mr. Shkreli's counsel to represent to the BOP that the FTC agreed that Mr. Shkreli should participate in the upcoming depositions. These issues included such routine matters as how the parties would handle confidential information during depositions – an issue addressed by the Protective Order entered in this case and that affects all parties, not just Mr. Shkreli. Thus, whether Mr. Shkreli will be able to participate in the depositions remains in serious doubt. *Id*.

Further, as described above, the BOP has refused Mr. Shkreli's request for a few hours of confidential legal calls each week, in order to assist in his defense and the preparation for the upcoming depositions, including his own. As multiple additional depositions will be noticed and taken each week between now and February 26, 2021, Mr. Shkreli will not have sufficient time with his counsel to meaningfully participate in depositions. Further, Mr. Shkreli will be unable to prepare for the upcoming depositions because the BOP will not provide him and his counsel with video conferencing technology to enable him to review documents that will be used at the depositions. Donson Decl. at ¶ 11.[3]

### D.    Mr. Shkreli's Release From Prison

Mr. Shkreli has been incarcerated since September 2017 and has been housed at Allenwood since late-May/early-June 2019. Prison consultant Jack T. Donson has calculated Mr. Shkreli's potential release date using sentencing guidelines, BOP policies, and relevant statutes. *See* Donson Decl. at ¶ 30. As Mr. Donson states in his declaration, if Mr. Shkreli completes the ███████

███████████████████████████████████████████████████████████████████

---

[3] To the extent the Court is not inclined to grant Mr. Shkreli the full relief requested by this motion, it should, at a minimum, halt the taking of depositions until Mr. Shkreli is released from prison. This will ensure that he can meaningfully attend and participate with his counsel in the preparation and taking of depositions, including his own.

████████████ as is planned, Mr. Shkreli could be released to a halfway house as early as mid-September 2021. *Id.*

## III.   ARGUMENT

### A.   Legal Standard

#### 1.   *The Court May Stay Discovery for Good Cause*

Rule 26 of the Federal Rules of Civil Procedure allows a court to stay discovery upon a showing of good cause. *Delgado v. NJ Transit Rail Operations, Inc.*, 329 F.R.D. 506, 508 (S.D.N.Y. 2019) ("Upon a showing of good cause a district court has considerable discretion to stay discovery pursuant to Rule 26(c).") (citation omitted). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d. Cir. 2012). The decision to stay an action calls on a district court's "studied judgment," requiring the court to examine "the particular facts before it" and determine "the extent to which … a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id.* at 99.

The burden of showing good cause under Rule 26 falls on the moving party, and establishing good cause requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Jones v. McDonald's Corp.*, 2018 WL 3869877, at *2 (S.D.N.Y. July 11, 2018) (citing *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 365 (D. Conn. 2006)). "Factors relevant to a determination of 'good cause' include the pendency of dispositive motions, potential prejudice to the party opposing the stay, the breadth of discovery sought, and the burden that would be imposed on the parties responding to the proposed discovery." *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, 2009 WL 274483, at *1 (S.D.N.Y. Feb. 3, 2009) (citations omitted).

2.      _**Mr. Shkreli Has a Constitutional Right of Access to Counsel**_

"The right of access to retained counsel is one of constitutional dimensions and should be exercised without impingement." _Mosley v. St. Louis Sw. Ry._, 634 F.2d 942, 946 (5th Cir. 1981). Courts have characterized the right of access to counsel as one rooted in various Constitutional provisions, principally Due Process. _See, e.g., Guajardo-Palma v. Martinson_, 622 F.3d 801, 802 (7th Cir. 2010) ("The Fourteenth Amendment[4] guarantees meaningful access to courts...and the opportunity to communicate privately with an attorney is an important part of that meaningful access."); _Gray v. New England Tel. & Tel. Co._, 792 F.2d 251, 257 (1st Cir. 1986) ("[A] civil litigant has a constitutional right, deriving from due process, to retain hired counsel in a civil case."); _Potashnick v. Port City Const. Co._, 609 F.2d 1101, 1118 (5th Cir. 1980) ("A civil litigant's right to retain counsel is rooted in Fifth Amendment notions of due process..."). This due process right to counsel contains the "necessary corollary...that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth." _Chandler v. Fretag_, 348 U.S. 3, 10, 75 S. Ct. 1, 5, 99 L. Ed. 4 (1954); _see also Walker v. Epps_, 2012 WL 1033467, at *43 (S.D. Miss. Mar. 27, 2012) ("Failure to give a defendant reasonably opportunity to hire _and consult with_ counsel amounts to a denial of the right to be heard through counsel and is, therefore, a deprivation of due process.") (emphasis added).

A defendant who is incarcerated has no lesser right of access to counsel than one who is not. _Thornburgh v. Abbott_, 490 U.S. 401, 407, 109 S. Ct. 1874, 1878, 104 L. Ed. 2d 459 (1989)

---

[4] The Fourteenth Amendment also provides that no State shall deprive any person of property without due process of law, and access to courts is the mechanism by which due process is afforded against state action. _See, e.g., Johnson v. Avery_, 393 U.S. 483, 498 n. 24 (1969) (Douglas, J. concurring) ("Reasonable access to the courts is a right (secured by the Constitution and laws of the United States), being guaranteed against state action by the due process clause of the Fourteenth Amendment."); _see also Booker v. Griffin_, 2018 WL 1614346, at *7 (S.D.N.Y. March 31, 2018) ("The Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property without due process of law.") (citing U.S. Const. amend. XIV). Here, plaintiffs seek to deprive Mr. Shkreli of property in the form of equitable monetary relief.

("Access is essential to lawyers and legal assistants representing prisoner clients."). Indeed, the Second Circuit has unambiguously stated that a prisoner "has a right to correspond with his legal counsel," as a corollary of his right of access to the courts. *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986); *see also Bellezza v. Holland*, 2011 WL 2848141, at *4 (S.D.N.Y. July 12, 2011) ("It is well established that prisoners have a constitutional right to adequate, effective, and meaningful access to the courts. The Supreme Court has alternately grounded this right in the constitutional guarantees of equal protection, due process, privileges and immunities, and the right to petition the government for grievances.") (internal citations omitted).

The Supreme Court has recognized that an insistence on expeditiousness "in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589–90 (1964). There are no "mechanical tests" for determining when a delay is required to effectuate due process, and "[t]he answer must be found in the circumstances present in every case." *Id.*

### B. The Court Should Stay the Remainder of the Discovery Period Until Mr. Shkreli is Released from Prison

#### 1. *Mr. Shkreli's Inability to Adequately Participate In His Own Defense Constitutes a Due Process Violation that is Good Cause for a Stay*

Because Mr. Shkreli's access to his counsel has been severely curtailed such that he is effectively unable to participate in his own defense, good cause exists for a stay of discovery until he is released from prison. Allowing the depositions in this case to proceed on the current schedule – during which most of the factual record will be built – will violate Mr. Shkreli's due process rights and gravely and unnecessarily prejudice his ability to defend himself against plaintiffs' allegations.

Mr. Shkreli's access to counsel is being curtailed pursuant to the BOP's stated policy, and the unforeseen extenuating circumstances associated with the COVID-19 pandemic.

For all but one month, BOP policy has barred in-person meetings, even with counsel, since this case was first filed on January 27, 2020. *See* Kovalsky Decl., attached as **Exhibit A**, at ¶ 19. Between January 17, 2020, and February 14, 2020, Allenwood was closed due to an outbreak of norovirus. *Id*. at ¶ 22. Shortly thereafter, on March 13, 2020, Allenwood—along with all other federal prisons—was closed for legal visitations because of the COVID-19 pandemic. *Id*. at ¶ 23. To this day, Mr. Shkreli has not been able to meet with his counsel in person, or even via video, to discuss his defense in this case.

Without the option of in-person visits, Mr. Shkreli's counsel have had to rely upon infrequent, unmonitored legal calls to confidentially discuss the case with him. The first contact counsel was able to have with Mr. Shkreli was a fifteen-minute phone call on February 12, 2020, more than two weeks after plaintiffs filed the complaint. *Id*. at ¶ 27. The BOP denied counsel's request for a call longer than fifteen minutes, saying this request could only be accommodated if there was an "imminent court date." *Id*. at ¶ 29. Counsel had a second call with Mr. Shkreli on March 10, 2020, and was not granted permission for another fifteen-minute call until May 20, 2020. *Id*. at ¶¶ 32, 33-35. Counsel had an additional call with Mr. Shkreli on June 3, 2020. *Id*. at ¶¶ 40-41. All told, between the time this case was filed and the present, the BOP has permitted Mr. Shkreli to speak with counsel for a total of *only nine and a half hours. Id*. at ¶ 24. This amounts to less than one hour per month during which Mr. Shkreli can speak to his counsel confidentially to participate in his defense. *Id*. at ¶ 34. In an antitrust case this significant—the first-ever Section 2 enforcement action against an individual in which plaintiffs are seeking a permanent injunction banning Mr. Shkreli from participating in the pharmaceutical industry for the rest of his life—this deprivation amounts to an ongoing due process violation that effectively denies Mr. Shkreli access to the court.

As a result of this violation of his right to access counsel, Mr. Shkreli cannot direct counsel in discovery, participate in meaningful discussions to formulate his defense strategy, or freely communicate with his attorneys. *See Martin*, 686 F.2d at 33; *see also United States v. Topps*, 2020 WL 5890433, at *14 (D. Alaska Oct. 1, 2020) (acknowledging that "phone calls alone are insufficient for many inmates…to establish an attorney-client relationship that the defendant is then willing to rely upon when deciding whether or not to go to trial."). This ongoing impairment of Mr. Shkreli's constitutional right of access to counsel constitutes good cause for this Court to stay discovery in this case until he is released from prison.

### 2.   The *Ellington Credit Fund* Factors Support a Stay

The factors set forth in this Court's decision in *Ellington Credit Fund, Ltd.*, *supra*, 2009 WL 274483, at *1 support the granting of a stay.

#### a.   There are no Dispositive Motions Pending

The Court has ruled on the defendants' motions to dismiss, and there are no dispositive motions pending. Thus a stay would not affect any such motion.

#### b.   The Breadth of Discovery Sought Warrants a Stay

The breadth of discovery sought at this time warrants a stay. *See O'Sullivan v. Deutsche Bank AG*, 2018 WL 1989585, at *8-9 (S.D.N.Y. April 26, 2018) (holding that the vast breadth of discovery sought "would pose a significant burden on defendants," which weighed in favor of granting the stay of discovery).

As noted above, Plaintiffs filed this case after conducting a five-year investigation. Following that five-year investigation, and the commencement of this case, the parties have issued more than one hundred and thirty third-party subpoenas and have produced, in total, over one million pages of documents. Now, the parties expect to take approximately fifty depositions,

representing almost three hundred hours of testimony. In other situations, courts have determined that such voluminous discovery would impose an undue burden on the defendants. *See, e.g.*, *O'Sullivan*, 2018 WL 1989585, at *8-9 (granting stay of discovery and finding discovery that would cover a time period of roughly ten years and required one defendant to examine over one million pages of documents placed an undue burden on defendants and third parties). The breadth of discovery in this case, combined with the number of depositions occurring over just a three-month period, would pose a significant challenge for any defendant in normal circumstances. For Mr. Shkreli, who has severely limited access to counsel, it presents an insurmountable challenge and nothing less than a due process violation, that must be addressed

### c.      Plaintiffs Will Not Be Prejudiced By a Stay of Discovery

Plaintiffs will not be prejudiced by a stay, because the alleged anticompetitive conduct has not prevented generic entry. The plaintiffs claim that defendants, including Mr. Shkreli, acted to prevent generic manufacturers from submitting ANDAs for Daraprim and from securing FDA approval to bring those generics to market. But plaintiffs admit that at least three generic manufacturers already submitted Daraprim ANDAs to the FDA, Am. Compl. ¶¶ 199, 231, 260, that one of those ANDAs has already been approved, *id*. ¶ 216, and that generic Daraprim is now on the market, *id*. ¶ 218. Additionally, some of the alleged anticompetitive conduct at issue has, by Plaintiffs' own admission, ceased. Plaintiffs make numerous allegations regarding an exclusive contract between co-defendant Vyera and a pyrimethamine API supplier named RL Fine. *See, e.g.*, ¶¶ 160-167. Yet Plaintiffs acknowledge that the agreement between RL Fine and Vyera was terminated on October 25, 2019—before this case was even filed. *See id*. at ¶ 172.

Mr. Shkreli may be released from prison as soon as mid-September 2021, ten months from now. Donson Decl. at ¶¶ 24-28. Because generic Daraprim is now available, and will continue to

be available during the pendency of the stay, neither the plaintiffs nor the public will be prejudiced by a limited stay of discovery until Mr. Shkreli is released from prison.

> **d.      Denial of a Stay of Discovery Will Impose an Undue Burden on Mr. Shkreli**

Proceeding with the current discovery schedule while Mr. Shkreli's access to counsel is so severely limited will impose an undue burden on him by impairing his ability to adequately consult with counsel to defend the case brought against him. In light of the extraordinary relief that the plaintiffs seek, the stakes for Mr. Shkreli are too high for him to be denied adequate access to his counsel during this critical period. For all of the reasons discussed above, this burden amounts to a deprivation of Mr. Shkreli's due process rights.

Additionally, Mr. Shkreli's ability to exercise the privilege, enjoyed by party litigants, to attend the upcoming depositions remains in doubt. Under the current circumstances, he cannot realistically assist his counsel in preparing for the approximately fifty depositions that will take place in the next three months. Allowing discovery to proceed under the current schedule places an undue burden on Mr. Shkreli that further impairs his access to counsel and thus to the courts. *See Potashnick, supra,* 609 F.2d at 1118 ("…the right to counsel is one of constitutional dimensions and should thus be freely exercised without impingement."). Such a burden constitutes good cause for this Court to enter an order staying discovery until Mr. Shkreli is released from prison. *See, e.g., Winfield v. City of New York,* 2017 WL 5054727, at *3 (S.D.N.Y. Nov. 2, 2017) ("A court may issue a protective order to protect a party or person from…undue burden or expense upon a finding of good cause, which in complex cases need not be highly particularized."); *also Hyunday Merchant Marine Co. Ltd. v. U.S.,* 159 F.R.D. 424, 429 (S.D.N.Y. 1995) ("…judges should not hesitate to exercise appropriate control over the discovery process.").

## IV.    CONCLUSION

For all of these reasons, Mr. Shkreli respectfully requests that the Court grant his request for a stay of the remainder of discovery until he is released from prison.


Dated: November 25, 2020                    Respectfully  submitted,

By:      */s/ Christopher H. Casey*
Christopher  H. Casey, Esq. (admitted *pro hac vice*)
A.J. Rudowitz,  Esq. (admitted *pro hac vice*)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia,  PA  19103-4196
Telephone:  (215) 979-1155/1974

Edward  T. Kang
Kandis L. Kovalsky
KANG, HAGGERTY  & FETBROYT LLC
123 S. Broad St. #1670
Philadelphia,  PA 19109
Tel: (215) 525-5852/1993

*Attorneys for Defendant Martin Shkreli*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| FEDERAL TRADE COMMISSION; STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF NORTH CAROLINA; STATE OF OHIO; COMMONWEALTH OF PENNSYLVANIA; and COMMONWEALTH OF VIRGINIA, |
| |
| *Plaintiffs*, |
| |
| v. |
| |
| VYERA PHARMACEUTICALS, LLC; PHOENIXUS AG; MARTIN SHKRELI, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC; and KEVIN MULLEADY, individually, as an owner and director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC, |
| |
| *Defendants*. |

Case No. 1:20-cv-00706-DLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2020, I served a true and correct copy of the foregoing Notice of Defendant Martin Shkreli's Motion to Stay Discovery, and the Memorandum of Law in Support Thereof, on all counsel of record via the Court's CM/ECF system.

/s/ Christopher H. Casey
Christopher H. Casey, Esq. (admitted *pro hac vice*)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1155
chcasey@duanemorris.com

15