```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
FEDERAL TRADE COMMISSION, STATE OF NEW   :
YORK, STATE OF CALIFORNIA, STATE OF      :
OHIO, COMMONWEALTH OF PENNSYLVANIA,      :
STATE OF ILLINOIS, STATE OF NORTH        :
CAROLINA, and COMMONWEALTH OF            :
VIRGINIA,                                :
                                         :
                    Plaintiffs,          :
                                         :
          -v-                            :
                                         :    20cv00706 (DLC)
VYERA PHARMACEUTICALS, LLC, AND          :
PHOENIXUS AG, MARTIN SHKRELI,            :    Memorandum Opinion
individually, as an owner and former     :         and Order
director of Phoenixus AG and a former    :
executive of Vyera Pharmaceuticals,      :
LLC, and KEVIN MULLEADY, individually,   :
as an owner and former director of       :
Phoenixus AG and a former executive of   :
Vyera Pharmaceuticals, LLC,              :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

DENISE COTE, District Judge:

The parties dispute whether portions of two Board Meeting minutes have been properly withheld on the ground of attorney-client privilege. Defendant Vyera Pharmaceuticals, LLC ("Vyera") has submitted the challenged documents for review <u>in camera</u>. After a recitation of the background and governing legal standards, this Opinion requires Vyera to disclose some of the withheld passages.

**Background**

This action was filed on January 27, 2020. Discovery began shortly thereafter. An Opinion of August 18, which largely denied the defendants' motions to dismiss, is incorporated by reference, and familiarity with it is assumed. See Fed. Trade Comm'n v. Vyera Pharm., LLC, No. 20CV706 (DLC), 2020 WL 4891311, at *14 (S.D.N.Y. Aug. 18, 2020). Fact discovery is scheduled to end on February 26. Expert discovery is scheduled to conclude on August 6. The pretrial order in this non-jury trial is due on October 20.

In a letter of December 18, the plaintiffs requested that this Court resolve disputes arising from redacted Turing Pharmaceuticals AG Board Meeting minutes from December 15, 2017 ("2017 Meeting" and "2017 Minutes")[1] and redacted Phoenixus AG Board Meeting minutes from March 15, 2019 ("2019 Meeting" and "2019 Minutes").[2] Specifically, the plaintiffs requested this Court review all redacted portions of the 2017 Meeting Minutes, and the redacted portions in Section 5 of the 2019 Meeting Minutes. On December 22, Vyera opposed the request and in support of that opposition provided a declaration of Lukas Däscher, the Secretary to the Board ("Declaration").

---

[1] Vyera was known as Turing Pharmaceuticals until late 2017.

[2] Vyera is a wholly-owned subsidiary of Phoenixus.

An Order of December 23 directed defendant Vyera to submit for in camera review the two documents by January 8, 2021.  The passages at issue principally concern Vyera's relationship with RL Fine Chem ("RL Fine").  In August 2015, Vyera acquired the U.S. rights to the branded drug Daraprim, which is used to treat toxoplasmosis.  The active pharmaceutical ingredient ("API") of Daraprim is pyrimethamine.  The plaintiffs' amended complaint alleges that Vyera entered into several anti-competitive agreements with other companies, including exclusive supply agreements.  The alleged goal of an exclusive supply agreement was to preclude generic drug companies from obtaining access to an FDA-approved pyrimethamine manufacturer.

The amended complaint alleges that in November 2017 -- one month before the 2017 Meeting -- Vyera entered an exclusive supply agreement with RL Fine after learning that RL Fine was preparing to seek FDA approval for the manufacture of pyrimethamine.  Plaintiffs allege that, under the agreement, Vyera was required to pay RL Fine a percentage of its Daraprim net revenues regardless of whether Vyera actually received pyrimethamine from RL Fine.  Plaintiffs allege that Vyera then paid RL Fine millions of dollars but never received any pyrimethamine from RL Fine.  Plaintiffs further allege that Vyera used the agreement to direct RL Fine to cease supplying pyrimethamine to two manufacturers of generic drugs.  On October

25, 2019 -- seven months after the 2019 Meeting -- Vyera paid RL Fine to terminate their agreement.

The plaintiffs contend that the redacted portions of both documents relate to allegations in the Amended Complaint that the defendants paid RL Fine not to supply Vyera's competitors with pyrimethamine and that Vyera did not need an extra source of pyrimethamine from RL Fine.  The plaintiffs argue that the redacted portions of the minutes "primarily concern discussions about the company's business activities" and are therefore not covered by the attorney-client privilege.

Vyera argues in its letter of December 22 that the redacted minutes reflect the solicitation and provision of legal advice and therefore fall under the attorney-client privilege. Specifically, Vyera states that the minutes include "discussions with counsel regarding active investigations, solicitation of legal advice, the provision of legal advice by counsel, and the Board's deliberation of that legal advice."

## Discussion

The attorney-client privilege protects communications "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  Am. Civil Liberties Union v. Nat'l Sec. Agency, 925 F.3d 576, 589 (2d Cir. 2019) (citation omitted).  The purpose of the privilege is to

4

facilitate openness and full disclosure between the attorney and the client.  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable."  United States v. Krug, 868 F.3d 82, 86 (2d Cir. 2017) (citation omitted).  The party invoking the privilege bears the burden of establishing its applicability.  United States v. Pugh, 945 F.3d 9, 18 (2d Cir. 2019).

The "mere fact that attorneys are involved in a communication does not cloak it with privilege."  Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc., No. 13 CIV. 742 (DLC), 2014 WL 1378127, at *2 (S.D.N.Y. Apr. 8, 2014).  To qualify for the privilege, a communication must be "generated for the purpose of obtaining or providing legal advice as opposed to business advice."  In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007).  To determine the purpose of a communication, courts consider "whether the predominant purpose . . . is to render or solicit legal advice."  Id. at 420.  "[L]egal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct" and "requires a lawyer

to rely on legal education and experience to inform judgment." Id. at 419.

"When an attorney is consulted in a capacity other than as a lawyer," for instance, as a business consultant, "that consultation is not privileged." Id. at 421. As a result, the issue of predominant purpose "usually arises in the context of communications to and from corporate in-house lawyers who also serve as business executives." Id. at 419. While the attorney-client privilege applies to communications with a company's in-house counsel, "in-house attorneys are more likely to mix legal and business functions." Id. at 421 (citation omitted). Thus, "an attorney's dual legal and non-legal responsibilities may bear on whether a particular communication was generated for the purpose of soliciting or rendering legal advice." Id.

1. 2017 Meeting

The participants in the 2017 Meeting were Chair Kevin P. Mulleady, fellow Directors Akeel N. Mithani and Jordan Walker, and Secretary Lukas Däscher. In addition to being responsible for recording minutes of the meetings, Däscher offers legal advice regarding Swiss and European Union matters. Däscher is a Swiss attorney and has been Head of Legal Europe for Phoenixus

6

since March 2016.  Attorneys Scott Vernick and Bradley Rodos of the law firm of Fox Rothschild LLP also attended the meeting.[3]

The charts below identify the redacted text by reference to page number, the number of the box on the given page,[4] and, where necessary, the paragraph number within that box.  The charts also describe the Court's holding with respect to each redaction.[5]

| Page | Number of box on page | Paragraph within redacted box | Holding |
|---|---|---|---|
| 3 | 1st | N/A | Not privileged.  May not be redacted. |
|   | 2nd | N/A | Not privileged.  May not be redacted. |
|   | 3rd | 1 | Not privileged.  May not be redacted. |
|   |   | 2 | Not privileged.  May not be redacted. |
|   |   | 3 | Not privileged.  May not be redacted. |
|   |   | 4 | Privileged.  May be redacted. |
|   |   | 5 | Privileged.  May be redacted. |
|   |   | 6 | Not privileged.  May not be redacted. |
| 4 | 1st | N/A | Not privileged.  May not be redacted. |

The defendants provided a privilege log to the plaintiffs explaining their redactions of the 2017 Minutes.  The privilege

---

[3] Vyera indicates that attorneys Michael Weiner and Karim Maizar also provided legal advice to the Board during the meeting, but they are not identified in the 2017 Minutes as attending the meeting.  In the body of the Minutes, Weiner's advice appears to be conveyed by Vernick, and Maizar's advice appears to be conveyed by Däscher.

[4] Boxes surround the material redacted by Vyera.

[5] The first two pages of this document contain a translation of the December 15, 2017 Board meeting minutes in German.  Where this Opinion rules on the English version of those pages, those rulings also apply to the equivalent German passages.

log states that portions of the Minutes should be redacted because they reflect "advice from counsel regarding issues pertaining to U.S. and Swiss law as applied to a contemplated contractual arrangement."

The passages that must be disclosed do not reflect either a request for legal advice or the delivery of legal advice. Vernick begins the Meeting by informing the Board about discussions between Vyera and RL Fine. Then, in the first box on page 3, he describes a business rationale for the RL Fine collaboration and refers to information available to the Board about competitors. Nothing in the passage indicates that Vernick is providing legal advice. Similarly, in the second box on page 3, the Chair and a fellow director provide their opinion of the business rationale for a collaboration with RL Fine.

In the third box on page 3, Paragraphs 4 and 5 describe legal advice by Vernick and Däscher to the Board about the legal implications of the collaboration. The remainder of the third box does not describe a request for legal advice or the presentation of such advice. It contains the continued presentation by the Chair and a director of the agreement and, in the final paragraph, their recommendation that the Board approve the collaboration. It notes that the Chair and director have been informed of the legal risks, but it does not describe

those risks. Finally, the box on page 4 does not contain a request for legal advice or a description of any legal advice.

2. 2019 Meeting

The participants in the 2019 Meeting were Chair Mulleady, Directors Mithani and Walker, CEO Averill Powers (who also functioned as Chief Strategy Officer and General Counsel), Secretary Däscher, and attorneys Vernick and Rodos.

The FTC has challenged the redactions in Section 5 of the Minutes. Redactions have been made from other portions of the Minutes, but they are not the subject of this application.

| Page | Number of box on page | Paragraph within redacted box | Holding |
|---|---|---|---|
| 5 | 1st | 1 | Not privileged. May not be redacted. |
|  |  | 2 | Not privileged. May not be redacted. |
|  |  | 3 | Not privileged. May not be redacted. |
|  |  | 4 | Not privileged. May not be redacted. |
| 6 | 1st | 1 | Not privileged. May not be redacted. |
|  |  | 2 | Not privileged. May not be redacted. |
|  |  | 3 | Privileged legal solicitation and advice. May be redacted. |
|  |  | 4 | Privileged legal solicitation and advice. May be redacted. |
|  |  | 5 | Not privileged. May not be redacted. |
|  |  | 6 | Privileged. May be redacted. |
|  |  | 7 | Privileged. May be redacted. |
|  | 2nd | 1 | Privileged legal advice. May be redacted. |
|  |  | 2 | Privileged discussion with counsel regarding legal issues. May be redacted. |
| 7 | 1st | 1 (continued from previous page) | Privileged discussion with counsel regarding legal issues. May be redacted. |

9

| | | 2 | Privileged discussion with counsel regarding legal issues.  May be redacted. |
| | | 3 | Privileged discussion with counsel regarding legal issues.  May be redacted. |
| | | 4 | Privileged discussion with counsel regarding legal issues.  May be redacted. |
| | | 5 | Privileged discussion with counsel regarding legal issues.  May be redacted. |
| | | 6 | Privileged legal advice.  May be redacted. |
| | | 7 | Privileged legal advice.  May be redacted. |
| 8 | 1st | N/A | The last two sentences of this box are privileged legal advice and may be redacted.  The remaining part of this box is not privileged and may not be redacted. |

Vyera explains that the redacted passages in Section 5 reflect the solicitation of legal advice and the provision of legal advice by attorneys Vernick and Powers.  Specifically, Vyera states that Section 5 includes legal advice regarding the FTC's ongoing investigation, the termination of a company employee, an employment law-related ongoing investigation being conducted by outside counsel, and Vyera's agreement with RL Fine.

Page 5

In the box on page 5, the first paragraph contains a description of a past fact and then a question.  The description does not constitute legal advice, taken by itself or in context.

10

The question is whether a particular course of action would appear problematic. It does not seek legal advice.

In the second paragraph in that box, Vernick and a board member reply to the question. The principal speaker is the board member, who is not an attorney. The reply to the question does not supply legal advice.

In the third paragraph, the CEO asks about market intelligence and a Board member responds. In the final paragraph, there is a description of a topic under discussion with no indication that it reflects either the request for or provision of legal advice. These paragraphs may not be redacted.

Page 6

In the first paragraph in the first box on page 6, a Board member refers to information that he and the CEO have received from Däscher and others. This does not refer to legal advice. The subsequent discussion by the Chair and a Board member do not reflect a request for legal advice.

In the second paragraph, the CEO reports that he considers something to be inappropriate, and a Board member responds. There is no request for or delivery of legal advice.

In the third and fourth paragraphs, the Chair and a Board member ask for legal advice, and Vernick responds. These paragraphs contain privileged information.

In the fifth paragraph, the CEO asks a fact question and a Board member responds. This is not privileged.

In the sixth and seventh paragraphs, Vernick asks a question and a discussion ensues. This may reflect the attorney gathering information in order to provide legal advice. It may be redacted.

The second box on page 6 contains advice from counsel and discussion with counsel regarding their work. Both paragraphs in the second box may be redacted.

Page 7

Paragraphs 1 through 6 in the box on page 7 continue the discussion of the issue begun at the bottom of page 6. The Board sought legal advice on that topic and this discussion relates directly to that legal advice. These paragraphs may be redacted.

Paragraph 7 in the box on page 7 relates to a new topic. Däscher reports non-privileged information and asks for information. This discussion may relate to Däscher's intention to provide legal advice and may be redacted.

Page 8

In the box on page 8, the CEO discusses reputation issues for the company in connection with a particular issue, and two board members provide their views. This discussion is not privileged. In the final two sentences, however, Vernick adds

his views on the subject.  While it is not entirely clear that Vernick's observations constitute legal advice, those two sentences may be redacted.

## Conclusion

Vyera shall submit to the plaintiffs redacted versions of the Turing Pharmaceuticals AG Board Meeting Minutes from December 15, 2017 and the Phoenixus AG Board Meeting Minutes from March 15, 2019 that comply with the holdings in this Opinion by **Friday, January 15, 2021 at noon.**

Dated:    New York, New York
          January 13, 2021

_____
          DENISE COTE
United States District Judge

13