| | | |
|---|---|---|
| NEW YORK | **Duane Morris®** | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | FIRM and AFFILIATE OFFICES | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | CHRISTOPHER H. CASEY | BOCA RATON |
| SAN FRANCISCO | DIRECT DIAL: +1 215 979 1155 | PITTSBURGH |
| SILICON VALLEY | PERSONAL FAX: +1 215 689 2194 | NEWARK |
| SAN DIEGO | E-MAIL: CHCasey@duanemorris.com | LAS VEGAS |
| LOS ANGELES | | CHERRY HILL |
| TAIWAN | www.duanemorris.com | LAKE TAHOE |
| BOSTON | | MYANMAR |
| HOUSTON | May 21, 2021 | |

The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1910
New York, NY 10007

   Re: *FTC, et al. v. Vyera Pharmaceuticals, LLC, et al.,* **Case No. 1:20-cv-706 (DLC)**

Dear Judge Cote:

We write on behalf of Martin Shkreli in opposition to plaintiffs' May 17 Letter Motion seeking spoliation sanctions. Plaintiffs have not met their burden to prove that Mr. Shkreli spoliated any evidence. Despite ample time to develop the facts surrounding the alleged spoliation, plaintiffs present the Court with a very thin record, yet seek far-reaching sanctions that essentially relieve them of their burden to prove many critical facts needed to establish liability against Mr. Shkreli. Even if the Court finds spoliation on this record—which it should not—there are more narrowly-tailored sanctions that the Court could impose to alleviate any alleged prejudice to plaintiffs.

Plaintiffs have not proven that relevant communications existed on either of the two phones at issue.[1] Mr. Shkreli testified that he "think[s]" he was issued a corporate phone, that he "almost never" used it for business, and would be "shocked" if he sent more than 10 text messages from it. Ex. 1 at 366. And although Vyera backed up its employees' phones, no messages sent to or from Mr. Shkreli's corporate phone have been produced by any party, suggesting that no relevant messages exist on that phone. As for the alleged "contraband phone"—if it existed—Mr. Mithani was asked at his deposition whether he communicated with Mr. Shkreli on such a phone about Daraprim. He could not recall any specific instances. Plaintiffs' Ex. F, at 81-82. *See Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2019 WL 6838672 at *6 (S.D.N.Y. Dec. 16, 2019) (denying motion for sanctions where it was "unclear" relevant materials existed).

Plaintiffs also fail to prove intentional spoliation. The "particularly harsh" sanctions permitted under Rule 37(e)(2) require "clear and convincing evidence" that the spoliating party acted with the "intent to actually deprive another party" of evidence. *Id.* at *5. Neither inexcusable nor even grossly negligent conduct satisfies this standard. *Id.* at *5-7. A specific "intent to deprive" cannot

---

[1] Mr. Shkreli was not under a duty to preserve evidence until December 2019, when he first learned that he was a subject of the FTC's investigation. Prior to that time, he had no reason to believe he could be named in a lawsuit, as the FTC had never brought a Sherman Act Section 2 case against an individual. Plaintiffs do not contend that any spoliation occurred after December 2019. In addition, plaintiffs have failed to prove that Mr. Shkreli ever received or saw the 2015 letters they allege put him on notice, despite the opportunity to take discovery on the issue. In any event, plaintiffs cite no authority for the proposition that Mr. Shkreli had an ongoing duty to preserve evidence of a potential claim *against the company* years after he left as CEO. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007) ("obligation to preserve" does not "continue[] indefinitely").

The Honorable Denise L. Cote
May 21, 2021
Page 2

be found "on the basis of suspicion alone." *Id.* at *6 (internal citation omitted). The record contains no evidence of specific intent, nor does it support a "conscious act of destruction" or a "conscious dereliction of a known duty to preserve electronic data" rising "to the level of being 'so stunningly derelict' that it is akin to an intent to deprive." *Id.* at *5. With respect to the corporate phone, plaintiffs claim, without evidence, that Mr. Shkreli "allowed" the phone to be reset. Plaintiffs had the opportunity to take discovery on whether the phone was reset, and if so, who reset it and why. They failed to do so. They ask the Court to infer intentional spoliation based upon a statement from an IT vendor, who could not even determine whether the phone had been reset or had never been set up. *See* Ex. 2. This does not constitute evidence of intentional spoliation.

Nor is there evidence of intentional spoliation with respect to the alleged "contraband phone." Plaintiffs ask the Court to infer intentional spoliation from Mr. Shkreli's invocation of the Fifth Amendment. But Mr. Shkreli invoked the Fifth Amendment on the question of whether he had a cell phone in prison in 2019, not on the question of whether he destroyed evidence. *In re Gorsoan Ltd.*, which plaintiffs cite, is inapposite, as the defendant in that case invoked the Fifth Amendment on the question of spoliation, which Mr. Shkreli never did. 2020 WL 3172777 at *9 (S.D.N.Y. June 15, 2020). Thus, the Court should not draw any inference as to the relevant question here—whether there was spoliation—from Mr. Shkreli's assertion of his constitutional right against self-incrimination. Even if such a phone existed, the record is devoid of any evidence that Mr. Shkreli destroyed any data on such a phone, much less that he did so intentionally.

Thus, even if the Court were to find that Mr. Shkreli spoliated relevant evidence, the presumptions that plaintiffs seek under Rule 37(e)(2) are not supported by the record, because there is no evidence of intentional spoliation. Under Rule 37(e)(1), any sanction the court may award must "be no greater than necessary to cure the prejudice," and must not *"*have the effect of measures that are permitted under subdivision (e)(2)." *Fashion Exch. LLC*, 2019 WL 6838672, at *3. If the Court finds prejudice—which it should not—plaintiffs' request for an order precluding Mr. Shkreli from introducing any argument or evidence contrary to the three presumptions they seek is "greater than necessary" to cure any such prejudice and is simply an overreach. Asking the Court to presume, and precluding Mr. Shkreli from introducing any contrary argument or evidence, that he "engaged in the challenged conduct—including tightening the Daraprim distribution system and instructing Mulleady and Mithani to enter the exclusive contract with RL Fine—to restrain generic entry" prevents Mr. Shkreli from defending critical aspects of this action, and, even under Rule 37(e)(1), goes beyond a mere inference to a conclusive finding. Additionally, asking the Court to presume, and precluding Mr. Shkreli from introducing any contrary argument or evidence, that he "was continuously involved in Vyera and Phoenixus's business from 2015 to the present" is unfairly vague (*e.g.*, what "continuously involved" means) and overbroad (*e.g.*, the last alleged communications are in February 2019). By contrast, an order that precludes Mr. Shkreli from introducing any argument or evidence contrary to the presumption that he "communicated with Mr. Mulleady and Mr. Mithani about company business from prison" is more appropriately tailored to the thin evidentiary record that plaintiffs have developed.

For these reasons, Mr. Shkreli requests that the Court deny plaintiffs' motion for sanctions.[2]

---

[2] Alternatively, Mr. Shkreli requests full briefing on plaintiffs' motion in light of the draconian and unreasonable sanctions that plaintiffs seek.

The Honorable Denise L. Cote
May 21, 2021
Page 3

                Respectfully submitted,

                */s/ Christopher H. Casey*
                Christopher H. Casey

CHC

cc: Plaintiffs' Counsel (via ECF Filing)