# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION; STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF NORTH CAROLINA; STATE OF OHIO; COMMONWEALTH OF PENNSYLVANIA; and COMMONWEALTH OF VIRGINIA,

                *Plaintiffs*,

v.

VYERA PHARMACEUTICALS, LLC; PHOENIXUS AG; MARTIN SHKRELI, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC; and KEVIN MULLEADY, individually, as an owner and director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,

                *Defendants*.

Case No. 20-cv-00706 (DLC)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1
II. BACKGROUND ....................................................................................................1
III. SUMMARY JUDGMENT STANDARD ...............................................................3
IV. ARGUMENT ..........................................................................................................4
    A. The State Plaintiffs May Seek, at Most, Equitable Monetary Relief for Daraprim Sales That Occurred Within Their Borders on Behalf of Alleged Victims in Their States ...................................................................4
        1. The Supreme Court's Decision in *Liu* Establishes the Bounds of Equitable Monetary Relief ........................................................5
        2. The State Plaintiffs Do Not Have Standing as *Parens Patriae* to Recover Equitable Monetary Relief on Behalf of Residents of Other States ...........................................................................................6
        3. Six State Plaintiffs—California, Illinois, New York, North Carolina, Ohio, and Pennsylvania—Are Only Authorized to Seek Equitable Monetary Relief for Daraprim Sales Within Their Borders ...........................................................................................7
            a. New York Donnelly Act and Executive Law ................................7
            b. California Cartwright Act and Unfair Competition Law..............10
            c. Illinois Antitrust Act .....................................................................11
            d. North Carolina Unfair or Deceptive Practices Act .......................11
            e. Ohio Valentine Act .......................................................................11
            f. Pennsylvania Common Law Doctrine Against Restraints of Trade ..............................................................................................12
    B. The Virginia Antitrust Act Does Not Authorize the Virginia Attorney General to Recover Equitable Monetary Relief .................................................12
V. CONCLUSION .....................................................................................................13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982) ...................................................................................................... 6

*AMG Capital Management, LLC v. FTC*,
  141 S. Ct. 1341 (2021) ........................................................................................... *passim*

*Association for Accessible Medicines v. Frosh*,
  887 F.3d 664 (4th Cir. 2018) ......................................................................................... 9

*AT & T Mobility LLC v. AU Optronics Corp.*,
  707 F.3d 1106 (9th Cir. 2013) ..................................................................................... 10

*Bowlus v. Alexander & Alexander Services, Inc.*,
  659 F. Supp. 914 (S.D.N.Y. 1987) ................................................................................ 7

*In re DeFelice*,
  77 B.R. 376 (Bankr. D. Conn. 1987) ............................................................................. 8

*FTC v. Electronic Payment Solutions of America Inc.*,
  482 F. Supp. 3d 921 (D. Ariz. 2020) ............................................................................. 5

*Global Reinsurance Corp. U.S. Branch v. Equitas Ltd.*,
  18 N.Y.3d 722 (2012) .................................................................................................... 7

*Goshen v. Mutual Life Insurance Co.*,
  98 N.Y.2d 314 (2002) .................................................................................................... 9

*Heritage Plastics Inc. v. Rohm & Haas Co.*,
  No. 03-cv-0113, 2004 WL 816949 (Ohio Com. Pl. Feb. 27, 2004) ........................... 11

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ..................................................................................................... 10

*Johnson v. Microsoft Corp.*,
  834 N.E.2d 791 (Ohio 2005) ....................................................................................... 10

*Kosuga v. Kelly*,
  257 F.2d 48 (7th Cir. 1958) ......................................................................................... 11

*Liu v. SEC*,
  140 S. Ct. 1936 (2020) ...................................................................................... 2, 4, 5, 6

*In re Loestrin 24 FE Antitrust Litig.*,
    410 F. Supp. 3d 352 (D.R.I. 2019) ............................................................................... 10

*New York v. Actavis, PLC*,
    No. 14-cv-7473, 2014 WL 7015198 (S.D.N.Y. Dec. 11, 2014) ....................................... 7

*New York v. Facebook, Inc.*,
    __ F. Supp. 3d __, 2021 WL 2643724 (D.D.C. June 28, 2021) ..................................... 6

*New York v. Feldman*,
    210 F. Supp. 2d 294 (S.D.N.Y. 2002) ............................................................................ 8

*Norwest Mortgage, Inc. v. Superior Court*,
    72 Cal. App. 4th 214 (1999) ......................................................................................... 11

*People v. Ernst & Young, LLP*,
    114 A.D.3d 569 (2014) ................................................................................................... 9

*Rodriguez v. City of New York*,
    291 F. Supp. 3d 396 (S.D.N.Y. 2018) ........................................................................ 3, 4

*Smith v. Lathrop*,
    44 Pa. 326 (1863) .......................................................................................................... 12

*Spitzer v. Coventry First LLC*,
    No. 0404620/2006, 2007 WL 2905486 (Sup. Ct. N.Y. Cty. Sept. 25, 2007) ............. 8, 9

*People ex rel. Spitzer v. H & R Block, Inc.*,
    16 Misc. 3d 1124(A), 847 N.Y.S.2d 903 (Sup. Ct. 2007) .............................................. 9

*People ex rel. Spitzer v. Telehublink Corp.*,
    301 A.D.2d 1006, 756 N.Y.S.2d 285 (2003) ............................................................. 8, 9

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*,
    405 F. Supp. 2d 1141 (C.D. Cal. 2005) ........................................................................ 11

*US LEC Communications, Inc. v. Qwest Communications Corp.*,
    No. 05-11, 2006 WL 1367383 (W.D.N.C. May 15, 2006) ........................................... 11

**Statutes**

California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.* .......................................... 2, 10

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ........................... 2, 11

Clayton Act Section 16, 15 U.S.C. § 26 ........................................................................................ 2, 5

Federal Trade Commission Act Section 13(b), 15 U.S.C. § 53(b) ....................................... 2, 3, 12

Illinois Antitrust Act, Ill. Comp. Stat. 10/3(3)..................................................................2, 11

New York Donnelly Act, N.Y. Gen. Bus. Law § 340 *et seq.* ................................................2, 7, 9

New York Executive Law, N.Y. Exec. Law § 63(12)............................................................2, 7, 9

North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. § 75-1 *et seq.*.....................2, 11

Ohio Valentine Act, Ohio Rev. Code Ann. § 1331 ............................................................2, 11, 12

Virginia Antitrust Act, Va. Code Ann. § 59.1 *et seq.*........................................................2, 12, 13

**Rules**

Federal Rule of Civil Procedure 56(a)................................................................................3

I.      **Introduction**

In this motion for partial summary judgment, Defendants Vyera Pharmaceuticals, LLC, Phoenixus AG, Martin Shkreli, and Kevin Mulleady (together, "Defendants") ask the Court to resolve a discrete legal question about which there is no genuine dispute of material fact: Can New York, California, Illinois, North Carolina, Ohio, Pennsylvania, and Virginia (collectively, the "State Plaintiffs") pursue nationwide equitable monetary relief, including on behalf of alleged victims in other states who purchased or reimbursed for the purchase of Daraprim? This question can be answered as a matter of law: No.

The State Plaintiffs seek to recover equitable monetary relief in the form of disgorgement of so-called "ill-gotten gains" for Daraprim sales that occurred not only within their borders, but also nationwide. Settled precedent makes clear, however, that the State Plaintiffs' authority to seek equitable monetary relief—to the extent they have that authority at all[1]—is limited to claims for disgorgement of ill-gotten gains with respect to sales *within* each of their respective borders on behalf of alleged victims within their respective states. The State Plaintiffs lack the constitutional or statutory authority to pursue, and the Court lacks the equitable authority to award, disgorgement claims on behalf of citizens of other states. Therefore, the Court should enter summary judgment for Defendants on the State Plaintiffs' claims for disgorgement with respect to transactions on behalf of alleged victims who reside and were purportedly harmed in non-plaintiff states.

II.     **Background**

The background relevant to this motion for partial summary judgment is straightforward and derives largely from the Amended Complaint for Injunctive and Other Equitable Relief

---

[1] As discussed below, Defendants also seek summary judgment with respect to Virginia's claim for equitable monetary relief because Virginia lacks the statutory authority to seek such relief at all.

("Amended Complaint"). ECF No. 87. The State Plaintiffs brought this lawsuit purporting to seek, in a *parens patriae* capacity, "equitable monetary relief" in the form of disgorgement. Defs.' Local Rule 56.1 Statement of Undisputed Material Facts in Supp. of Joint Mot. for Partial Summ. J. ("SUMF") ¶ 15.[2] The Supreme Court has held that any disgorgement award must be limited to "an individual wrongdoer's net profits to be awarded for victims." *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020). The State Plaintiffs seek relief pursuant to federal law, Section 16 of the Clayton Act, 15 U.S.C. § 26, and their respective state laws.[3]

Each State Plaintiff pleads in the Amended Complaint that it is suing on behalf of its citizens. For example, New York alleges that it "brings this action on behalf of the people of the State of New York to protect the state, its general economy, and its residents." SUMF ¶ 2. The other State Plaintiffs make substantively identical allegations. SUMF ¶¶ 4, 6, 8, 10, 12, 14. Unsurprisingly, none alleges that it brings suit or seeks relief on behalf of the citizens of other states, or on behalf of alleged victims nationwide.

Notwithstanding the purely intrastate nature of each State Plaintiff's claim, following the Supreme Court's decision in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341, 1344 (2021), in which the Court held unanimously that FTC Act Section 13(b) does not authorize the FTC to seek equitable monetary relief, the State Plaintiffs are now

---

[2] In addition to equitable monetary relief, the State Plaintiffs initially sought "civil penalties and/or forfeitures," but they have since stipulated to the dismissal of those remedies in exchange for Defendants' agreement to withdraw their jury demand. SUMF ¶ 16. The State Plaintiffs also seek injunctive relief, which is not the subject of the instant motion.

[3] New York brings claims under the Donnelly Act, N.Y. Gen. Bus. Law § 340 *et seq.*, and the New York Executive Law, N.Y. Exec. Law § 63(12); California brings claims under the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; Illinois brings a claim under the Illinois Antitrust Act, Ill. Comp. Stat. 10/3(3); North Carolina brings a claim under the North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. § 75-1 *et seq.*; Ohio brings a claim under the Ohio Valentine Act, Ohio Rev. Code Ann. § 1331; Pennsylvania brings a claim under the common law doctrine against restraint of trade; and Virginia brings a claim under the Virginia Antitrust Act, Va. Code Ann. § 59.1 *et seq*. *See* SUMF ¶¶ 1, 3, 5, 7, 9, 11, 13.

attempting to fill the void left by the FTC's recently invalidated nationwide disgorgement claim.[4] The State Plaintiffs contend that they are entitled to recover equitable monetary relief not only for Daraprim sales that took place within their respective borders on behalf of their own citizens, as alleged in the Amended Complaint, but also for extraterritorial sales of Daraprim to citizens of other states that are not parties to this action. In a letter the FTC filed with the Court on May 14, 2021 on behalf of all Plaintiffs, Plaintiffs acknowledged that the FTC lacks authority to seek equitable monetary relief, but asserted that "State Plaintiffs maintain claims for the *total sum* of Defendants' ill-gotten gains." SUMF ¶ 17 (emphasis added).

Plaintiffs' only citation for that proposition was an unreported New York trial court decision from 2007 that does not support their position. ECF No. 416 at 1 n.1. The State Plaintiffs have since cited three other cases, also under New York law, that likewise do not support the proposition that New York may seek disgorgement on behalf of alleged victims nationwide. *See* ECF No. 448 at 2. And the State Plaintiffs have not cited a single case that they even claim purports to give any of the other six State Plaintiffs the expansive authority to pursue nationwide claims on behalf of the citizens of other states.

## III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for [partial] summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought," and the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Rodriguez v. City of New York*, 291 F. Supp. 3d

---

[4] In the Amended Complaint, the FTC sought equitable monetary relief pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). After the Supreme Court's *AMG Capital* decision holding that the FTC has no authority to seek such relief under that statute, this Court granted the FTC's motion to withdraw its prayer for equitable monetary relief in this case. SUMF ¶ 18.

396, 407 (S.D.N.Y. 2018).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rodriguez*, 291 F. Supp. 3d at 407 (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).  To defeat a motion for summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial," and may not rely on "mere speculation or conjecture as to the true nature of the facts."  *Id*. at 407-08 (citations omitted).

**IV.  Argument**

    **A.  The State Plaintiffs May Seek, at Most, Equitable Monetary Relief for Daraprim Sales That Occurred Within Their Borders on Behalf of Alleged Victims in Their States**

Allowing the seven State Plaintiffs, or any one of them, to pursue disgorgement based on sales outside of their borders on behalf of alleged victims nationwide, and thus expose Defendants to overlapping claims for the same alleged "ill-gotten gains," violates long-standing principles of equity jurisprudence.  The Court's equity jurisdiction permits it to enter a disgorgement award only insofar as the award (1) does not exceed the alleged wrongdoer's net profits, and (2) is awarded on behalf of victims, not simply to benefit the public at large.  *Liu*, 140 S. Ct. at 1942.  Equity does not permit the State Plaintiffs (individually or collectively) to pursue nationwide relief on behalf of citizens of other states that are not parties to this litigation.  Additionally, the State Plaintiffs, suing in a *parens patriae* capacity, do not have standing to recover nationwide disgorgement on behalf of citizens of other states.  Nor do they have authority under their respective state laws to do so.

### 1. The Supreme Court's Decision in *Liu* Establishes the Bounds of Equitable Monetary Relief

The Supreme Court's decision in *Liu* defines the scope of equitable monetary relief that a court is permitted to award: a court must "avoid transforming an equitable remedy into a punitive sanction," and thus must "restrict[] the remedy to an individual wrongdoer's net profits." 140 S. Ct. at 1942-43. Anything more, including duplicative awards of the same so-called "ill-gotten gains," would constitute a penalty. The Court also made clear that any disgorgement must be "awarded for victims," *id.* at 1942, and not "simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains," *id.* at 1948. As the Court observed with respect to the statute at issue in *Liu*, and which is equally true as to each of the statutes at issue in this case, Congress did not grant authority to seek "'equitable relief' *at large*." *Id.* (emphasis in original).

The State Plaintiffs may argue that *Liu* should be limited to the Securities Exchange Act. However, a plain reading of *Liu* makes clear that the basis for the Court's holding in that case, which is firmly grounded in traditional principles of equity, applies equally to any statute that "provide[s] for 'equitable relief,'" *id.* at 1942, because "statutory references to a remedy grounded in equity must, absent other indication, be deemed to contain the limitations upon its availability that equity typically imposes," *id.* at 1947. Indeed, courts have already applied *Liu*'s holding in other contexts.[5] *Liu*, and the principles of equity reiterated therein, therefore circumscribes the State Plaintiffs' claims for equitable monetary relief under state law.[6]

---

[5] *See, e.g.*, *FTC v. Elec. Payment Sols. of Am. Inc.*, 482 F. Supp. 3d 921, 929 (D. Ariz. 2020) (applying *Liu* to an action brought by the FTC under the FTC Act seeking to recover equitable monetary relief).

[6] Nor are the State Plaintiffs entitled to equitable monetary relief under federal law, specifically, Section 16 of the Clayton Act. *See* Am. Compl. at 2, 74. Section 16 provides only for "*injunctive relief* . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26 (emphasis added). Like the statute at issue in *AMG Capital*, Section 16 does not provide for equitable monetary relief. Because an "'injunction' is not the same as an award of equitable monetary relief," and the statute must be read "to mean what it says, as authorizing injunctive but not monetary relief," Supreme Court precedent forecloses the State Plaintiffs' ability to recover equitable monetary relief under Section 16 of the Clayton Act. *AMG Capital*, 141 S. Ct. at 1347, 1349.

Permitting the State Plaintiffs to recover equitable monetary relief for sales of Daraprim that occurred outside of their borders on behalf of alleged victims in other states would violate *Liu* and long-standing principles of equity jurisdiction and federalism. Nationwide disgorgement would expose Defendants to the possibility of overlapping awards (both among the State Plaintiffs and from future claims by other states) that would exceed Defendants' net profits and, thus, improperly "transform an[] equitable profits-focused remedy into a penalty." *Id*. at 1949. For example, New York and California (two of the seven State Plaintiffs) cannot both have the right to seek disgorgement of the same total ill-gotten gains. And, even if the Court could apportion an award among the states that have sued, awarding these seven State Plaintiffs the total alleged ill-gotten gains would leave Defendants exposed to future claims by other states that seek disgorgement of the same alleged ill-gotten gains on behalf of their citizens. *Liu* makes clear that this Court's equitable jurisdiction does not permit such a penalty. *Id*. at 1942-43.

### 2. The State Plaintiffs Do Not Have Standing as *Parens Patriae* to Recover Equitable Monetary Relief on Behalf of Residents of Other States

The State Plaintiffs, suing in their *parens patriae* capacity, also lack standing to recover disgorgement for alleged harm to citizens of other states. The State Plaintiffs have standing to sue as *parens patriae* only "*on behalf of [their] citizens*" to seek redress for injuries "felt *within their borders*." *New York v. Facebook, Inc.*, __ F. Supp. 3d __, 2021 WL 2643724, at *8 (D.D.C. June 28, 2021) (emphasis added); *see also Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*, 458 U.S. 592, 607 (1982) (ruling that a state has standing to sue only for an "alleged injury to the health and welfare of *its citizens*" (emphasis added)). Because the equity principles discussed in *Liu* require that any disgorgement be awarded for victims, and the State Plaintiffs do not have standing to assert claims on behalf of alleged victims in other states, their request for the total nationwide sum of Defendants' alleged ill-gotten gains is foreclosed.

-6-

### 3. Six State Plaintiffs—California, Illinois, New York, North Carolina, Ohio, and Pennsylvania—Are Only Authorized to Seek Equitable Monetary Relief for Daraprim Sales Within Their Borders

The State Plaintiffs' pursuit of nationwide disgorgement is also foreclosed because the state statutes and common law claims under which six of the State Plaintiffs[7] seek relief make clear that any equitable monetary relief is confined to relief for sales attributable to transactions within each of their respective borders.[8]

#### a. *New York Donnelly Act and Executive Law*

According to New York's highest court, the Donnelly Act requires a "very close nexus between the conspiracy and injury to competition *in this state*." *Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722, 736 (2012) (emphasis added). This is because "[t]he language of the statute itself limits its application to conduct within the state . . . and not contracts having their impact outside the State." *Bowlus v. Alexander & Alexander Servs., Inc.*, 659 F. Supp. 914, 917-18 (S.D.N.Y. 1987) (citation and internal quotation marks omitted).

The same limitations apply to New York's Executive Law. That statute permits "the New York State Attorney General [to] sue defendants for violations of state or federal law, including Sherman Act or Donnelly Act violations, affecting more than one person *within New York State*." *New York v. Actavis, PLC*, No. 14-cv-7473, 2014 WL 7015198, at *43 (S.D.N.Y. Dec. 11, 2014) (emphasis added), *aff'd sub nom. New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015).

---

[7] As referenced, *supra* n.1, and discussed further, *infra* at 12-13, Virginia—the seventh State Plaintiff—has no statutory authority to seek equitable monetary relief.

[8] The State Plaintiffs alluded to their statutory limitations in a June 28, 2021 letter to Congress co-signed by six of the seven State Plaintiffs urging the passage of legislation to undo the Supreme Court's decision in *AMG Capital*. In that letter, the State Plaintiffs argued that granting the FTC authority to seek equitable monetary relief was important because "[t]he FTC has nationwide jurisdiction where, in some matters, the States may lack such jurisdiction." SUMF ¶ 19.

Despite the clear statutory limitations on the New York Attorney General's authority, the State Plaintiffs nonetheless purport to "maintain claims for the total sum of Defendants' ill-gotten gains," SUMF ¶ 17, based on four cases applying New York law.[9]  *See* ECF No. 416 at 1 n.1; ECF No. 448 at 2.  None of these cases, however, provides New York with the authority to seek disgorgement on behalf of victims nationwide.  And none permits the New York Attorney General to recover for sales that occurred outside of New York.  Instead, three of the cases make clear that the New York Attorney General is permitted to recover on behalf of non-residents of New York only if—unlike the extraterritorial sales for which Plaintiffs seek recovery here—the underlying transaction occurred within the boundaries of New York.  *See Spitzer v. Coventry First LLC*, No. 0404620/2006, slip op. at 5, 2007 WL 2905486 (Sup. Ct. N.Y. Cty. Sept. 25, 2007) (dismissing bid-rigging claims related to Pennsylvania defendants' purchase and securitizing of insurance policies because New York law "precludes recovery for out-of-state injury"); *New York v. Feldman*, 210 F. Supp. 2d 294, 297-98, 303 (S.D.N.Y. 2002) (denying a motion to dismiss a complaint alleging a scheme to rig bids because, among other reasons, the alleged injury stemmed from public auctions held in New York and thus the alleged violations occurred "within that State's boundaries"); *People ex rel. Spitzer v. Telehublink Corp.*, 301 A.D.2d 1006, 1007, 1010, 756 N.Y.S.2d 285 (2003) (affirming judgment pursuant to New York Executive Law Section 63(12) on behalf of non-residents of New York because the defendant company headquartered in Massachusetts used "a courier service in New York" to send fraudulent correspondence directly to consumers concerning a telemarketing scheme).[10]  And the

---

[9] Plaintiffs do not argue that any other states' laws convey the authority to seek disgorgement on behalf of victims nationwide.

[10] The rule that the New York Attorney General may recover equitable monetary relief only for transactions that occurred in New York is well established, including in other cases not cited by Plaintiffs.  *See, e.g.*, *In re DeFelice*, 77 B.R. 376, 377 (Bankr. D. Conn. 1987) (denying a motion to strike a claim seeking to recover for injuries of non-residents of New York stemming from "misrepresentations regarding the sale and/or subdivision of certain New

fourth case that the State Plaintiffs cite simply holds that equitable monetary relief in the form of both restitution and disgorgement may be available under New York's Donnelly Act and Executive Law, but does not address the issue of extraterritorial recovery at all. *See People v. Ernst & Young, LLP*, 114 A.D.3d 569, 569–70, 980 N.Y.S.2d 456 (2014).

The fact that some of the challenged conduct originated at Vyera's offices in New York is insufficient, standing alone, to justify the application of New York law to out-of-state transactions or to seek recovery on behalf of out-of-state victims. *See Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314 (2002). In *Goshen*, the New York Court of Appeals held that the "territorial reach" of a similar New York statute, General Business Law Section 349, does not extend to "out-of-state transactions" where the challenged conduct "originat[ed]" or a scheme was "hatch[ed]" in New York, but instead covers only those instances where the consumer was injured in New York. *Id.* at 324-25.[11] To permit otherwise, the Court of Appeals held, "would lead to an unwarranted expansive reading of the statute, . . . potentially leading to the nationwide, if not global application of" state law. *Id.* at 325. This would, in turn, "tread on the ability of other states to regulate their own markets and enforce their own consumer protection laws," *id.*, in violation of the dormant commerce clause. *Accord Ass'n for Accessible Medicines v. Frosh*, 887 F.3d 664, 667 (4th Cir. 2018) ("The principle against extraterritoriality as it relates to the dormant commerce clause is derived from the notion that 'a State may not regulate commerce

---

York real estate"); *People ex rel. Spitzer v. H & R Block, Inc.*, 16 Misc. 3d 1124(A), 847 N.Y.S.2d 903 (Sup. Ct. 2007) (denying a motion to dismiss claims about deceptive marketing of retirement accounts by non-residents of New York under Executive Law Section 63(12), because the claims "involv[ed] deceptions leading to New York transactions" because the injured "customer completed the transaction by depositing his or her funds in a New York money market account").

[11] The authority on which the State Plaintiffs rely recognizes that New York's General Business Law Section 349, at issue in *Goshen*, is similar in language and purpose to the Executive Law and the Donnelly Act, under which the New York Attorney General sues here. *See Coventry*, slip op. at 5 (citing *Goshen*, 98 N.Y.2d at 326); *see also Telehublink Corp.*, 301 A.D.2d at 1009 (relying on *Goshen*).

occurring wholly outside of its borders.'" (citing *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989))).

By way of illustration, following the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 726-35 (1977), in which the Court held that only direct purchasers may sue for damages under the federal antitrust laws, many states passed so-called "*Illinois Brick* repealer" statutes permitting indirect purchasers to assert antitrust claims under state law. A number of states, however, have not done so, including Texas (as well as some State Plaintiffs—*i.e.*, Ohio, Pennsylvania, and Virginia).[12]  *See In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 381 (D.R.I. 2019) (Texas, Pennsylvania, and Virginia do not have *Illinois Brick* repealer statutes); *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 798 (Ohio 2005) (same for Ohio). Under the State Plaintiffs' nationwide disgorgement claim, however, New York could sue on behalf of, and distribute money to, a Texas citizen who purchased Daraprim at her local Texas pharmacy, notwithstanding Texas's clear policy decision not to permit such a claim.

### b.  *California Cartwright Act and Unfair Competition Law*

Under the Cartwright Act, Plaintiffs can recover only for Daraprim sales within California. The Cartwright Act applies to "anticompetitive conduct undertaken within California." *AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1112 (9th Cir. 2013). The Cartwright Act covers transactions outside of California only when, unlike here, "more than a *de minimis* amount" of the defendant's challenged conduct took place in California. *Id*. at 1113. That is not the case here, and Plaintiffs' pleading makes clear that California only brought this claim "on behalf of the people of the State of California to protect the state, its general economy, and its residents." SUMF ¶ 4.

---

[12] Defendants reserve the right to challenge recovery by indirect purchasers pursuant to state laws that prohibit such recovery.

The same result is required under California's Unfair Competition Law. Consistent with the premise that "the California legislature does not intend for statutes to have force or operation beyond the boundaries of the state," *Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005) (citation and quotation marks omitted), the Unfair Competition Law regulates only conduct occurring within California. *See also Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (noting that California's Unfair Competition Law "contains no express declaration that it was designed or intended to regulate claims . . . arising from conduct occurring entirely outside of California").

### c. *Illinois Antitrust Act*

It is well established that the Illinois Antitrust Act applies "only to intrastate commerce." *Kosuga v. Kelly*, 257 F.2d 48, 55 (7th Cir. 1958); *see also* 740 Ill. Comp. Stat. Ann. 10/2 ("The purpose of [the Illinois Antitrust] Act is to promote the unhampered growth of commerce and industry throughout the State."). Accordingly, equitable monetary relief under the Illinois Antitrust Act is limited to relief for Daraprim sales in Illinois.

### d. *North Carolina Unfair or Deceptive Practices Act*

Equitable monetary relief under the North Carolina Unfair or Deceptive Practices Act is likewise limited to relief for Daraprim sales that occurred in North Carolina. A claim under that act "must involve an in-state injurious effect on [the plaintiff's] business operations in North Carolina." *US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*, No. 05-11, 2006 WL 1367383, at *3 (W.D.N.C. May 15, 2006) (dismissing a claim for failure to allege an "in-state injury").

### e. *Ohio Valentine Act*

Ohio's Valentine Act requires "sufficient harmful effects within the state itself." *Heritage Plastics Inc. v. Rohm & Haas Co.*, No. 03-cv-0113, 2004 WL 816949, at *4 (Ohio Com. Pl. Feb. 27, 2004). And, like each of the other State Plaintiffs, Ohio only brought this

-11-

action on behalf of "the people" of its state "to protect the state, its general economy, and its residents."  SUMF ¶ 10.  Accordingly, equitable monetary relief under the Valentine Act is limited to relief with respect to Daraprim sales that occurred in Ohio for alleged victims in Ohio.

> **f.** *Pennsylvania Common Law Doctrine Against Restraints of Trade*

The Pennsylvania Supreme Court has long held that there is no extraterritorial application of Pennsylvania common law.  *Smith v. Lathrop*, 44 Pa. 326, 330 (1863) ("[T]he states are necessarily foreign to and independent of each other.  They are each governed by their own laws, and, their courts having no extraterritorial power to enforce their decrees beyond their jurisdictional limits, they are in that sense foreign to each other, which is the clear and settled doctrine of the common law.").  Accordingly, Pennsylvania common law regulates only conduct and injuries occurring in Pennsylvania, and equitable relief under Pennsylvania common law is confined to relief for Daraprim sales that occurred in Pennsylvania on behalf of alleged victims in Pennsylvania.

> **B.** **The Virginia Antitrust Act Does Not Authorize the Virginia Attorney General to Recover Equitable Monetary Relief**

Finally, the Court should enter summary judgment on Virginia's claim for equitable monetary relief under the Virginia Antitrust Act because the plain language of that statute authorizes the Virginia Attorney General to recover only "injunctive relief and civil penalties," and, like FTC Act Section 13(b), says nothing about equitable monetary relief.  Va. Code Ann. § 59.1-9.15(a).  As the Supreme Court held in *AMG Capital*, "'injunction' is not the same as equitable monetary relief," and the statute must be read "to mean what it says, as authorizing injunctive but not monetary relief."  141 S. Ct. at 1347, 1349.  *AMG Capital* applies to the Virginia Antitrust Act, given its similar statutory language, as well as that statute's harmonization provision requiring courts to interpret the statute in line with federal law.  *See* Va.

-12-

Code Ann. § 59.1–9.17 ("[T]his chapter shall be applied and construed to effectuate its general purposes in harmony with judicial interpretation of comparable federal statutory provisions."). Thus, under the plain language of the statute and Supreme Court precedent, a claim for equitable monetary relief under the Virginia Antitrust Act cannot withstand summary judgment.[13]

**V.     Conclusion**

For the foregoing reasons, the Court should enter partial summary judgment for Defendants on the State Plaintiffs' claims for equitable monetary relief with respect to sales of Daraprim that occurred outside of their respective borders on behalf of alleged victims in other states. And, summary judgment should also be entered for Defendants on all claims for equitable monetary relief by Virginia.

Dated: August 13, 2021

*/s/ Kenneth R. David*
Kenneth R. David
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1893
kdavid@kasowitz.com

*Counsel to Defendant Kevin Mulleady*

*/s/ Christopher H. Casey*
Christopher H. Casey (*pro hac vice*)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1155
chcasey@duanemorris.com

*Counsel to Defendant Martin Shkreli*

Respectfully submitted,

*/s/ Steven A. Reed*
Steven A. Reed (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Fax: (215) 963-5001
steven.reed@morganlewis.com

Stacey Anne Mahoney
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Fax: (212) 309-6001
stacey.mahoney@morganlewis.com

*Counsel to Defendants Vyera Pharmaceuticals, LLC and Phoenixus AG*

---

[13] Even if the Virginia Antitrust Act did authorize Virginia's Attorney General to seek equitable monetary relief, which it does not, the statute's reach would be limited to transactions in Virginia on behalf of alleged victims in Virginia, for the same reasons as discussed with respect to the other State Plaintiffs.

## CERTIFICATE OF SERVICE

I certify that on August 13, 2021, a copy of the foregoing Memorandum of Law in Support of Defendants' Joint Motion for Partial Summary Judgment was served upon all counsel of record in this matter using the Court's CM/ECF system.

*/s/ Noah J. Kaufman*