# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION; STATE OF
NEW YORK; STATE OF CALIFORNIA;
STATE OF ILLINOIS; STATE OF NORTH
CAROLINA; STATE OF OHIO;
COMMONWEALTH OF PENNSYLVANIA;
and COMMONWEALTH OF VIRGINIA,

                *Plaintiffs*,

      v.

VYERA PHARMACEUTICALS, LLC;
PHOENIXUS AG; MARTIN SHKRELI,
individually, as an owner and former director of
Phoenixus AG and a former executive of Vyera
Pharmaceuticals, LLC; and KEVIN
MULLEADY, individually, as an owner and
director of Phoenixus AG and a former executive
of Vyera Pharmaceuticals, LLC,

                *Defendants*.

Case No. 20-cv-00706 (DLC)

ECF Case

# PLAINTIFF STATES' MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT
# AND IN SUPPORT OF CROSS-MOTION FOR
# SUMMARY JUDGMENT AND A PRECLUSION ORDER

# TABLE OF CONTENTS

**Page**

I.    Preliminary Statement ................................................................................7

II.   Background & Disputed/Undisputed Facts .............................................9

III.  Argument ...............................................................................................11

      A.  This Court Has The Authority To Grant The Equitable Monetary Relief Sought By The State Plaintiffs Under Federal Law .......................12

      B.  The Equitable Monetary Relief Sought By The State Plaintiffs Is Appropriate Under State Law ..................................................................13

      C.  The Geographic Source of Defendants' Ill-Gotten Gains Does Not Limit This Court's Equitable Power to Order Disgorgement ...................17

      D.  Policy Considerations ................................................................25

      E.  Application of Rule 56 ...............................................................26

Conclusion .......................................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*AMG Capital Mgmt., LLC v. FTC,*
    141 S. Ct. 1341 (2021) ................................................................ *passim*

*Ass'n for Accessible Meds. v. Frosh,*
    887 F.3d 664 (4th Cir. 2018) ..............................................................21

*AT&T Mobility LLC v. AU Optronics Corp.,*
    707 F.3d 1106 (9th Cir. 2013) ............................................................22

*California v. American Stores,*
    495 U.S. 271 (1990) ............................................................................24

*Chechele v. Std. Gen. L.P.,*
    Civ. A. No. 20 Civ. 3177 (KPF)
    2021 U.S. Dist. LEXIS 127588 (S.D.N.Y. July 8, 2021) ...............13, 14

*Clayworth v. Pfizer, Inc.,*
    49 Cal. 4th 758, 111 Cal. Rptr. 3d 666
    233 P.3d 1066 (Cal. 2010) ..................................................................21

*Columbia Gas Transmission, LLC v. Ott,*
    984 F. Supp. 2d 508 (E.D. Va. 2013) ................................................24

*Com. of Va. v. Winslow,*
    No. 20943,
    1987 WL 92058 (Va. Cir. Ct. Feb. 20, 1987) .....................................23

*Excelsior 57th Corp. v Lerner,*
    160 AD2d 407
    553 NYS2d 763 (1st Dept 1990) ........................................................21

*Georgia v. Pennsylvania R.R. Co.,*
    324 U.S. 439 (1945) ............................................................................12

*Goshen v. Mut. Life Ins. Co. of New York,*
    98 N.Y.2d 314
    774 N.E.2d 1190 (2002) ......................................................................18

*Heritage Plastics Inc. v. Rohm & Haas Co.,*
    No. 03 CV 0113
    2004 Ohio Misc. LEXIS 3291 (Ct. Com. Pl. Feb. 27, 2004)...............22

*In re DeFelice,*
    77 B.R. 376 (Bankr.D.Conn.1987) .................................................11, 20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    No. M 02-1486 PJH
    2008 WL 1766763 (N.D. Cal. Apr. 15, 2008) ....................................16

*In re Edmond,*
    934 F.2d 1304 (4th Cir.1991) .............................................................25

*Integrity Auto Specialists, Inc. v. Meyer,*
    83 Va. Cir. 119 (2011) .......................................................................23

*Jian Yang Lin v. Shanghai City Corp.,*
    950 F.3d 46 (2d Cir. 2020).................................................................27

**Cases (cont'd)**                                                     **Page(s)**

*Kosuga v. Kelly*,
    257 F.2d 48 (7th Cir. 1958) ...............................................................23

*Liu v. Securities and Exchange Commission*,
    140 S. Ct. 1936 (2020)..........................................................7, 8, 12, 13

*New York v. Actavis, PLC*,
    2014 WL 7015198, 2014
    U.S. Dist. LEXIS 172918 (S.D.N.Y. Dec. 11, 2014) ...........................16

*New York by James v. Amazon.com, Inc.*,
    No. 21-CV-1417 (JSR)
    2021 WL 3140051 (S.D.N.Y. July 26, 2021) ......................................16

*New York v. Facebook, Inc.*,
    No. CV 20-3589 (JEB), 2021 WL 2643724
    2021 U.S. Dist. LEXIS 127227 (D.D.C. 2021) ...............................11, 12

*New York v. Feldman*,
    210 F. Supp. 2d 294 (S.D.N.Y. 2002)........................................ *passim*

*Oksanen v. Page Mem'l Hosp.*,
    945 F.2d 696 (4th Cir. 1991) ............................................................24

*People v. Applied Card Sys., Inc.*,
    27 A.D.3d 104 (3d Dep't 2005) .........................................................16

*People v. Concert Connection, Ltd.*,
    211 A.D.2d 310 (2nd Dept. 1995) .....................................................19

*People v. Direct Revenue, LLC*,
    2008 N.Y. Misc. LEXIS 5562,
    (Sup. Ct. N.Y. Cnty. Mar. 12, 2008).................................................19

*People v. Ernst & Young LLP*
    114 A.D.3d 569 (1st Dep't 2014) .........................................16, 20, 21

*People v. Greenberg*,
    27 N.Y.3d 490 (2016) .......................................................................16

*People v. H & R Block Tax Serv.*, Inc.,
    58 A.D.3d 415 (App. Div. 1st Dep't 2009) ........................................18

*People by Vacco v. Lipsitz*,
    174 Misc. 2d 571
    663 N.Y.S.2d 468 (Sup. Ct. N.Y. Co. 1997) ......................................20

*People v Nat'l Home Protection, Inc.*,
    2009 N.Y. Misc. LEXIS 3667 (Sup. Ct. N.Y. Cnty. Dec. 8, 2009)..........18, 20, 26

*People v. Telehublink Corp.*,
    301 A.D.2d 1006 (3rd Dep't 2008)............................................ *passim*

*Porter v. Warner Holding Co.*,
    328 U.S. 395, 66 S. Ct. 1086
    90 L.Ed. 1332 (1946) .......................................................................12

*Riggs v. Palmer*,
    115 N.Y. 506 (1889) .........................................................................17

**Cases (cont'd)**                                                                                  **Page(s)**

*Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Intern. Corp.*,
    401 F.3d 28 (2d Cir. 2005)............................................................................27

*SEC v Commonwealth Chem. Sec., Inc.*,
    574 F2d 90 (2d Cir 1978)..............................................................................21

*SEC v. Cope*,
    No. 14-cv-7575 (DLC)
    2021 WL 653088 (S.D.N.Y. 2021)...........................................................14. 15, 25

*SEC v. Razmilovic*,
    738 F.3d 14 (2d Cir. 2013).............................................................................15

*Smith v. Lathrop*,
    44 Pa. 326 (1863)...........................................................................................22

*Spitzer v. Coventry First LLC*,
    No. 0404620/2006
    2007 WL 2905486 (Sup. Ct. N.Y Cnty. Sept. 25, 2007) ...............................18, 19

*State by Abrams v. Camera Warehouse, Inc*.,
    130 Misc. 2d 498
    496 N.Y.S.2d 659 (Sup. Ct. Dutchess Cnty.1985) ....................................8, 18, 20

*TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. C 10-4346 SI, 2011 U.S. Dist. LEXIS 76562,
    2011 WL 2790179 (N.D.Cal. July 11, 2011)................................................14, 15

*United States v. Keyspan Corp.*,
    763 F. Supp. 2d 633 (S.D.N.Y. 2011)...............................................................14

*US LEC Communs., Inc. v. Qwest Communs. Corp.*,
    2006 U.S. Dist. LEXIS 33705
    2006 WL 1367383 (W.D.N.C. May 15, 2006) ..................................................22

*WTAR Radio–TV Corp. v. City Council of Va. Beach*,
    223 S.E.2d 895 (Va. 1976)..............................................................................24


**Federal Statutes:**

15 U.S.C. § 4.................................................................................................14
15 U.S.C. § 26...............................................................................................14
15 U.S.C. § 78u(d)(5) ....................................................................................13


**State Statutes:**

740 Ill. Comp. Stat. Ann. 10/7.9 ...................................................................23


N.C.G.S.
    § 75-14 ................................................................................................11, 12
N.Y. Exec. Law
    § 63 (1)......................................................................................................12
    § 63(12)............................................................................................. *passim*

**State Statutes (cont'd)**          **Page(s)**

N.Y. Gen. Bus. Law
    § 340 *et seq.* ...................................................................................12
N.Y. State Fin. Law
    § 4(11) ...........................................................................................13

Ohio Rev. Code
    § 109.81 ....................................................................................11, 12

Virginia Antitrust Act
    § 59.1-9.2 .................................................................................11, 12
    § 59.1-9.8 .......................................................................................24

I.      **Preliminary Statement**

Defendants ask the Court to limit its own powers, without support in the law and before any evidence has been considered.  Defendants' request is both premature and without merit. Any question about the scope of equitable relief should properly be settled after trial, upon a finding of liability.  In any event, Defendants' arguments to preemptively restrict remedies are baseless.

The inherent equitable powers of this Court are only limited by statutes, and there is no applicable statutory limitation here.  To the contrary, the laws that the states are seeking to enforce support the relief requested, *i.e.,* equitable monetary relief based on the unjust profits that the Defendants accrued nationally by their scheme to limit competition.  The Court's powers thus include the power to grant the full equitable monetary relief sought by the Plaintiff States.

Defendants fundamentally misunderstand the nature and purpose of disgorgement when they assert that this Court must disregard extraterritorial purchases when it calculates Defendants' ill-gotten gains.  Disgorgement focuses on the wrongdoer, not the victims, and seeks to ensure that the wrongdoer does not benefit from any unlawfully obtained profits.  Here, Defendants are located in New York, and much of the unlawful conduct that resulted in their ill-gotten gains originated in New York; likewise, many of the relevant contracts are, by choice, governed by the laws and courts of New York.  Under these circumstances, there is nothing "extraterritorial" about the equitable relief sought by the Plaintiff States.

Defendants' other arguments fail as a matter of law.  The requested relief is consistent with *AMG Capital Mgmt., LLC v. FTC,* 141 S. Ct. 1341 (2021), and *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936 (2020).  To begin, those rulings affirm the well-established principle that federal courts' inherent powers include the full panoply of equitable

relief – except where a statute specifically provides otherwise.  To the extent either of those cases recognized any such statutory restrictions, it did so based on particular statutory provisions in the FTC Act and in the Securities Exchange Act of 1934, which apply to the FTC and the SEC, but not States.  The other issues raised in those cases have no bearing here.  For example, *Liu* requires that disgorgement be distributed to victims – but this is not at issue here, since Plaintiff States intend to do just that.  *Liu* also requires that disgorgement not exceed net profits – but Plaintiff States' economist's calculations necessarily preclude that result.

The equitable monetary relief at issue is also appropriate under state law.  State and federal courts have repeatedly reaffirmed that such relief is available for cases brought under New York's Donnelly Act and the Executive Law.  That is sufficient to support an award of equitable monetary relief based on nationwide excess profits.  But the requested relief is appropriate under the state laws of the other six Plaintiff States as well.

Indeed, New York law rejects Defendants' contention that extraterritorial purchases must be excluded from the calculation of ill-gotten gains, in antitrust cases or, for that matter, in any kind of case.  To the contrary, even in restitution cases, "the Legislature intended that all consumers be protected from illegal practices regardless of their residency."  *State v. Camera Warehouse, Inc.*, 130 Misc. 2d 498, 499 (Sup. Ct. Dutchess Cnty. 1985).  There is even less reason to exclude supposedly extraterritorial purchases in the context of a prayer for disgorgement of ill-gotten gains arising from an antitrust violation, since those gains arise from the anticompetitive scheme, not from particular purchases or locations.

The only cases in which a court did exclude extraterritorial harm involved situations in which there was no nexus with New York.  But only a modest showing is necessary to satisfy that nexus requirement.  In this case, it is incontrovertible that Vyera has headquarters in New

York, that substantial elements of the misconduct occurred in New York, and that many of the contracts at issue are governed by the laws and courts of New York.

Fundamentally, Defendants are – again – conflating equitable monetary relief with damages. *See* ECF No. 172 (rejecting Defendants' position). Plaintiff States do not seek to recover damages for injury to consumers, but rather to disgorge Defendants' ill-gotten gains. Ill-gotten gains here are measured by the difference between actual profits and estimated profits, but for the misconduct. *Id*. at 2. And, the fact that Plaintiff States will distribute any recovery to victims (pursuant to by New York law) does not transform equitable monetary relief into damages.

Finally, permitting Plaintiff States to obtain all the ill-gotten gains will not result in "overlapping awards" or in an amount that "would exceed Defendants' net profits" ECF 462 at 11. As is common in complex litigation, the Court has the authority and experience to coordinate and distribute the ill-gotten profits to avoid duplicative recoveries.

The Court should now put the kibosh on this line of argument, which Defendants keep trying to resuscitate. Specifically, the Court should deny Defendants' motion as a matter of law. Indeed, the Plaintiff States respectfully request the Court to grant summary judgment in Plaintiff States' favor, declare this to be the law of the case, and order Defendants to desist from raising it further in pre-trial or trial proceedings.

## II.   Background & Disputed/Undisputed Facts

There are genuine questions of material fact relating to the extent of a nexus between Defendants' conduct and the State of New York, the Commonwealth of Pennsylvania, and the other Plaintiff States – each of which alone precludes Defendants' motion. However, given that the threshold necessary to satisfy the nexus requirement is low, there is no genuine question of

fact that would preclude Plaintiff States' cross-motion for summary judgment against Defendants.

Using a simplistic transactional test, Defendants presume that extraterritorial purchases lack a sufficient New York nexus to support an equitable award of disgorgement. See ECF 462 at 13 (arguing that New York cannot obtain equitable monetary relief unless the "underlying transaction occurred within the boundaries of New York"). But this transactional focus is misguided and self-serving. On the law, as explained further below, the source of Defendants' ill-gotten gains does not restrict this Court's equitable power to order disgorgement given other facts showing a New York nexus for Defendants, their wrongdoing, and their retention of unlawful profits. And on the facts, the misconduct here is New York-centric.

There are myriad facts that establish a substantial nexus between the alleged anticompetitive conduct and New York:

- The distribution agreements that delayed or prevented would-be generic competitors from completing bioequivalence testing were executed on Defendants' behalf in New York. Kasha Decl, Ex. 1 at GX1033-002; Ex.2 at GX1034-019; Ex. 3 at GX1035-002; Ex. 4 at GX1039-004.

- The exclusive agreements locking up supply to impede competition were executed on Defendants' behalf in New York. *Id*., Ex. 5 at GX1108-016; Ex. 13 at GX1020-005.

- Those distribution and supply agreements include New York choice of law and/or forum clause (Ex. 2 at 16). *Id*., Ex.1 at GX1033-002; Ex. 2 at GX1034-016; Ex. 5 at GX1108-006.

- Emails were sent by Defendants or their employees in New York to implement the scheme. *Id*., Ex. 7.

- Defendants or their employees had telephone calls in New York to implement their scheme. *Id*., Ex. 9.

- Defendant Vyera's headquarters are in New York. *Id* Exs. 8 at 6, ¶ 26.

- Defendant Shkreli resided in New York prior to his federal incarceration. *Id*., Ex. 10 at 7, ¶ 31.

- While Defendant Mulleady testified that, as CEO of Vyera, he traveled from his New York office to Long Island (or possibly New Jersey) ████████████

[black redaction box]

*Id.*, Ex. 17 (excerpt of deposition transcript).

- [black redaction box] by the anticompetitive scheme are located in New York. *Id.*, Exs. 6, 16.

## III.    Argument

Plaintiff States seek an order of equitable monetary relief to disgorge unjust profits that Defendants accrued nationally. This falls squarely within the Court's inherent powers. It is also authorized by the laws of New York State and the other six Plaintiff States.

The Plaintiff States each have a "quasi-sovereign interest [that] is served whenever the perpetrators of consumer fraud within its borders are brought to justice regardless of whether their victims happen to be [residents]." *New York v. Feldman*, 210 F. Supp. 2d 294, 302-03 (SDNY 2002) (citing *In re DeFelice*, 77 B.R. 376, 380 (Bankr.D.Conn.1987)); *People v. Telehublink Corp.*, 301 A.D.2d 1006, 1010 (3rd Dep't 2008) ("New York has a vital interest in 'securing an honest marketplace in which to transact business'") (citation omitted); *see also* Virginia Antitrust Act § 59.1-9.2. (the "purpose of this [Act] is to promote the free market system in the economy of this Commonwealth by prohibiting restraints of trade and monopolistic practices that act or tend to act to decrease competition."); *see* Ohio Revised Code §109.81 ("The [Ohio] attorney general shall do all things necessary under the laws of any state or the federal government to properly conduct any antitrust case in which he acts as attorney at law, *including the bringing of an action for equitable relief* or for the recovery of damages.") (emphasis added); N.C.G.S. § 75-14 (North Carolina Attorney General "not limited" to injunctions).

Although Defendants frame their challenge as a question of "standing", ECF 462 at 6, they are in truth challenging the Court's inherent powers. Defendants' reliance on *New York v.*

*Facebook, Inc.,* No. CV 20-3589 (JEB), 2021 WL 2643724, at *8, 2021 U.S. Dist. LEXIS 127227, at *35 (D.D.C. 2021), is misplaced.  Defendants' quote from *Facebook* does not support their position because it only confirms that the plaintiff states there had standing to assert Clayton Act Section 16.  This is not seriously in contention here, and it is not the basis of Defendants' motion.  In any event, Plaintiff States have standing to enforce the antitrust laws under their own statutes.  *See, e.g.*, N.Y. Gen. Bus. Law § 340 *et seq.*; N.Y. Exec. Law §§ 63(1), 63(12); Ohio Revised Code §109.81; N.C.G.S. § 75-14; *see* Virginia Antitrust Act § 59.1-9.2, in addition to standing under federal law.  *See Georgia v. Pennsylvania R.R. Co.*, 324 U.S. 439, 447-50 (1945).

### A.    This Court Has The Authority To Grant The Equitable Monetary Relief Sought By The State Plaintiffs Under Federal Law

District Courts may, in their discretion, exercise all inherent equitable powers that "are available for the proper and complete exercise of that jurisdiction," except where prohibited by statute.  *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936, 1946-47 (2020) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S. Ct. 1086, 1089, 90 L.Ed. 1332 (1946)).  Among those powers, "equity practice [has] long authorized courts to strip wrongdoers of their ill-gotten gains." *Liu*, 140 S. Ct. at 1942.  Indeed, the Supreme Court reconfirmed in *Liu* that remedies "tethered to a wrongdoer's net unlawful profits … [have] been a mainstay of equity courts." *Id.* at 1943.

Equitable monetary relief includes a variety of traditional remedies, typically referred to as disgorgement, restitution, or at times an "accounting."  ECF No. 229 at 41. Disgorgement restores "the status quo, thus situating the remedy squarely within the heartland of equity." *Liu*, 140 S. Ct. at 1943 (quotation marks and citation omitted). These remedies are available to the Court, "unless otherwise provided by statute."  *Liu*, 140 S. Ct. at 1946–47 (citing *Porter*, 328

U.S. at 398); *Porter*, 328 U.S. at 398 ("[T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command").  There is no such statutory prohibition here.

Defendants misconstrue *Liu*, which supports the Plaintiff States.  To begin, *Liu arose under a* specific federal securities statute that applies to the SEC, not states.  *Liu*, 140 S. Ct. at 1939 (Section 78u(d)(5) of the Securities and Exchange Act of 1934); *see Chechele*, 2021 WL 2853438, 2021 U.S. Dist. LEXIS 127588 at *34 (declining to apply *Liu* to a case arising under a different provision of the Securities Exchange Act).  Applying the particular SEC statute at issue, *Liu* held that a "wrongdoer's net profits [must] be awarded for victims."  *Liu*, 140 S. Ct. at 1947 ("Section 78u(d)(5) restricts equitable relief to that which 'may be appropriate or necessary for the benefit of investors.'")  This is not an issue here.  Plaintiff States will distribute the recovery to injured parties, wherever they are, as authorized by state law.  N.Y. Gen. Bus. Law § 340a; N.Y. State Fin. Law § 4(11).

Moreover, Plaintiff States do not seek equitable monetary relief that would "exceed a wrongdoer's net profits."  *Liu,* 140 S. Ct. at 1940.  Rather, as this Court has already observed, Plaintiff States "intend to calculate equitable monetary relief by 'taking the amount of profits Defendants made in the real wor[ld] and subtracting the estimated amount of profits they would have made if they had faced generic competition at an earlier date.'"  ECF No. 172 at 2. Logically, this measure could not "exceed … net profits."[1]  This Court has held that, even after *Liu*, "a district court retains 'broad equitable power to fashion appropriate remedies'… including

---

[1]   Defendants' expert agrees that ████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████  Kasha Decl., Ex. 19 (excerpt of deposition testimony of
Anupam Jena, Ph.D., M.D., dated July 30, 2021).  He did not testify that █████████████████
████████████████████████████████████████████

disgorgement." *SEC v. Cope*, Civ. A. No. 14-cv-7575 (DLC), 2021 WL 653088 (S.D.N.Y. Feb.

19, 2021); *see also United States v. Keyspan Corp.*, 763 F. Supp. 2d 633, 640 (S.D.N.Y. 2011)

("disgorgement comports with established principles of antitrust law.")

Defendants sought permission to make this motion based on *AMG Capital Mgmt., LLC v.

FTC,* 141 S. Ct. 1341 (2021), *see* ECF No. 432 at 1, but now concede tacitly that that case is

inapposite.[2]  *AMG* is based on specific statutory language in the FTC Act that applies to the

FTC, not states.  *See, e.g., Chechele v. Std. Gen. L.P.*, Civ. A. No. 20 Civ. 3177 (KPF), 2021 WL

2853438, 2021 U.S. Dist. LEXIS 127588 at n.10 (S.D.N.Y. July 8, 2021) (rejecting application

of *AMG* to Section16(b) of the Securities Exchange Act because *AMG* "focuses on the statutory

construction of various provisions of the Federal Trade Commission Act.")

In any event, Defendants have no basis to assert that equitable monetary relief is

unavailable under Section 16 of the Clayton Act, 15 U.S.C. § 26.  ECF 462 at 5, n.6  (discussing

*AMG*).  On the contrary:  *AMG* emphasizes that the scope of available equitable monetary relief

depends on the entire statutory scheme, not words in isolation.  *AMG*, 141 S. Ct. at 1349-51.

There is no one-size-fits-all answer.  A federal court in California has held that disgorgement is

available under Section 16, at least for state government enforcers.  *See TFT-LCD (Flat Panel)

Antitrust Litig.*, No. C 10-4346 SI, 2011 U.S. Dist. LEXIS 76562, 2011 WL 2790179, at *4

(N.D.Cal. July 12, 2011) (recognizing analogous state government enforcement actions seeking

disgorgement when authorized by state law).

Finally, Defendants should not be able to find succor by methodological nitpicking.

"Because of the difficulty of determining with certainty the extent to which a defendant's gains

---

[2]     Defendants now only cite *AMG* in the background section and on tangential issues, often in footnotes.  *See* ECF
462 at 2 & 3 n.4 (background); *id*. at 5 n.6 (Clayton Act Section 16); *id*. at 7 n.8 (State Attorneys General letter
urging Congress to restore FTC's disgorgement authority); *id*. at 12 (Virginia law).

resulted from his frauds … the court need not determine the amount of such gains with exactitude." *Cope,* 2021 WL 653088 at *2 (quoting *SEC v. Razmilovic,* 738 F.3d 14, 31 (2d Cir. 2013)) (brackets and internal quotes omitted).  Rather, after a "reasonable approximation has been established," the burden shifts to the defendant to "clearly demonstrate that the disgorgement figure was not a reasonable approximation." *Id.*  Plaintiffs are not required to trace "precise tranche[s] of money." *Id.*  Such issues are typically addressed, after trial, upon a complete record and a finding of liability – not out of turn to suit Defendants' tactical advantage.

### B.   The Equitable Monetary Relief Sought By The State Plaintiffs Is Appropriate Under State Law

The Court can and should confirm its authority to grant the equitable monetary relief sought by the Plaintiff States based on federal law alone.  Defendants have not cited any authority for the proposition that a federal district court's hands are tied by state procedural laws even if, for sake of argument, there were such limitations under state law.

In any event, there are no such limitations under state law.  The relief sought is appropriate under New York's Donnelly Act and the Executive Law.  This, alone, is sufficient. It is unnecessary to consider the law of the other Plaintiff States.  Nevertheless, the law of all seven Plaintiff States permits such recoveries.

The New York antitrust enforcement actions frequently assert parallel claims under the Donnelly Act and Executive Law § 63(12), which allows the Attorney General to sue and seek equitable remedies for repeated illegal or fraudulent acts.  *Feldman,* 210 F. Supp. 2d at 300 (Section 63(12) often invoked to "remedy antitrust violations."); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2008 WL 1766763, at *3 (N.D. Cal. Apr. 15, 2008); *New York v. Actavis, PLC*, 2014 WL 7015198, 2014 U.S. Dist. LEXIS 172918, *6-7 (S.D.N.Y. Dec. 11, 2014).

New York's Court of Appeals has specifically held that "courts are not limited" and "disgorgement is an available remedy under … the Executive Law." *People v. Greenberg*, 27 N.Y.3d 490, 497–98 (2016) (quotation marks and citation omitted).  This arises, in part, from "New York['s] statutory interest under § 63(12) in guaranteeing a marketplace that adheres to standards of fairness." *New York by James v. Amazon.com, Inc.*, No. 21-CV-1417 (JSR), 2021 WL 3140051 at *4 (S.D.N.Y. July 26, 2021).

New York law recognizes that disgorgement is focused on the wrongdoers, not the victims.  "[T]he remedy of disgorgement does not require a showing or allegation of direct losses to consumers or the public; the source of the ill-gotten gains is ' immaterial.'"  *People v. Ernst & Young LLP*, 114 A.D.3d 569, 569-570 (1st Dep't 2014).  Indeed, courts view disgorgement as an important enforcement tool.  For example, even alongside a litigating or settlement class, the Attorney General is permitted to seek disgorgement where appropriate.  *People v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 125 (2008).  And, because disgorgement "merely requires the return of wrongfully obtained profits," it is not a penalty. *Greenberg*, 27 N.Y.3d at 498.  "Maintaining disgorgement as a remedy within the court's equitable powers is crucial."  *People v. Ernst & Young LLP,* 114 A.D. 3d 569, 570 (1st Dep't 2014).

### C.   The Geographic Source of Defendants' Ill-Gotten Gains Does Not Limit This Court's Equitable Power to Order Disgorgement of Unjust Profits

Defendants' assertion that this Court cannot consider out-of-state purchases in determining the amount of disgorgement fundamentally misunderstands the nature and purpose of this distinct form of equitable relief.  The purpose of disgorgement is to "deprive[] wrongdoers of their net profits from unlawful activity," *Liu*, 140 S. Ct. at 1942, thus giving effect to the "universal law administered in all civilized countries" that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong." *Riggs v. Palmer*, 115 N.Y. 506,

511-12 (1889).  Allowing Defendants to retain their unlawful profits—including those derived

from out-of-state sales—would lead to the absurd result that "antitrust violators would be

permitted to keep large portions of their ill-gotten gains."  *Feldman*, 210 F. Supp. 2d at 305.

Disgorgement is intended to prevent this unjust and inequitable result.

Here, there is simply nothing "extraterritorial" about requiring the Defendants to give up

their unlawful profits, whatever their source.  Defendants are located in New York, and much of

the misconduct implementing the scheme took place here.  For example:  the anticompetitive

contracts restricting distribution and the anticompetitive exclusive API supply contracts were

executed in New York, and they are governed by the laws of New York and/or include New

York forum clauses; emails and calls implementing the anticompetitive scheme were written and

sent or received in New York; ███████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████; and two of the generic

competitors delayed by the scheme are based in New York.  Kasha Decl., Exs. 1-7, 12-17.[3]

Even if, for sake of argument, the source of Defendants' unlawful profits figured into the

analysis, the location of particular purchase still does not matter.  "New York's quasi-sovereign

interest is served whenever the perpetrators of consumer fraud within its borders are brought to

justice regardless of whether their victims happen to be citizens."  *Feldman,* 210 F. Supp. 2d at

298, 302–03.  New York courts have thus routinely awarded equitable monetary relief under

§ 63(12) for out-of-state harm – including compensatory relief for non-New Yorkers, such as

restitution – so long as "at least some part" of the violations at issue occurred in New York.

---

[3]   If Defendants do not admit to these facts, then there is a disputed material question that precludes summary
judgment under Rule 56.  If they do not dispute these facts, summary judgement in favor of the State Plaintiffs
is appropriate, as explained below.

*People v Nat'l Home Protection, Inc.*, 2009 N.Y. Misc. LEXIS 3667, at *8–*9 (Sup. Ct. N.Y. Cnty. Dec. 8, 2009) (citing *Goshen*, 98 N.Y.2d at 324); *People v. Telehublink Corp.*, 301 A.D.2d 1006, 1010 (3rd Dep't 2008) (permitting equitable monetary relief for consumers nationwide where a New York address was used to send and receive mail relating to fraudulent activity); *People v. H & R Block Tax Serv.*, Inc., 58 A.D.3d 415, 417 (App. Div. 1st Dep't 2009) ("reject[ing] defendants' argument that the Attorney General has no authority to recover on behalf of non-New York residents."); *Spitzer v. Coventry First LLC*, No. 0404620/2006, 2007 WL 2905486 (Sup. Ct. N.Y Cnty. Sept. 25, 2007).  This is because "[t]he plain meaning of the language of Executive Law § 63(12) indicates that the Legislature intended that all consumers be protected from illegal practices regardless of their residency."  *Camera Warehouse*, 130 Misc. 2d at 499; *People v. Lipsitz*, 174 Misc. 2d 571, 580 (Sup. Ct. N.Y. Cnty. 1997) ("The Attorney General has clear authority [under § 63(12)] to seek to restrain illegal business practice by a local business in relation to both in-state and out-of-state residents.")

The handful of New York cases that have denied recovery for out-of-state consumers involve situations in which a non-resident was harmed by conduct that had no connection to New York.  *See, e.g., People v. Direct Revenue, LLC*, 2008 N.Y. Misc. LEXIS 5562, at *18-*19 (Sup. Ct. N.Y. Cnty. Mar. 12, 2008) (there must be a conduct nexus; fact of corporate headquarters in New York alone was not sufficient); *Coventry*, 2007 WL 2905486 (permitting recovery for out-of-state parties, except for transactions that had no New York nexus at all).  Importantly, these were not antitrust cases, and plaintiffs were not seeking equitable monetary relief for ill-gotten gains arising from harm to competition – as opposed to fraud in particular transactions.  In antitrust cases, harm to competition and the general economy can be distinct from harm to

consumers.  The relevant locus is the scheme and its implementation, not the locus of consumer

purchases.  And, the States have a "quasi-sovereign" interest in such enforcement.

Defendants mischaracterize and cherry-pick quotes from New York authorities.  For

example, Defendants lift a quote from *Coventry* of context to assert that "New York law

'precludes recovery for out-of-state injury.'"  ECF 462 at 8 (quoting *Coventry*, 2007 WL

2905486).   But *Coventry* clearly stands for the contrary proposition:

> The *parens patriae* doctrine enables the State to seek damages, restitution and
> civil penalties on behalf of New York residents that are harmed by wrongful acts
> occurring within and outside this State, *... and on behalf of non-residents of the
> State that have been harmed by wrongful acts in New York.*

*Coventry*, 2007 WL 2905486 (emphasis added) (citing *People ex rel. Spitzer v. Telehublink*

*Corp.*, 301 A.D.2d 1006, 1009-10 (3rd Dept. 2003); *People v. Concert Connection, Ltd.*, 211

A.D.2d 310, 315-16 (2nd Dept. 1995)).

Defendants also misstate other state law authorities they cite.  For example, in *Feldman*,

Defendants made the same argument as here: "Defendants argue that New York may not sue on

behalf of non-residents because the Donnelly Act does not permit such suits."  *Feldman,* 210 F.

Supp. 2d at 303. And, Judge Scheindlin unequivocally rejected it:  "To the contrary, courts have

consistently held that section 63(12) authorizes the New York Attorney General to recover for

non-residents injured by wrongdoing that occurred in New York."  *Id.* (citing & quoting *In re*

*DeFelice*, 77 B.R. 376, 380 (Bankr. D. Conn. 1987); *People by Vacco v. Lipsitz*, 174 Misc. 2d

571, 663 N.Y.S.2d 468, 474 (Sup. Ct. N.Y. Co. 1997); *State by Abrams v. Camera Warehouse,*

*Inc.*, 130 Misc. 2d 498, 496 N.Y.S.2d 659, 660 (Sup. Ct. Dutchess Co. 1985)).

Defendants also specifically call out *DeFelice* as support, but it is hard to understand how

Defendants can contend that *DeFelice* supports them.  ECF 462 at 8 n.10; *In re De Felice*, 77

B.R. at 380-81 ("New York does not and need not limit its interest in consumer protection to its citizens.") .

Defendants' reliance on *Telehublink* and *Ernst & Young* are equally perplexing. *Telehublink* permitted recovery with respect to out-of-state purchases because "New York has a vital interest in 'securing an honest marketplace in which to transact business' … and this interest was threatened when *Telehublink* (an out-of-state company) used a New York address to complete the deceptive transactions." *Telehublink*, 301 A.D.2d at 1010.  Here, the New York nexus is even stronger.  Kasha Decl., Exs. 1-10, 12-17..

Technically, Defendants have a point when they assert that *Ernst & Young* "does not address the issue of extraterritorial recovery."  ECF 462 at 9.  However, *Ernst & Young* holds that "the remedy of disgorgement does not require a showing or allegation of direct losses to consumers or the public," and that "the source of the ill-gotten gains is 'immaterial.'"  *Ernst & Young*, 114 A.D.3d at 569-570 (citing *SEC v Commonwealth Chem. Sec., Inc.*, 574 F2d 90, 102 (2d Cir 1978) and *Excelsior 57th Corp. v Lerner*, 160 AD2d 407, 408-409, 553 NYS2d 763 (1st Dept 1990)).  It therefore stands to reason that it is also "immaterial" whether purchases are extraterritorial.

*Association for Accessible Meds. v. Frosh*, 887 F.3d 664 (4th Cir. 2018), also cited by Defendants (ECF 462 at 9-10),  has no bearing.  *Frosh* was a dormant commerce clause cause concerning extraterritorial price regulation of products that had practically no connection to the State of Maryland.  *Id* at 667.   The law at issue was a Maryland price-gouging statute, not an antitrust statute, and the case was not about equitable monetary relief.  *Id*. at 666-67.  The Fourth Circuit held that "a State may not regulate commerce occurring *wholly outside* of its borders." *Id*. at 667 (emphasis added).  This is not controversial, but it is irrelevant here.  New York is not

seeking to "regulate commerce occurring wholly outside of its borders." To the contrary, it is seeking to enjoin, deter, and remedy wrongful conduct that in substantial part took place in New York. Likewise, each of the Plaintiff States is seeking to enjoin, deter and remedy wrongful conduct with a significant impact on its general economy and residents, and there are sufficient facts supporting a nexus for Pennsylvania[4] and the other Plaintiff States. Kasha Decl. Exs. 1-7, 13-17.

Defendants similarly distort and mischaracterize the law of the Plaintiff States other than New York. For example, the California Supreme Court has held that the "overarching goals" of California's Cartwright Act are "maximizing effective deterrence of antitrust violations, enforcing the state's antitrust laws against those violations that do occur, *and ensuring disgorgement of any ill-gotten proceeds.*" *Clayworth v. Pfizer, Inc.,* 49 Cal. 4th 758, 111 Cal. Rptr. 3d 666, 233 P.3d 1066, 1070 (Cal. 2010) (emphasis added). Defendants' reliance on *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) (ECF 462 at 10) is misplaced because that case did not concern claims for equitable monetary relief brought by the State's attorney general, but rather whether private plaintiffs may pursue damage claims under the Cartwright Act for purchases made entirely outside of California. *Id*. at 1108-09.

*Heritage Plastics Inc. v. Rohm & Haas Co.*, No. 03 CV 0113, 2004 Ohio Misc. LEXIS 3291, at *9-10 (Ct. Com. Pl. Feb. 27, 2004) does not impose an extraterritoriality limit on Ohio law enforcement, as Defendants contend. Rather, *Heritage Plastics* held that "the State of Ohio has *the power to condemn antitrust violations that occur anywhere in the nation*, provided that

---

[4]     Defendant Shkreli is incarcerated in Pennsylvania but continues to exert his control to implement the anticompetitive scheme from behind bars. *See* ECF No. 451 (spoliation ruling); Kasha Decl., Exs. 11-12.

there are sufficient harmful effects within the state itself." *Id*. (emphasis added). Ohio has shown facts sufficient to satisfy this nexus.  Kasha Decl. 5, Ex. 3 at GX1035-007.

The only Pennsylvania authority cited by Defendants has no bearing.  *Smith v. Lathrop*, 44 Pa. 326 (1863), was not an antitrust case and did not concern equitable powers, let alone equitable monetary relief.  Rather, *Smith* is a Civil War era decision holding that the pendency of an action in another jurisdiction is not a defense.  *Id.* at 331 ("the plea of *lis pendens* in another state is no defence to this action").  This is not at issue here, and *Smith* does not support Defendants' assertion that "there is no extraterritorial application of Pennsylvania common law." ECF 462 at 12.

The sole North Carolina authority cited by Defendants is similarly far afield.  ECF 462 at 11 (citing *US LEC Communs., Inc. v. Qwest Communs. Corp.*, 2006 U.S. Dist. LEXIS 33705, *7, 2006 WL 1367383, at *3 (W.D.N.C. May 15, 2006)).  *US LEC* did not concern a claim sounding in antitrust.  Rather, *US LEC* rejected a counterclaim in a contract action asserted under the North Carolina Unfair or Deceptive Practice Act.  *Id.*   It was not a state enforcement action.  *Id*. Moreover, equitable remedies were not even at issue.  *Id.*

Relying on *Kosuga v. Kelly*, 257 F.2d 48, 55 (7th Cir. 1958), Defendants would have the Court believe that "equitable monetary relief under the [Illinois] Antitrust Act is limited to relief for Darparim sales in Illinois." ECF 462 at 11.  In *Kosuga*, the Seventh Circuit held that a now-defunct predecessor Illinois antitrust law could only apply to intrastate commerce.  *Kosuga*, 257 F.2d at 55.  But the Illinois law applicable here, the Illinois Antitrust Act, was enacted seven years *after Kosuga*, in 1965.  Defendants overlook the modern (*i.e.*, applicable) Illinois law, which has a statutory provision refuting their position.  740 ILCS 10/7.9 ("No action under [the

Illinois Antitrust] Act shall be barred on the grounds that the activities or conduct complained of in any way affects or involves interstate or foreign commerce.")

Defendants also err with respect to Virginia law.  Defendants incorrectly assume that the phrase "injunctive relief" in the Virginia Antitrust Act (VAA) necessarily means the same as the word "injunction" under Section 13(b) of the FTC Act, as interpreted in *AMG*.  ECF 462 at 12-13.  But *AMG* does not hand down a rigid definition of the word "injunction" for all contexts. *See, e.g, California v. American Stores*, 495 U.S. 271, 296 (1990) ("We hold that such a remedy [divestiture] is a form of 'injunctive relief' within the meaning of § 16 of the Clayton Act"). Rather, *AMG* holds that the Court must "read [the] statutory scheme as a whole."  *AMG*, 141 S. Ct. at  at 1350.

To begin, Virginia law is not similar to or based on the FTC Act, so the VAA's harmonization provision is inapposite here.  Virginia courts have consistently held that "the [VAA] is comparable to the Sherman and Clayton Acts".  *Com. of Va. v. Winslow*, No. 20943, 1987 WL 92058, at *2 (Va. Cir. Ct. Feb. 20, 1987); *Integrity Auto Specialists, Inc*. v. Meyer, 83 Va. Cir. 119, 121 (2011); *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991). Moreover, Virginia antitrust law explicitly distinguishes between "injunctions to prevent and restrain" and "mandatory injunctions."  *See* Virginia Code § 59.1-9.8  "Mandatory injunctions" are not necessarily forward looking.  Rather they encompass any necessary equitable relief to "undo an existing wrongful condition."  *WTAR Radio–TV Corp. v. City Council of Va. Beach*, 223 S.E.2d 895, 898 (Va. 1976); *Columbia Gas Transmission, LLC v. Ott*, 984 F. Supp. 2d 508, 516 n.5 (E.D. Va. 2013).  Defendants cite no authority for the proposition that a mandatory injunction, under Virginia law, cannot include an order disgorging ill-gotten gains.  Finally,

Defendants concede that they cannot cite Virginia authorities to support their extraterritoriality challenge.  ECF 462 at 13 n.13.

Defendants' challenge to the scope of the States' claim for disgorgement was effectively laid to rest more than a year ago, when this Court ruled that "that the plaintiffs need not comply with the defendants' requests for data concerning states' and state agencies' purchases of, and reimbursements for, Daraprim or its generic equivalent [because t]his information is irrelevant." ECF No. 172.  Defendants nonetheless persist, including on the motion to dismiss, and in the current motion's repeated mischaracterization of our claims for equitable monetary relief as if they were "claims on behalf" of victims or citizens.  ECF No. 229 ("plaintiffs in this action do not seek damages; they seek equitable monetary relief. This they are allowed to do."); ECF No. 462 at 1 and 3 ("claims on behalf").  Fundamentally, Defendants again confuse equitable monetary relief with damages at law, as shown by their detour concerning *Illinois Brick* and "repealer statutes."  ECF  462 at 10.

### D.    Policy Considerations

Defendants' motion, if granted, would limit the Court's inherent powers and frustrate state antitrust enforcement.   "[A]ntitrust violators would be permitted to keep large portions of their ill-gotten gains."  *Feldman*, 210 F. Supp. 2d at 305.  "Such a rule would severely hamper the Attorney General's ability to police and deter illegal conduct … and seriously undermine the State's interest in 'protecting the public' by ensuring 'healthy competition.'"  *Id.; see also In re Edmond*, 934 F.2d 1304, 1311 (4th Cir.1991) ("[T]o permit the retention of even a portion of the illicit profits would impair the full impact of the deterrent force that is essential if adequate enforcement of the law is to be achieved") (citation omitted).

Indeed, State AGs would have a difficult time enforcing multistate misconduct with a national effect, unless either:  (1) all 50 states, D.C. and territories join the lawsuit, or (2) significant investigatory and litigation (not to mention judicial) resources are spent tracing where products were ultimately purchased.  *See Cope*, 2021 WL 653088 at *2 (defendants' argument that "precise tranches" of money must be traced to particular victims found to be "unconvincing.")

There are various ways that this money can be properly distributed.  For example, there could be a distribution coordinated with a judgment or settlement class in favor of the pending class action.  Or, the money could be distributed through another process directed by the Court. It is only a question of administration, and not a problematic one.   See, e.g., *Federal Trade Commission v. Cephalon et al*, 08-cv-2141-MSG (E.D.Pa. June 17, 2015) (court approved settlement), available at https://www.ftc.gov/system/files/documents/cases/150528cephalonstip.pdf.

Plaintiff States take issue with Defendants' reliance on the public letter by certain State Attorneys General urging Congress to restore the FTC's disgorgement authority following the *AMG* decision.  Reed Decl., Ex. E; ECF 462 at p.7.   First, the letter is irrelevant.  Second, it does not concede anything, as Defendants argue.  Among other things, the letter relates to disgorgement authority in consumer protection actions as well as antitrust actions, and in some cases (unlike this one), jurisdiction to seek nationally based recoveries may be limited.   Rather, the language cited by Defendants reflects our obvious concern, *i.e.,* that defendants bog down enforcement actions with meritless – but resource-intensive – motions, like this one.

Plaintiff States recognize that equitable monetary relief is inherently discretionary.  If the Court is inclined to limit equitable monetary relief to purchases in the seven Plaintiff States, it would be most prudent to make that decision after trial – as a matter of the Court's discretion --

rather than make new pronouncements of federal or state law that would undermine the Court's powers and/or limit the authority of State Attorneys General.  After hearing the weight of the evidence at trial, the Court may find itself even less inclined to allow Defendants to keep most of their ill-gotten gains.

       **E.**       **Application of Rule 56**

Defendants' motion should be denied as a matter of law because there is a genuine dispute of material fact as to the New York nexus.  Specifically, Defendants presume that the alleged harm to competition did not "occur" in New York.  *See, e.g.*, ECF 462 at 8 and n.10. Plaintiff States have met their burden under Rule 56 by producing admissible evidence of a substantial New York nexus.  Kasha Decl., Exs. 1-10, 12-17 (contracts, choice of law, interstate travel to repurchase pills, headquarters, residency, emails, phone calls, and ███████████████ ██████████).  There is a genuine question of material fact, which precludes summary judgment in Defendants' favor.

However, Plaintiff States respectfully submit that the Court should grant summary judgment *in Plaintiff States' favor* because the threshold to satisfy the New York nexus requirement is low.  The evidence shows an incontrovertible nexus, exceeding the "mailing address" standard.  *Compare Telehublink*, 301 A.D.2d 1006, 1009, 1010 (use of a New York mailing address held to be a sufficient nexus) *with* Kasha Decl., Exs. 1-18 (extensive New York contacts).  As a result, any dispute of fact is not "genuine."  *See* generally Fed. R. Civ. P. 56; also Rule 56(f)(1) (Court may "grant summary judgment for a nonmovant" upon notice and an opportunity to be heard);  *Jian Yang Lin v. Shanghai City Corp.*, 950 F.3d 46, 49 (2d Cir. 2020) ("District courts have the discretion to grant summary judgment *sua sponte*, even without notice

in certain circumstances.") (quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Intern. Corp.*, 401 F.3d 28, 33 (2d Cir. 2005)).

There is reason to be concerned that Defendants will continue trying to raise this argument, in a newly mutated form, and that this will lead to unnecessary evidence, testimony, objections, motions *in limine*, briefing, or disputes during trial.  This issue should be definitively laid to rest.  Plaintiff States respectfully suggest that the Court's order also:  (1) declare that it is the "law of the case" that the location of purchase of Daraprim pills is "irrelevant", ECF No. 172 at 2; (2) preclude Defendants from introducing evidence or examining or cross-examining witnesses concerning the locus of purchase; or (3) otherwise preclude Defendants from again raising the extraterritoriality issue.

## CONCLUSION

For the reasons stated above, and in the accompanying Statement of Undisputed & Disputed Facts, and the Declaration of Jeremy R. Kasha, with exhibits, both dated August 27, 2021, Defendants' motion for summary judgment should be denied.  The Plaintiffs States also respectfully request that the Order: (1) grant the cross-motion for summary judgment in Plaintiff States' favor, as a matter of law; (2) declare that this issue has been definitively resolved and is the law of the case; and (3) otherwise preclude Defendants from raising this issue again on motions or at trial.

Dated: August 27, 2021

Respectfully submitted,

_/s/ Jeremy R. Kasha_
Jeremy R. Kasha
Office of the New York Attorney General
28 Liberty Street
New York, NY 10005
Tel: (212) 416-8277
jeremy.kasha@ag.ny.gov
_Counsel for Plaintiff State of New York_

_/s/ Michael D. Battaglia_
Michael D. Battaglia
Deputy Attorney General Office of the
Attorney General of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
Tel: (415) 510-3769
michael.battaglia@doj.ca.gov
_Counsel for Plaintiff State of California_

_/s/ Richard S. Schultz_
Richard S. Schultz
Assistant Attorney General Office of the
Attorney General of Illinois
100 W. Randolph Street, 11th Floor
Chicago, IL 60601
Tel: (872) 272-0996
Richard.Schultz@ilag.gov_Counsel for Plaintiff
State of Illinois_

_/s/ K.D. Sturgis_
K.D. Sturgis
Special Deputy Attorney General
North Carolina Department of Justice
Consumer Protection Division
114 West Edenton Street
Raleigh, NC 27603
Tel: (919) 716-6000
ksturgis@ncdoj.gov
_Counsel for Plaintiff State of North Carolina_

/s/ Elizebeth M. Maag
Elizebeth M. Maag
Associate Assistant Attorney General Office of the
Ohio Attorney General
Antitrust Section
150 E. Gay Street, 22nd Floor
Columbus, OH 43215
Tel: (614) 466-4328
liz.maag@ohioattorneygeneral.gov
Counsel for Plaintiff State of Ohio

/s/ Joseph S. Betsko
Joseph S. Betsko
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Antitrust Section
Strawberry Square, 14th Floor
Harrisburg, PA 17120
jbetsko@attorneygeneral.gov
Counsel for Plaintiff Commonwealth of Pennsylvania

/s/ Tyler T. Henry
Tyler T. Henry
Assistant Attorney General Office of the
Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
thenry@oag.state.va.us
Counsel for Plaintiff Commonwealth of Virginia