## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION; STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF NORTH CAROLINA; STATE OF OHIO; COMMONWEALTH OF PENNSYLVANIA; and COMMONWEALTH OF VIRGINIA,<br><br>Plaintiffs,<br><br>v.<br><br>VYERA PHARMACEUTICALS, LLC; PHOENIXUS AG; MARTIN SHKRELI, individually, as an owner and former officer of Vyera Pharmaceuticals, LLC and Phoenixus AG (formerly known as Turing Pharmaceuticals, LLC and Turing Pharmaceuticals AG); and KEVIN MULLEADY, individually, as an owner and director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,<br><br>Defendants. | Case No. 1:20-cv-00706-DLC<br><br>**DECLARATION OF JOEL A. SICKLER** |

I, Joel A. Sickler, hereby declare under penalty of perjury that the following is true and correct:

### INTRODUCTION

1.      I have been retained by defendant Martin Shkreli to advise him and his counsel on matters pertaining to his confinement in the federal Bureau of Prisons (BOP).

2.      I have worked in the field of sentencing and corrections for more than 40 years and currently head the Justice Advocacy Group, LLC, a consortium of criminal justice professionals based in Alexandria, Virginia. I have worked consistently since 1980 on federal sentencing and federal prison-related matters and have experience as a correctional counselor in the District of Columbia's Department of Corrections. I was formerly Director of Client Services at the National Center on Institutions & Alternatives in Washington, DC.

3.      I have visited 51 federal prisons and have advised clients with inmate matters in 86 of the BOP's 122 institutions. Before parole was abolished, I represented hundreds of federal inmates before the U.S. Parole Commission. Based on more than three decades of experience assisting clients who have been committed to the care and custody of the BOP, I have extensive knowledge of the BOP and its stated mission, services, policies, program statements, regulations, institutions, and standard practices. I am also familiar with the policies and practices of the United States Marshals Service relating to the transportation of prisoners within the BOP system.

4.      A true and correct copy of my curriculum vitae is attached as Exhibit A-1.

5.      I have been working on Mr. Shkreli's behalf since prior to his sentencing and submitted an affidavit to Judge Kiyo A. Matsumoto in the Eastern District of New York, prior to sentencing in Mr. Shkreli's criminal case, relating to his designation within the BOP system. Through his criminal counsel I have followed Mr. Shkreli's progress while incarcerated, including his stays at the Federal Correctional Institution - Fort Dix, MDC-Brooklyn, and his current stint at FCI Allenwood Low (referred to hereinafter as "Allenwood").

2

6.      Mr. Shkreli's counsel in this case have asked me to provide information and my professional opinion regarding the effect that Mr. Shkreli's appearance at trial in this case will have upon his participation in the ██████████████████████████████, and upon his release date.

7.      I am thoroughly familiar with ████████████████████████ ██████████████████████████████████████ ████████████████████████████████ ██████████████████████████████████ ████████████████

8.      I have personal knowledge of the facts stated herein and can testify competently thereto if called as a witness in this matter.

### ████ AND EARLY INSTITUTIONAL RELEASE

9.      ████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████ █████████████████████████████████████ █████████████████████████████████ ██████████████████████████████████ ████████████████ ██████████████████████ █████████████████████████████████████ ████████████

**10.**     Based on the length of sentence, inmates who participate ███████ are eligible for an "early release benefit" of up to one year prior to their projected release date.██ ███████████. Inmates with more than a thirty-six-month sentence (such as Mr. Shkreli) can receive up to the maximum program benefit if they successfully complete ████████, which includes ███████████. In my experience, many inmates who complete ████████ receive the maximum benefit of a one-year early release from their sentence. As a result, there is a tremendous incentive for inmates to complete ███████.

**11.**     The BOP is required to ensure that a prisoner spends up to one year at the end of the prisoner's sentence "under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c). Such conditions may include a community residential re-entry center, also known as a "halfway house." However, the average participant who graduates ████████ receives a six-month halfway house placement.

## LIKELY DELAYS IF MR. SHKRELI MUST ATTEND TRIAL BEGINNING ON DECEMBER 14, 2021

12.     I am aware that Mr. Shkreli ███████████████

███████████████████  ██████████

████████████████████

██████████████████████████

████████████████████████

███████████████████

█████████████████

███████████████████

███████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████ .

13.    ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

14.    As I stated in paragraph 12, ████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████

15.    Mr. Shkreli is currently projected for release on October 11, 2022.  This sentence

expiration date accounts for ██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████ , it is highly likely that he will be transferred to a halfway house (specifically, a

BOP-run work release center called a Residential Reentry Center, in New York City) in

April 2022. I believe that this outcome is highly likely in the absence of any interruption

in Mr. Shkreli's continued participation ███████████ .

16.     I have read the November 25, 2020 Declaration of Jack T. Donson submitted to the Court in support of Mr. Shkreli's Motion to Stay Discovery.  ECF 319.  In that declaration, Mr. Donson stated that the "best-case scenario" at that time (*i.e.*, when Mr. Donson offered his opinion) was that Mr. Shkreli would be released from prison by September 14, 2021.  *Id.* at ¶ 24. It is true that as of November 25, 2020, it was possible that Mr. Shkreli ████████████████████ soon thereafter, and that additional credits would move his release date up to September 14, 2021.  However, various factors— such as the BOP shuttering ██████ in the early months of 2021 due to COVID-19 and ███████████████████████—delayed Mr. Shkreli's ████████████ . In addition, the other credits that Mr. Donson included in his "best-case scenario" did not materialize, resulting in the current expected date for transfer to a halfway house, April 2022 (*i.e.*, six months prior to his out-date of October 11, 2022).

17.     My understanding is that the Court has asked the parties to confer about whether Mr. Shkreli will attend the trial in this case, scheduled to start on December 14, 2021, and if so, to prepare a writ of habeas corpus to enable the United States Marshals Service to transport Mr. Shkreli to the federal courthouse in Manhattan for the trial.  If Mr. Shkreli's participation in ████████ is interrupted by his removal from Allenwood for the trial in December, it is highly likely that ██████████████████████, and therefore lose the opportunity to receive the one-year credit off his time in prison.  The result would be that Mr. Shkreli spends an additional year in prison, and not be released until, *at the earliest*, April 2023.

18.     It has been my experience that inmates whose participation in ██████████
███████████████████████████████████████████████████████████. In
other words, ███████████████████████████████████. I have seen this
happen many times. Often ██████████████ are told that should they leave the facility
for various reasons, and that upon their return they may start ███████████████
██████████████████████ The problem, however, is that rarely does the inmate return at
the time that ███████████████████████████████████████████
████████████████████████████.

19.     Based upon my experience, I believe that the following is likely to occur if the
Court issues a writ for Mr. Shkreli to appear for the trial: The U.S. Marshals Service will
assume custody of Mr. Shkreli at least one week before the trial is scheduled to begin,
*i.e.*, on or about December 7, 2021. During the trial Mr. Shkreli is likely to be housed at
MDC Brooklyn and transported to the trial each day in shackles. At the end of each
day's proceedings, the Marshals Service will transport him back to MDC Brooklyn.
After the trial is concluded, the Marshals Service will *not* return Mr. Shkreli to
Allenwood immediately, but will likely transport him back to MDC Brooklyn, where he
will be housed for a period of time. This period varies in each case, but I have seen
inmates kept at the facility where the inmate was housed during the trial for several
weeks after the trial ends.

20.     Once the BOP decides to transport Mr. Shkreli back to Allenwood, the BOP will
put Mr. Shkreli on its bus system. Inmates typically do not return directly to the facility
where they were serving their sentence, but rather go to yet another facility where they
are housed for several weeks. In this case, Mr. Shkreli will likely be transported by bus

from MDC Brooklyn to USP Canaan in Waymart, Pennsylvania. Mr. Shkreli will then be housed at USP Canaan for an additional period of time (again, in my experience, several weeks) before the BOP will again put Mr. Shkreli on the BOP bus for transport back to Allenwood.

21.     In addition, other factors may add to the delay in this particular case, such as COVID-19 protocols resulting from the highly contagious delta variant and the holiday season. In addition, it is my understanding that lately there have been staffing shortages at the US Marshals Service, which could impact the Marshals' ability to move prisoners quickly and efficiently.

22.     Taking all these factors into account, and assuming that the trial lasts 2-3 weeks, it is highly likely that Mr. Shkreli will not arrive back at Allenwood until at least late March or early April 2022.

23.     In sum, if he attends trial in this case, Mr. Shkreli will likely be absent from Allenwood—and therefore ███████████—from the first week of December 2021 until late March or early April 2022.

24.     Once Mr. Shkreli arrives back at Allenwood, he will be permitted to ███████ ███████████████████████. But the difficulty he would face at that point would be, as explained above in paragraph 18, ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

25.     If this were to happen, Mr. Shkreli would lose at least four months of ███████

As a result, it is highly likely that Mr. Shkreli would lose the opportunity for the one-year

early release benefit and would serve an additional year in prison.

26.     The length of the trial will have minimal impact on this delay, because most of the

delay occurs following the trial.  Therefore, whether the trial lasts two weeks or three

weeks, the disruption to ████████████████████.  For the same reasons, even a one-

day appearance in court   *e.g.*, if Mr. Shkreli were to appear just for his testimony rather

than the entire trial   will likely cause Mr. Shkreli to lose the one-year early release

benefit.

## CONCLUSION

27.     Mr. Shkreli is currently scheduled for release on October 11, 2022.  If he

continues to participate in and completes ██████ on time, his release date to a halfway

house would be April 2022.  In my professional opinion, if Mr. Shkreli attends the trial in

this case in December, he would not be released from prison until, at the earliest, April

2023.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best

of my personal knowledge, information, and belief.

Dated: October 13, 2021

_____
Joel A. Sickler