UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FEDERAL TRADE COMMISSION, STATE OF NEW YORK, STATE OF CALIFORNIA, STATE OF OHIO, COMMONWEALTH OF PENNSYLVANIA, STATE OF ILLINOIS, STATE OF NORTH CAROLINA, and COMMONWEALTH OF VIRGINIA,

Plaintiffs,

v.

20 CV 706 (DLC)
Telephone Conference

VYERA PHARMACEUTICALS LLC, and PHOENIXUS AG, MARTIN SHKRELI, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC, and KEVIN MULLEADY, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals LLC,

Defendants.

------------------------------x

New York, N.Y.
November 4, 2021
4:00 p.m.

Before:

HON. DENISE L. COTE,

District Judge

APPEARANCES

FEDERAL TRADE COMMISSION
Attorneys for Plaintiff FTC
BY: MARKUS H. MEIER

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
Attorney for Plaintiff State of New York
BY: ELINOR HOFFMANN

MORGAN LEWIS & BOCKIUS LLP
Attorneys for the Defendants Vyera Pharma and Phoenixus AG
BY: STEVEN A. REED

DUANE MORRIS LLP
Attorney for the Defendant Shkreli
BY: CHRISTOPHER CASEY
JEFFREY POLLACK

KASOWITZ BENSON TORRES LLP
Attorney for the Defendant Mulleady
BY: NICHOLAS RENDINO

(The Court and all parties appearing telephonically)

THE COURT: Good afternoon, counsel. This is Judge Cote speaking. I'll call the case. FTC v. Vyera and the others, 20 Civ. 706.

Is the FTC participating on this call?

MR. MEIER: Good afternoon, your Honor. It's Markus Meier for the FTC.

THE COURT: Thank you. And is the State of New York participating?

MS. HOFFMANN: Yes, your Honor. This is Elinor Hoffmann on behalf of the State of New York, and I will also be speaking for the other states.

THE COURT: Thank you very much. Moving right along then to Vyera. Is counsel for Vyera participating?

MR. REED: Yes. Good afternoon, your Honor. This is Steve Reed on behalf of the two corporate defendants, Vyera and Phoenixus.

THE COURT: Thank you. Counsel for Mr. Shkreli.

MR. CASEY: Yes. Good afternoon, your Honor. Christopher Casey from Duane Morris. My colleague, Jeff Pollack, is on the line. I will be speaking on behalf of Mr. Shkreli.

THE COURT: Thank you very much. And for Mr. Mulleady.

MR. RENDINO: Good afternoon, your Honor. This is

Nicholas Rendino of Kasowitz Benson Torres. I'm participating on behalf of defendant, Kevin Mulleady.

THE COURT: Thank you very much. And I want to thank everyone whose appearance I didn't take but who is participating in this call.

I also want to thank plaintiffs and counsel for Mr. Shkreli for, on fairly short notice, giving me and each other their positions with respect to Mr. Shkrei's presence at trial to testify and the implications of that or any trial testimony he might be able to submit.

I have a few things to say and then I want to engage counsel for the plaintiffs and Mr. Shkreli, but, of course, I'm happy to hear anything any other party wishes to add.

There are a couple of things that are set in stone here. One is our trial date of December 14th. The other is that the defendant will not be able to testify remotely at that trial. There are many reasons for that, but the practical hurdles by themselves are insurmountable.

I've been managing a full criminal docket during the pandemic and have a great deal of experience with remote proceedings with incarcerated individuals during the pandemic. Now, admittedly, those experiences are defendants who are incarcerated in pretrial detention facilities, but I think it is generous to say that the technology issues and the institutional issues (technical interruption) and the conduct

of these proceedings is very erratic. Some go smoothly, some do not, and you do not know ahead of time what will be your experience on any individual proceeding. There are issues with technology, there are issues within the institution itself and production of inmates, and issues about the entire institution being shut down at a moment's notice for good and sufficient reasons for the institution that have nothing to do with your individual case and need to have a conference with a defendant.

Now, admittedly, Mr. Shkreli is not at a pretrial detention facility. He is at FCI Allenwood, but the problems that would be presented with him testifying virtually from FCI Allenwood are even more severe than my experience from the past year and a half or so during the pandemic with appearances by defendants at pretrial detention facilities.

The October 28th email from FCI Allenwood explains in great detail the impact on the institution, the idea that legal and social visits for up to 950 inmates would have to be canceled in order to permit Mr. Shkreli to testify remotely, and even then, if that weren't enough to give us great concern about the impact on other human beings, their rights, their sanity, for people who can't talk to their attorneys and see their family members while incarcerated, even if that were not important to us, and it is very important, there are no guarantees that this will go forward smoothly for reasons I've already alluded to about technology issues. But there are

going to be staffing issues at Allenwood, as the email indicated. It's not something commonly done from the institution designated for service of a prison sentence and it's not set up for this.

So, there are many reasons why Mr. Shkreli cannot testify at this trial remotely, and to make a request that he do so is not, in these circumstances, a reasonable one. He can attend this trial if he wishes, he can do so in person. I've addressed that issue before, but it's his choice, in my view, whether or not to attend. I'm not going to demand his appearance. It's a civil trial, it's not a criminal trial. If he would prefer not to undergo the transportation difficulties involved in a production from Pennsylvania federal facility to a New York federal facility, the amount of time involved for such transportation and the other impacts that he's described to me through counsel, I understand that and I respect that. That's his decision to make.

But that takes us to, then, the second issue here, and that is what do we do in the circumstances we have here. He has decided not to attend this trial, fine. I tried to give Mr. Shkreli and his counsel as much notice as possible knowing that these decisions had to be made quickly about what position the plaintiffs would take if he chose not to come to trial so he could factor that into his decision-making.

My October 29th order laid out three options that I

thought of. I didn't know what the plaintiffs would prefer, of course I'm not as close to the evidence in this case as the parties are, and I don't know their strategies, couldn't begin to know their various strategies by the plaintiffs or other defendants with respect to the trial issues. Of course, the plaintiffs could take a variety of positions beyond the three that I outlined. Those were the three that occurred to me.

But I saw in the letter that Mr. Shkreli's counsel submitted, last night, a series of concern — that's the letter of November 3rd — about what might be implicated by the third choice that the plaintiffs made, which is to rely largely on the pretrial deposition of Mr. Shkreli and, indeed, as I understood it, the designations they've already made of that testimony and not oppose Mr. Shkreli's counter-designations to, in effect, constitute his redirect examination.

The question of what documents need to be authenticated or what testimony with respect to documents needs to be explored in order to support the admission of those documents is a significant one or not. Obviously, it depends upon the identity of the documents and how numerous they are.

The plaintiffs wish to take what they describe as a short deposition of Mr. Shkreli to lay the foundation of the admission of some documents, but as I understand it, not to otherwise take his deposition on the merits.

So, I'm done with my preliminary remarks. What I

would like to hear from the parties on is whether or not the plaintiffs have some other alternative they want to suggest beyond the three that I outlined; two, what schedule the plaintiffs and Mr. Shkreli would suggest for the identification of the documents that the plaintiffs want to lay the foundation for through additional questions of Mr. Shkreli, whether or not there can't be a stipulation if there is really no dispute about authenticity or whatever, and therefore eliminate any further burden on Mr. Shkreli with respect to interruption of his time at Allenwood with a further deposition, or anything else along these lines that can help us reduce the burden of this issue and allow the parties to focus on trial preparation.

So let me start with you, Mr. Meier, do you have any comments you'd like to give me?

MR. MEIER: Yes. Thank you, your Honor.

As your Honor would have noted in our letter of November the 1st on ECF526 where we did respectfully request the Court's permission to conduct a short deposition to lay foundations, it was contingent, it is contingent, that is if we are unable to resolve such issues pretrial and, of course, would be our hope to do so.

But, the reality is, at this point, we have gotten all kinds, all manner of objections from Mr. Shkreli, including authenticity objections and, yes, I'm concerned that we may not get that all worked out and that's why we wanted the

contingency. Your Honor, I'm sure, understands incentives and understands that if your Honor were to order that, it might increase the likelihood that we would be able to resolve more of these issues pretrial.

With respect to a couple of the issues your Honor raised, it's absolutely correct that we're only looking for a very limited deposition, sort of essentially akin to a document custodian to try to lay the foundations because of all the objections that Mr. Shkreli has made. We've gone back to try to look at how many documents. It could be up to about 25, but it could certainly be fewer if we can knock those off, as many of those off as possible. Of course, all of these documents are -- almost all of them are admissible as party admissions, but as I indicated, Mr. Shkreli has even made authenticity objections.

And so, for example, just to pick one, there is the Daraprim asset purchase agreement, the very agreement in which they bought the asset from another company that Mr. Shkreli himself signed the agreement, and yet, they've made an authenticity objection.

So, of course, this is also contingent on whether the Bureau of Prisons would be able to accommodate us if and when we get to that point where we need to take a deposition. As your Honor laid out, there is issues and we're not certain that the Bureau of Prisons will be able to accommodate us, but we

want to have that option so that we can make sure that we can get past these evidentiary objections and move forward.

I think I've covered the issues that your Honor raised.

THE COURT: So, let me ask you, Mr. Meier, are these objections that are contained in the pretrial order?

MR. MEIER: Yes, they should be one of the appendices, if I recall it correctly.

THE COURT: Yes. Good. Let me ask counsel for Mr. Shkreli to respond. And then, of course, I'll let other counsel weigh in if they wish to.

Mr. Casey.

MR. CASEY: Yes, your Honor. Good afternoon. As we said in the letter to the Court, we did have concerns about the deposition idea as it was described in the letter. It seemed unclear to us exactly what plaintiffs had contemplated.

This call and the information Mr. Meier just shared is helpful. We didn't know what documents they were referring to. We are certainly willing and able to engage with Mr. Meier and his team in terms of narrowing objection. We fully expect that we would do that at some point, particularly the authenticity objections. Without seeing the documents and without knowing what he's referring to, I can't, of course, comment on any specific objections, but we would work cooperatively to avoid a deposition. I don't think it's something that any of us would

want to have to arrange for all the reasons you've identified, your Honor.

THE COURT: Thank you very much, Mr. Casey. I'm sorry. I didn't mean to cut you off.

MR. CASEY: That's fine.

So, we can engage in that process, your Honor, and we'll be guided by the Court's direction in terms of how to get from here to there, but I think if it's simply a practical issue of sitting down and resolving objections, we're certainly open to doing that.

THE COURT: Wonderful. So, Mr. Meier, the 25 or so documents that you're focused on, when would you be able to give Mr. Casey a list?

MR. MEIER: So I guess we already have put together a list, but I think it needs to be checked and double checked. If we could have until Monday, that might make the most sense for us, if that's possible.

THE COURT: Good. Are you available early next week, Mr. Casey, to engage with the plaintiffs on this issue?

MR. REED: Yes, your Honor.

THE COURT: Okay. Great. So why don't I say that if there is a problem with respect to this issue, that I'll hear about it no later than a week from today, November 11th. I am suggesting that date because if there is going to be a deposition, the parties are going to have to work expeditiously

to arrange that before our trial date. And, of course, we're heading into the Thanksgiving period, as well, which will complicate things.

Is that schedule agreeable to you, Mr. Meier?

MR. MEIER: Yes, your Honor. Thank you.

THE COURT: Is that agreeable to you, Mr. Casey?

MR. CASEY: Yes, your Honor.

THE COURT: Great. So let me just see if there is anyone else who wishes to be heard on anything relevant to this call. Let me go first to you, Ms. Hoffmann.

MS. HOFFMANN: No, I have nothing further to say, your Honor. I think Mr. Meier covered all of plaintiffs' points.

THE COURT: Thank you. Mr. Reed.

MR. REED: Nothing to add, your Honor. Thank you.

THE COURT: Thank you. And Mr. Rendino.

MR. RENDINO: Nothing further here, your Honor. Thank you very much.

THE COURT: Okay. Thank you, all, again for making yourselves available on such short notice. I wish you well in trying to resolve these issues. Good luck. Bye-bye.

* * *