```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
FEDERAL TRADE COMMISSION, STATE OF NEW   :   20cv00706 (DLC)
YORK, STATE OF CALIFORNIA, STATE OF      :
OHIO, COMMONWEALTH OF PENNSYLVANIA,      :   OPINION AND ORDER
STATE OF ILLINOIS, STATE OF NORTH        :
CAROLINA, and COMMONWEALTH OF            :
VIRGINIA,                                :
                                         :
                    Plaintiffs,          :
          -v-                            :
                                         :
MARTIN SHKRELI,                          :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Federal Trade Commission:
Markus H. Meier
Bradley S. Albert
Armine Black
Daniel W. Butrymowicz
J. Maren Haneberg
Leah Hubinger
Lauren Peay
Neal J. Perlman
James H. Weingarten
Amanda Triplett
Matthew B. Weprin
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

For plaintiff State of New York:
Elinor R. Hoffmann
Bryan Bloom
Jeremy R. Kasha
Amy E. McFarlane
Saami Zain
Office of the New York Attorney General
Antitrust Bureau
28 Liberty Street, 20th Floor

```
New York, NY 10005

For plaintiff State of California:
Michael D. Battaglia
Office of the Attorney General of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

For plaintiff State of Illinois:
Richard S. Schultz
Office of the Attorney General of Illinois
100 W. Randolph Street, 11th Floor
Chicago, IL 60601

For plaintiff State of North Carolina:
Jessica V. Sutton
North Carolina Dept. of Justice
Consumer Protection Division
114 West Edenton Street
Raleigh, NC 27603

For plaintiff State of Ohio:
Beth A. Finnerty
Office of the Ohio Attorney General
150 E. Gay Street, 22nd Floor
Columbus, OH 43215

For plaintiff Commonwealth of Pennsylvania:
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120

For plaintiff Commonwealth of Virginia:
Tyler T. Henry
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219

For defendant Martin Shkreli:
Christopher H. Casey
Jeffrey S. Pollack
Andrew J. Rudowitz
Sarah Fehm Stewart
Sean P. McConnell
J. Manly Parks
Duane Morris LLP
```

30 South 17th Street
Philadelphia, PA 19103

DENISE COTE, District Judge:

Following trial, on January 14, 2022, this Court ordered that Martin Shkreli ("Shkreli") be banned for life from participating in the pharmaceutical industry in any capacity and pay $64.6 million in disgorgement.  Fed. Trade Comm'n v. Shkreli, No. 20CV00706 (DLC), 2022 WL 135026 (S.D.N.Y. Jan. 14, 2022).  Having considered the injunction proposed by the plaintiffs and Shkreli's objections, an injunction and final judgment has been issued today.

This Opinion addresses Shkreli's objections to the injunction.  "[I]njunctive relief should be narrowly tailored to fit specific legal violations, [and] the court must mould each decree to the necessities of the particular case."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 144 (2d Cir. 2011) ("Mickalis") (citation omitted).  Rule 65(d) of the Federal Rules of Civil Procedure further provides that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required."  Fed. R. Civ. P. 65(d).  "Rule 65(d) reflects Congress' concern with the dangers inherent in the threat of a

contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds." Sanders v. Air Line Pilots Ass'n, Int'l, 473 F.2d 244, 247 (2d Cir. 1972) (citing International Longshoremen's Assoc., Local 1291 v. Philadelphia Marine Trade Assoc., 389 U.S. 64, 76 (1967)); see also Corning Inc. v. PicVue Elecs., Ltd., 365 F.3d 156, 157–58 (2d Cir. 2004) ("Corning").

Rule 65(d) is satisfied only if the party enjoined can "ascertain from the four corners of the order precisely what acts are forbidden." All. for Open Soc'y Int'l, Inc. v. United States Agency for Int'l Dev., 911 F.3d 104, 112 (2d Cir. 2018), rev'd on other grounds sub nom., Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc., 140 S. Ct. 2082 (2020) (citation omitted). An injunction may be overbroad "when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." Mickalis, 645 F.3d at 145. An order entering an injunction that refers to extrinsic documents or is not tailored to the specific facts of the case does not meet the standard of Rule 65(d). See, e.g., Corning, 365 F.3d at 157–58; Howard Opera House Assocs. v. Urb. Outfitters, Inc., 322 F.3d 125, 130 (2d Cir. 2003). The specificity requirement is satisfied, however, when the terms of an injunction cannot be drawn more narrowly without "unduly complicating its enforcement and

4

impairing its effectiveness." Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 51 (2d Cir. 1996).

Shkreli first objects to components of three of the injunction's definitions. The definitions are of the terms Development, FDA Authorization, and Pharmaceutical Company. The plaintiffs have agreed to remove the term Marketing Authorization Applications, which refers to procedures in the European Union and the United Kingdom, from the definition of FDA Authorization but otherwise oppose the Shkreli objections. Shkreli's remaining objections are overruled.

In addition to the reasons given by the plaintiffs for retaining the definitions, Shkreli's objections are denied to the extent that they depend on a restrictive description of the trial record. Shkreli is wrong to suggest that pharmaceutical research and development activities and that conduct outside the United States were not among the conduct at issue in this case. Shkreli and Vyera used the promise that Vyera would engage in research and development activities to recruit Vyera executives and to induce one of the restrictive supply agreements at issue here. At trial, Shkreli sought to justify his anticompetitive conduct by his need for supracompetitive profits to fund such research and development work. Vyera and its generic drug competitors depended on a global network of API suppliers and drug manufacturers to provide pyrimethamine to American

distributors, medical providers, and patients.  Thus, while Shkreli's violation of our nation's antitrust laws arose from his conduct and its anticompetitive impact within our borders, it denies reality to suggest that that anticompetitive activity could have succeeded without a coordinated effort that reached into the global pharmaceutical market.

Similarly, Shkreli's objection to the definition of Pharmaceutical Company fails.  He contends that the definition is vague and could prevent him from working, for example, at a university that is engaged in pharmaceutical research or at an advertising agency that assists in the marketing of drugs.  The injunction defines Pharmaceutical Company as "any Entity engaged in the research, Development, manufacture, commercialization, or marketing of any Drug Product or API."[1]

In response to this and a related objection, the plaintiffs have added a mechanism for Shkreli to undertake employment at a Pharmaceutical Company whose total gross revenues are not primarily derived from work in the pharmaceutical industry.  It provides that such Qualified Employment means employment or a consulting engagement with a Pharmaceutical Company "that is not primarily involved in the research, Development, manufacture,

---

[1] Entity is defined as "means any partnership, joint venture, firm, corporation, association, trust, unincorporated organization, or other business or government entity, and any subsidiaries, divisions, groups, or affiliates thereof."

6

commercialization, or marketing of Drug Products or APIs and whose gross revenues from this activity accounts for less than 10% of the total gross revenues of the Pharmaceutical Company." The injunction requires Shkreli to provide a notice of intent to accept a written offer of such work and provides the plaintiffs with 30 working days to object. In response to Shkreli's objection, the injunction requires the plaintiffs to object within 20 working days. The Court retains jurisdiction over the injunction, and Shkreli of course may apply for relief should the plaintiffs unreasonably object to his employment.

Shkreli next objects that the Preamble to Section II of the injunction is vague and overbroad. It enjoins him from "directly or indirectly participating in any manner in the pharmaceutical industry, including by" engaging in six activities. Shkreli objects that the words participating and indirectly, and the term including by are vague. Read in context, they are not. Removing these words would undercut the effectiveness of the injunction, which is necessary to protect the public.

Shkreli objects as well to the breadth of the descriptions of the activities from which he is barred. The plaintiffs have sufficiently explained the reasons for these bars and only the following observations will be added.

7

Shkreli asks whether he is barred from engaging in conversations about business decisions in a pharmaceutical company with a friend who works in the company.  The injunction bars him from "[p]articipating in the formulation, determination, or direction of any business decisions of any Pharmaceutical Company."  This language is sufficiently clear to give Shkreli the notice he requires of the terms of the injunction and is also necessary to control the very real risk that he will continue to participate in the industry by working through others employed in the industry, as he has done while incarcerated.

Objecting that one of the prohibitions in the injunction is vague and violates his First Amendment rights, Shkreli questions whether he would be prohibited from using a blog to discuss the pharmaceutical industry by the bar against him taking any action to influence the management of a Pharmaceutical Company.  This provision is not vague.  It bars him from taking actions to influence the management of a Pharmaceutical Company even through publicly issued statements.  While First Amendment rights deserve of great protection, Shkreli's violations of the antitrust laws have lost for him the right to speak publicly about the pharmaceutical industry when such speech is uttered to influence the management or business of a Pharmaceutical Company.  See Peregrine, 89 F.3d at 51 (finding that an

8

injunction restraining the defendant from communicating with the management of a joint venture from which she was also enjoined from being involved was not overbroad).

To further respond to Shkreli's objection, the following clause will be added to provision II.D.: Shkreli's public statements about a Pharmaceutical Company will be deemed an action taken to influence or control the management or business of any Pharmaceutical Company if Shkreli intended the statement to have that effect or if a reasonable person would conclude that the statement has that effect.

Shkreli next objects to certain provisions that require him to pay the judgment and that allow for a set-off.  The plaintiffs have made some revisions to the proposed judgment and no further revisions are necessary to respond to Shkreli's objections.  Among his objections, Shkreli asserts that he should not be required to sell his shares in Phoenixus so long as he is prohibited from voting his shares, and should certainly not be required to do so within 180 days in the event any shares are returned to him by the receiver appointed in Koestler v. Shkreli, 16 Civ. 7175 (S.D.N.Y.).  Shkreli objects that these requirements are vague, burdensome, and in violation of his Fifth Amendment rights.  The requirements are neither vague nor unduly burdensome.  Nor do they violate his constitutional rights.  Shkreli used his position as the largest Phoenixus

shareholder to exert control over it and Vyera's operations even after he had given up all formal role in the companies' operations. Through that control, he orchestrated their violation of the antitrust laws. The divestiture of his ownership interest in Phoenixus arises directly from the violations of law found at trial.

Finally, Shkreli objects to aspects of the reporting requirements in the injunction and the duty to provide access to certain information to insure that he pays the monetary judgment. These objections are overruled. To the extent that Shkreli is concerned that the inspection of financial records will occur at his home, the injunction recognizes that any inspection will occur in the presence of Shkreli's counsel and during business hours. It does not dictate the location. His production of his books and records could occur at any appropriate location of his choosing, including his counsel's office.

Dated: New York, New York
February 4, 2022

_____
DENISE COTE
United States District Judge