IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION; STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF NORTH CAROLINA; STATE OF OHIO; COMMONWEALTH OF PENNSYLVANIA; and COMMONWEALTH OF VIRGINIA,<br><br>          Plaintiffs,<br><br>  v.<br><br>VYERA PHARMACEUTICALS, LLC; PHOENIXUS AG; MARTIN SHKRELI, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC; and KEVIN MULLEADY, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,<br><br>          Defendants. | Case No. 1:20-cv-00706-DLC |

**Plaintiffs' Reply Memorandum of Law in Support of Motion for an Order to Show Cause Why Defendant Shkreli Should Not Be Found in Civil Contempt for Violating the Court's February 4, 2022 Order**

In his opposition, Shkreli fails to rebut Plaintiffs' clear and convincing showing of contempt and the need for Court-ordered relief.

**1. Plaintiffs have made a clear and convincing showing of contempt**

Shkreli's conduct squarely meets the legal standard for a finding of contempt. *Latino Officers Ass'n of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009); *Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 2009 WL 3416235 at *6 (S.D.N.Y. Oct. 23, 2009). First, the Court's February 4th Order is clear and unambiguous. ECF 876 ("the Order"). Shkreli does not dispute that: (1) the Order requires him to provide compliance reports at regular intervals and

at "such other times" as required by Plaintiffs; (2) the Order requires him to provide access to or copies of documents relating to his compliance; (3) the Order requires him to make himself available, upon five days' notice, for an interview relating to his compliance; and (4) Plaintiffs properly invoked these compliance provisions. Instead, Shkreli claims that the Order is vague because it "does not describe the manner or means by which [he] is required to provide this information." ECF 925 at 2. Shkreli failed to raise any such objection prior to final entry of the Order ECF 876. Regardless, Sections IV and V of the Order lay out in detail what information Shkreli is required to provide to comply with these provisions.

Second, proof of Shkreli's noncompliance with the Order is "clear and convincing." *Cordius Trust*, 2009 WL 3416235 at *6, *8. Shkreli does not dispute that he failed either to provide the documents or to provide Plaintiffs access to those documents and to make himself available for an interview, as required under Section V of the Order. Instead, Shkreli's only defense is that he "believed, and still believes" that his November 9, 2022 email (Ex. C-6 at 3-4) constituted a supplemental Compliance Report under Section IV of the Order. ECF 925 at 2. But Shkreli's counsel immediately instructed Plaintiffs to "disregard" that very email "other than the fact that [Shkreli] is represented by counsel and should not be addressing you absent counsel." (Ex. C-6 at 3). Shkreli and his counsel's requests for additional deadline extensions further evidence that they understood he had not submitted the required supplemental Compliance Report. (Ex. C at 4-6; Ex. C-2 at 1-2; Ex. C-6 at 1).

Third, prior to Plaintiffs filing the present motion, Shkreli (and his counsel) did not "diligently attempt[]" to comply with the Order in a "reasonable manner." *Cordius Trust*, 2009 WL 3416235 at *6, *8. To the contrary, Shkreli (and his counsel) repeatedly missed every

2

deadline to submit a supplemental Compliance Report or to provide the other information Plaintiffs required. (Ex. C at 2-6).

Shkreli tries to recast this dispute as nothing more than "[o]ne unanswered voicemail." ECF 925 at 2. Not so. Plaintiffs brought this motion only after three unanswered communications, several missed deadlines, and months of total noncompliance. Prior to filing this motion, the only "effort" by Shkreli to comply was to send an email purporting to serve as a supplemental Compliance Report that his counsel immediately instructed Plaintiffs to disregard. Contrary to his obligations under the Order, Shkreli provided no supplemental Compliance Report; produced no documents; provided no access to documents; and did not make himself available for an interview.

2. **Shkreli's belated and inadequate efforts to comply do not cure his contempt**

Plaintiffs acknowledge that, since filing this motion, Shkreli has made some progress toward fulfilling his compliance obligations under the Order. But those new (and still inadequate) efforts do not alter the contempt analysis. For example, in *Cordius Trust*, this Court found the defendant in contempt for violating an order to produce documents where, "[a]fter producing only a small fraction of the requested documents by the deadline, [the defendant] provided no more documents until over two months later – after [the plaintiff] had filed its motion for contempt." 2009 WL 3416235 at *9. The Court also noted that "[l]ack of prejudice to the other party . . . is not a defense to contempt of a court order." *Id*.

3. **Court-ordered relief is necessary**

Court-ordered relief is still necessary to obtain Shkreli's full compliance. First, the supplemental Compliance Report submitted on February 7, 2023 (Ex. D-2), is plainly deficient in several ways, including lacking the central requirement to "set[] forth in detail the manner and

3

form in which he intends to comply, has complied, and is complying with the order." (Order ¶ IV.A; *see also* Ex. C-1 at 3; Ex. C-2 at 2). The financial information Shkreli submitted falls far short of the required "full and complete accounting" of all his assets and all assets that he "has transferred, sold or otherwise disposed of" during the preceding 12 months. (Ex. D-2 at 5-6; Order ¶ IV.B.3). Shkreli provided only a cursory list of his "current assets" and a generic statement (with no support) that he has "not transferred sold or otherwise disposed of any assets" in the last 12 months. (Ex. D-2 at 5-6). Two of the five assets listed are only vaguely identified as "certain" assets: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and "certain artwork previously hanging" at Vyera's offices. (Ex. D-2 at 5-6).

In addition, Plaintiffs have serious questions concerning the little information Shkreli has provided. For example, Shkreli does not list any cryptocurrency assets[1] or disclose the disposition of any cryptocurrency in the last 12 months, even though Druglike required the use of the "Martin Shkreli Inu" ("MSI") crypto token and $450,000 worth[2] of the MSI token disappeared[3] in August 2022 from a crypto "wallet" Shkreli publicly acknowledged as his.[4] Shkreli also disclosed no income or income source, despite being released from prison since May

---

[1] In his November 9, 2022 email, Shkreli went so far as to claim: "I have no cryptocurrency accounts or cryptocurrency assets. MSI tokens are owned by Druglike, which I have no ownership in." (Ex. C-2 at 2).

[2] Will Gendron, Martin Shkreli claims porn virus cost him $450K in crypto tokens, Input (Aug. 16, 2022), https://www.inverse.com/input/culture/martin-shkreli-porn-virus-crypto-tokens-web3-druglike.

[3] Shkreli claims he was "hacked." Misyrlena Egkolfopoulou & Emily Nicolle, "Pharma Bro" Martin Shkreli's Crypto Token Plunges After Massive Sale," Bloomberg (Aug. 12, 2022), https://www.bloomberg.com/news/articles/2022-08-12/crypto-plunge-pharma-bro-shkreli-s-coin-drops-more-than-90. Others suggest it was a "rug pull" scam, which occurs when "dishonest developers create a new cryptocurrency token, artificially inflate its price, and then cash out before the token's value collapses to zero." Martin Shkreli's New Token Drops 90%, Rug Pull Suspected, TheNewsCrypto (Aug. 13, 2022) https://thenewscrypto.com/martin-shkrelis-new-token-drops-90-rug-pull-suspected/.

[4] Martin Shkreli, Stock Market, anti-Web3/Shkreli Peanut Gallery, Martin's Newsletter (Substack) (Aug. 25, 2022), https://martinshkreli.substack.com/p/stock-market-anti-web3shkreli-peanut (last checked Feb. 21, 2023).

2022 and an October 2022 Druglike employment letter stating his ███████████████.
(Ex. D-2). Shkreli is also actively represented by at least two law firms,[5] but disclosed no payments to any attorneys.[6]

Finally, Shkreli attempts to distance himself from Druglike, ████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████ (Ex. D-2 at 4-5). Yet in
████████████████████████████████████████████████████████████████
████████████████████████. (Ex. D-4 at 1, 5).[7] ████████████████████████
████████████████████████████████████████████████████████████████
███. (Ex. D-4 at 2-3, 6). ██████████████████████████████████████████
████████████████████████████████████ (Ex. D-4 at 2-3, 6; Ex. D-3 at 1). Shkreli Family Holdings LLC was not incorporated until shortly after ████████
████████ and remains in good standing in Delaware. (Ex. D-6 at 1). While Druglike stock may no longer have value, ████████████████████████████████████████
████████████████████████████. (Ex. D-5 at 14). Shkreli's ████████
████████████████████████████████████████████████████████ raise

---

[5] Shkreli is represented by Sher Tremonte LLP in his appeal of this case to the Second Circuit and by Murphy Group CNY in *Koestler v. Shkreli*, No. 16-cv-7175 (S.D.N.Y.). Ms. Murphy's role in this action is unclear. In her affidavit, Ms. Murphy states that she is not and has never "been Defendant Shkreli's attorney of record" in this case (ECF 925-2 at 2), and she has not filed a notice of appearance. Yet, Ms. Murphy responded to Plaintiffs' motion on behalf of Shkreli and Shkreli explicitly stated in a November 9, 2022 e-mail that Ms. Murphy "should be the point person for this." Since November 9, Plaintiffs have treated Mr. Shkreli as represented by counsel and communicated to him through Ms. Murphy. (Ex. C-6 at 3-4).

[6] In an amended complaint recently filed in New York state court, Shkreli is alleged to have channeled at least $1 million and potentially more through his attorneys and their escrow accounts, family, and other associates since mid-2019. *Koestler v. Shkreli, et al.*, Index No. 531434/2021, No. 56 (Supreme Court of the State New York Kings County Nov. 25, 2023).

[7] ████████████████████████████████████████████████████████████████ (Ex. D-4 at 14).

concerns that it is an undisclosed holding place for Shkreli's various financial interests, and Shkreli's central role in Druglike and ██████ [8] casts doubt on his unsupported declaration that he is "not directly or indirectly participating in any manner in the pharmaceutical industry." (Ex. D-2 at 2).

Given the plain deficiencies and concerning potential inaccuracies of Shkreli's supplemental Compliance Report, Plaintiffs first ask the Court to order Shkreli to submit a revised, accurate supplemental Compliance Report meeting the requirements of the Order and supported by documentation for his full and complete accounting to both Plaintiffs and the Court within 10 days of the Court's decision.

Second, Plaintiffs ask the Court to order Shkreli to produce all documents responsive to the issues identified in our October 2022 letter within 14 days of the Court's decision. Shkreli has not provided access to his relevant documents and, to date, has only submitted five documents in response to Plaintiffs' compliance requests, including the 33 issues identified in Plaintiffs' October 2022 letter. The five documents provided—more than four months after our initial request—raise more questions than they answer.

Finally, Plaintiffs seek a Court order that Shkreli sit for a deposition under oath within 21 days of the Court's decision on this motion at a date and time agreed to by Plaintiffs. Given Shkreli's lack of compliance to date and the need to obtain an accurate supplemental Compliance Report and the requested documents in advance, Plaintiffs believe a Court order is necessary to ensure a timely and productive deposition. The parties have been discussing a potential

---

[8] Plaintiffs previously detailed Druglike and Shkreli's public statements on Druglike's drug discovery and development purposes. ECF 922 at 4-5.

6

deposition, and Plaintiffs hope this issue can be resolved by a stipulation submitted to and entered by the Court. Plaintiffs have submitted a revised proposed order with this reply.

Dated: February 24, 2023

Respectfully submitted,

| | |
|---|---|
| */s/ Markus H. Meier* | */s/ Elinor R. Hoffmann* |
| Markus H. Meier | Elinor R. Hoffmann |
| Maribeth Petrizzi | Amy MacFarlane |
| Susan Huber | Saami Zain |
| Christine Tasso | |
| Danielle M. Sims | New York State |
| Bradley S. Albert | Office of the Attorney General |
| Maren Haneberg | 28 Liberty St. |
| | New York, N.Y., 10005 |
| Federal Trade Commission | Tel: (212) 416-8269 |
| 600 Pennsylvania Ave. N.W. | elinor.hoffmann@ag.ny.gov |
| Washington, D.C. 20580 | |
| Tel: (202) 326-3759 | *Counsel for State of New York on Behalf of* |
| mmeier@ftc.gov | *State Plaintiffs* |
| | |
| *Counsel for Plaintiff Federal Trade Commission* | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2023, I served a true and correct copy of the foregoing Plaintiffs' Reply Memorandum of Law in Support of the Motion for an Order to Show Cause Why Defendant Martin Shkreli Should Not Be Held in Civil Contempt for Violating the Court's February 4, 2022 Order and accompanying revised proposed order on all counsel of record in this action via ECF and on Brianne Murphy via email.

Dated: February 24, 2023

/s/ *Maren Haneberg*
Maren Haneberg
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
(202) 326-3084
mhaneberg@ftc.gov